IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| JANICE HARGROVE WARREN | PLAINTIFF |
| v.    No. 4:19-cv-00655-BSM | |
| CHARLES MCNULTY, in his official capacity as Superintendent of the Pulaski County Special School District and in his official capacity; MIKE KEMP, in his official capacity as a Member of the Board of the Pulaski County Special School District and in his individual capacity; TINA WARD, in her official capacity as a Member of the Board of the Pulaski County Special School District and in her individual capacity; LINDA REMELE, in her official capacity as a Member of the Board of the Pulaski County Special School District and in her individual capacity; SHELBY THOMAS, in his official capacity as a Member of the Board of the Pulaski County Special School District and in his individual capacity; ALICIA GILLEN, in her official capacity as a Member of the Board of the Pulaski County Special School District and in her individual capacity; ELI KELLER, in his official capacity as a Member of the Board of the Pulaski County Special School District and in his individual capacity; BRIAN MAUNE, in his official capacity as a Member of the Board of the Pulaski County Special School District; and THE PULASKI COUNTY SPECIAL SCHOOL DISTRICT | DEFENDANTS |

## RESPONSE TO DR. WARREN'S SECOND MOTION TO COMPEL AND REQUEST FOR SANCTIONS

### I.    INTRODUCTION

After review of Plaintiff Dr. Janice Warren's ("Dr. Warren") Memorandum in Support of her Second Motion to Compel and Request for Sanctions ("Motion") (Dkt. No. 18 and 18-1), it

appears that she is making three primary arguments: (1) Defendants have not made a conscientious effort to provide full and complete answers or verifications to several interrogatories; (2) Defendants use of 'standardized, uniform responses' is improper; and that (3) Mr. Cody Kees ("Undersigned Counsel") breached his duty to make a reasonable inquiry with his clients when 'standardized, uniform responses' were provided as an answer for several interrogatories. As discussed herein, these assertions are wholly without merit. What Dr. Warren is essentially stating is that they are displeased with the Defendants' responses. A general dissatisfaction with the truth is not sufficient a reason to request additional discovery or petition for sanctions to be imposed against opposing counsel. Consequently, Dr. Warren's Motion should be denied.

## II. FACTUAL OVERVIEW

Linda Remele, Mike Kemp, Tina Ward, Shelby Thomas, Alicia Gillen, Eli Keller, and Brian Maune (collectively "Defendants" or "Board Members") each serve as a Member of the Board of the Pulaski County Special School District ("PCSSD"). To date, Defendants have provided 23,337 documents to Plaintiff, not including documents PCSSD has provided to Dr. Warren's attorney, Sarah Jenkins ("Ms. Jenkins"), through Freedom of Information Act requests presumably related to this case. Defendants Remele, Kemp, Thomas, Keller and Maune have supplemented their individual discovery responses on two separate occasions, while Defendant Gillen has supplemented hers three additional times. The only information that Plaintiff has not been provided is the Defendants' *full* social security numbers, although the last four digits of the social security number has been provided by each defendant, but Defendant Ward.

Aside from the nine-digit social security numbers, Dr. Warren has been provided with EVERY document and piece of information that she has requested.[1] In fact, four of the board members (Remele, Ward, Thomas and Gillen) sat for depositions and none refused to answer even a single question posed by Ms. Jenkins.

### III. ARGUMENT

**A. Defendants have made a conscientious effort to provide full and complete answers to all interrogatories propounded by Dr. Warren.**

Interrogatories 1-10 seek background information for each of the Defendants, including detailed personal information such as their full social security numbers, every address they have resided at in the last 10 years, their full employment and education histories and the names, ages, and full mailing addresses of each of their children. Interrogatories 12-14 focus specifically on a meeting that lasted less than three-hours and took place more than two years ago, wherein the Board Members reviewed candidates for the position of Superintendent. With the exception of providing their entire social security numbers, Defendants have provided complete responses to each of Dr. Warren's interrogatories. Further, when Dr. Warren was dissatisfied with the Board Members' original responses, they elected, in good faith, to provide supplemental responses, including the last 4-digits of five of the separate Defendants' social security numbers. Yet, Dr. Warren continues to assert that the Defendants' responses are "deficient." While Dr. Warren may *wish* that individual Board Members could provide additional information, the fact remains that each Defendant has answered every interrogatory in good faith and has done so with the aim of

---

[1] Ms. Jenkins, counsel for Dr. Warren, expressed to undersigned counsel in a conversation on Monday, June 15, 2020, that she still sought updated personal information on Defendants, such as full employment histories and addresses of adult children and other relatives in the Central District. Undersigned counsel, in good faith, believes that only one Defendant, Tina Ward, still needs to supplement discovery with additional family and personal information, which is still underway. Defendant Ward sat for a deposition on June 15, 2020 and answered every question presented.

providing a full and complete response based on the information they possess and are able to recollect.

       *i.     Defendants have made a good faith effort to answer all interrogatories.*

"Discovery does not mean that a party should have to prepare the other party's case." *L.H. v. Schwarzenegger*, No. CIV S06-2042 LKK GGH, 2007 WL 2781132, at *2 (E.D. Cal. Sept. 21, 2007). As a result, "a responding party is not generally required to conduct extensive research in order to answer an interrogatory." *Schwarzenegger*, 2007 WL at *2. Additionally, "discovery should always be viewed from the context of Fed. R. Civ. P. 26(b), which generally instructs that the amount of discovery requested must be balanced by the need for such discovery." *Id*. Further, "the sufficiency of an interrogatory response must be analyzed on a case-by-case basis in light of the particular question being asked." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 297, 305 (D. Nev. 2019) (citing 8B Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure, § 2177, at 81 (3d ed. Supp. 2019)). As a general matter, courts often decline to allow discovery of social security numbers due to privacy concerns, though some have allowed disclosure where the plaintiffs have agreed to execute a confidentiality agreement. *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 448 (S.D.N.Y. 2011).

Each of the seven individual Defendants in this case serve as volunteer board members for the Pulaski County Special School District, an effort for which they are not compensated. Regardless, each of them has willingly participated in discovery and has done so in good faith. When initially queried with Interrogatories 1-10, the seven board members provided what information they had in their possession, and did so in a timely manner, with the exception of their social security numbers. Later, when Dr. Warren insisted on production of the information, six of the seven Board Members agreed to provide the last four digits of their social security numbers,

4

even though Dr. Warren had only provided the cursory explanation that this information, "would help develop an understanding of the person, her character, and her conduct." Dkt. 18-1 at p. 6.

When responding to Interrogatories 12-14, each Board Member responded to the best of his or her ability. As Dr. Warren highlighted in her Memorandum, the meeting in question took place more than two years ago and lasted two-hours and fifty-six minutes. If a Board Member does not recall with specificity what happened during that time, they simply do not recall. If they testify in interrogatories that they do not recall, then that must be their testimony at trial, or they otherwise appear not credible. Still, Dr. Warren persists that a better answer must be available but has not been provided. Asking them repeatedly will not improve their recollection. Dr. Warren further contends that each Board Member should have re-reviewed the nine candidate videos, the nine candidate profiles, and the Matrix prior to providing their responses to Interrogatories 12-14. This undertaking, however, would constitute a time-consuming and burdensome task that would almost certainly lead to discrepancies between what individual members *actually* thought during that meeting two years ago, and what they *think* they thought during that meeting. Furthermore, this is only what Dr. Warren suggests the Defendants should do, not what the Rules of Civil Procedure require. As a responding party should not be required to conduct extensive research simply to answer an interrogatory, Dr. Warren's contention is impractical. Nonetheless, each Board Member signed a verification assuring that they had answered the discovery under oath and to the best of their knowledge, information and belief. Moreover, Board Members Ward, Remele, Gillen and Thomas were all deposed on June 15-16, 2020, and Plaintiff's counsel inquired into what each remembered about the meeting and the candidate selection process. Each Board

Member answered the question to the best of his or her ability and it was very similar, if not identical, to how each responded in discovery.[2]

    a. *Cases cited by Plaintiff do not apply to the facts of this case.*

In her Memorandum, Dr. Warren highlights the case of *Philadelphia Housing Authority* for the premise that interrogatory responses are inadequate when, "the bulk of the answers are identical in every respect, despite the factual differences which would be expected in a group of plaintiffs." Dkt. 18-1 at p. 17. What Dr. Warren fails to note, however, is that the plaintiffs in that case had filed no answers whatsoever to some interrogatories and had virtually failed entirely to answer the bulk of the remainder, despite a court order. *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 50 F.R.D. 13, 14 (E.D. Pa. 1970). In fact, "twenty-six of the thirty-one pages [were] identical in every case," and "contain[ed] identical responses […], including identical typographical errors, […] to twenty-seven interrogatories." *Philadelphia Housing Authority*, 50 F.R.D. at 14. This uniformity prohibited the court from even determining which, if any, of the plaintiffs may be entitled to recover damages. *Id.* Thus, *Philadelphia Housing Authority* is an <u>extreme</u> example of a parties' failure to adequately respond to interrogatories, and is inapplicable in this case as Defendants have responded to every interrogatory, multiple times, regardless of Dr. Warren and her legal counsel's satisfaction with said responses. There is literally no piece of information that Dr. Warren has requested, aside from full social security numbers, that Defendants have not provided.

    b. *An air of mistrust as it pertains to the handling of confidential information exists in this case.*

---

[2] Deposition transcripts are not yet available, but all four board members deposed testified fully and completely when asked about board meetings where candidate selections occurred.

What additionally goes undiscussed in Dr. Warren's Motion is the general air of mistrust that exists in this case as it pertains to the handling of confidential information. In the past, Dr. Warren and Ms. Jenkins have carelessly handled confidential information. For example, on May 25, 2020, Ms. Jenkins filed a confidential document of public record. *See* Dkt. No. 16-2. Her error was not corrected until defense counsel brought the issue to Ms. Jenkins' attention, and only then did she request the exhibit be exchanged for a redacted version. *See* Dkt. No. 17. Moreover, Ms. Jenkins filed a record of confidential communication between defense counsel and his client that was obviously covered under attorney-client privilege and not intended for disclosure. *See* Dkt. No. 19-9. This attorney-client communication does not contain a bate stamp number, so clearly Ms. Jenkins knew (or should have known) that it was produced in error, but relied on it anyway, and provided it to this Court, making it a matter of public record. If Ms. Jenkins had chosen to first consult with defense counsel before releasing attorney-client material, she would have learned that undersigned counsel had personally met with each Defendant and had multiple follow-up phone calls prior to providing discovery responses. She also would have learned that this confidential letter was only meant to give each Defendant a final opportunity to review their discovery responses and to make any additions, as well as to serve as a complete set of responses for each Defendants' personal records.

With that being said, how can the Board Members be sure that the same mistake will not occur a second or third time, subsequently revealing personal information like a social security number? Such a risk is unnecessary considering Dr. Warren has yet to provide a compelling reason as to why each Board Member's full social security number is needed, especially in light of the Defendants having provided the last four digits of their social security numbers, along with a

plethora of other personally identifiable information (dates of birth, 10 years of residential history, spouses and children and work and educational histories).

> ii. *Defendants have individually verified each and every interrogatory response.*

"Federal Rule of Civil Procedure [Rule] 33(b) requires that interrogatories addressed to an individual party […] be answered by that party, that each interrogatory not objected to be answered in writing and under oath, and that the person who makes the answers must sign them." *Allen v. Pulaski Cty.*, 2012 WL 32640, at *4 (E.D. Ark. 2012) (citing Fed. R. Civ. P. 33(b)(5)). While Rule 33(b) requires responses to interrogatories be made under oath, it does not prescribe any particular form of verification. *Richard v. Dignean*, 332 F.R.D. 450, 457 (W.D.N.Y. 2019) (quoting *Zanowic v. Reno,* 2000 WL 1376251, at *5 (S.D.N.Y. 2000)).

Per Dr. Warren's Motion, it appears that she takes issue with the verifications provided by each Defendant as it refers to "<u>our</u> knowledge, information and belief." *See* Dkt. No. 18-1 at p. 18. While Dr. Warren may believe this to be an intentionally deceitful statement full of "contorted language," that is simply not the case. Each Defendant signed the verification and acknowledged that their answers were given under oath. To the extent that Dr. Warren takes issues with the use of "our" as opposed to "my," undersigned counsel is more than willing to have each Defendant sign a new verification, as no gamesmanship was intended by the use of "our." In fact, defense counsel was not even aware that this was a concern until Dr. Warren's Motion. As this appears to be a non-issue, Defendants are all willing to stipulate that the verification was intended to verify each Defendant's individual responses in order to placate Dr. Warren and her counsel.

> **B. Sanctions Against Mr. Kees are wholly inappropriate as he has not conducted discovery in an evasive, improper, or irresponsible manner.**

"Rule 26(g) of the Federal Rules of Civil Procedure imposes on counsel and parties an affirmative duty to conduct pretrial discovery in a responsible manner." *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 515 (N.D. Iowa 2000). "The Rule specifically requires certification that the responses or objections to discovery requests are not interposed for any improper purpose, such as to harass or to cause an unnecessary delay or needless increase in the cost of litigation." *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 188 (N.D. Iowa 2017) (citing Fed. R. Civ. P. 26(g)(2)(B)). Using an objective standard, "the Rule allows [a] court to impose sanctions on the signer of a discovery response when the signing of the response is incomplete, evasive, or objectively unreasonable under the circumstances." *Liguria Foods, Inc.*, 320 F.R.D. at 188; *St. Paul Reinsurance Co.*, 198 F.R.D. at 515. The court tests the signer's actual knowledge and motivation at the time the discovery paper is signed to determine whether a response was interposed for an improper purpose. *Liguria Foods, Inc.*, 320 F.R.D. at 188-89 (citing *Oregon RSA No. 6 v. Castle Rock Cellular*, 76 F.3d 1003, 1007 (9th Cir. 1996)). Notably, "all doubts are to be resolved in favor of the signer." *Liguria Foods, Inc.*, 320 F.R.D. at 189 (citing *Bergeson v. Dilworth*, 749 F. Supp. 1555, 1566 (D. Kan. 1990)).

Nowhere in Dr. Warren's Motion does she highlight "irresponsible behavior" or point out Mr. Kees' intent to provide "incomplete, evasive, or objectively unreasonable" discovery responses. In all actuality, the fact remains that Mr. Kees represents nine clients in this action, while Ms. Jenkins represents one. Regardless, undersigned counsel guided his clients through the process of providing twenty-seven sets of discovery responses, 23,337 documents, and has managed a subpoena request and subsequent response for separate Defendant McNulty. Clearly, a greater amount of time and effort is required when gathering detailed information and responses for nine individual clients, thus necessitating Defendants' need to supplement responses. Additionally, at

least two of the Defendants had job changes during the discovery period, another had multiple family deaths, one welcomed a newborn to the world and all of this was in addition to discovery occurring during the height of the Covid-19 pandemic. Still, Mr. Kees managed to provide, supplement, and complete discovery in full for all nine of the Defendants in a timely manner.

Finally, since 2012, Mr. Kees has been counsel of record in 68 federal cases in Arkansas, and this is the first time another lawyer has requested that he be sanctioned. Mr. Kees means no ill-will toward Ms. Jenkins, who has proven herself a very meticulous, thorough and zealous advocate, but her perspective regarding the discovery process is not one previously encountered by undersigned counsel. Indeed, the use of a reply brief to address discovery issues, as opposed to an in-person or telephone "meet and confer," was a first for undersigned counsel. Ergo, as Dr. Warren's Motion has failed to establish that Mr. Kees conducted discovery in an irresponsible or improper manner, and as "all doubts are to be resolved in favor of the signer," sanctions against Mr. Kees are unjustified and wholly inappropriate in this case.

## IV.     Conclusion

Ms. Remele, Mr. Kemp, Ms. Ward, Mr. Thomas, Ms. Gillen, Mr. Keller, and Mr. Maune have all made a good faith effort to provide complete, accurate and responsive answers to each and every one of Dr. Warren's interrogatories, with the exception of sharing their complete social security numbers. After further requests were received from Ms. Jenkins for that information, five of the Board Members agreed to provide the last four-digits of their social security numbers in an effort to placate Plaintiff and her counsel. Further, five of the Defendants sat for depositions on June 15 and 16, 2020, and not a single one refused to answer even one question posed by Ms. Jenkins. So, why did Ms. Jenkins not simply ask the four board members for the information she claims to lack during these depositions? Finally, each Defendant willingly signed a verification

statement and acknowledged that their answers were given under oath. Should Dr. Warren and Ms. Jenkins continue to take issue with the *wording* of that verification, each Defendant is willing to stipulate that the verification was intended to validate each Defendant's response. As a result, Dr. Warren's request for additional discovery is improper. Further, Dr. Warren has failed to highlight any way in which undersigned counsel has not complied with the Rules of Civil Procedure. While it is likely that Ms. Jenkins is merely attempting to be a zealous advocate for her client, her request for sanctions in this case is outlandish, uncouth and completely without merit.

For the foregoing reasons, Defendants request that Dr. Warren's Second Motion to Compel and Request for Sanctions be denied.

Respectfully submitted,

BEQUETTE, BILLINGSLEY & KEES, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Phone: (501) 374-1107
Fax: (501) 374-5092
Email: jbequette@bbpalaw.com
       ckees@bbpalaw.com

**W. Cody Kees**
Jay Bequette, Ark. Bar No. 87012
W. Cody Kees, Ark. Bar No. 2012118

*Attorneys for Defendants*