IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

Janice Hargrove Warren                                                                                      Plaintiff

      v.                          Case No. 4:19-cv-655-BSM

Charles McNulty, et. al                                                                                   Defendants

PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S SECOND
MOTION TO COMPEL

      After receiving Defendants' Responses to her First Set of Interrogatories and attempting a good faith resolution to the discovery dispute, Plaintiff sought assistance from the Court. Plaintiff asked this Court for three forms of relief:  1) to compel the Defendants to engage in a conscientious effort to respond to her Interrogatories, 2) to sanction the Defendants by extending Plaintiff's discovery by 45 days, and 3) to sanction Attorney Kees, personally, for breaching his certification of reasonable inquiry before signing the Defendants' responses.  The Defendants assert four arguments in their Response; each will be briefly addressed in turn.

      First, Defendants assert in their Introduction, p.2:

> "A general dissatisfaction with the truth is not sufficient a reason to request additional discovery or petition for sanctions to be imposed against opposing counsel."

Plaintiff wants the truth!  She sought each Defendant's *individual* truthful response to Interrogatories 12 thorough 14 not the defense counsel's summary for the collective.  Each Defendant's answers must disclose a conscientious endeavor to understand the questions and to answer the questions fully or provide the details of the conscientious but unsuccessful effort.

Continental Illinois Nat. Bank & Trust Co. of Chicago v. Caton, 136 F.R.D. 682 (D. Kan. 1991), see also 8B Fed. Prac. & Proc. Civ. § 2177 (3d ed. April 2020).  Defendants' responses do not reflect a conscientious effort.  For example, Interrogatory 12g asked if the Defendant voted Dr. Janice Warren a preference when they selected three finalists; if not, why not.  Each of the seven individual Defendants who comprise the PCSSD Board of Education use the same response to object to the Interrogatory because it "implies" that they were to choose among the candidates.  All seven also state that Dr. Janice Warren was not awarded an interview, suggesting that a majority did not vote for her as a preference.  None responded to the question of "Why" or stated that they are withholding a response because of their objection.  Defendants' first argument is unpersuasive.  How did the Defendants vote; what was the reason for failing to vote Dr. Warren as a preference remains unanswered.

Second, Defendants assert they don't have an obligation to provide the Plaintiff with her case or engage in extensive research.  "Discovery does not mean that a party should have to prepare the other party's case. . . As a result, a responding party is not generally required to conduct extensive research in order to answer an interrogatory." Defendants Response, Argument, A(i), p. 4.  Defendants suggest that extensive research was required to answer Plaintiff's Interrogatories without explaining which questions required the extensive research.

Plaintiff asked questions 1 through 10 to gain insight on the seven individuals who comprise the Board.  Surely, they know without extensive research their addresses, their children's addresses, their educational background and work history, and when their elected terms expire.  While defense counsel may not have that information, if the Defendants were given the Interrogatories, the information sought should have been provided without extensive research.  If the statement refers to Interrogatories 12 through 14, the information needed to

respond to those questions was available in the documents supplied by the Defendants to the Plaintiff and produced by the Plaintiff in response to the Defendants' Requests for Production. Parties generally review the documents they supply and that are requested. Therefore, no laborious, extensive research should have been necessary.

The Defendants raise in the same paragraph as the above quoted text their objection to supplying the complete social security number and cite *Whitehorn v.Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 448 (S.D.N.Y. 2011). *Whitehorn*, although distinguishable on its facts, supports the disclosure of social security numbers. In *Whitehorn*, the plaintiffs in an FLSA collective action sought social security numbers of other collective members in order to provide notice of the action to collective members whose notices were returned. The court ordered the employer to disclose those social security numbers. Other authority limits an employer's obligation to disclose its employees' social security numbers to third-party plaintiffs because of privacy concerns. See, e.g., *United States v. Quebe*, 321 F.R.D. 303 (S.D. Ohio 2017); *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 556, 562 (D. Ga. 1992). Here, the Plaintiff isn't seeking social security numbers of the Board's employees but the numbers of the members of the Board.[1]

Third, Defendants contend that they have provided complete responses. Defendants' Response, Argument A, p.3.

With the exception of providing their entire social security numbers, Defendants have provided complete responses to each of Dr. Warren's interrogatories. Further, when Dr. Warren *was dissatisfied* with the Board Members' original responses, they elected, in

---

[1] Plaintiff's counsel did inadvertently attach as an exhibit a spreadsheet that included confidential information. Counsel discovered the error as she prepared the second Motion to Compel and sought assistance from the Clerk's Office to resolve the error. While waiting for the Clerk to call, counsel discovered an email notice from opposing counsel in an unrelated email thread.

>good faith, to provide supplemental responses, including the last 4-digits of five of the separate Defendants' social security numbers (emphasis added).

Yes, the Defendants have supplemented their deficient responses and supplemented their supplemented responses, and supplemented their supplemented-supplemented responses. Plaintiff's First Set of Interrogatories were served on March 20, 2020; Defendants' initial un-supplemented responses were served on April 22, 2020, with an agreed to extension. Thereafter, on April 23, 2020, Plaintiff immediately provided defense counsel with general objections to the Responses and requested verifications; an individual Reply was served on each of the seven Defendants on April 29, 2020. The formal Reply provided a record of the specific issues in dispute with each Defendant's response. This Court set June 24, 2020, as the last day of discovery. First supplemented responses commenced on May 5th and 6th by Remele, Keller, and Maune, followed by Thomas on May 8 and Gillen on May 11th; second supplemented responses were served on May 11 by Keller, followed by Thomas and Maune on June 18, two days *after* Thomas' June 16th deposition, accompanied by Gillen's third supplemented responses two days *after* her June 16th deposition, with Remele's employment history, her second supplemented response, served 20 minutes before her June 15th deposition. The Plaintiff asked ten simple questions:

(1) Vital statistics: name, residence, birth date and place, and social security number;

(2) Provide addresses for the past ten (10) years;

(3) Identify your children and their addresses;

(4) List all relatives by blood or marriage who might be called as jurors;

(5) State your educational background and employment history;

(6) Share your marital history;

    (7)      What's your term of office on the Board;

    (8)      When and what other political or elected offices have you held;

    (9)      Share your experience with the criminal justice system; and

    (10)     Identify your litigation experience.

These were ten simple background questions; the defendants took *79* days to provide near-complete answers to these questions.[2] Despite his 68-federal case history and eight years of litigation experience, Mr. Kees doesn't see anything objectionable in his delayed response. He shares that no one else has complained. After all, he declares, he has nine clients in this action. If he has undertaken more responsibility than he and co-counsel can handle there are alternatives available to them. His poor judgment isn't the Plaintiff's responsibility. Has Mr. Kees considered the impact on the Plaintiff of her limited ability to follow up or to seek further discovery when information is provided after a deposition and as discovery is closing. Certainly, he has. However, Mr. Kees' likely response is that the rules permit continued discovery by agreement. Obtaining information without the Court's presence isn't realistic with the lack of diligence that has been displayed by the Defendants or their counsel with the Court's presence.[3] In point of fact, Mr. Kees' experience suggests that delay was his objective and adversely impacting the Plaintiff his endgame.

---

[2] Defendants' original responses are attached as Exhibit 1.
[3] The plaintiff served its First Request for Document Production on January 16, 2020. After a Reply and two Supplemental Replies, the Plaintiff filed her First Motion to Compel and this Court compelled production on April 28, 2020, of the Defendants' calendars and phone records. Defense counsel had not made a good faith effort to obtain the telephone records that were sought during the initial 30-day period should his baseless objections fail. Rather, he waited 103 days until this Court ordered the Defendants to produce the records before commencing his efforts to obtain them. On May 14, 2020, Mr. Kees served AT&T with subpoenas commanding delivery on June 14th, ten days before the discovery window closed. The last of the phone record were produced June 17, 2020, and June 24, 2020.

Finally, Mr. Kees cites *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 188 (N.D. Iowa 2017) (citing Fed. R. Civ. P. 26(g)(2)(B) to support his plea that no personal sanction be imposed.  A critical reading of *Liguria Foods* suggests that Mr. Kees should be severely sanctioned in this case.  First, *Liguria Foods* is an extensive opinion by the Honorable Mark W. Bennett who was dismayed by the use of "boilerplate" or "standardized" *objections* during discovery in a breach of implied warranty of fitness for a particular purpose case.  In that case, the buyer purchased sausage seasonings that caused its pepperoni to lose 40% of its shelf-life and numerous customers.  In the case *sub judice*, the discovery dispute centers on boilerplate or standardized *answers* that were supplied by legal counsel.  Judge Bennett called the boilerplate *objections* "abusive," "obstructionist," "impermissible," and "improper discovery practice."  Furthermore, Judge Bennett wrote that ordinarily he

> find[s] the parties' use of what they admit are 'standard,' albeit plainly improper, responses to discovery requests is *objective evidence of intent to delay or impede discovery*. . . [i]t is a well-accepted proposition that one ordinarily intends the natural and probable consequences of one's actions. . . The 'natural and probable consequences' of 'boilerplate' objections is delay and impediment of discovery, not the narrowing of issues and the avoidance of expense and delay toward which the discovery rules are aimed.

*Liguria*, at 188 (emphasis added).

His Honor did not sanction the attorneys before him for three reasons:  1) they volunteered to train members of their firms, members of the bar, and law students on proper discovery responses; 2) they did not raise frivolous defenses for their behavior; and 3) during discovery, the attorneys worked harmoniously in resolving discovery disputes.  Mr. Kees' conduct, using boilerplate *answers* is outrageous; he has raised frivolous defenses -- he has nine

clients, his client's review of documents to refresh their recollection would be time consuming and burdensome, and no one else has complained about his conduct. Finally, Mr. Kees' conduct throughout discovery has been designed to delay and obstruct rather than to narrow the issues. In response to the Plaintiff's First Set of Request for Document Production, see Plaintiff's First Motion to Compel, Mr. Kees raised objections based on a privilege that lacked any basis in law and without the intent to extend or seek a modification in the law. He and his clients must be sanctioned!

## CONCLUSION

Mr. Kees failed to establish a substantial justification for using standardized, uniform, boilerplate responses to Interrogatories 12 to 14. These responses reflect the absence of a reasonable inquiry by Mr. Kees. Sanctions are mandatory for a violation of Rule 26(g) certification. Rule 26(g)(3); *Aviva Sports, Inc. v. Fingerhut Direct Mktg.*, Inc., 2012 WL 12894846 (D. Minn. May 11, 2012) (Rule 26(g) designed to deter evasion); *Deese v. Springfield Thoracic and Cardiovascular Surgeons*, 183 F.R.D. 534 (1998)(applying Rule 26(g) sanctions for a Rule 26 (a) & (b) violation); 7A Fed. Proc., L. Ed. § 19:211 (April 2020) (sanctions are mandatory for violation of the Rule 26 certification).

Mr. Kees' clients failed to engage in conscientious effort to respond and failed to provide the details of their efforts. The spirit and the letter of the rules, particularly Rules 26 and 33 coupled with their underlying purpose of a truthful resolution of the dispute between the parties require the imposition of sanctions on the Defendants and their counsel.

Respectively submitted this 29th day of June 2020,
Sarah Howard Jenkins
SARAH HOWARD JENKINS, PLLC
AR Bar No. 97046
P.O. BOX 242694
Little Rock, AR 72223

Telephone No. (501) 406-0905
sarah@shjenkinslaw.com
Attorney for the Plaintiff