IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JANICE HARGROVE WARREN                                        PLAINTIFF

v.                              No. 4:19-cv-00655-BSM

CHARLES MCNULTY, et al.                                       DEFENDANTS


## MEMORANDUM BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This Memorandum Brief is submitted in support of the Motion for Summary Judgment

("Motion") filed by Defendants, Mike Kemp, Linda Remele, Shelby Thomas, Alicia Gillen, Eli

Keller, Brian Maune, and the Pulaski County Special School District ("PCSSD" and/or "District"),

pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1]  For the reasons discussed herein,

Defendants are entitled to summary judgment as a matter of law.

## INTRODUCTION

This is an employment discrimination case.  Plaintiff, Dr. Janice Warren, contends that the

PCSSD Board of Directors ("Board") intentionally discriminated against her when it failed to

select her as a finalist for the position of PCSSD Superintendent in the spring of 2017.  Dr. Warren

was appointed the Interim Superintendent by the Board on July 18, 2017, after the Board

terminated the contract of its then superintendent, Dr. Jerry Guess.  Dr. Warren served as the

Assistant Superintendent for Equity and Pupil Services for PCSSD prior to her interim

appointment and returned to that position on July 1, 2018, the position she still holds today.

Shortly after Dr. Warren's interim appointment, the Board began the process of hiring a

national search firm to locate a permanent superintendent.  The Board retained Ray & Associates,

---

[1] Defendants McNulty and Ward have been dismissed from the case.  *See* Dkt. No. 26.

a third-party search firm, on December 12, 2017, to provide a national search for the permanent superintendent.  The entire search process was administered by Ray & Associates, who ultimately presented nine candidates (seven men and two woman and six black and three white) to the Board for initial consideration.  Dr. Warren was one of the nine individuals considered by the Board via recorded interviews and resume reviews.  During the Board meeting where the nine candidates (including Dr. Warren) were considered, the Board was instructed by Ray & Associates to complete a "Matrix for Reaching Candidate Consensus" in order to determine which candidates would move on to the in-person interview.  Dr. Warren was not selected as a final candidate. Dr. Charles McNulty, a white male, was selected for the position of Superintendent and still serves in the role today.

The Board has presented numerous issues it had with Dr. Warren's performance during her time as Interim Superintendent.  These issues were legitimate and non-discriminatory concerns the Board had with Dr. Warren.  These issues, coupled with the non-discriminatory interview process, led the Board to not select Dr. Warren for the permanent position.  The Defendants deny that its decision to not employ Dr. Warren for the permanent position was discriminatory and the Defendants deny all allegations that it violated any applicable law.

## STANDARD OF REVIEW

A motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under Rule 56(a), summary judgment is proper if the moving party has identified each claim or defense on which summary judgment is sought and has established that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a).  The burden of establishing this nonexistence rests squarely upon the moving party. *Walling v. Fairmont Creamery Co.*, 139 F.2d 318, 322 (8th Cir. 1943).  Rule 56(c) directs the moving party to support its assertion by:

> citing to practical parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials, or by showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

"[A] judge's function [at this stage] is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "All doubts are resolved against [the moving party], and his supporting affidavits and depositions, if any, are [to be] carefully scrutinized by the court." *Walling v. Fairmont Creamery Co.*, 139 F.2d 318, 322 (8th Cir. 1943). Accordingly, when the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial and summary judgment is proper. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts").

In order to prevent summary judgment, the non-moving party must establish that a genuine issue of material fact exists by pinpointing significant probative evidence. *Matsushita*, 475 U.S. at 585-586 (*citing* Fed. R. Civ. P. 56(e)). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995). Mere allegations or denials will not suffice; rather, the non-moving party must come forward with specific facts showing a genuine issue for trial. *Matsushita*, 475 U.S. at 587.

Hence, a court may grant summary judgment if the moving party has established its right to a judgment with such clarity as to leave no room for controversy, and the non-moving party is

not entitled to recover under any discernible circumstances.  *See LeCroy v. Dean Witter Reynolds, Inc.*, 585 F. Supp. 753 (D.C. Ark. 1984).

## ARGUMENT AND AUTHORITY

I.   **PCSSD did not discriminate against Dr. Warren in violation of Title VII, but instead had legitimate, nondiscriminatory reasons for its decision not to select her as a finalist for the position of Superintendent.**

The PCSSD Board's decision not to select Dr. Warren as a finalist for the position of Superintendent had nothing to do with her gender, her race, or her reporting of violations of the District's desegregation plan to the PCSSD Board, the District's attorney or to the Federal Court. Dr. Warren fails to provide the necessary evidence to make a prima facie case of sex discrimination, race discrimination or retaliation.  Consequently, even if she was able to make a prima facie case on any of her claims, she still is not entitled to recovery as the PCSSD Board had legitimate nondiscriminatory reasons for hiring Dr. McNulty over Dr. Warren.  Further, Dr. Warren is not able to demonstrate that PCSSD's reasons were merely a pretext for intentional discrimination.  As a result, her claim should be dismissed.

### A.  Title VII – Legal Standard

In 1964, Congress enacted Title VII of the Civil Rights Act in an effort to eliminate the entire spectrum of disparate treatment of men and women in the workplace.  *Tenge v. Phillips Modern Ag Co.*, 446 F.3d 903, 907 (8th Cir. 2006).  In effect, Title VII works to prohibit unlawful discrimination and retaliation practices by employers in the workplace. 42 U.S.C. § 2000e2(a). Title VII discrimination claims are analyzed under the familiar burden-shifting framework set out in the *McDonnell Douglas* line of cases.  *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-08, 113 S. Ct. 2742, 2746-48, 125 L. Ed. 2d 407 (1993); *United States Postal Service Bd. of Governors v. Aikens*,

460 U.S. 711, 713-715, 103 S. Ct. 1478, 1480-82, 75 L. Ed. 2d 403 (1983); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-256, 101 S. Ct. 1089, 1093-95, 67 L. Ed. 2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973).  A case alleging a Title VII violation moves through three phases.  *McCosh v. City of Grand Forks*, 628 F.2d 1058, 1062 (8th Cir. 1980).

"First, the Plaintiff bears the burden of proving by a preponderance of the evidence a prima facie case of discrimination." *Texas Dep't of Cmty. Affairs*, 450 U.S. at 252-53.  A plaintiff may carry this burden in one of two ways: (1) by offering direct evidence of the alleged discriminatory motive or action; or (2) by producing sufficient evidence to support an inference that the defendant employer based its employment decision on an illegal criterion.  *Halsell v. Kimberly-Clark Corp.*, 683 F.2d 285, 290 (8th Cir. 1982) (citing *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577 (1978)).  If a plaintiff is unable to present direct evidence of an employer's alleged discriminatory behavior, she can raise an inference of such conduct using the framework articulated in *McDonnell Douglas*. *Texas Dep't of Cmty. Affairs*, 450 U.S. at 253. Under this approach, a plaintiff may establish a prima facie case of discrimination if she demonstrates that: (1) she is a member of a protected class; (2) she was qualified for the position, or was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside of the protected class were treated differently). *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973). If the plaintiff demonstrates all four requirements, a prima facie case of discrimination is established.  *McDonnell Douglas Corp.*, 411 U.S. at 802-803.

Should the plaintiff succeed in making a prima facie case, the burden shifts to the defendant employer to submit evidence demonstrating that the plaintiff was rejected, or that someone else was preferred, for a legitimate nondiscriminatory reason. *Texas Dep't of Cmty. Affairs*, 450 U.S. at 254.  "To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection."  *Id*. at 255.  This burden is not onerous and need not be demonstrated by a preponderance of the evidence.  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir. 2011) (quoting *Floyd v. State of Mo. Dep't of Soc. Servs., Div. of Family Servs.*, 188 F.3d 932, 936 (8th Cir. 1999)).

If the defendant successfully rebuts the presumption of discrimination, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were instead a pretext for discrimination.  *Texas Dep't of Cmty. Affairs*, 450 U.S. at 256.  To do so, the Plaintiff must either: (1) persuade the court that a discriminatory reason more likely motivated the employer, or (2) show that the employer's proffered explanation is unworthy of credence.  *Id*. (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. at 804-805).  The plaintiff must provide evidence that does more than raise doubts about the wisdom and fairness of the employer's actions; instead, she must create a real question as to the genuineness of the employer's perceptions and beliefs. *Mahler v. First Dakota Title Ltd. P'ship*, 931 F.3d 799, 806 (8th Cir. 2019) (quoting *Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1118 (8th Cir. 2018)).  A plaintiff can only succeed at this stage if she presents sufficient evidence to demonstrate *both* that the employer's articulated reason for the adverse employment action was false, *and* that discrimination was the real reason.  *Wilking v. Cnty. of Ramsey*, 153 F.3d 869, 874 (8th Cir. 1998) (quoting *Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1072 (8th Cir. 1998)).

While Title VII prohibits disparate treatment in the workplace, it does not require preferential treatment for minorities or women, nor does it require the restructuring of employment practices to maximize the number of minorities and women hired. *Texas Dep't of Cmty. Affairs*, 450 U.S. at 259 (citing *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577-578 (1978)). Finally, "the ultimate burden of persuading the trier of fact that a defendant intentionally discriminated against a plaintiff remains at all times with the plaintiff." *Id.* (citing *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25 (1978)).

**B. Title VII – Discussion**

> **i. Dr. Warren cannot establish a prima facie case of sex discrimination under Title VII.**

In her Complaint, Dr. Warren contends that the PCSSD Board intentionally discriminated against her because of her sex, when it failed to select Dr. Warren as a finalist for the position of PCSSD Superintendent. Compl. ¶ 41. Dr. Warren's claim is centered on the fact that the PCSSD Board elected to interview three males who were "less qualified" for the position of Superintendent when she, a qualified female with more Superintendent experience, had applied. *See* Deposition of Dr. Janice Warren, attached to Defendants' Motion as <u>Exhibit A</u>, p. 127. She supports this contention with two observations: (1) PCSSD had not had a female superintendent in 34 years which, according to Dr. Warren, meant the Board's decision was a continuation of a "34-year pattern of discrimination based on sex"; and (2) "approximately sixty-five percent of PCSSD […] individuals [who were] qualified for consideration as Superintendent were female," yet "the pool of finalists selected by the PCSSD Board included 0% females." Compl. ¶ 41.

Neither of these observations, however, are accurate nor applicable. Dr. Warren's cavalier attribution of an alleged "34-year pattern of discrimination based on sex" upon PCSSD is illogical. In asserting this, Dr. Warren fails to note that PCSSD was under State control from 2011-2016

and, as a result, did not have an acting school board of any kind during that time.  *See* Dkt. No. 4546, Case No. 4:82-cv-00866-DPM (PCSSD Desegregation case filing that noted the date of state takeover).   Only after regaining control in 2016 did the District appoint a new seven-member Board, including four males and three females, one of whom, Dr. Linda Remele, was the Board president.  *See* December 13, 2016 PCSSD Board Minutes, attached to Defendants' Motion as Exhibit B.  On March 27, 2018, less than one-and-a-half years after it began operating, the Board opted not to select Dr. Warren as a finalist for the superintendent position.  Compl. ¶ 28.  In other words, Dr. Warren's contention is that the Board is responsible for an alleged long-standing pattern of discrimination when it had only been in operation for 15 months at the time of its decision.  *See* Compl. ¶ 41; *see also* Deposition of Alicia Gillen, attached to Defendants' Motion as Exhibit C, p. 17.  Definitively stating that the PCSSD Board has been sexually discriminating against women since the mid-1980s is an unsubstantiated disparagement and is disserving to the Board's female members.

Additionally, in noting that sixty-five percent of PCSSD individuals qualified for the Superintendent position were female, Dr. Warren highlights an irrelevant population, as the applicant pool was not comprised solely of PCSSD Certified Secondary Staff, Teachers and Administrators.  Rather, the applicant pool was made up of 36 candidates who formally applied to the position.  *See* PCSSD Superintendent Search Report, attached to Defendants' Motion as Exhibit D, ¶ 4.  Accordingly, the relevant demographic is *actually* the collection of Superintendent hopefuls who submitted an application – not the group of qualified PCSSD employees as Dr. Warren alleges.  While it is true that the three finalists selected for on-campus interviews were male, a review of the third-party hiring process explains why.  Compl. ¶ 29.

After Ray & Associates was hired on December 12, 2017, it advertised the superintendent position to 1,177 people in 47 states nationwide. *See* PCSSD Board Meeting Minutes dated December 12, 2017, attached to Defendants' Motion as <u>Exhibit E</u>; PCSSD Superintendent Search Report, <u>Ex. D</u>, ¶1, ¶ 3; Compl. ¶ 57. Of those 1,177 individuals, 36 submitted an application and became candidates for the superintendent position. *See* PCSSD Superintendent Search Report, <u>Ex. D</u>, ¶ 4. From there, 7 men and 2 women (including Dr. Warren) were deemed qualified and subsequently recommended to the PCSSD Board for further consideration. *See* PCSSD Matrix for Reaching Candidate Consensus, attached to Defendants' Motion as <u>Exhibit F</u>. Thus, the relevant population was not "sixty-five percent female," as Dr. Warren alleges but, rather, less than twenty-five percent female.

Beyond these inaccurate contentions, Dr. Warren fails to highlight a single comment, remark or action by any of the Defendants that reflects a discriminatory attitude or animus towards women. In fact, on June 22, 2020, Dr. Warren was pointedly asked if the PCSSD Board had, at any time and in any discussion regarding her or her performance, ever stated that its decision had anything to do with her gender, to which Dr. Warren testified, "They didn't say anything." *See* Deposition of Dr. Janice Warren, <u>Ex. A</u>, p. 126-127. As Dr. Warren has not provided direct evidence of any kind, her claim must be considered using the *McDonnell Douglas* framework.

### a. Dr. Warren did not suffer an adverse employment action.

Under *McDonnell Douglas*, an inference of disparate treatment based on sex will arise if Dr. Warren can demonstrate that she: (1) was a member of a protected class; (2) was qualified to perform the job; (3) suffered an adverse employment action; and (4) circumstances give rise to an inference of discrimination (she was treated differently than similarly situated males). *Tenge v.*

*Phillips Modern Ag. Co.*, 446 F.3d 903, 910 (8th Cir. 2006) (citing *Turner v. Gonzales*, 421 F.3d 688, 694 (8th Cir. 2005)).

In her Complaint, Dr. Warren contends that she suffered an adverse employment action when the PCSSD Board refused to hire her by not including her among the three finalists for the position of PCSSD Superintendent.  Compl. ¶ 41-43.  In other words, Dr. Warren complains that she suffered an adverse employment action when she was not selected for an in-person interview for the position, despite the fact that Dr. Warren was selected as one of the eleven applicants recommended to the PCSSD Board for video interviews and further consideration.  Compl. ¶¶ 24 and 42.

A plaintiff can demonstrate that she suffered an adverse employment action by establishing that she sustained a tangible change in her working conditions that led to a material employment disadvantage.  *Twymon,* 403 F. Supp. 2d at 948.  As a general matter, "termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard, but minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not."  *Twymon,* 403 F. Supp. 2d at 948 (quoting *Davis v. KARK-TV, Inc.*, 421 F.3d 699, 706 (8th Cir. 2005).

Initially, Dr. Warren was invited to serve as Interim Superintendent for a term of one-year. *See* Deposition of Dr. Janice Warren, Ex. A, at p. 105.  She assumed office on July 18, 2017 and served in this role until Dr. McNulty's contract began on July 1, 2018. *See* Deposition of Dr. Janice Warren, Ex. A, at p. 46; Deposition of Dr. Charles McNulty, attached to Defendants' Motion as Exhibit G, p. 34.  Dr. Warren was not terminated from her position as Interim Superintendent or as Assistant Superintendent for Equity and Pupil Services, a role she occupies to date.

While the United States Court of Appeals for the Eighth Circuit has considered a plethora of case law focused on adverse employment actions, it has never ruled that denying a job candidate a finalist slot qualifies as a materially adverse employment action, especially when no other employment conditions have been impacted.  If it had, every individual denied an opportunity to interview for a job would have recourse under the law.  Further, Dr. Warren has failed to demonstrate that she suffered a reduction in pay or benefits, a change in future career prospects, or a tangible change in working conditions that led to a material employment disadvantage of any kind.  *Twymon*, 403 F. Supp. 2d at 948.  In fact, Ray & Associates has reached out to Dr. Warren on three separate occasions to enter her name into its pool of Superintendent candidates, but Dr. Warren has declined to do so each time.  *See* Deposition of Dr. Janice Warren, Ex. A, p. 141.  As a result, Dr. Warren did not suffer an adverse employment action when the PCSSD Board did not select her as a finalist for the position of PCSSD Superintendent.

### b.  Dr. Warren has not demonstrated any circumstances giving rise to an inference of discrimination.

A plaintiff can establish an inference of discrimination to satisfy the fourth element "in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class, [by showing] biased comments by a decisionmaker."  *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011).  "To establish a prima facie case based on differential treatment, a plaintiff must show that she and the more leniently treated employees were 'similarly situated in all relevant aspects." *Gibson v. Concrete Equip. Co.*, 960 F.3d 1057, 1063 (8th Cir. 2020) (quoting *Jones v. Frank*, 930 F.2d 673, 676 (8th Cir. 1992)).  Dr. Warren has not identified a similarly situated male employee, nor has she provided any evidence to indicate that she was treated differently than other similarly situated males.  Without a comparative employee, Dr. Warren is unable to establish that she was treated disparately as a result of her gender.

Furthermore, Dr. Warren was invited to serve as Interim Superintendent for a term of one-year.  *See* Deposition of Dr. Janice Warren, <u>Ex. A</u>, at p. 105.  Dr. Warren returned to her previous role after her appointment expired, the role she still serves in today.  *See* Compl. at p. 83. Dr. Warren has presented no evidence of bias by the Board.  Indeed, when Dr. Warren was asked whether there were any instances she felt the Board had acted in a discriminatory manner towards her, she testified, "I cannot think of any time."  *See* Deposition of Dr. Janice Warren, <u>Ex. A</u>, p. 143.

### ii.   Dr. Warren has not made a prima facie case of Title VII race discrimination.

Dr. Warren next asserts that the PCSSD Board intentionally discriminated against her on the basis of race when it failed to select Dr. Warren as a finalist for the position of Superintendent. Compl. ¶ 47-48.  She bases this allegation on the fact that Dr. Charles McNulty, the candidate selected by the Board to become Superintendent of PCSSD, is a "lesser qualified" white male, while Dr. Warren is a black female.  *Id.*

Beyond noting that Dr. McNulty and Dr. Warren are different races, Dr. Warren has not provided direct evidence of any kind that reflects a discriminatory attitude or animus by the Defendants towards non-white persons.  Conversely, on June 20, 2020, when asked whether there were any instances in which Dr. Warren felt that Defendants Ward, Gillen, Thomas, Kemp, Maune or Keller had acted in a discriminatory manner towards her, she testified, "I cannot think of any time."  *See* Deposition of Dr. Janice Warren, <u>Ex. A</u>, p. 143.

Under *McDonnell Douglas*, to establish a prima facie case of race discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) circumstances exist which give rise to an inference of discrimination.  *Mitchell v. City of Dumas*, 187 F. App'x 666, 668-69 (8th Cir. 2006).

A plaintiff can satisfy the fourth element by providing other evidence that the employer terminated her because of her race. *Id*.

Dr. Warren again cannot demonstrate that she suffered an adverse employment action as a result of the Board's decision not to interview her for the Superintendent position. As considered above, Dr. Warren was not terminated from the position of Interim Superintendent, nor from her position as the Assistant Superintendent for Equity and Pupil Services. She also did not suffer a reduction in pay or benefits, a change in future career prospects, or any kind of tangible change in her working conditions as a result of the Board's decision. She simply was not selected to move on to the final round of interviews for the position of PCSSD Superintendent. Compl. ¶ 28.

Dr. Warren's claim of race discrimination also must fail as she has not demonstrated the existence of circumstances giving rise to an inference of discrimination. *Mitchell*, 187 F. App'x at 668-69. In fact, evidence in this case reveals a fair and neutral hiring process wherein a majority of the candidates were non-white. To fill the position of PCSSD Superintendent, Ray & Associates contacted 1,177 individuals in 47 states. *See* PCSSD Superintendent Search Report, Ex. D, ¶ 1, ¶ 3. After receiving 36 applications, nine candidates were presented to the PCSSD Board. *Id.* at ¶ 11. Of the nine presented on March 27, 2018, six were black and three were white. *See* Deposition of Dr. Linda Remele, attached to Defendants' Motion as Exhibit H, p. 100-104. During this meeting, the seven-member Board (2 of whom are black) was instructed to complete a "Matrix for Reaching Candidate Consensus" in order to determine which candidates would move on to the in-person interview. *See* Deposition for Dr. Linda Remele, Ex. H, p. 106; *see also* PCSSD Matrix for Reaching Candidate Consensus, Ex. F. Through this exercise, Dr. Erick Pruitt, Dr. Charles McNulty and Mr. James Harris emerged as finalists for the position. Compl. ¶ 29. Dr. Pruitt and Mr. Harris are black, and Dr. McNulty is white. Compl. ¶ 28. Each of the finalists was then slated

to interview on April 3, 2018.  *See* Deposition of Dr. Linda Remele, <u>Ex. H</u>, p. 118.  Mr. Harris subsequently withdrew his application, but both Dr. McNulty and Dr. Pruitt participated in an interview.  *Id.* at p. 118-119.  Afterwards, the PCSSD Board voted and selected Dr. McNulty as the new Superintendent.  *Id*. at p. 122.

At no point in the hiring process was one race preferred over another, nor was the process motivated by racially discriminatory practices.  Indeed, the PCSSD Board clearly revealed it had no racial or gender animas toward Dr. Warren as it selected her for the Interim Superintendent role and returned her to the Assistant Superintendent pay without loss of any pay or benefits.  Moreover, by employing a third-party search firm to assist the District in its search, PCSSD ensured its decision was made only after it had participated in a fair, impartial and inclusive search.  Thus, beyond noting that Dr. McNulty is white and she is black, Dr. Warren has not provided any evidence upon which an inference of discrimination could arise and her Title VII claim of race discrimination must fail.

### iii.   The PCSSD Board did not retaliate against Dr. Warren when it failed to select her as a finalist for the position of superintendent.

Dr. Warren further asserts that Defendants retaliated against her after she notified the PCSSD Board and PCSSD's attorney, Sam Jones, of existing inequities in the District's construction of athletic facilities at the predominantly white, Robinson Middle School, versus the predominantly black, Mills High School.  Compl. ¶ 52, ¶ 57, ¶ 60.  As a result of this report, Dr. Warren contends that Defendants made the decision to terminate her as Interim Superintendent.  Compl. ¶ 57.  As in all Title VII discrimination cases, Dr. Warren must either offer direct evidence of retaliation or create an inference of it in order to establish a prima facie case of discrimination.  *Halsell v. Kimberly-Clark Corp.*, 683 F.2d 285, 290 (8th Cir. 1982).  Dr. Warren has not provided direct evidence of any comment or act that would support her

assertion that the District's decision not to select her as a finalist was in retaliation for Dr. Warren's reporting of the inequities between Mills and Robinson.  Subsequently, her claim must be analyzed under the guidance of *McDonnell Douglas*.

### a.  Dr. Warren did not engage in protected conduct.

*McDonnell Douglas* directs that Dr. Warren may establish an inference of retaliation if she can demonstrate that: (1) she engaged in protected conduct; (2) a reasonable employee would have found the retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct.  *Sutherland v. Mo. Dep't of Corr.*, 580 F.3d 748, 752 (8th Cir. 2009).

Specifically, Dr. Warren contends that she engaged in protected conduct when she reported violations of the District's desegregation plan, Plan 2000, and the Federal District Court's orders regarding the construction of PCSSD facilities after a parent brought the discrepancies between the facilities to Dr. Warren's attention.  Compl. ¶ 52, ¶ 60.  Title VII prohibits retaliation by employers against employees who engage in protected conduct, which includes either opposing an act of discrimination made unlawful by Title VII ("opposition clause") or participating in an investigation under Title VII ("participation clause").  *Van Orden v. Wells Fargo Home Mortg., Inc.*, 443 F. Supp. 2d 1051, 1060 (S.D. Iowa 2006).  The "opposition clause" prohibits retaliation because the employee "opposed any practice made an unlawful employment practice by [Title VII]," while the "participation clause" prohibits retaliation because the employee "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or heading under [Title VII]."  *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 684 (8th Cir. 2012) (citing *Holden v. Owens-Illinois, Inc.*, 793 F.2d 745, 748-53 (6th Cir.), *cert. denied*, 479 U.S. 1008, 93 L. Ed. 2d 704, 107 S. Ct. 649 (1986)).

Stated plainly, to constitute protected activity, a plaintiff must either have opposed an unlawful employment practice under Title VII or participated in an investigation of an unlawful employment practice under Title VII. *Artis v. Francis Howell N. Band Booster Ass'n*, 161 F.3d 1178, 1183 (8th Cir. 1998). The conduct Dr. Warren alleges as protected consists of her notifying the PCSSD Board and the District's attorney of violations of the District's desegregation plan and the Federal District Court's orders regarding the construction of PCSSD facilities. Compl. ¶ 52. Notifying the Board and the District's attorney about potential issues pertaining to District facilities, however, was within Dr. Warren's purview as the Assistant Superintendent for Equity and Pupil Services and, further, does not specifically relate to a term or condition of Dr. Warren's employment. *See* Deposition of Dr. Janice Warren, <u>Ex. A</u>, p. 61-62.

At best, Dr. Warren's report alerted the District to allegedly discriminatory acts undertaken by another District employee, Derek Scott. Compl. ¶ 52. The United States Court of Appeals for the Eighth Circuit, however, has held that reporting on the perceived discriminatory acts of other employees is not protected under Title VII. *See, e.g., Evans v. Kansas City, Mo. Sch. Dist.*, 65 F.3d 98, 101 (8th Cir. 1995) (teacher's opposition to perceived disparate treatment of students by school principal outside the ambit of employment practices protected by Title VII); *Bray v. Douglas Cnty.*, No. 06-2638, 2007 U.S. App. LEXIS 2370, at *5 (8th Cir., Jan. 31, 2007) (corrections officer's reporting of a co-worker's discriminatory treatment of an inmate not protected conduct under Title VII). The *Evans* case is particularly relevant as the court held that a plaintiff's complaints did not "relat[e] to the terms and conditions" of plaintiff's employment when he repeatedly took issue with the principal's announced course of action to bring the school into compliance with a desegregation directive as the plaintiff asserted it disregarded the needs of black students. 65 F.3d at 101.

Further, Dr. Warren has not provided any evidence of her opposition of an unlawful, discriminatory employment practice, as no such practice existed. She has also failed to offer evidence of her participation in any kind of investigation or proceeding under Title VII. The conduct Dr. Warren asserts as 'protected' does not fall under the purview of Title VII and, consequently, she cannot establish a prima facie case of retaliation.

> **b. Assuming, *arguendo* Dr. Warren engaged in protected conduct, she has not demonstrated a causal connection between that conduct and the Board's decision to 'terminate' her or to her failure to be selected as a finalist for the position.**

To establish causation, a plaintiff must prove "the desire to retaliate was the but for cause of" her termination. *Wright v. St. Vincent Health Sys.*, 730 F.3d 732, 737 (8th Cir. 2013) (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013)). In other words, "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the [employer]." *Wright*, 730 F.3d at 737. An inference of retaliatory motive may be supported by evidence that the defendant was aware of protected activity and that the date of the adverse employment action closely followed such activity. *See Rath v. Selection Research, Inc.*, 978 F.2d 1087, 1090 (8th Cir. 1992); *Keys v. Lutheran Family and Children's Services*, 668 F.2d 356, 358 (8th Cir. 1981); and *Nelson v. J.C. Penney Co.*, 75 F.3d 343, 346-47 (8th Cir. 1996).

"The plaintiff's ultimate burden in a Title VII retaliation case is to prove an impermissible retaliatory motive was the 'but-for cause' of the adverse employment action." *Donathan v. Oakley Grain, Inc.*, 861 F.3d 735, 739 (8th Cir. 2017) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation [...] This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer"). "[T]emporal proximity serves as [...] strong evidence of causation [...]" *Donathan*, 861 F.3d at 741. The court

is required to "keep in mind that [f]ederal courts do not sit as a super-personnel department that reexamines entity's business decisions […] Rather, [the court's] inquiry is limited to whether the employer gave an honest explanation of its behavior." *Wilking v. County of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998) (citing *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 973 (8th Cir. 1994)).

Dr. Warren puts forth little evidence to support her claim that a causal connection existed between the alleged protected conduct and the Board's decision not to include her as a finalist for the position.  In her Complaint, she asserts that "to be in a position to engage a search firm, the PCSSD Board decided to terminate Dr. Warren at its September 12, 2017 meeting, seven (7) days after the District's attorney reported to the Federal Court the inequities in the construction supervised by Derek Scott."  Compl. ¶ 57.  First and foremost, Dr. Warren could not be "terminated" as Interim Superintendent because she knew the role was temporary well in advance of September 2017.  *See* Deposition of Dr. Janice Warren, Ex. A, p. 31

Moreover, Dr. Warren arrives at the conclusion the engagement of a national search firm was engaged to replace her by *assuming* the Board discussed hiring a third-party search firm on September 12, 2017, as the minutes from that meeting "suggests" it was a covered topic.  Compl. ¶ 68.  Dr. Warren herself, however, notes that none of the Board's agendas between September 12 and November 14 of 2017, include an agenda item on the need to hire a Superintendent.  Compl. ¶ 22.  Additionally, the Board did not make its decision to decline Dr. Warren an on-campus interview until March 27, 2018, which was more than six months after Dr. Warren reported to the Board and the District's attorney on the differences between Mills and Robinson.  Compl. ¶ 28, ¶ 19.

Dr. Warren places further support upon a comment by Dr. Remele, the Board President, wherein Dr. Remele reportedly told Dr. Warren, "We do not air our dirty laundry in public."

Compl. ¶ 55.  When questioned about this interaction, Dr. Remele testified that, while she does not specifically recall this event, she believes any statement she might have made was taken out of context.  *See* Deposition of Dr. Linda Remele, Ex. H, p. 140.  Dr. Remele contends that she did not agree with the tone of the Status Report provided to the Court on September 5, 2017, but that she absolutely agreed that it was necessary to make a report.  *Id.* at pp. 129, 140.  Dr. Remele clarifies that, if she used that expression, it would have been in the context of explaining how the report could have been better phrased.  *Id.*

This scant evidence cannot preclude summary judgment because speculation is insufficient to establish a causal connection.  *Caudill v. Farmland Industries, Inc.*, 919 F.2d 83, 86-87 (8th Cir. 1990) (close temporal proximity between filing of age discrimination charges and firing of plaintiff was only a "slender reed of evidence" for which "rank speculation" would be required to assume causal connection between the two events); *see also Quiroga v. Hasbro Inc.*, 934 F.2d 497, 501 (3d Cir. 1991), *cert. denied*, 502 U.S. 940 (1991) ("inference based on timing alone" was insufficient in light of other evidence presented).

As Dr. Warren did not engage in protected conduct or demonstrate that a causal connection between her reporting and the District's decision not to interview her existed, she has not made a prima facie case of retaliation and her claim must fail.

**C. In the alternative, should Dr. Warren establish a prima facie case of discrimination, her claim still cannot succeed as PCSSD had legitimate, nondiscriminatory reasons for its conduct.**

Assuming, *arguendo*, that Dr. Warren can establish a prima facie case of gender discrimination, race discrimination and/or retaliation, a legal presumption of discrimination arises and the burden shifts to PCSSD to produce evidence of a legitimate, nondiscriminatory reason for its behavior. *Stuart v. GMC*, 217 F.3d 621, 634 (8th Cir. 2000). To articulate a legitimate,

nondiscriminatory reason, PCSSD must present admissible evidence sufficient to raise a genuine factual issue as to whether Dr. Warren was discriminated against. *Texas Dep't of Cmty. Affairs*, 450 U.S. at 254. As initially noted above, this burden is not onerous. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir. 2011).

Multiple PCSSD Board members have testified that the Board developed serious concerns about Dr. Warren's performance during her tenure as Interim Superintendent. *See* Deposition of Dr. Linda Remele, Ex. H, p. 70, p. 77-79, p. 93; Deposition of Alicia Gillen, Ex. C, at p. 15-16.

### i. Dr. Warren demonstrated poor judgment when it came to the handling of District finances, which was particularly concerning to the Board as PCSSD had recently come out of fiscal distress.

The PCSSD Board began to question Dr. Warren's judgment as it pertained to the handling of District finances immediately following her appointment as Interim Superintendent. *See* Deposition of Dr. Linda Remele, Ex. H, p. 70-71. *One day* after assuming her new role, Dr. Warren approved a remodel of the Superintendent suite, which initially included the removal of paneling and the installation of new paint. *See* Deposition of Dr. Janice Warren, Ex. A, p. 110-112; Deposition of Dr. Linda Remele, Ex. H, p. 70-71. After the PCSSD Board learned of the renovations, it instructed Dr. Warren not to make any other renovations or major purchases, as she was only the Interim Superintendent. *See* Deposition of Dr. Linda Remele, Ex. H, p. 71. Less than two weeks later, it came to the Board's attention that Dr. Warren had purchased new office furniture for the Superintendent suite. *See* Deposition of Dr. Linda Remele, Ex. H, p. 72; Deposition of Dr. Janice Warren, Ex. A, p. 112, p. 116. When Dr. Remele advised Dr. Warren to return the furniture, she declined to do so. *See* Deposition of Dr. Linda Remele, Ex. H, p. 72; Deposition of Dr. Janice Warren, Ex. A, p. 121-122.

Later, in November of 2017, several other instances of fiscal irresponsibility occurred.  By early November, all four high schools in the District had hired a testing coordinator to resume charge of all testing responsibility at each of the four schools.  *See* Deposition of Dr. Linda Remele, Ex. H, p. 83-84, 88-89 and "Issues Leading to a Lack of Confidence with Dr. Warren," authored by Dr. Remele and authenticated in her deposition, attached to Defendants' Motion as Exhibit I, ¶¶ 10-11.   Under Dr. Warren's administration, all four coordinators were instructed to lend only a helping role until April of the following year.  *Id.*  This mandated delay meant the District was forced to pay four testing coordinators for more than six months before any actually began coordinating testing.  *Id.*  Several weeks later, Dr. Warren ordered 150 imprinted umbrellas to give as Christmas gifts to Central Office staff, the total cost of which was $2,436.84.  *See* Deposition of Dr. Janice Warren, Ex. A, p. 96-97, p. 102.  The Board informed her that this purchase would be an audit finding and was an inappropriate use of taxpayer dollars.  "Issues Leading to a Lack of Confidence in Dr. Warren," Ex. I, ¶ 15.  As a result, the Board denied Dr. Warren's purchase order and she became personally responsible for the expense.  *See* Deposition of Dr. Janice Warren, Ex. A, p. 100.

> **ii.    The Board began to develop serious concerns over the lack of communication it received from Dr. Warren, as well as with Dr. Warren's apparent refusal to work cooperatively with the Board.**

In addition to concerns over Dr. Warren's handling of District finances, the Board became concerned with Dr. Warren's communication skills and seeming refusal to work cooperatively with the Board.  *See* Deposition of Dr. Linda Remele, Ex. H, p. 93; Deposition of Alicia Gillen, Ex. C, p. 58.

In August of 2017, Dr. Warren individually informed each Board Member about existing inequities between the facilities at Mills High School and Robinson Middle School after she herself

learned of them from a District parent. *See* Deposition of Dr. Janice Warren, Ex. A, p. 57. The Board, which was grateful to have been informed, requested that Dr. Warren allow it to help in drafting a status report for the Federal Court overseeing PCSSD's desegregation case, as 'facilities' was one of the areas where PCSSD had not yet reached compliance. *See* Deposition of Dr. Janice Warren, Ex. A, p. 80; Deposition of Dr. Linda Remele, Ex. H, p. 131, p. 140. Instead of seeking Board input, Dr. Warren failed to share the report with any member of the Board prior to its filing and also represented – on numerous occasions – to the District's attorney, Sam Jones, that the Board had supported the document. *See* Deposition of Dr. Linda Remele, Ex. H, p. 140-141; Deposition of Dr. Janice Warren, Ex. A, p. 87. As a result, Mr. Jones, who was adamant the Board review the document prior to its submission, filed the status report in Federal Court, even though the Board had never seen it. *See* Deposition of Dr. Linda Remele, Ex. H, p. 140-141; Deposition of Dr. Janice Warren, Ex. A, p. 82-87. The email chain between Mr. Jones and Dr. Warren prior to the filing clearly show Dr. Warren indicated she had reviewed the document with the Board, although she had not. *See* Email chain regarding Federal Court filing, attached to Defendants' Motion as Exhibit J.

Later, in October of 2017, Dr. Remele learned from the community that a particularly dangerous situation had occurred at Sylvan Hills Freshman Academy. *See* Deposition of Dr. Linda Remele, Ex. H, p. 94-96. When questioned as to why Dr. Warren had not informed the Board that a threat had been made against the school, Dr. Warren replied that she was just learning of the details more than a day after it had occurred. *Id*. Dr. Warren's staff, however, would and should have kept her informed as to any potential threat to students and staff, and Dr. Warren should have informed the Board of the situation. *Id*.

### iii. It was PCSSD's right, as an employer, to select whichever candidate it decided was best suited for the position, so long as its decision was not based on discriminatory criterion.

It is an official duty of the PCSSD Board to elect and employ a superintendent. *See* PCSSD Board Policy, attached to Defendants' Motion as <u>Exhibit K</u>, ¶ 1.7P3. While an employer's selection of a less qualified candidate *can* support a finding that an employer's nondiscriminatory reason for the hiring was pretextual, it is ultimately the role of the employer to identify the strengths that constitute the best qualified applicant. *Kincaid v. City of Omaha*, 378 F.3d 799, 805 (8th Cir. 2004). This is so because "the employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Kincaid v. City of Omaha*, 378 F.3d 799, 805 (8th Cir. 2004) (quoting *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995)). Consequently, an employer is free to select its own criteria for evaluating and selecting candidates for employment, and a court cannot second guess the employer's chosen selected criteria or suggest what qualifications should be given the most weight, so long as it does not impermissibly discriminate. *Carlisle v. St. Charles Sch. Dist.*, 507 F. Supp. 2d 1018, 1025 (E.D. Mo. 2007). The decision to select one candidate over another, despite differences in training and education, is not illegal as long as the decision was not based on an ulterior, racially discriminatory motive. *Carlisle*, 507 F. Supp. at 1027.

The PCSSD Board operates in the belief that its actions are in the best interest of its students and the District as a whole. *See* PCSSD Board Policy, <u>Ex. K</u>, ¶ 1.1. Employing a superintendent is an official duty of the PCSSD Board. *See* PCSSD Board Policy, <u>Ex. K</u>, ¶ 1.7P3. The Board set out to fulfill this duty when it awarded Ray & Associates a contract to conduct a national search

for a superintendent on behalf of PCSSD.   *See* PCSSD Board Meeting Minutes dated December 12, 2017, <u>Ex. E</u>.   Through this process, the Board selected three finalists to attend in-person interviews.   Compl. ¶ 29.   After two of the candidates participated in an interview and the third withdrew, the Board voted to offer the position to Dr. McNulty, who was well-qualified and seemed a good match for the job.   *See* PCSSD Board Meeting Minutes dated April 3, 2018, attached to Defendants' Motion as <u>Exhibit L</u>; Deposition of Dr. Linda Remele, <u>Ex. H</u>, p. 116-118. When questioned as to why Dr. McNulty was a superior candidate over Dr. Warren, Dr. Remele testified that Dr. McNulty had high enthusiasm, good people skills and "above average" experience in multi-cultural education, including a doctorate degree in the subject area.   *See* Deposition of Dr. Linda Remele, <u>Ex. H</u>, p. 116-117.   Moreover, Dr. McNulty inspired confidence in his ability to build morale among staff members who had not received raises.   *Id.*

As members of the Board, it was the duty of each of the seven individuals to select one candidate over another for the position of superintendent.   This decision, in and of itself, is not an illegal one, so long as that decision was not based on a discriminatory motive. *Carlisle v. St. Charles Sch. Dist.*, 507 F. Supp. 2d 1018, 1027 (E.D. Mo. 2007).   Merely asserting that the PCSSD Board did not select the most qualified candidate does not make its decision actionable, as it is ultimately the Board's prerogative to identify who it thinks the best candidate for the job is. *Kincaid v. City of Omaha*, 378 F.3d 799, 805 (8th Cir. 2004).   Moreover, even Dr. Warren conceded that Dr. McNulty was qualified for the position, though she believes herself to be more qualified.   *See* Deposition of Dr. Janice Warren, <u>Ex. A</u>, p. 131-132.   Regardless of Dr. Warren's beliefs, the decision was the Board's, and the Board's alone.

The PCSSD Board, operating from the belief that its decision was in the best interest of its students and the District, voted to award the position of PCSSD Superintendent to Dr. McNulty,

who had qualifications comparable to Dr. Warren.  As an employer, it was the Board's right to select its preferred candidate over other candidates.  Dr. McNulty's qualifications, coupled with the Board's crumbling faith in Dr. Warren, demonstrate that it had legitimate, nondiscriminatory reasons for declining to select Dr. Warren as a finalist for the position of Superintendent.

### D. Dr. Warren cannot prove the District's reasons for failing to include her as a position finalist were a pretext for sex discrimination, race discrimination, or retaliation.

Assuming, *arguendo*, that Dr. Warren can establish a prima facie case of discrimination, *McDonnell Douglas* directs that the burden shifts to PCSSD to articulate a nondiscriminatory, legitimate basis for its decision, of which it has provided several.  As PCSSD has met this burden, Dr. Warren must provide a genuine issue of material fact showing that these reasons were merely a pretext for discrimination.  *See Barber v. Cl Truck Driver Training, LLC*, 656 F.3d 782, 792 (8th Cir. 2011).

"To demonstrate pretext, a plaintiff must present sufficient evidence to demonstrate both that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason." *Wilking v. Cnty. of Ramsey*, 153 F.3d 869, 874 (8th Cir. 1998) (quoting *Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1072 (8th Cir. 1998)). "This burden will not be met by simply showing that the reason advanced by the employer was false; rather, [the plaintiff] must demonstrate that a discriminatory animus lies behind the defendants' neutral explanations." *Wilking,* 153 F.3d at 874 (quoting *Roxas v. Presentation College*, 90 F.3d 310, 316 (8th Cir. 1996)). "Specifically, the plaintiff must do more than simply create a factual dispute as to the issue of pretext; [s]he must offer sufficient evidence for a reasonable trier of fact to infer discrimination." *Id.* at 874 (quoting *Matthews v. Trilogy Communications, Inc.*, 143 F.3d 1160, 1165 (8th Cir. 1998)). "[M]ore substantial evidence of discrimination is required to prove pretext,

because evidence of pretext is viewed in the light of [the employer's] legitimate, nondiscriminatory explanation." *Jones v. United Parcel Service, Inc.*, 461 F.3d 982, 992 (8th Cir. 2006).

Dr. Warren could have established that the Board's decision not to interview her for the Superintendent position was pretextual in one of several ways.  First, Dr. Warren could have relied on a strong prima facie case as a showing of such can establish evidence of pretext.  *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 834 (8th Cir. 2002).  At the pretext stage, though, "[a]n employee's attempt to prove pretext [...] requires more substantial evidence [than it takes to make a prima facie case.]"  *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 881 (8th Cir. 2005) (quoting *Smith*, 302 F.3d at 834) (internal quotations omitted).  Dr. Warren's prima facie case, however, is far too weak to allow a fact finder to conclude that PCSSD's reasons were merely pretextual.  In asserting her prima facie case, Dr. Warren was not able to definitively establish the necessary requirements to make a showing of gender discrimination, race discrimination, or retaliation as she did not suffer an adverse employment action, present circumstances giving rise to an inference of discrimination, or engage in protected conduct, among other requirements.  Even if she had been able to make a prima facie showing on any of her claims, PCSSD has still articulated several legitimate nondiscriminatory reasons for its conduct.

Dr. Warren could also have attempted to prove pretext by showing that the District's proffered reasons for its decision had "no basis in fact."  *Smith*, 302 F.3d at 834. The PCSSD Board, however, has put forth undisputed evidence that it had lost faith in Dr. Warren and her judgment during her tenure as Interim Superintendent.  It does not matter whether these concerns were 100-percent factually accurate, as "the burden will not be met by simply showing that the reason advanced by the employer was false." *Wilking*, 153 F.3d at 874 (quoting *Roxas v. Presentation College*, 90 F.3d 310, 316 (8th Cir. 1996)).  What matters is that, at the time, the

Board had developed legitimate concerns as to Dr. Warren's performance.  Further, it was within the Board's purview as an employer to select Dr. McNulty over other candidates, including Dr. Warren, as he possessed the requisite objective qualifications.  *Carlisle*, 507 F. Supp. at 1025. These are legitimate nondiscriminatory reasons for the Board's decision.

In her Complaint, Dr. Warren speculates that Dr. Pruitt and Mr. Harris were "substantially less qualified Black males" and were only included as finalists "as a pretext for creating a racially diverse pool."  Compl. ¶ 34.  She does not provide any evidence to support this contention beyond noting the qualifications of each candidate.  Dr. McNulty and Mr. Harris, however, have comparable, albeit not identical, qualifications and experience.  Additionally, 7 of the 9 applicants considered by the PCSSD Board were black – making it illogical for PCSSD to only have included two black males for the appearance of diversity.  *See* Screen Shot of 9 interviewed applicants, attached to Defendants' Motion as <u>Exhibit M</u>, and authenticated in the deposition of Dr. Remele, Exhibit 9 to her deposition.

Beyond this mere speculation, Dr. Warren has not offered any evidence to support a claim of pretext, which requires her to demonstrate that the Board's reasons were false *and* that an intentionally discriminatory motive was the real reason that she was not selected as a position finalist.  As Dr. Warren has not provided proof that the Board's proffered reasons were anything but true, nor has she provided any evidence tying the Board's decision to a sexually, racially, or retaliatory motive, her claim must fail and the Defendants are entitled to summary judgment.

**II.     Any sex, race or retaliation claim asserted by Dr. Warren under 42 U.S.C.
         § 1981 or 42 U.S.C. § 1983 fails for the same reasons considered above.**

The United States Court of Appeals for the Eighth Circuit has held that a § 1983 claim based on alleged violations of equal protection in the employment context is analyzed in the same way as a Title VII claim of sex, race, or religious discrimination.  *Hicks v. St. Mary's Honor Ctr.*,

970 F.2d 487 (490-91) (8th Cir. 1992), rev'd on other grounds, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); *Richmond v. Board of Regents of Univ. of Minnesota*, 957 F.2d 595, 598 (8th Cir. 1992) (burden of showing prima facie case of discrimination is the same under Title VII, § 1981, § 1983, or the IDEA); *Briggs v. Anderson*, 796 F.2d 1009, 1021 (8th Cir. 1986) (inquiry into intentional discrimination for individual actions brought under §§ 1981 and 1983 is essentially the same inquiry under Title VII); *Craik v. Minnesota State Univ. Bd.*, 732 F.2d 465, 468 n. 5 (8th Cir. 1984) (issue of discriminatory intent is common to analyses under Fourteenth Amendment, § 1983, and Title VII). Accordingly, Dr. Warren's § 1981 and § 1983 claims of sex, race and retaliation discrimination fail for the same reasons considered above.

### III.    Defendants should not be subject to liability in their personal capacities and a request for punitive damages is improper.

Dr. Warren has implicated Defendants Remele, Gillen, Maune, Kemp, Keller and Thomas in both their official and personal capacities. Under 42 U.S.C. § 1983, a public official may be sued in his or her official capacity, individual capacity or both. *Rumery v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). To succeed on an action against a public official in his individual capacity, "a plaintiff must show that the defendant violated 'clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 1789 (1991).

In her Complaint, Dr. Warren produces little evidence to support her claims of sex discrimination, race discrimination or retaliation. At best, Dr. Warren establishes a prima facie case of discrimination, but Defendants have provided several legitimate and nondiscriminatory reasons to support its conduct and rebut this case. Further, Dr. Warren has not established that Defendants *clearly* violated her statutory or constitutional rights. As a result, the request to subject

Defendants Remele, Gillen, Maune, Kemp, Keller and Thomas to personal liability is improper and should be dismissed.

Dr. Warren also contends that she is entitled to an award of punitive damages under 42 U.S.C. § 1981. Punitive damages are available in claims vested under Title VII but are "limited to cases in which an employer has engaged in intentional discrimination and has done so with malice or reckless indifference to the federally protected rights of an aggrieved individual." *Kolstad v. ADA*, 527 U.S. 526, 534 (1999). "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Id.* at 535. Moreover, in the context of § 1981a, "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages. *Id*.

Dr. Warren has not demonstrated that Defendants either definitively knew or perceived that they would be in violation of federal law by failing to select Dr. Warren as a position finalist. As the Defendants' alleged bad acts do not rise to the level of "malice" or "reckless indifference" as contemplated by the Supreme Court, Dr. Warren's request for punitive damages is improper and should be dismissed.

**CONCLUSION**

For the foregoing reasons, Defendants, Pulaski County Special School District, Mr. Mike Kemp, Dr. Linda Remele, Mr. Shelby Thomas, Ms. Alicia Gillen, Mr. Eli Keller, and Mr. Brian Maune, respectfully submit that they are entitled to judgment as a matter of law and that Plaintiff's Complaint be dismissed with prejudice.

In the alternative, Defendants respectfully request that Mr. Mike Kemp, Dr. Linda Remele, Mr. Shelby Thomas, Ms. Alicia Gillen, Mr. Eli Keller, and Mr. Brian Maune be dismissed in their

personal capacities as each was acting in an official capacity at the time of the alleged intentional discrimination.   Defendants further request that Plaintiff's request for punitive damages be dismissed.

Respectfully submitted,

BEQUETTE, BILLINGSLEY & KEES, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Phone: (501) 374-1107
Fax: (501) 374-5092
Email: jbequette@bbpalaw.com
Email: ckees@bbpalaw.com

By:   **W. Cody Kees**
     W. Cody Kees, Ark. Bar #2012118
     Jay Bequette, Ark. Bar #87012