IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JANICE HARGROVE WARREN**                                      **PLAINTIFF**

**v.**                         **No. 4:19-cv-00655-BSM**

**CHARLES MCNULTY, et al.**                                        **DEFENDANTS**

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendants, by their attorneys, Bequette, Billingsley & Kees, P.A., for their Statement of Undisputed Material Facts, state:

1. PCSSD went under State control in 2011 and the Commissioner of Education appointed Dr. Jerry Guess as the Superintendent on July 5, 2011, serving without a board of directors. *See* Dkt. No. 4546, Case No. 4:82-cv-00866-DPM (PCSSD Desegregation case filing that noted the date of state takeover).

2. In July of 2012, Dr. Warren was hired as the PCSSD Director of Elementary Education and her responsibilities were enlarged to Assistant Superintendent of Equity and Pupil Services in May of 2013. *See* Compl. at ¶ 16

3. Dr. Warren's role Assistant Superintendent for Equity and Pupil Services including monitoring all phases of Plan 2000 of the District's desegregation plan, which included the District's obligations as to facilities. *See* Deposition of Dr. Janice Warren, Ex. A, p. 61-62.

4. In 2016, local control was returned to PCSSD and a new seven-member Board was locally elected, including four males and three females, one of whom, Dr. Linda Remele, was the Board president. *See* December 13, 2016 PCSSD Board Minutes, attached to Defendant's Motion as Exhibit B.

5. On July 18, 2018, the PCSSD Board terminated the contract of Dr. Guess. *See* Compl. at ¶ 17.

6. Initially, Dr. Warren was invited to serve as Interim Superintendent for a term of one-year. *See* Deposition of Dr. Janice Warren, Ex. A, at p. 105.

7. Dr. Warren assumed office on July 18, 2017 and served in this role until Dr. McNulty's contract began on July 1, 2018. *See* Deposition of Dr. Janice Warren, Ex. A, at p. 46; Deposition of Dr. Charles McNulty, attached to Defendants' Motion as Exhibit G, p. 34.

8. Employing a superintendent is an official duty of the PCSSD Board. *See* PCSSD Board Policy, Exhibit K, ¶ 1.7P3

9. The Board retained Ray & Associates, a third-party search firm, on December 12, 2017, to provide a national search for the permanent superintendent. *See* PCSSD Board Meeting Minutes dated December 12, 2017, attached to Defendants' Motion as Exhibit E.

10. Ray & Associates advertised the superintendent position to 1,177 people in 47 states nationwide. Of those 1,177 individuals, 36 submitted an application and became candidates for the superintendent position. *See* PCSSD Superintendent Search Report, Ex. D, ¶ 4.

11. From there, 7 men and 2 women (including Dr. Warren) were deemed qualified by Ray & Associates based on data collected during their process and it subsequently recommended to the PCSSD Board for further consideration. *See* PCSSD Matrix for Reaching Candidate Consensus, attached to Defendants' Motion as Exhibit F.

12. Dr. Warren was selected as one of the nine applicants recommended to the PCSSD Board for video interviews and further consideration, and she indeed submitted application materials and her candidacy was reviewed by the Board. *See* PCSSD Matrix for Reaching Candidate Consensus, attached to Defendants' Motion as Exhibit F.

13. Of the nine candidates presented to the Board by Ray and Associates on March 27, 2018, six were black and three were white. *See* Deposition of Dr. Linda Remele, Ex. H, p. 100-

104.    During this meeting, the seven-member Board (2 of whom are black) was instructed to complete a "Matrix for Reaching Candidate Consensus" in order to determine which candidates would move on to the in-person interview.  *See* Deposition for Dr. Linda Remele, attached to Defendants' Motion as <u>Exhibit H</u>, p. 106; PCSSD Matrix for Reaching Candidate Consensus, <u>Ex. F</u>.

14.    Following the Board's review of the nine candidates, Dr. Erick Pruitt, Dr. Charles McNulty and Mr. James Harris were awarded final on-campus interviews.   Compl. ¶ 29.

15.    Dr. Pruitt and Mr. Harris are black, and Dr. McNulty is white.   Compl. ¶ 28.

16.    Each of the finalists were then slated to interview on April 3, 2018.  *See* Deposition of Dr. Linda Remele, <u>Ex. H</u>, p. 118.   Mr. Harris subsequently withdrew his application, but both Dr. McNulty and Dr. Pruitt participated in an interview.  *Id*. at p. 118-119.

17.    The PCSSD Board voted and selected Dr. McNulty as the new Superintendent.  *Id*. at p. 122.

18.    Dr. Warren returned to her previous role after her interim appointment expired, the role she still serves in today.  *See* Compl. at p. 83.

19.    During Dr. Warren's term as Interim Superintendent, multiple PCSSD Board members have testified that the Board developed serious concerns about Dr. Warren's performance during her tenure as Interim Superintendent.  *See* Deposition of Dr. Linda Remele, <u>Ex. H</u>, p. 70, p. 77-79, p. 93; Deposition of Alicia Gillen, <u>Ex. C</u>, at p. 15-16.

20.    One day after assuming her new role, Dr. Warren approved a remodel of the Superintendent suite, which initially included the removal of paneling and the installation of new paint.  *See* Deposition of Dr. Janice Warren, <u>Ex. A</u>, p. 110-112; Deposition of Dr. Linda Remele, <u>Ex. H</u>, p. 70-71.

21. After the PCSSD Board learned of the renovations, it instructed Dr. Warren not to make any other renovations or major purchases, as she was only the Interim Superintendent. *See* Deposition of Dr. Linda Remele, Ex. H, p. 71.

22. Less than two weeks later, it came to the Board's attention that Dr. Warren had purchased new office furniture for the Superintendent suite. *See* Deposition of Dr. Linda Remele, Ex. H, p. 72; Deposition of Dr. Janice Warren, Ex. A, p. 112, p. 116.

23. When Dr. Remele advised Dr. Warren to return the furniture, she declined to do so. *See* Deposition of Dr. Linda Remele, Ex. H, p. 72; Deposition of Dr. Janice Warren, Ex. A, p. 121-122.

24. Issues with Dr. Warren's performance during her interim tenure became so significant that Dr. Remele began authoring a document of Dr. Warren's deficiencies. *See* "Issues Leading to a Lack of Confidence in Dr. Warren," authored by Dr. Remele and authenticated in her deposition, attached to Defendants' Motion as Exhibit I.

25. Later, in November of 2017, several other instances of fiscal irresponsibility occurred. By early November, all four high schools in the District had hired a testing coordinator to resume charge of all testing responsibility at each of the four schools. *See* Deposition of Dr. Linda Remele, Ex. H, p. 83-84, 88-89 and "Issues Leading to a Lack of Confidence in Dr. Warren," authored by Dr. Remele and authenticated in her deposition, attached to Defendants' Motion as Exhibit I, ¶¶ 10-11.

26. Under Dr. Warren's administration, all four coordinators were instructed to lend only a helping role until April of the following year. *Id.* This mandated delay meant the District was forced to pay four testing coordinators for more than six months before any actually began coordinating testing. *Id.*

27. Dr. Warren ordered 150 imprinted umbrellas to give as Christmas gifts to Central Office staff, the total cost of which was $2,436.84. *See* Deposition of Dr. Janice Warren, Ex. A, p. 96-97, p. 102.

28. The Board informed her that this purchase would be an audit finding and was an inappropriate use of taxpayer dollars. "Issues Leading to a Lack of Confidence in Dr. Warren," Ex. I, ¶ 15.

29. As a result, the Board denied Dr. Warren's purchase order and she became personally responsible for the expense. *See* Deposition of Dr. Janice Warren, Ex. A, p. 100.

30. In addition to concerns over Dr. Warren's handling of District finances, the Board became concerned with Dr. Warren's communication skills and seeming refusal to work cooperatively with the Board. *See* Deposition of Dr. Linda Remele, Ex. H, p. 93; Deposition of Alicia Gillen, Ex. C, p. 58.

31. In August of 2017, Dr. Warren individually informed each Board Member about existing inequities between the facilities at Mills High School and Robinson Middle School after she herself learned of them from a District parent. *See* Deposition of Dr. Janice Warren, Ex. A, p. 57.

32. The Board, through Dr. Remele, requested that Dr. Warren allow it to help in drafting a status report for the Federal Court overseeing PCSSD's desegregation case, as 'facilities' was one of the areas where PCSSD had not yet reached compliance. *See* Deposition of Dr. Janice Warren, Ex. A, p. 80; Deposition of Dr. Linda Remele, Ex. H, p. 131, p. 140.

33. Instead of seeking Board input, Dr. Warren failed to share the report with any member of the Board prior to its filing and also represented – on numerous occasions – to the District's attorney, Sam Jones, that the Board had supported the document. *See* Deposition of

Dr. Linda Remele, Ex. H, p. 140-141; Deposition of Dr. Janice Warren, Ex. A, p. 87; and Email chain regarding Federal Court filing, attached to Defendants' Motion as Exhibit J.

34. In October of 2017, Dr. Remele learned from the community that a particularly dangerous situation had occurred at Sylvan Hills Freshman Academy. *See* Deposition of Dr. Linda Remele, Ex. H, p. 94-96.

35. The Board was not timely notified of the October incident. *Id.*

36. Ray & Associates has reached out to Dr. Warren on three separate occasions to enter her name into its pool of Superintendent candidates, but Dr. Warren has declined to do so each time. *See* Deposition of Dr. Janice Warren, Ex. A, p. 141.

        Respectfully submitted,

        BEQUETTE, BILLINGSLEY & KEES, P.A.
        425 West Capitol Avenue, Suite 3200
        Little Rock, AR 72201-3469
        Phone: (501) 374-1107
        Fax: (501) 374-5092
        Email: jbequette@bbpalaw.com
        Email: ckees@bbpalaw.com

By:     **W. Cody Kees**
        Jay Bequette, Ark. Bar #87012
        W. Cody Kees, Ark. Bar #2012118