**IN THE UNITED STATES DISTRICT COURT**
**Eastern District of Arkansas**
**Central Division**


**Janice Hargrove Warren**                                                    **Plaintiff**


**v.**                              **Case No. 4:19-cv-655-BSM**


~~**Charles McNulty,**~~                                                    **Defendants**
~~in his official capacity as Superintendent of the~~
~~Pulaski County Special School District;~~

<u>The Pulaski County Special School District ("PCSSD")</u>

Mike Kemp,
in his official capacity as a Member of the Board of the
Pulaski County Special School District and in his individual capacity;

~~Tina Ward,~~
~~in her official capacity as a Member of the Board of the~~
~~Pulaski County Special School District and in her individual capacity;~~

Linda Remele,
in her official capacity as a Member of the Board of the
Pulaski County Special School District and in her individual capacity;

Shelby Thomas,
in his official capacity as a Member of the Board of the
Pulaski County Special School District and in his individual capacity;

Alicia Gillen,
in her official capacity as a Member of the Board of the
Pulaski County Special School District and in her individual capacity;

Eli Keller,
in his official capacity as a Member of the Board of the
Pulaski County Special School District and in his individual capacity;

Brian Maune,
in his official capacity as a Member of the Board of the
Pulaski County Special School District and in his individual capacity;

1

~~The Pulaski County Special School District ("PCSSD").~~

~~FIRST~~ **SECOND** **AMENDED COMPLAINT**

**Parties**

1.      The Plaintiff, Janice Hargrove Warren ("Dr. Warren"), is a natural person who resides in Maumelle, Arkansas, during the times relevant to this cause of action.  Dr. Warren is a black female; at all times relevant to this cause of action, she was over the age of forty.

~~2.      Separate Defendant Charles McNulty ("Dr. McNulty") is a natural person and is currently the Superintendent of the Pulaski County Special School District. Dr. McNulty is named in his official capacity as Superintendent of the Pulaski County Special School District.~~

~~3~~2.      Separate Defendant Mike Kemp ("Mr. Kemp") is a natural person and currently represents Zone 1 on the Board of the Pulaski County Special School District. Mr. Kemp is named in his official capacity as a member of the Board of the Pulaski County Special School District and in his individual capacity.

~~4.      Separate Defendant Tina Ward ("Ms. Ward") is a natural person and currently represents Zone 2 on the Board of the Pulaski County Special School District. Ms. Ward is named in her official capacity as a member of the Board of the Pulaski County Special School District and in her individual capacity.~~

~~5~~3.      Separate Defendant Linda Remele ("Dr. Remele") is a natural person and currently represents Zone 3 on the Board of the Pulaski County Special School District. Dr. Remele is named in her official capacity as a member of the Board of the Pulaski County Special School District and in her individual capacity.

~~6~~4.     Separate Defendant Shelby Thomas ("Mr. Thomas") is a natural person and currently represents Zone 4 on the Board of the Pulaski County Special School District. Mr. Thomas is named in his official capacity as a member of the Board of the Pulaski County Special School District and in his individual capacity.

~~7~~5.     Separate Defendant Alicia Gillen ("Ms. Gillen") is a natural person and currently represents Zone 5 on the Board of the Pulaski County Special School District. Ms. Gillen is named in her official capacity as a member of the Board of the Pulaski County Special School District and in her individual capacity.

~~8~~6.     Separate Defendant Eli Keller ("Mr. Keller") is a natural person and currently represents Zone 6 on the Board of the Pulaski County Special School District. Mr. Keller is named in his official capacity as a member of the Board of the Pulaski County Special School District and in his individual capacity.

~~9~~7.     Separate Defendant Brian Maune ("Mr. Maune") is a natural person and currently represents Zone 7 on the Board of the Pulaski County Special School District. Mr. Maune is named in his official capacity as a member of the Board of the Pulaski County Special School District and in his individual capacity.

~~10~~8.     Separate Defendant Pulaski County Special School District ("PCSSD") is a public school district with its central office located in Sweet Home, Arkansas. It is a corporate body with the power to sue and be sued. Ark. Code Ann. § 6-13-102; Ozarks Unlimited Res. Coop., Inc. v. Daniels, 333 Ark. 214, 223, 969 S.W.2d 169, 173 (1998), F.E. Compton & Co. v. Greenwood Sch. Distr. No. 25, 203 Ark. 935, 159 S.W.2d 721 (1942), Clarke v. School Distr. No. 16, 84 Ark. 516, 106 S.W. 677 (1907)(a school district is a corporate body with the power to sue and be sued).

**Subject Matter Jurisdiction**

~~11~~9.    This Court has subject matter jurisdiction over this cause of action under 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, specifically 42 U.S.C. §§ 1981, 1983, 2000e-2(a)(1), 2000e-2(a)(2), 2000e-3(a), and 2000e-5(f)(1).

~~12~~10.    This Court has Supplemental Jurisdiction over Dr. Warren's state law claim against PCSSD pursuant to 28 U.S.C. § 1367(a).  Dr. Warren's state law claim arises from the same nucleus of operative facts asserted against PCSSD, Superintendent McNulty, and the PCSSD Board members in their official and individual capacities such that Dr. Warren's state law claim is essentially the same case or controversy under Article III of the United States Constitution. Dr. Warren, as a plaintiff, would be expected to try these claims in one judicial proceeding. Osborn v. The President, Directors, and Company of the Bank of the United States, 22 U.S. (9 Wheat.) 738, 822-28 (1824); see also Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375 (1994) (discussing the two purposes of ancillary jurisdiction, the first being applicable here).

**Personal Jurisdiction**

~~13~~11.    This Court has personal jurisdiction over Mr. Kemp, Ms. Ward, Dr. Remele, Mr. Thomas, Ms. Gillen, Mr. Keller, Mr. Maune, and PCSSD because at all times relevant to this cause of action, each of the foregoing had continuous and systematic contacts with the State of Arkansas that are sufficient to justify the State's exercise of judicial power with respect to all claims Dr. Warren may have against each of them. Int'l Shoe Co. v. Washington, 316 U.S. 310, 317 (1945) (citations omitted). ~~This Court has personal jurisdiction over Dr. McNulty because he is the executive officer of the PCSSD Board of Education ("PCSSD Board" or "Board") directing the affairs of the PCSSD. Ark. Code § 6-13-109 (2018).~~

## Venue

~~14~~12.   Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Dr. Warren's claims against Mr. Kemp, Ms. Ward, Dr. Remele, Mr. Thomas, Ms. Gillen, Mr. Keller, Mr. Maune, and PCSSD~~, and Dr. McNulty~~ occurred in the Eastern District of Arkansas.

## Factual Basis of Dr. Warren's Claims

~~15~~13.   Dr. Warren is an experienced agent of change in the public education arena, advancing the educational opportunities for students, staff, and other stakeholders. She began her career in educational leadership as an Elementary School Principal (K-5) for Crossett School District, Crossett, AR ("Crossett School District") (1988-1991).  She, then, supervised four elementary schools PK-5 as an Administrative Assistant of Crossett School District (1992-1995).  She continued her ascension in leadership to the position of Assistant Superintendent for the Crossett School District (1996–2001) as the elementary supervisor and elementary curriculum coordinator.  Finally, Dr. Warren was appointed Superintendent of Crossett School District in July of 2001 and served as Executive over the District for ten years.

~~16~~14.   During her ten-year service as Superintendent, Crossett School District had a student enrollment that ranged from 3500 to 2500, with a racial composition of 60% white, 40% black to 56% white, 42% black, 2% other.  When Dr. Warren began serving as Superintendent on July 1, 2001, the high school and middle school were in academic distress. At the same time, Crossett suffered from a decline in the timber industry and many families relocated to find jobs elsewhere.  The Crossett School District suffered a substantial loss in student population. Consequently, eight months after Dr. Warren was appointed Superintendent, the Crossett School

District was declared fiscally distressed.  Under Dr. Warren's leadership, two years later, both

schools were released, and Crossett School District was declared fiscally sound. Based on

improvements in student achievement during Dr. Warren's tenure as Superintendent, the middle

school was named a "National Blue Ribbon" school, one that has attained a high level of student

achievement or made *significant* improvements in closing the achievement gap among student

subgroups. This stellar achievement occurred during economic hard times and attested to Dr.

Warren's proven leadership.

~~17~~15.   In July of 2012, Dr. Warren was appointed Director of Elementary Education of PCSSD.

Her responsibilities were later enlarged with her dual appointment as Assistant Superintendent of

Equity and Pupil Services in May of 2013.  Coordinating and implementing PCSSD's

desegregation plan; directing the administration of the Division of Equity and Pupil Services;

serving as the liaison between the PCSSD and the Federal Court and its monitors; and

supervising, directing, and evaluating the performance and effectiveness of 24 elementary

schools (the pre-kindergarten to 5th grade), their principals, and their instructional programs

were her primary responsibilities among her many assigned duties.

~~18~~16.   On July 18, 2017, the PCSSD Board terminated Dr. Jerry Guess, PCSSD Superintendent,

who had served from July 1, 2011.  (Deposition of Dr. Linda Remele, Beasley v. Dr. Charles

McNulty, No.4:18-cv-508-DPM, page 37, line 20, through page 38, line 9) This testimony is

attached as Exhibit ~~A~~ 1.  Dr. Warren was appointed Interim Superintendent of PCSSD. The

student population of PCSSD was 12,000, with an annual budget of $244,859,652.85 million,

~~and~~ a per pupil allocation of $12,189.58, and a racial composition of 42.2% Black, 57.8% non-

Black.

19‑17.   Dr. Warren is the only woman to serve as PCSSD's Superintendent in the past 34 years. Between 1984 and 2018, the PCSSD hired six White males and three Black males to serve as Superintendent.  Two of the Black males were Interim Superintendent when promoted to the position of Superintendent.  PCSSD hired Dr. Warren as Interim Superintendent on July 18, 2017.

20‑18.   Between August 2017 and September 5, 2017, thirty to sixty days after her appointment as Interim Superintendent, Dr. Warren, as Interim Superintendent, reported to the PCSSD Board and the PCSSD attorney that the PCSSD had violated the Federal Court's directive regarding District facilities and had engaged in discriminatory practices in Derek Scott's development of the District facilities in predominately White versus predominately Black communities. PCSSD's attorney reported the discriminatory practices in a status report on September 5, 2017, to the Federal Judge under whose jurisdiction PCSSD is subject.  On September 8, 2017, the Federal Court requested the Court Expert, Margie L. Powell, to report on whether the sports facility constructed at Mills *High* School was equal to the sports facility constructed at Robinson *Middle* School.

21‑19.   The Arkansas Democrat-Gazette published an article addressing PCSSD's discriminatory conduct on September 9, 2017.  This article is attached as Exhibit B‑2 with enlargements.  The article may be viewed at:

https://www.arkansasonline.com/news/2017/sep/09/judge-requests-report-on-parity-of-2-sc/#.XYg0a2Idork.gmail.

22‑20.  PCSSD's Board President, Dr. Remele, communicated to Dr. Warren, "We do not air our dirty laundry in public."

~~23~~21.   In her November 9, 2017, report, the Court Expert identified substantial inequities

between the sports facilities at Mills High School and those at the Robinson Middle School.

This report is attached as Exhibit ~~C~~ 3.  At its November 14, 2017, meeting, the Board received its

first presentation by a third-party provider of its superintendent search services.  These Minutes

are attached as Exhibit ~~D~~ 4.  On November 29, 2017, Ray and Associates of Cedar Rapids, Iowa,

made its presentation to the PCSSD Board.  The Board voted to hire Ray and Associates at its

December 12, 2017. (PCSSD Board Minutes dated December 12, 2017 (attached as Exhibit ~~E~~ 5);

Deposition of Dr. Linda Remele, Beasley v. Dr. Charles McNulty, No.4:18-cv-508-DPM, page

50, lines 18-19 (Exhibit ~~A~~ 1)) ("We hired a consulting firm to look for new Superintendents

[sic].  And I believe that was in November.")  Thus, before November 14, 2017, the PCSSD

Board decided ~~to fire~~ not to extend Dr. Warren's position as Interim Superintendent, not to

promote Dr. Warren to the position of Superintendent, and to hire someone else. ~~a new~~

~~superintendent before November 14, 2017~~.  Deciding to hire a superintendent is an official duty

of the Board (Board Policy 1.7P) and requires the convening of a meeting (Board Policy

1.1).  The decision to hire a superintendent and to invite presentations by search firms had to be a

part of the Board's agenda or the decision was made in an Executive Session before the

November 14th. The minutes of the September 12, 2017, meeting held seven (7) days after the

~~District's~~ PCSSD's attorney notified the Federal Court of the inequities between the construction

projects for Robinson Middle School and Mills High School include an hour and 30-minute

Executive Session on personnel (see Exhibit ~~F~~ 6); the September 25, 2017, meeting did not

include an Executive Session; the October 10, 2017, meeting had a 2-minute Executive Session.

None of the Board Agenda between September 12 and November 14 included an agenda item on

the need to hire a Superintendent.  As an official action, the Board's decision had to occur no

later than its September 12, 2017, meeting, seven (7) days after the PCSSD attorney notified the Federal Court of the District's discriminatory conduct in Derek Scott's, PCSSD's Executive Director of Operations, supervision of the Mills High School and Robinson Middle School construction projects.

2422.   The PCSSD Board did not give Dr. Warren an evaluation of her performance as Interim Superintendent before the Board hired Ray and Associates.

2523.   Ray and Associates posted the PCSSD's Superintendent opening with PCSSD online at https://www.pcssd.org/superintendent-search (See Exhibit G 7).  The application deadline was March 12, 2018.  Dr. Warren applied for the position of PCSSD Superintendent in early 2018. Ray and Associates included Dr. Warren in the pool of eleven nine applicants recommended to the PCSSD Board for interviews, three White males, four Black males, two Black females, and zero White women.

2624.   The PCSSD Board did not give Dr. Warren an evaluation of her performance as Interim Superintendent after she applied for the position of Superintendent in early 2018.

2725.   PCSSD's Personnel Policies for Certified Staff 2017-2018 mandate the hiring of qualified internal candidates over the hiring of *similarly* qualified external candidates. PCSSD Personnel Policies for Certified Staff 2017-2018, page 115; available athttps://core-docs.s3.amazonaws.com/documents/asset/uploaded_file/460156/2018-personnel-policy-certified.pdf.  Likewise, the policy must be interpreted as mandating that a qualified internal candidate has a preference over lesser qualified external candidates.

2826.   PCSSD Superintendent Candidate Comparison Table (Attached as Exhibit H 8).

2927.   On March 27, 2018, the PCSSD Board selected three males, two Black and one White, for final interviews. The Board did not invite Dr. Warren to interview.  The PCSSD Board

Minutes dated March 27, 2018, are attached as Exhibit I 9.  The PCSSD Board did not give Dr.

Warren a reason for not including her as a finalist, and the Board did not provide her with an

evaluation of her performance as Interim Superintendent.

3028.  The PCSSD Board selected Dr. Charles McNulty, Mr. James Harris, and Dr. Erick Pruitt

for final interviews.

3129.  Dr. Warren's qualifications were superior to those of the three male candidates selected.

(See PCSSD Superintendent Candidate Comparison Table, Exhibit H 8).  Her eleven years of

experience as a superintendent for student populations of 2500 to 12,101 exceeded Dr.

McNulty's *three* years of experience as Superintendent over a meager student population that

averaged 436 students during his tenure as Superintendent and James Harris' ("Harris") *two and

a half* years as Superintendent over 3700 students.  Harris withdrew his application on the day of

his interview.  Although Erick Pruitt ("Pruitt") had oversight responsibilities for 23,000 students,

he was an Area Superintendent with only *15 months'* experience in that role.  None of the three

males dealt, in their leadership capacity, with overhanging federal court supervision in a

desegregation case.  Neither male managed an educational program for an approximately 50%

racial distribution between Whites and non-Whites and the accompanying disparities in

educational preparation and exposure, severe dissimilarity of socioeconomic status, and adverse

family and discipline variables such as truancy and failure to graduate that the PCSSD student

demographics reflect.  Dr. McNulty's student population was homogeneous, 98.5% White.  Only

seven non-White students were enrolled in the schools he supervised as Superintendent.

Likewise, Harris' student population was nearly homogeneous, 89% White and 11% non-White.

Neither was prepared for the problems inherent in PCSSD's pupil enrollment and community

composition.  Pruitt's student population was the inverse of McNulty and Harris.  The 2017-18

demographics of the Houston Independent School District were 8.7% White and 91.3% non-White with a 61.3% Hispanic/Latino student population,[1] substantially different from PCSSD. Neither man was qualified to address the substantive non-financial issues facing the students, teachers, staff, administration, and communities of PCSSD.

~~32~~30.   As PCSSD Interim Superintendent, Dr. Warren had budgetary oversight of $244,895,652.58 with a per pupil allocation of $12189.58.  Neither McNulty nor Harris, as Superintendents, had budgetary oversight that reached $60 million much less $244 million, but both enjoyed during their limited experience as Superintendents per student allocations that exceeded that of PCSSD by approximately $2000 to $3000 per student!  As an Area Superintendent, Pruitt managed a budget equivalent to that of PCSSD of $264,546,000 out of the total Houston ISD budget of $2,096,294,796, with a $658 per student allocation less than PCSSD but for only 15 months.  Dr. Warren's credentials and experience were superior to the three men selected as finalists for the position of PCSSD Superintendent.  Furthermore, only Dr. Warren qualified for the PCSSD hiring preference as an internal candidate.

~~33~~31.   In addition to her eleven years' experience as a superintendent, Dr. Warren had 15 years of central office experience, three years as a principal, and completed her terminal degree in Education ten years before she applied for the position of PCSSD Superintendent.  Her qualifications were superior to the men selected for final interviews.

~~34~~32.   The qualifications of the two Black males were substantially less than the one White male in the pool of finalists.  Among the male finalists, Dr. McNulty had the longest tenure of three years as a superintendent, 12 years' experience as a central office administrator, seven years of

---

[1] Houston Independent School District ("Houston ISD"), 2017-2018 Facts & Figures (https://www.houstonisd.org/site/handlers/filedownload.ashx?moduleinstanceid=48525&dataid=217137&FileName=2017-18_FactsFigures.pdf)

service as a principal, and he held a terminal degree in Education for seven years. Harris had not

served <u>as a teacher or</u> as a principal and had not completed a terminal degree in Education.

Harris had, however, seven years of central office administrator experience. Harris withdrew

from consideration on the day of his interview.  <u>Harris did not have teaching experience and</u>

<u>could not qualify for a District Level Administrator License that is required to serve as an</u>

<u>Arkansas Superintendent.</u>  Pruitt did not have *any* central office experience but served as a

principal for six years.  He had completed a terminal degree in Education four years before he

applied for the position.  Of the three males selected as finalists, Dr. McNulty, the sole White

male in the pool of finalist, was the most qualified and was the first to interview.

~~35~~33.   Why were Harris and Pruitt, the substantially less qualified Black males, included in the

tiny pool of finalists?  Their presence served as a pretext for creating a racially diverse pool,

nothing more!  The PCSSD Board assumed that no one could complain about the pool's diversity

because the majority of finalists in the pool were Black males. Neither had the experience of Dr.

Warren nor Dr. McNulty.

~~36~~34.   McNulty, the first finalist to interview, interviewed on April 3, 2018.  Shortly after that

interview concluded, the Board offered Dr. McNulty the position of PCSSD Superintendent.

(Deposition of Charles McNulty, Beasley v. Dr. Charles McNulty, No.4:18-cv-508-DPM, page

11, lines 19-25 through page 12, lines 1-4 (attached as Exhibit ~~J~~ <u>10</u>).  The April 3, 2017, Board

Minutes are attached as Exhibit ~~K~~ <u>11</u>. The substantially different qualifications among the Black

males and the sole White male in the pool assured Dr. McNulty's selection as PCSSD

Superintendent.

~~37~~35.   The Board knew it had a legal duty to provide Dr. Warren with an evaluation. Contrary to

its obligation, the PCSSD Board did not give Dr. Warren an evaluation of her performance as

Interim Superintendent before or after it appointed Dr. McNulty as Superintendent on April 5, 2018.  Deposition of Dr. Linda Remele, Beasley v. Dr. Charles McNulty, No.4:18-cv-508-DPM, page 39, line 8, through page 40, line 9, Exhibit ~~A~~ 1.

~~38~~36.  Dr. Remele, PCSSD Board President, does not dispute that Dr. Warren was qualified for the position of Superintendent and does not dispute that Dr. Warren did not become less qualified for the position of Superintendent between the time Dr. Warren was appointed Interim Superintendent and when Dr. Warren applied for the position of Superintendent.  (Dr. Linda Remele, Beasley v. Dr. Charles McNulty, No.4:18-cv-508-DPM, page 40, Exhibit ~~A~~ 1.)  Neither Dr. Remele nor other members of the Board sought to include Dr. Warren among the finalists and did not grant Dr. Warren an interview.  <u>Not including Dr. Warren in the pool of finalist for an interview was an adverse employment action and a breach of her employment contract.</u>

~~39~~37.  Dr. Warren filed a formal charge of sex and race discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on October 1, 2018.  A copy of that charge is attached as Exhibit ~~L~~ 12.  PCSSD submitted its Response on October 25, 2018. A copy of PCSSD's Response is attached as Exhibit ~~M~~ 13.

~~40~~38.  PCSSD's Response to Dr. Warren's Charge does not include an evaluation of Dr. Warren's services as Interim Superintendent; the Response does not state a reason for the Board's failure to include Dr. Warren among the finalists selected to interview for the position of Superintendent; and the Response does not provide a rationale for hiring Dr. McNulty, an external candidate, despite the District's policy preference for qualified internal candidates and Dr. Warren's superior qualifications.

41~~39~~.  Dr. Warren received her Right to Sue letter from the EEOC dated June 26, 2019.  A copy

of her letter is attached as Exhibit N̶ 14 and this action is filed within 90 days of the dispatch of

that letter.

### CLAIMS FOR RELIEF

### I.    Title VII Sex Discrimination Claims

42~~40~~.  When the PCSSD Board failed to include Dr. Warren, a more qualified applicant, among

the finalists for the position of PCSSD Superintendent, that act was an adverse employment

action of discrimination taken against her because of her sex and was a continuation of the

Board's 34-year pattern of discrimination based on sex.  In 2018, approximately sixty-five

percent of PCSSD Certified Secondary Staff, Teachers and Administrators, who create a pool of

individuals qualified for consideration as Superintendent were female.  (PCSSD 2017-2018

Annual Personnel Hiring and Deployment Report, June 1, 2018, Appendix VIII, page 11;

Attached as Exhibit O̶15).  The pool of finalists selected by the PCSSD Board included 0%

females. *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 307, 97 S.Ct. 2736 (1977);

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

43~~41~~.  When the PCSSD Board failed to include Dr. Warren among the finalists for the position

of PCSSD Superintendent despite her superior qualifications for the job, the PCSSD Board

refused to hire her.  This failure was an adverse employment action and discriminated against Dr.

Warren because of her sex and violated Dr. Warren's statutory right not to be discriminated

against with respect to her employment because of her sex.  42 U.S.C. § 2000e-2(a)(1); Price

Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775 (1989) (applicant's sex an impermissible

factor).

4442.   This adverse employment action deprived Dr. Warren of her statutory right not to be limited, segregated, or classified by the PCSSD Board in a way that deprived her of an employment opportunity because of her sex.  42 U.S.C. § 2000e-2(a)(2); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775 (1989) (applicant's sex an impermissible factor).

4543.   When the PCSSD Board hired Dr. McNulty, a lesser qualified external applicant, PCSSD discriminated against Dr. Warren.  This was an adverse employment action, violating her statutory right to privileges of employment because of her sex.  42 U.S.C. § 2000e-2(a)(1).

4644.   The PCSSD Board's hiring of Dr. McNulty, a lesser qualified male applicant, was an adverse employment action that discriminated against Dr. Warren and violated her statutory right not to be limited or deprived as an applicant or employee of employment opportunities because of her sex.  42 U.S.C. § 2000e-2(a)(2).

4745.   The PCSSD is liable for its Board's discriminatory actions based on sex. 42 U.S.C. § 1981a(a)(1); 42 U.S.C. § 1981a(b)(3); 42 U.S.C. § 2000e-5(g)(1).

## II.      Title VII Race Discrimination Claims

4846.   When the PCSSD Board hired a lesser qualified White male as Superintendent, the Board engaged in an adverse employment action against Dr. Warren for racially discriminatory reasons. *Parr v. Woodmen of the World Life Ins. Co*., 791 F.2d 888 (11th Cir. 1986) (Title VII prohibit all forms of employment discrimination based on race); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

4947.   When the PCSSD Board failed to include Dr. Warren, a qualified Black applicant, in the pool of finalists because of her race, the Board engaged in an adverse employment action against Dr. Warren for racially discriminatory reasons.  *Parr v. Woodmen of the World Life Ins. Co.*, 791

F.2d 888 (11th Cir. 1986) (Title VII prohibit all forms of employment discrimination based on race); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

~~50~~48.   These adverse employment acts violated Dr. Warren's statutory right not to be discriminated against with respect to her compensation, terms, conditions, or privileges of employment because of her race. 42 U.S.C. § 2000e-2(a)(1).

~~51~~49.   These adverse employment acts violated Dr. Warren's statutory right not to be limited, segregated, or classified in any way that would deprive or tend to deprive her of employment opportunities or otherwise adversely affect her status as an employee because of her race. 42 U.S.C. § 2000e-2(a)(2).

~~52~~50.   The PCSSD is liable for its Board's racially discriminatory acts. 42 U.S.C. § 1981a (a)(1); 42 U.S.C. § 1981a(b)(3); 42 U.S.C. § 2000e-5(g)(1).


### III.     Title VII Retaliation Claims

~~53~~51.   Between August 2017 and September 5, 2017, Dr. Warren, as Interim Superintendent, reported to the PCSSD Board and the PCSSD attorney that the PCSSD had violated its desegregation plan, Plan 2000, and the Federal District Court's orders regarding the construction of PCSSD facilities. Through Derek Scott, PCSSD Executive Director of Operations, PCSSD engaged in discriminatory practices in the development of its athletic facilities in predominately White, Robinson, versus predominately Black, Mills, communities. PCSSD's attorney reported the deliberate discrepancies between the facilities and deviation from the Court's orders in a status report on September 5, 2017, to the Federal Judge who has jurisdiction over PCSSD.

5452.   On September 8, 2017, the Federal Court requested the Court Expert, Margie L. Powell,
to report on whether the sports facility constructed at Mills *High* School was equal to the sports
facility constructed at Robinson *Middle* School.

5553.   The Arkansas Democrat-Gazette published an article addressing PCSSD's discriminatory
conduct on September 9, 2017, (Exhibit B 2).

5654.   Thereafter, PCSSD's Board President, Dr. Remele, communicated to Dr. Warren, "We do
not air our dirty laundry in public."

5755.   The Court Expert filed her report on the substantial inequities between the two properties
on November 9, 2017, (Exhibit C 3).

5856.   On December 12, 2017, approximately thirty days after the Court Expert filed her report,
the PCSSD Board hired Ray and Associates, Inc. ("Ray and Associates"), of Cedar Rapids, Iowa,
to search for a superintendent.  (Deposition of Dr. Linda Remele, Beasley v. Dr. Charles
McNulty, No.4:18-cv-508-DPM, page 50, line 18-21 (Exhibit A 1).  To be in a position to
engage a search firm, the PCSSD Board decided <u>not to extend Dr. Warren's role as Interim
Superintendent and not to promote</u> to terminate Dr. Warren <u>to Superintendent</u> at its September
12, 2017, meeting, seven (7) days after the District's attorney reported to the Federal Court the
inequities in the construction supervised by Derek Scott. In retaliation for notifying the PCSSD
attorney of the inequities in the District's construction and deviation from Federal Court orders,
Dr. Warren would <u>not </u>be replaced <u>promoted and would not receive positive consideration for the
position of Superintendent.  Indeed, at its September 12, 2017, meeting, Dr. Remele and others
commenced a campaign of malicious criticism and the assertion of factually inaccurate
allegations against Dr. Warren to adversely impact the Board's assessment of Dr. Warren's
performance in retaliation of Dr. Warren's lawful conduct.  The remaining Board members, with</u>

reckless indifference for Dr. Warren's federal employment rights, did not investigate the allegations asserted against Dr. Warren.

~~59~~57.   Ray and Associates posted the Superintendent opening with PCSSD online at https://www.pcssd.org/superintendent-search (Exhibit ~~G~~ 7).  The application deadline was March 12, 2018.  Dr. Warren applied for the position of PCSSD Superintendent in early 2018. Ray and Associates included Dr. Warren in the pool of ~~eleven~~ nine candidates recommended to the PCSSD Board for interviews.

~~60~~58.   In March of 2018, the PCSSD Board selected three males, two Black and one White, for ~~final~~ interviews. The Board did not invite Dr. Warren to interview.  The decision to exclude Dr. Warren from the ~~final~~ interviews was an adverse employment action by the PCSSD Board in retaliation for Dr. Warren's opposition to the unlawful conduct of District employees and her notifying the District's attorney of the District's deviation from Federal Court orders and the District's desegregation plan, Plan 2000.  As Interim Superintendent, Dr. Warren opposed the District's racial discrimination against Black students residing in the Mills community and sought to facilitate a resolution of the District's unlawful act by being proactive.

~~61~~59.   The PCSSD Board selected Dr. Charles McNulty, Mr. James Harris, and Dr. Erick Pruitt for final interviews and offered the position of Superintendent to Dr. Charles McNulty.  Offering the position of Superintendent to Dr. McNulty was an adverse employment action by the PCSSD against Dr. Warren in retaliation of her lawful conduct in communicating to the District's attorney that the District had deviated from the Federal Court's orders and the District's desegregation plan, Plan 2000.  Dr. Warren's conduct opposed the unlawful conduct by District employees that constituted racial discrimination of Black students in the Mills community.

6260.   The PCSSD Board's adverse employment action violated Dr. Warren's statutory right to challenge racially discriminatory practices by her employer and not be retaliated against for doing so. 42 U.S.C. § 2000e-3(a); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 799 (1973).

6361.   PCSSD is liable for its Board's racially retaliatory acts. 42 U.S.C. § 1981a(a)(1); 42 U.S.C. § 1981a(b)(3); 42 U.S.C. § 2000e-5(g)(1).

### IV.      Race Discrimination Under 42 U.S.C. §§ 1981, § 1983

6462.   When Mike Kemp, ~~Tina Ward,~~ Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, and Brian Maune decided <u>not to extend</u> ~~to terminate~~ Dr. Warren<u>'s role</u> as Interim Superintendent <u>or to promote her to Superintendent</u>, excluded her from the pool of finalists, and hired a lesser qualified White male as Superintendent, they willfully engaged in adverse employment actions with malice or with reckless indifference against Dr. Warren for racially discriminatory reasons. 42 U.S.C. 1981(a) (b) & (c).

6563.   These adverse actions by Mike Kemp, ~~Tina Ward,~~ Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, and Brian Maune violated Dr. Warren's statutory right to make and enforce employment contracts free from race discrimination.  They are personally liable for these violations. 42 U.S.C. §§ 1981(a), (b), (c); 42 U.S.C. § 1983; General Building Contractors Association, Inc v. Pennsylvania United Engineers Constructors, Inc., 458 U.S. 375, 102 S.Ct. 3141 (1982).

6664.   Linda Remele, Board President, <u>and </u>Shelby Thomas, Board Vice President~~, and Tina Ward, Board Member~~, attended the January 22, 2018, Arkansas School Board Association training that included a session conducted by the Board's legal counsel entitled: "Employing a Superintendent:  From Dating to Divorce" that addressed discrimination in the process of hiring

a superintendent.  The Program handout attached as Exhibit ~~P~~ 16.  Linda Remele, Board President, ~~and~~ Shelby Thomas, Board Vice President~~, and Tina Ward, Board Member,~~ had actual knowledge that discrimination in employment is illegal and willfully engaged in illegal, adverse employment acts with malice against Dr. Warren with regard to her federally protected rights. Therefore, Linda Remele, Board President, and Shelby Thomas, Board Vice President~~, and Tina Ward, Board Member,~~ are personally liable for compensatory and punitive damages. 42 U.S.C. § 1981 (a) (b) (c).

~~67~~65.   It is common knowledge that race discrimination in employment is illegal under federal law.  Mike Kemp, ~~Tina Ward,~~ Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, and Brian Maune cannot claim ignorance of this fact.  When they took adverse actions against Dr. Warren on the basis of race, they did so with malice or with a reckless indifference to Dr. Warren's right to be free from race discrimination in employment. Therefore, they are personally liable for ~~compersatory~~ compensatory and punitive damages. 42 U.S.C. § 1981 (a)(b)(c).

~~68~~66.   When Mike Kemp, ~~Tina Ward,~~ Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, and Brian Maune took adverse employment actions against Dr. Warren on the basis of race, they did so in their capacity as members of the PCSSD Board and as a final policymaker for the PCSSD.  Therefore, the PCSSD is liable for the wrongful acts of Mike Kemp, ~~Tina Ward,~~ Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, and Brian Maune. 42 U.S.C. § 1981, 42 U.S.C. § 1983; Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989).

### V.      Retaliation Claims under 42 U.S.C. §§ 1981, 1983

~~69~~67.   Thirty-three days after Court Expert filed her report on the substantial deficiencies between two construction projects overseen by Derek Scott in violation of the District's desegregation plan, the PCSSD Board hired Ray and Associates to commence a search for a new

superintendent.  Review of the Board's minutes for September suggests that the members of the

PCSSD Board made the decision ~~to terminate~~ not to extend Dr. Warren's role as Interim

Superintendent or to promote her to Superintendent at its September 12, 2017, (Exhibit ~~F~~ 6).

This Board meeting was held seven (7) days after the Federal Court was notified of the District's

construction deviation.  The Board's decision was made in retaliation for Dr. Warren's

challenging the District's racially discriminatory practices in violation of its desegregation plan,

Plan 2000, and Federal Court orders. The Board's decision was an adverse employment action

that violated Dr. Warren's statutory right to challenge racially discriminatory practices by her

employer and not be retaliated against for doing so. CBOCS West, Inc. v. Humphries, 553 U.S.

442, 445-457, 128 S.Ct. 1951 (2008) (42 U.S.C. § 1981 encompasses retaliation claims).

~~70~~68.   Mike Kemp, ~~Tina Ward,~~ Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, and

Brian Maune are personally liable for retaliating against Dr. Warren because she notified the

District's attorney of racially discriminatory conduct by the District's employee, Derek Scott. 42

U.S.C. §§ 1981(a), (b), (c); 42 U.S.C. § 1983; *CBOCS West, Inc. v. Humphries*, 553 U.S. 442,

445-457, 128 S.Ct. 1951 (2008).

~~71~~69.   It is common knowledge that race discrimination in public education is illegal under

federal law. *Cooper v. Aaron*, 358 U.S. 1, 78 S.Ct. 1401 (1958); *Little Rock School Dist. v.*

*Pulaski County Special School Dist. No. 1*, 921 F.2d 1371 (8th Cir. 1990).  Mike Kemp, ~~Tina~~

~~Ward,~~ Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, and Brian Maune cannot claim

ignorance of this fact. Thus, when they retaliated against Dr. Warren for notifying the District's

attorney of racial discrimination in the construction of the District's facilities, they were aware of

Dr. Warren's right to be free from race discrimination by her employer and acted intentionally

not accidentally with malice or with a reckless indifference to Dr. Warren's right to be free from

race discrimination by her employer. Consequently, they are personally liable for compensatory and punitive damages. 42 U.S.C. § 1981(a)(b)(c).

~~72~~70.   When Mike Kemp, ~~Tina Ward~~, Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, and Brian Maune, retaliated against Dr. Warren for notifying the District's Attorney of race discrimination by the District, they did so in their capacity as the PCSSD Board and in their capacity as a final policymaker for the PCSSD.  Therefore, the PCSSD is liable for their wrongful acts. 42 U.S.C. §§ 1981 (a)(b)(c), 42 U.S.C. § 1983; Pembaur v. City of Cincinnati, 475 U.S. 469, 481-483 (1986) (plurality opinion).

## VI.   RACE & SEX DISCRIMINATION VIOLATING FEDERAL RIGHTS UNDER 42 U.S.C. § 1983

~~73~~71.   When Mike Kemp, ~~Tina Ward~~, Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, and Brian Maune voted to excluded Dr. Warren from the pool of finalists and hired a lesser qualified White male as Superintendent, they acted under color of state law, exercising their authority as individual members of the PCSSD Board of Education and without immunity.

~~74~~72.   When Mike Kemp, ~~Tina Ward~~, Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, and Brian Maune engaged in adverse employment actions, they deprived Dr. Warren of her Federal statutory rights to free of race and sex discrimination in employment and contractual relations. Mike Kemp, ~~Tina Ward~~, Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, and Brian Maune are liable in their individual capacities for the harm that resulted.  42 U.S.C. §§ 1983, 1981(a) (b) & (c), and 2000e; *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Giron v. City of Alexander*, 693 F. Supp.2d 904 (E.D. Ark. 2010).

## VII.   BREACH OF CONTRACT

7573.   Dr. Warren realleges paragraphs ~~14~~ 13 through ~~40~~ 39 above as if stated herein word for word.

74.     Dr. Warren's 2017-2018 agreement with PCSSD was an enforceable contract. (See Exhibit ~~T~~ 19)  Both Dr. Warren and PCSSD provided consideration for the other's promises.

7675.   PCSSD Personnel Policies for Certified Staff (2017-2018) ("Personnel Policies 2017-2018") are incorporated into Dr. Warren's annual contract with PCSSD.  Ark. Code Ann. § 6-17-204(a)(2018). These policies are binding on both parties.  Ark. Code Ann. § 6-17-204(a) (2018). The Board's policy preference of promoting *internal* candidates over hiring *equally* qualified external candidates applied to the Board's processes in selecting a Superintendent in 2018.  See Personnel Policies 2017-2018, Promotion and Transfer Policy, its Appendix, and related documents ~~p. 115.~~, Exhibit ~~R~~ 17.

7776.   As a matter of contract law, PCSSD custom, and *fair dealing*, the Board had a duty of substantial compliance with its declared policy to prefer internal candidates when selecting the three finalists and in selecting the person to be offered the position of Superintendent.  *McElroy v. Jasper School Dist.*, 617 S.W.2d 356, 273 Ark. 143 (Ark. 1981) (recognizing the principle of substantial compliance in the context of a probationary teacher) (emphasis added); *Helena-West Helena School Dist. No. 2 v. Randall*, 796 S.W.2d 586, 32 Ark.App. 50 (Ark. App. 1990).

7877.   Dr. Warren was an internal certified candidate for the 2018 position of PCSSD Superintendent.  The Board had a contractual duty to determine if Dr. Warren was entitled to a preference in their consideration of the individuals selected for interviews as finalists.[2]

---

[2]     PCSSD favors promotions from within so that where, in the opinion of the administration, *ability, qualifications, and credentials* of an existing employee are equal to those of an outside applicant, the existing employee will be favored for promotion.

79~~78~~.   The granting of preference was within the Board's discretion.  If the Board abused its

discretion, it failed to satisfy its obligation of substantial compliance with its policies.  *Leola*

*School District v. McMahan,* 289 Ark. 496, 712 S.W.2d 903 (1986).  An abuse of discretion

must be established with clear and convincing evidence.  A board's decision that is not

supportable on any rational basis is arbitrary, capricious, and discriminatory and fails to satisfy

its duty of substantial compliance with its policies. *Lamar Sch. Dist. No. 39 v. Kinder,* 278 Ark.

1, 642 S.W.2d 885 (1982).

80~~79~~.   The Board did not provide Dr. Warren with an evaluation of her performance.  The Board

had five significant opportunities to provide Dr. Warren with a formal <u>written</u> evaluation of her

service as Interim Superintendent: (1) before the Board commenced its search, (2) after Dr.

Warren submitted her application, (3) before the March 27, 2018, Board meeting held to select

finalists for the position of Superintendent, (4) before the Board offered the position to an

external candidate, and (5) at the end of Dr. Warren's tenure as Interim Superintendent.  The

Board did not evaluate Dr. Warren's performance at any time during her tenure as Interim

Superintendent.  The failure to evaluate Dr. Warren's performance was a violation <u>of State Law,

Ark. Code Ann. §6-13-620 (5)(b),</u> and the Board's policies. PCSSD Board Policies, § 1.7P:

Powers and Duties of the Board, ¶ 4 (Conducting formal and informal evaluations of the

Superintendent annually or no less often than prior to any contract extension); See Exhibit ~~S~~ <u>18</u>,

Personnel Policies 2017-2018, Personnel Policies and Goals, ¶ 4, page 5 (The Board's specific

goals include:  To conduct an employee appraisal program that will contribute to the continuous

---

PCSSD Personnel Policies of Certified Staff 2017-2018, Promotion and Transfer, p.115.

improvement of staff performance.)  The Board did not substantially comply with its contractual duty to evaluate Dr. Warren.

80.     At the September 12, 2017, Board meeting, Dr. Remele and others commenced a campaign of malicious criticism and the assertion of factually inaccurate allegations against Dr. Warren to adversely impact the Board's assessment of Dr. Warren's performance in retaliation of Dr. Warren's notifying PCSSD's attorney and, thereby, the Federal District Court of PCSSD's discrimination in the construction of its facilities.  The remaining Board members did not investigate the allegations asserted against Dr. Warren.  This campaign was not an evaluation but an attack on Dr. Warren's credibility.

81.     On March 27, 2018, the Board deliberated on nine top candidates recommended to it by Ray and Associates, the Board's selected service provider, as satisfying the ten qualities desired by the Board.  Dr. Warren was in the pool of top candidates.

82.     The six of the seven Board members cannot recall a discussion of the qualifications for the position of Superintendent and speculate on when such a discussion *might* occur,[3] See Exhibit S 18, responses to Question 12d.  None recall the need for making a preference among the nine candidates as required by the Matrix For Reaching Candidate Consensus form supplied by Ray and Associates.  None mention a deliberative discussion of the Board's policy preference concerning Dr. Warren's candidacy. See Exhibit S 18, Responses to Questions 12, 12d, 12e, and 12g.

---

[3] See Exhibit Q, a spread sheet of the Board members' uniform Response to Interrogatory 12d shown in red font, Plaintiff's First Set of Interrogatories.

83.    Neither the Board nor its members made of record of any discussion of its Board Policy on the internal candidate preference.  All objected to the notion that a preference was required by the Matrix for Reaching Candidate Consensus.[4]  See Exhibit ~~S~~ 18, Responses to Question 12g.

84.    In violation of state law, the Board permitted Ray and Associates, a third-party provider performing the Board's duty to recruit, select, and consider applications, to destroy public records, the Matrix for Reaching Candidate Consensus and the applications of those who were not recommended as top candidates.  Ark. Code Ann. § 25-19-103(7)(A); *City of Fayetteville v. Edmark*, 304 Ark. 179, 801 S.W.2d 275 (Ark. 1990).

85.    The Board did not discuss its policy and did not assess Dr. Warren's entitlement to a preference in the hiring process.  The Board had no rational basis for denying Dr. Warren a preference in the hiring processes for Superintendent.  The Board failed to adhere to its statutory and contractual duty of substantial compliance with its policies.

86.    Dr. Warren's abilities, qualifications, and credentials exceed the three men selected as finalists and those of Charles McNulty who was offered the position of Superintendent.

87.    The Board breached its contract with Dr. Warren and must answer in damages.


## RELIEF REQUESTED

~~87~~88.    Dr. Warren requests this Court to award her retroactive seniority and backpay from July 1, 2018, until this Court's judgment with interest on backpay for each of her claims of sex discrimination, race discrimination, and retaliation. 42 U.S.C. § 2000e- 5(g)(1).  Albemarle Paper Co. v. Moody, 422 U.S. 405, 421, 95 S.Ct. 2362 (1975); E.E.O.C. v. Dial Corp., 469 F.3d 735 (8th Cir., 2006) (There is a strong presumption that an employee who has suffered

---

[4] ~~*Id.*, Board members' uniform Response to Interrogatory 12d shown in red font.~~

discrimination should receive backpay). The backpay award should include lost wages, raises, overtime compensation, bonuses, sick pay, vacation pay, life and other insurance benefits, annuities, and retirement benefits Dr. Warren would have received but for the race and sex discrimination and retaliation that occurred when PCSSD hired its Superintendent in 2018.

8~~8~~9.    Dr. Warren requests that the Court award her front pay until ~~an opening for the position of PCSSD Superintendent occurs and she is offered the position or until~~ her ~~earlier~~ retirement for each of her claims of sex discrimination, race discrimination, and retaliation. *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001) (front pay is a remedy that is not subject to the limitations of 1981a(b)(3)); *Kramer v. Logan County School District No. R-1*, 157 F.3d 620 (8th Cir. 1998) (front pay is an equitable remedy excluded from the statutory limit on compensatory damages provided for in section 1981a(b)(3)).

~~89~~90.   Dr. Warren requests an award of compensatory damages against ~~the~~ PCSSD for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. 42 U.S.C. §§ 1981a(a)(1), 1981a(b)(3).

~~90~~91.   Dr. Warren requests an award of compensatory damages against Mike Kemp, ~~Tina Ward~~, Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, and Brian Maune in their individual capacities for violating her right to make and enforce employment contracts free from race discrimination. 42 U.S.C. §§ 1981 (a), (b), (c); 42 U.S.C. § 1983.

~~91~~92.   Dr. Warren requests an award of punitive damages against Mike Kemp, ~~Tina Ward~~, Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, and Brian Maune in their individual capacities because they willfully engaged in discriminatory practices with malice or with a reckless indifference to her federally protected rights. 42 U.S.C. §§ 1981 (a) (b)(c), 1983.

~~92~~93.   Dr. Warren requests an award of compensatory and punitive damages against ~~the~~ PCSSD for acts of sex discrimination, race discrimination, and retaliation based on race by Mike Kemp, ~~Tina Ward~~, Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, and Brian Maune. 42 U.S.C. 1981a (a)(1); 42 U.S.C. 1981a (b)(3); *Kolstad v American Dental Ass'n*, 527 U.S. 526, 119 S.Ct. 2118 (1999) (employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination is relevant for determining the availability of punitive damages under Title VII).

~~93~~94.   Dr. Warren requests an award of pre-judgment interest and post-judgment interest at the maximum rate allowed by law. *Loeffler v. Frank*, 486 U.S. 549, 557-558 (1988) (Title VII authorizes complete compensation).

~~94~~95.   Dr. Warren requests that she be awarded her costs of prosecuting this case, including attorneys' fees. 42 U.S.C. §§ 1988(b), 1988(c), 2000e-5(k).

~~95~~ 96.   Dr. Warren requests that she be awarded damages based on her expectation measure of damages because of the Board's breach of its contractual duties, plus prejudgment interest from the date of the breach to the date of the judgment entered by this Court, post-judgment interest at the maximum rate allowed by law, and her attorneys' fees and costs.  Ark. Code Ann. § 16-22-308; *Curry v. Thornsberry*, 128 S.W.3d 438 (2008).

~~96~~97.   Dr. Warren requests this Court to award her any other equitable relief that the Court deems appropriate. 42 U.S.C. § 2000e-5(g)(1).

## Jury Demand

~~97~~98.   Dr. Warren demands a trial by jury. 42 U.S.C. § 1981a(c)(1).

Respectfully submitted this 21th day of August 2020,
Sarah Howard Jenkins
Ark. Sup. Ct. Reg. No. 97046
SARAH HOWARD JENKINS, PLLC
P.O. Box 242694
Little Rock, AR 72223
Telephone: (501) 406-0905
Email address:  sarah@shjenkinslaw.com
Attorney for Plaintiff