# PULASKI COUNTY SPECIAL SCHOOL DISTRICT

## DESEGREGATION PLAN 2000

### Approved February 22, 2000


PLAINTIFF'S EXHIBIT 3

# PULASKI COUNTY SPECIAL SCHOOL DISTRICT
# PLAN 2000
DATED November 4, 1999

## A. Scope of This Plan

(1) This Plan shall supersede and extinguish all prior agreements and orders in <u>Little Rock School District v. Pulaski County School District</u>, U.S.D.C. No. LR-C-82-866, and all consolidated cases related to the desegregation of the Pulaski County Special School District with the following exceptions:

(a) The Pulaski County School Desegregation case "Settlement Agreement" as revised on September 28, 1989;

(b) The Magnet School Stipulation dated February 27, 1987;

(c) Order dated September 3, 1986, pertaining to the Magnet Review Committee;

(d) The M-to-M Stipulation dated August 26, 1986; and

(e) Orders of the district court and the court of appeals interpreting or enforcing sections (a) through (d) above to the extent not inconsistent with this Plan.

## B. General Obligation

PCSSD shall in good faith exercise its best efforts to comply with the Constitution, to provide that no person is discriminated against on the basis of race, color, or ethnicity in the operation of the PCSSD, and to provide an equal educational opportunity for all students attending PCSSD schools.

## C. Assignment of Students   *Unitary 2013*

(1) The PCSSD shall continue to implement the current standards for the assignment of students to schools within the district. The PCSSD shall inform the Joshua Intervenors of the documents which set forth the details of the existing plan. This notice shall be provided within 30 days of the court's approval of this Plan.

(2) The PCSSD shall submit not later than October 15 in each school year a report concerning one race classes. The report shall set forth for each such class: (i) the school, (ii) the class including the grade level, (iii) the racial make-up of the class,

136748-v1

(iv) a description of steps taken to eliminate the particular one race class and the reason(s) why this proved to be infeasible. The PCSSD shall submit not later than March 1 of each school year a similar, supplemental report concerning any one race classes in courses commencing in the second semester of the school year.

D. **Advanced Placement, Gifted and Talented and Honors Programs** *Unitary 2013*

Not later than 45 days after the court's approval of this Plan, the PCSSD shall provide to the Joshua Intervenors the standards then in place for selecting secondary students for and educating them in advanced placement, gifted and talented, and honors programs, including standards to promote racial diversity in these programs. The PCSSD shall include in this submission notices which are used to inform staff members of the relevant standards.

E. **Student Assignment; Interdistrict Schools** *Unitary 2013*

(1) PCSSD and LRSD shall operate interdistrict schools in accordance with the following:

    (a) **PCSSD Interdistrict Schools**. PCSSD shall operate Baker Elementary, Clinton Elementary, Crystal Hill Elementary and any new elementary school which may be constructed in the Chenal Valley area as Interdistrict Schools.

    (b) **LRSD Interdistrict Schools**. LRSD shall operate King Elementary, Romine Elementary and Washington Elementary as Interdistrict Schools.

    (c) Racial Composition. The ideal composition at the interdistrict schools shall be as close to 50%-50% as possible with the majority race of the host district remaining the majority race at the interdistrict school, except that Baker School shall not be subject to this requirement.

    (d) Reserved Seats. PCSSD shall reserve at least 200 seats at Clinton Elementary and up to 399 seats at Crystal Hill Elementary for interdistrict transfer students from LRSD. The District shall also reserve up to half of the seats for LRSD black students in any new Chenal Valley School.

    (e) Recruitment. PCSSD and LRSD agree to implement programs at interdistrict schools designed to attract

2

interdistrict transfer students and to work cooperatively to recruit interdistrict transfer students to interdistrict schools.

(f) <u>Outside Students</u>. Interdistrict schools shall be open to students who reside outside Pulaski County where the acceptance of the transfer will assist the interdistrict school in achieving its ideal racial composition.

(g) <u>Transportation</u>. Transportation shall be provided by the PCSSD for interdistrict transfers from Pulaski County to interdistrict schools.

## F. <u>Discipline</u>

*[handwritten annotation: "Not"]*

(1) The PCSSD will continue to gather data which allows a full assessment of its success in achieving its objective of eliminating racial disparities in the imposition of school discipline. As a foundation for this effort, disciplinary records shall be kept on each student concerning the nature of any discipline imposed (suspension, Saturday school, expulsion, etc.); the teacher and staff member involved; and the school, race, and sex of the student.

(2) Not later than 45 days after the court's approval of this Plan, the Assistant Superintendent for Desegregation shall submit to the Joshua Intervenors, for comment, proposed criteria for identifying, from the data collected: (i) teachers and other staff members who are experiencing problems which require attention; (ii) schools which have atypically high discipline rates; and (iii) schools which have atypically high racial disparities in discipline. The Joshua Intervenors shall have 21 days to provide comments on these proposed criteria. The PCSSD shall then complete the criteria promptly.

(3) The Assistant Superintendent for Desegregation and the Assistant Superintendent for Pupil Personnel shall thereafter provide for and participate in specific efforts to work with teachers and other staff members and the personnel of schools, identified pursuant to the criteria set forth in paragraph 2, to promote achievement of the goal of eliminating racial disparities in school discipline. The Assistant Superintendent for Desegregation shall maintain records showing the specific steps undertaken.

(4) PCSSD shall conduct a comprehensive study of the disciplining of African-American students, particularly male students, at the secondary level. The participants (a minimum of twelve (12)), one-half designated by the Joshua Intervenors and one-half by PCSSD and the PACT and PASS, shall consider the causes for the high rates of discipline for African-American students and possible remedies. The panel

3

shall, among other things: review discipline records to secure an understanding of the circumstances in which African-American students are disciplined; interview and\or survey African-American students regarding their experiences in the system generally and in the discipline process; and consider the possibility of a relationship between unmet academic needs and discipline rates. The written study shall be completed not later than 150 days after court approval of this Plan and shall provide suggestions for prevention and intervention measures.

(5) The PCSSD shall develop a specific initiative to reduce the rates of discipline in the PCSSD shown in ODM's report dated March 18, 1998. This initiative shall be implemented not later than 150 days after the court's approval of this Plan.

(6) PCSSD shall adhere to the policies set forth in the Handbook for Student Conduct and Discipline, as revised after consultation with the Joshua Intervenors, PACT and PASS, to provide that students are disciplined in a fair and equitable manner. The Assistant Superintendent for Pupil Personnel shall be responsible for determining the fairness of student disciplinary decisions. He will delegate the student hearing function to a single hearing officer who will consider the appeal brought by parents and the position of the administrator making the recommendation and then make a decision based upon equitable factors. An aggrieved student may appeal to the Superintendent of Schools. The Superintendent may review the matter or refer it to the school board for action. The committee approach which utilizes school principals in the student appeal process has been discontinued and will not be reinstituted.

G. **Multicultural Education**  [Unitary 2011]

(1) The PCSSD shall continue its efforts to infuse multicultural instruction in all curriculum areas. All phases of a school's environment (e.g., instructional materials, lesson plans and lessons, library contents, bulletin boards, extracurricular activities, school assemblies, speaker programs, and food services) shall reflect the system's Plan to multicultural education.

(2) A principal activity of the Coordinator for Multicultural Education and the Coordinator's office shall be on-site visits to individual schools to determine whether the system's policy and the provisions of this Plan are being implemented in fact. The Coordinator shall maintain records permitting an evaluation of the status of implementation at each school visited. [Not]

H. **School Facilities**

(1) The PCSSD shall prepare, with the help of consultants, as necessary, a plan so that existing school facilities are clean, safe, attractive and equal. The plan shall address alternatives for funding its implementation. The Board of School Directors shall approve a plan not later than 150 days after the court's approval of this Plan. The

4

136748-v1

Joshua Intervenors shall be given a 14 day period to comment on the content of the plan prior to its adoption.

(2) An elementary school, located around 145th Street, and a middle school or junior high school in the Crystal Hill\Maumelle area will be built. The Board will address the development of a plan for new school construction during the term of this Plan if funds are sufficient, including its funding, and report its conclusions not later than 150 days after the court's approval of this Plan. Moreover, the PCSSD shall not close schools which are located in predominantly African-American areas absent reasons of compelling necessity (which does not include the opposition of white patrons to attending such schools).

(3) The PCSSD shall notify the Joshua Intervenors of plans for constructing new schools and for adding capacity to existing schools. The notice shall identify the capacity of the proposed facility, the area of the system to be served, and the projected impact on the racial make-up of the students in each school expected to be affected by the new construction. The Joshua Intervenors shall have a period of 14 days in which to provide input concerning each such proposal.

I. **Scholarships** *[handwritten: Unitary 2014]*

Within 30 days from the date that the LRSD successfully establishes its own scholarship program, PCSSD shall establish a bi-racial committee to explore a program for providing college scholarships to designated PCSSD students.

J. **School Resources** *[handwritten: Unitary 2011]*

PCSSD shall design and carry out, in consultation with the Joshua Intervenors, a study to determine whether school resources are allocated equitably among the schools of the district. The resources assessed may include such factors as pupil\teacher ratio; pupil\staff ratio; square feet per pupil; percentage of staff with a masters degree and nine or more years of experience; the turnover rate of certified staff; school size; computer\pupil ratio; per pupil expenditure; volunteer hours per pupil; and donations per pupil. The study shall contain recommendations, where appropriate, to address any problems identified.

K. **Special Education** *[handwritten: Unitary 2014]*

(1) Not later than 45 days after the court's approval of this Plan, the PCSSD shall provide to the Joshua Intervenors the standards then in place for: (i) stressing intervention strategies and regular class modifications in an effort to prevent inappropriate referrals of black males and kindergarten students; (ii) monitoring the folders of all kindergarten students and black students who are being considered as in need of special education under IDEA and Section 504 to insure nondiscrimination in

136748-v1

evaluation and placement. The PCSSD shall include in this submission materials which are used to inform staff members of the relevant standards.

(2)   The Director of Special Education shall develop a specific plan for additional monitoring each year, by his\her staff, of schools where there are atypically high racial disparities in special education classification, generally or as to black male students. The PCSSD shall provide a copy of this plan to the Joshua Intervenors, which shall include criteria for identifying schools for monitoring.

L.   **Staff**

*Unitary 2017*

(1)   The PCSSD shall recruit applicants for each available administrative position, by internal and external means, in a manner designed to communicate, broadly, its availability and to develop a racially diverse pool of applicants. The Assistant Superintendent for Desegregation shall, with the cooperation of the Assistant Superintendent for Personnel, be informed of the make-up of each such applicant pool and they shall have the authority to direct that additional recruitment take place prior to the offering of the position to a particular applicant.

(2)   The PCSSD shall engage in recruitment so that new teachers are selected from a racially diverse pool of applicants. The Assistant Superintendent for Desegregation shall monitor the recruitment process so that recruitment is extensive and sustained, and the hiring process so that no policy, practice, or custom has the purpose or the effect of imposing an upward limit on the proportion of black teachers.

(3)   The PCSSD shall continue to implement programs, policies and\or procedures which result in an increase in the number of African-American early childhood teachers, primary grade teachers, and secondary core teachers, including offering incentives for African-American teachers to obtain certification in these areas, and to assign those teachers to the PCSSD schools where the greatest disparity exists.

(4)   The PCSSD will allocate teachers and other professional staff in a manner which avoids the racial identification of schools.

M.   **Student Achievement**

*Not*

(1)   The PCSSD shall implement the plans designed to improve student achievement, recommended by Dr. Stephen Ross, and shall work with Dr. Ross in their implementation. See Attachment (plans).

(2)   The PCSSD shall continue to implement its home-school counselor program.

6

136748-v1

### N. Monitoring

(1) The Assistant Superintendent for Desegregation shall: (i) develop a plan so that he (or she) and his (or her) staff focus their monitoring and compliance efforts on the specific elements of this Plan; and (ii) provide the Joshua Intervenors within 30 days of the court's approval of this Plan a list, geared to the sections of this Plan, identifying the staff member or members with particular responsibilities for its implementation and the position held by each.

(2) Upon reasonable notice, the Joshua Intervenors shall have the opportunity: (i) to examine and secure copies of records relating to the PCSSD's compliance with this Plan, including records identified in this Plan, and (ii) to meet with the Assistant Superintendent for Desegregation or a staff member responsible for a particular part of the implementation of the Plan.

(3) The PCSSD shall submit statistical reports showing the following:

    (a) The enrollment in each school by race;

    (b) The enrollment in gifted and talented programs, honors programs, and advanced placement classes, by school and by race;

    (c) The make-up of special education programs: (i) by disability category, including Section 504, by race, and by sex; and (ii) by school, by race, and by sex; provided that the system may comply with this reporting requirement by providing copies of materials submitted to ADE, as long as they include all information designated in this paragraph;

    (d) For each school and the system, the number of instances of each form of discipline, by race and by sex; for each school and the system, the number of students receiving each form of discipline, by race and by sex;

    (e) The racial make-up, in each school, of (i) the administrators, (ii) the faculty, (iii) other professional staff, and (iv) support staff;

    (f) The racial make-up, by category, of the various categories of administrators, faculty, support staff, and other workers employed in the PCSSD.

The information in all sub-paragraphs other than sub-paragraph (d) shall be submitted not later than November 1 of each year, and the information in sub-paragraph (d) twice a year, not later than 30 days after the end of each semester.

O. <u>Continuing Jurisdiction</u>

(1) <u>General Rule</u>. The district court shall have continuing jurisdiction to address issues regarding compliance with and modifications of this Plan. Nothing in this Plan shall affect the district court's jurisdiction to enforce the Plan in the manner required by the Court of Appeals for the Eighth Circuit.

(2) <u>Process for Raising compliance Issues</u>. Before requesting the district court to exercise its jurisdiction with regard to a compliance issue, the Joshua Intervenors shall follow the procedures set forth below.

    (a) Joshua shall as soon as reasonably practicable give the PCSSD Superintendent or his designee specific written notice which includes the following:

        (i) the paragraph(s) of the Plan at issue;

        (ii) the names of all students involved, if any;

        (iii) the names of all PCSSD agents or employees involved, if any;

        (iv) all facts of which the Joshua Intervenors are aware relevant to the compliance issue; and

        (v) a copy of all documents in the Joshua Intervenors' possession relevant to the compliance issue.

    (b) PCSSD shall conduct a reasonable investigation of the alleged noncompliance and shall provide the Joshua Intervenors a written response within a reasonable period not to exceed 30 days from the receipt of written notice from the Joshua Intervenors or such later time as agreed.

8

(c) If the Joshua Intervenors are unsatisfied with PCSSD's response, the Joshua Intervenors shall within 15 days of receipt of PCSSD's response submit the compliance issue to the Department of Justice, Community Relations Service, for facilitation of an agreement between the parties.

(d) If the compliance issue remains unresolved after good faith attempts at facilitation by the Department of Justice, Community Relations Service, the Joshua Intervenors may seek resolution of the issue before the district court. The court may fashion relief.

(e) Unless and until ordered to do otherwise by the district court, PCSSD shall be free to implement the programs, policies and procedures the party alleges fail to comply with this Plan.

## P. The Scope of Compliance Issues

The compliance issues subject to enforcement in accordance with Section N. shall include the PCSSD's implementation of the terms of the Plan, as well as the standards supplied in accordance with this Plan.

## Q. Court Submission

This Plan shall be submitted to the court for consideration after ratification by a majority vote of the PCSSD Board of School Directors.

## R. Financial Claims

The PCSSD shall continue as a party litigant until its final claims against the state defendants and parties as well as those against LRSD have been fully and finally adjudicated.

# Outline of Proposed
# EDUCATION PLAN
## for
## Pulaski County Special School District Desegregation Case Settlement

Steven M. Ross
Deborah L. Lowther
The University of Memphis

## Executive Summary

The following Education Plan is intended to meet the educational interventions required by the PCSSD Desegregation Case Settlement. The Plan is directed toward the attainment of specific goals which focus on the domains of student achievement, attendance, behavior/discipline, and academic remediation/enrichment. Initial implementation of the plan involves a Year 1 Pilot Program to occur during Spring and Summer 1999 and Year 2 Full Program start-up for 1999-2000.

The Education Plan involves six basic phases:

Establish District Goals for School-Wide Programs
:   A District Steering Committee comprised of key PCSSD stakeholders will specify operational components that every School-Wide Plan should include.

Require Each School to Develop a School-Wide Plan for Achieving District Goals
:   Plans should be developed by key stakeholders for each school and should incorporate appropriate externally- or locally-developed programs to meet the district goals.

Establish a District School-Restructuring Committee
:   The District Steering Committee or another representative group provides schools with information regarding possible restructuring programs, establishes the protocol for School-Wide Plans, and reviews/approves submitted Plans.

Implement School-Wide Programs
:   Schools with approved Plans implement fully and schools without approved Plans implement specific components which were approved. Each program must develop implementation benchmarks to ascertain progress.

Evaluate Processes, Outcomes, and Goal Attainment
:   District and school level evaluations will be conducted on a yearly basis. The district evaluation will be both formative and summative to determine progress, improvement needs and success. The school-level evaluations will be more formative in nature to assess progress and identify improvement needs.

School Improvement Planning
:   Evaluation data will be used to develop School Improvement Plans which will be reviewed by the District School-Restructuring Committee.

The Year 1 Pilot Program will initiate the implementation of an approved Education Plan for the Desegregation Case Settlement, establish baseline conditions at the pilot schools (six elementary and one middle or high school) to which outcomes from the full Education Plan can be compared longitudinally, and develop and refine procedures and instrumentation for systemic use in 1999-2000. The proposed timeline for the Pilot Program is listed below:

- District Goals for School-Wide Analysis (by February 28, 1999)
- School Level Needs Analysis (by February 28, 1999)
- Needs Analysis Review and Feedback (by March 31, 1999)
- Pilot Year Formative Evaluation (February - June, 1999)
- Formative Evaluation Analysis and Feedback (by August, 1, 1999)
- Pilot Program Review/Full Program Start-up (September - October, 1999)

# Outline of Proposed
# EDUCATION PLAN
## for
## Pulaski County Special School District
## Desegregation Case Settlement

Note: This plan deals with the education interventions only. It is drafted to invite commentary by the PCSSD and Joshua Case intervenors for revision and expansions.

## EDUCATIONAL GOALS

- To improve educational achievement by all students, with special attention to African-American students and others who are at-risk of academic failure due to socioeconomic disadvantages, or other factors.

- To decrease the performance gap between white students and African-American students through the systematic design/selection and implementation of intervention programs that provide effective remediation and/or adaptation to individual or group needs.

- To increase the number and proportion of African American and disadvantaged students participating in extracurricular activities, gifted programs and honors, enriched, and advanced placement courses.

- To reduce the number of discipline problems and classroom disruptions caused by all students, regardless of race or background.

- To increase student attendance and reduce suspensions and grade retentions for all students, regardless of race or background.

- To establish an ongoing, systematic evaluation system at individual schools and the district level to:

  ◊ assess the progress made at school and district levels in achieving the educational goals

  ◊ provide direction for "Education Plan" and educational program improvements, where indicated.