PLAINTIFF EXHIBIT 67

# Plaintiff's Supplemental Responses to Gillen Document

# Malicious Criticism and Factually Inaccurate Accusations

1. **New furniture lying to Board about funding.**

   Plaintiff's Response:  Restatement of Dr. Releme's allegation on document bates numbered 002-003, PCSSD; Warren, items #8 and #9.

   The office desk was on bricks, so I replaced it, along with the credenza and six chairs for the conference table.  Dr. Remele called and told me she heard I had new furniture and to box it up and return it because the Board would be upset. I told her I would not ask the vendor to take it back.  On the night of the Board meeting, before the meeting started, I asked the Board members who were present to stop in my office to view the furniture.  I don't recall if Kemp and Maune were present.  All had a perplexed look; they did not seem to know what I was talking about.  This furniture was a budget item from Derek Scott's Sustainability Restoration and Modernization (SRM) budget.

   I shared with Dr. Remele that the Superintendent's office was the last stage of three phases or three years of renovations at the Central Office.  In year 1, the Central Office's hallway flooring was redone and some floors received new furniture.  In year 2, the flooring was redone in all office areas and the furniture updated.  The funds used for furniture for the Superintendent's office was a part of the District's Sustainability Restoration and Modernization (SRM) budget that was allocated before I moved into the Superintendent's office.

2. **Lawsuit documents that were filed.  That was not sent to Board.**  Restatement of Dr. Releme's allegation on document bates numbered 002-003, PCSSD; Warren, item #5.

   To my knowledge, the Board was not forwarded status reports by the previous Superintendent or legal counsel.  In my previous role as Assistant Superintendent for Equity and Pupil Services, I received a copy for our desegregation file, but I was not aware that the Board received or reviewing the status reports.  It never occurred to me to send them a copy of the Status Report previously filed in August.

3. **None of this facilities would be over budget would have happened if she would have done her job in equity.**

   Plaintiff's Response:  Two critical facts here: (1) as Assistant Superintendent for Equity and Pupil Services, I did not have authority to oversee the District's budget.  That

authority was allocated to the CFO.  Ms. Palmer, the CFO, consistently reported a balanced budget.  (2) Neither the CFO nor the Executive Director of Operations who was in charge of Facilities reported to me.  Both reported directly to the Superintendent.  Nothing in the CFO's regular reports to the Board alerted the Board or me about a budget deficit.

4. **What was her role – she knew about the court order.**

    Plaintiff's Response:  I'm not certain what Ms. Gillen is referring to here.

5. **Where is the monitoring report with Facilities?**

    Plaintiff's Response:  Derek Scott provided monitoring reports on Facilities.  Mr. Scott presented the report to the Superintendent and to the Board.

6. **Terminated a coach when Paul Brewer was on vacation against instruction.**

    Plaintiff's Response:  The District organizational chart shows that Paul Brewer, the Assistant Superintendent for Human Resources, reported to the Superintendent, to me at the time, not the other way around.  As I recall, Paul Brewer was not on vacation but at a hearing on December 11, 2017, and made a recommendation to me to terminate the coach.

7. **Norma Dixon access to Derek Scott email – Norma has previous lawsuits against the District and had John Walker as council.**

    Plaintiff's Response:  Ms. Dixon was the secretary to Derek Scott and had access to emails and records for the Operations Department.  After Mr. Scott's resignation, Ms. Dixon continued her role, assisting with day-to-day operations of the Department.  As far as the statement about Ms. Dixon's lawsuits and John Walker as her counsel, I was not aware of that fact.  We were not notified by Jay Bequette, our legal counsel, that Ms. Dixon needed to be terminated or relocated.  She had Constitutional and Statutory rights that we had to respect.

8. **Wanted to fire Denise Palmer (abuse of power).**

    Plaintiff's Response:  Denise Palmer was the CFO for PCSSD prior to my appointment as Interim Superintendent.  Around November of 2017, she reported the Board and me that the District had a deficit of approximately $13 million.  Prior to November, her monthly financial reports suggested that the District was on budget.  Around February 2018, she

reported that this deficit was due to construction costs that were over budget and perhaps the deficit was $8 million instead of $13 million.  I was very angry because as CFO her responsibility was oversight of District funds.  Later, after six months on the job, Dr. McNulty placed Ms. Palmer on an improvement plan.  By the end of the year, Ms. Palmer was released from her position as CFO of PCSSD.  Ms. Gillen's failure to assert that Dr. McNulty's actions were an "abuse of power" indicates the presence of some discriminatory perspective between my exercise of authority, as a black female, and Dr. McNulty's exercise of the same authority as a white male.

9. **Umbrellas:**  Restatement of Dr. Releme's allegation on document bates numbered 002-003, PCSSD; Warren, item #15.

    Plaintiff's Response:  "We understand you purchased umbrellas for gifts for the Central Office."  I replied, "Correct. I spoke to the auditor on how I could do it."  Remele and Gillen kept going back and forth asserting that making a gift of the umbrellas was illegal and that the District would be cited.  Remele and Gillen spent ten minutes lecturing me. I do believe Board member, Kemp, interjected a comment at some point.  I listened without objection because I planned to pay for the umbrellas, personally, and did pay for them.