IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JANICE HARGROVE WARREN                        PLAINTIFF

v.                      No. 4:19-cv-00655-BSM

CHARLES MCNULTY, et al.                              DEFENDANTS

**PLAINTIFF'S RESPONSES TO DEFENDANTS
STATEMENT OF UNDISPUTED MATERIAL
FACTS**

Plaintiff, by and through undersigned counsel, Sarah Howard Jenkins, PLLC, for her Responses to Defendants' Statement of Undisputed Material Facts, states:

1. PCSSD went under State control in 2011 and the Commissioner of Education appointed Dr. Jerry Guess as the Superintendent on July 5, 2011, serving without a board of directors. *See* Dkt. No. 4546, Case No. 4:82-cv-00866-DPM (PCSSD Desegregation case filing that noted the date of state takeover).

**RESPONSE**: Admit

2. In July of 2012, Dr. Warren was hired as the PCSSD Director of Elementary Education and her responsibilities were enlarged to Assistant Superintendent of Equity and Pupil Services in May of 2013. *See* Compl. at ¶ 16

**RESPONSE**: Admit in part; Deny in part. Defendants' statement suggests that Plaintiff responsibilities were merely increased by the move to a different position. Plaintiff held a dual appointment as Director of Elementary Education and as Assistant Superintendent of Equity and Pupil Services, both were fulltime responsibilities. Plaintiff's Exhibit 1, Margie Powell, p. 40; Compl. at ¶ 16. Therefore, Plaintiff denies that "her responsibilities were enlarged to Assistant Superintendent of Equity and Pupil Services in May of 2013."

3.     Dr. Warren's role Assistant Superintendent for Equity and Pupil Services including monitoring [ s i c ] all phases of Plan 2000 of the District's desegregation plan, which included the District's obligations as to facilities.  *See* Deposition of Dr. Janice Warren, Ex. A, p. 61-62.

**OBJECTION**:     In their opposition to Plaintiff's Motion to Intervene in *Little Rock School District, et al., v. PCSSD, et al.*, Defendant PCSSD and, thereby, its Board, represented to Federal District Judge Price Marshall that it would not "seek to blame" Plaintiff for any of the inequities in the construction of District facilities in predominately Black versus predominately White communities.  This representation was a factor considered by Judge Marshall in denying Plaintiff's request to intervene.  (See Judge Marshall's Order relying on PCSSD's representation and denying Plaintiff's Motion to Intervene, Case No. 4:82-cv-00866, doc. 5652, filed July 2, 2020, Plaintiff's Exhibit 2. Likewise, Plaintiff, relying on PCSSD's representation, did not appeal Judge Marshall's Order. Thus, Defendants are both judicially and equitably estopped from asserting any facts or allegations in this case regarding Plaintiff's role, if any, for monitoring the construction of PCSSD's facilities as Assistant Superintendent for Equity and Pupil Services.  See also, Plaintiff's Motion in Limine filed simultaneously with this Response to Defendants' Motion for Summary Judgment raising both judicial and equitable estoppel to Defendants' factual assertion.

**RESPONSE**:  Without waiving her Objection, Plaintiff says:  Deny.  Plan 2000 Monitoring does not impose an obligation on the Assistant Superintendent for Equity and Pupil Services to monitor facilities.  See Plaintiff's Exhibit 3, PCSSD's Plan 2000, page 7. Furthermore, Dr. Warren's testimony does not state that she had a duty to monitor facilities in

her June 22, 2020, Deposition in Warren v. McNulty.  Defendants are mischaracterizing the testimony on pages 61-62 of Dr. Warren's deposition. See Plaintiff's Exhibit 12.

4. In 2016, local control was returned to PCSSD and a new seven-member Board was locally elected, including four males and three females, one of whom, Dr. Linda Remele, was the Board president.   See December 13, 2016 PCSSD Board Minutes, attached to Defendant's Motion as Exhibit B.

**RESPONSE**: Admit

5. On July 18, 2018, the PCSSD Board terminated the contract of Dr. Guess. See Compl. at ¶ 17.

**RESPONSE**:  Deny.  The PCSSD Board terminated Dr. Guess' contract a Superintendent on July 18, 2017.  See Compl. at ¶ 17; Plaintiff's Exhibit 35.

6. Initially, Dr. Warren was invited to serve as Interim Superintendent for a term of one-year. See Deposition of Dr. Janice Warren, Ex. A, at p. 105.

**RESPONSE**:  Admit in part; Deny in part.  First, Defendants' use of the adverb "Initially" suggests some subsequent limitation on the one-year contract term.  Second, the PCSSD Board offered Dr. Warren the position of Interim Superintendent and Dr. Warren accepted the Board's offer.  An enforceable contract based on the exchange of promises resulted.  See Dr. Janice Warren's Interim Superintendent's Contract dated August 8, 2017, effective July 18, 2017.  Plaintiff's Exhibit 4.

7. Dr. Warren assumed office on July 18, 2017 and served in this role until Dr. McNulty's contract began on July 1, 2018.  See Deposition of Dr. Janice Warren, Ex. A, at p. 46; Deposition of Dr. Charles McNulty, attached to Defendants' Motion as Exhibit G, p. 34.

**RESPONSE**:  Admit

8. Employing a superintendent is an official duty of the PCSSD Board.  See

PCSSD Board Policy, Exhibit K, ¶ 1.7P3

**RESPONSE**: Admit

9. The Board retained Ray & Associates, a third-party search firm, on December 12, 2017, to provide a national search for the permanent superintendent. *See* PCSSD Board Meeting Minutes dated December 12, 2017, attached to Defendants' Motion as Exhibit E.

**RESPONSE**: Admit in part; deny in part. Plaintiff denies that Defendants' Exhibit E provides that the Board hired Ray and Associates to provide a national search for the permanent superintendent. Exhibit E states that the Board hired Ray and Associates to "assist" with the superintendent search.

10. Ray & Associates advertised the superintendent position to 1,177 people in 47 states nationwide. Of those 1,177 individuals, 36 submitted an application and became candidates for the superintendent position. *See* PCSSD Superintendent Search Report, Ex. D, ¶ 4.

**RESPONSE**: Admit

11. From there, 7 men and 2 women (including Dr. Warren) were deemed qualified by Ray & Associates based on data collected during their process and it subsequently recommended to the PCSSD Board for further consideration. *See* PCSSD Matrix for Reaching Candidate Consensus, attached to Defendants' Motion as Exhibit F.

**RESPONSE**: Admit in part; Deny in part. Plaintiff admits that 7 men and 2 women, including Dr. Warren, were recommended as top candidates to the PCSSD Board for further consideration. Plaintiff lacks information on the status of the remaining 28 applicants as qualified or unqualified and whether Ray and Associates based its recommendation solely on the data collected during its processes. See Plaintiff's Exhibit 5, the PCSSD Superintendent Search

Approved Process and Timeline developed by Ray and Associates, describing Stage 4. Therefore, denies the balance of Defendants' statement.

12. Dr. Warren was selected as one of the nine applicants recommended to the PCSSD Board for video interviews and further consideration, and she indeed submitted application materials and her candidacy was reviewed by the Board. *See* PCSSD Matrix for Reaching Candidate Consensus, attached to Defendants' Motion as <u>Exhibit F</u>.

**RESPONSE**: Admit in part; Deny in part. Plaintiff admits that she was selected as one of the nine applicants recommended to the PCSSD Board and that she submitted application materials. Plaintiff denies that her video presentation was an interview. See Plaintiff's Exhibit 5, the PCSSD Superintendent Search Approved Process and Timeline developed by Ray and Associates, describing Stage 4, "Candidate Presentation" and distinguishing the Candidate Presentation from the interviews for finalists.

Plaintiff admits that the members of the Board viewed her video but Plaintiff lacks information to determine that "her candidacy was reviewed by the Board" as required by Board Policy. See Plaintiff's Exhibit 68, chart of Board members' uniform Responses to Plaintiff's First Set of Interrogatories (redacted), Plaintiff's Exhibit 68, chart of the Board members' uniform Responses to Plaintiff's First Set of Interrogatories, and Plaintiff's Exhibit 7, PCSSD's Transfer and Promotion Policy. Therefore, the Plaintiff denies the same.

13. Of the nine candidates presented to the Board by Ray and Associates on March 27, 2018, six were black and three were white. *See* Deposition of Dr. Linda Remele, <u>Ex. H</u>, p. 100-104. During this meeting, the seven-member Board (2 of whom are black) was instructed to complete a "Matrix for Reaching Candidate Consensus" in order to determine which candidates would move on to the in-person interview. *See* Deposition for Dr. Linda Remele,

attached to Defendants' Motion as <u>Exhibit H</u>, p. 106; PCSSD Matrix for Reaching Candidate Consensus, <u>Ex. F</u>.

**RESPONSE**: Admit in part; Deny in part.

Plaintiff admits that of the nine candidates presented to the Board by Ray and Associates on March 27, 2018, six were black, two females and four males and three white males. No white females were included in the pool. See Plaintiff's Exhibit 22, image of nine individual candidates.

Plaintiff admits that the Board has seven members; two of the members are black; and that the Board was instructed to complete a "Matrix for Reaching Candidate Consensus" form. Plaintiff Denies that the Board was instructed to complete a "Matrix for Reaching Candidate Consensus" in order to determine which candidates would move on to the "in-person interview." See The Consensus-Building Matrix, General Information, Purpose and Directions, Plaintiff's Exhibit 8. The Consensus-Building Matrix, General Information provides: "This instrument is the heart of the selection process and serves as the springboard for the discussion which results in the identification of candidates *to be interviewed*, and later used again to reveal the top finalist(s)."

14. Following the Board's review of the nine candidates, Dr. Erick Pruitt, Dr. Charles McNulty and Mr. James Harris were awarded final on-campus interviews.  Compl. ¶ 29.

**RESPONSE**: Admit in part; Deny in part. Plaintiff admits that the Board viewed the nine candidate-video presentations and that Dr. Erick Pruitt, a Black male, Dr. Charles McNulty, a White male, and Mr. James Harris, a Black male, were invited to be interviewed at the PCSSD office. The Board's description of its processes does not provide information for concluding that the Board reviewed the nine candidates. Therefore, Plaintiff denies that a

review of the candidates by the Board occurred.  See Plaintiff's Exhibit 9, June 15, 2020, deposition of Linda Remele ("Remele Deposition"), page 105, line 21 through page 107, line 15; see also Plaintiff's Exhibit 68, a chart of the Defendants uniform Responses to Plaintiff's First Set of Interrogatories.

15. Dr. Pruitt and Mr. Harris are black, and Dr. McNulty is white.  Compl. ¶ 28.

**RESPONSE**:Admit

16. Each of the finalists were then slated to interview on April 3, 2018.  *See* Deposition of Dr. Linda Remele, Ex. H, p. 118.  Mr. Harris subsequently withdrew his application, but both Dr. McNulty and Dr. Pruitt participated in an interview.  *Id*. at p. 118-119.

**RESPONSE**:  Admit

17. The PCSSD Board voted and selected Dr. McNulty as the new Superintendent. Plaintiff's Exhibit 43, Minutes, April 3, 2018; Defendants Ex. H. at p. 122.

**RESPONSE**:  Admit in part; Deny in part.  Plaintiff admits that the Board selected Dr. McNulty as the new Superintendent.  The testimony by Dr. Charles McNulty suggests that Dr. McNulty may have been offered the position before the Board voted and selected him.  Plaintiff's Exhibit 62, Deposition of Charles McNulty, Beasley v. Dr. Charles McNulty, No.4:18-cv-508-DPM, page 11, lines 19-25 through page 12, lines 1-4

18. Dr. Warren returned to her previous role after her interim appointment expired, the role she still serves in today.  *See* Compl. at p. 83.

**RESPONSE**:Admit in part; Deny in part.  Plaintiff admits that she returned to her previous role after her interim appointment expired and that she serves in that role today. Plaintiff denies that the Complaint states these facts at p. 83.

19.     During Dr. Warren's term as Interim Superintendent, multiple PCSSD Board members have testified that the Board developed serious concerns about Dr. Warren's performance during her tenure as Interim Superintendent.  *See* Deposition of Dr. Linda Remele, Ex. H, p. 70, p. 77-79, p. 93; Deposition of Alicia Gillen, Ex. C, at p. 15-16.

**RESPONSE**: Deny.  Two PCSSD Board members, Dr. Linda Remele and Alicia Gillen, testified in June of 2020 about their alleged "concerns" listed on separate documents that each had created.  During her testimony, commencing on page 15 as Defendants cite, Alicia Gillen read from her list of allegations the following:  "None of the facilities would be over budget would have happened [sic] if she [Dr. Warren] would have done her job in Equity Services."  After more than thirty pages of subsequent testimony, Alicia Gillen was unable to identify one nonperformance or one act that was the basis of her allegation against Dr. Warren.  Plaintiff's Exhibit 10, June 16, 2020, Deposition of Alicia Gillen, pages 15-45.

More importantly, Plaintiff served a response to both Linda Remele's and Alicia Gillen's lists of malicious criticisms and factually erroneous allegations and refuted all of them as baseless accusations.  See Plaintiff's Exhibits 65 & 67.  Defense counsel's assertion of Linda Remele's and Alicia Gillen's alleged "concerns" as undisputed facts raises a question of his compliance with his ethical duty of candor before this Court.

20.     One day after assuming her new role, Dr. Warren approved a remodel of the Superintendent suite, which initially included the removal of paneling and the installation of new paint.  *See* Deposition of Dr. Janice Warren, Ex. A, p. 110-112; Deposition of Dr. Linda Remele, Ex. H, p. 70-71.

**RESPONSE**: Denies.  Defendants' statement mischaracterizes the evidence.  During the first week of Dr. Warren's tenure as Interim Superintendent, Derek Scott, PCSSD's Executive

Director of Operations, walked into the Superintendent's office; Dr. Guess and Dr. Warren were present. Derek Scott shared that he had planned to paint the Superintendent's Office and that the painting was part of the SRM Budget. When informed that the painting was part of the SRM Budget, Dr. Warren agreed to the painting. Maintenance painted the office and may have, as part of their processes, removed the paneling. Plaintiff did not "approve" the remodeling of the Superintendent's Office; she approved the painting of the office. The School Year 17-18, SRM Projects budget for painting, not including $230,000 for District wide painting of various cafeteria and kitchen, was $950,000. Plaintiff's Exhibit 12, Janice Warren, June 22, 2020, Deposition, page 112, line 11, through page 113, line 21; Plaintiff's Exhibit 15, Warren's Affidavit; Plaintiff's Exhibit 13, SY 17-18 SRM Projects.

Shortly after the painting, Dr. Warren discussed the purchase with the Business office; and the Office of the Executive Director of Operations issued an invoice for a desk to replace the desk then resting on bricks, six chairs and a credenza for storage in the Superintendent's Office. Plaintiff's Exhibit 12, Janice Warren Deposition, June 22, 2020, p. 117- p. 118, line 25. Warren Affidavit dated September 9, 2020. The SY 17-18 SRM Projects budget for furnishings, fixtures, and equipment, including cafeteria tables at various schools, was $570,000.

At the August 8, 2017, Board meeting, "Mr. Keller commended Dr. Warren for hitting the ground running and for the flawless transition with Cabinet and Staff." PCSSD Board Minutes August 8, 2017. At that time, no mention was made of the July painting of the Superintendent's Office or the ordering the desk, credenza, and six chairs. Only on September 12th, after the September 8, 2017, Status Conference in Federal Court were complaints lodged

by Dr. Remele who testified that she "heard" of the painting on July 19, 2017. Plaintiff's Exhibit 12, pp. 71, 76, lines 2-25, Deposition of Dr. Linda Remele, June 15, 2020,

21. After the PCSSD Board learned of the renovations, it instructed Dr. Warren not to make any other renovations or major purchases, as she was only the Interim Superintendent. *See* Deposition of Dr. Linda Remele, Ex. H, p. 71.

**RESPONSE**: Admit in part; Deny in part. Dr. Remele, not the Board, instructed Dr. Warren not to make any other renovations. This direction was given after Dr. Warren's office was painted and the desk, six chairs, and credenza were ordered. Dr. Warren was not aware that the Board would object to the painting of an office and the purchasing of furniture. Dr. Warren's perspective was based on her ten years-experience as a Superintendent and fifteen years as a district level administrator. "Board members typically aren't involved in the purchase of furniture, or painting, or materials, or supplies." Complaint, ¶¶ 14-15; Plaintiff's Exhibit 12, Janice Warren's June 22, 2020, Deposition, page 115, line 6 through page 118, line 24. Dr. Remele was intruding into the day-to-day administration of the District, the purview of the Superintendent. Plaintiff's Exhibit 14, PCSSD Board Policy 1.7P. ("The administrative functions of the District are delegated to the Superintendent who shall be responsible for the effective administration and supervision of the District.")

22. Less than two weeks later, it came to the Board's attention that Dr. Warren had purchased new office furniture for the Superintendent suite. *See* Deposition of Dr. Linda Remele, Ex. H, p. 72; Deposition of Dr. Janice Warren, Ex. A, p. 112, p. 116.

**RESPONSE**: Deny. On September 22, 2017, it came to Dr. Remele's attention that Dr. Warren had purchased a desk, six chairs, and a credenza. Deposition of Dr. Linda Remele, Defendants' Ex. H, p. 72;

23. When Dr. Remele advised Dr. Warren to return the furniture, she declined to do so. *See* Deposition of Dr. Linda Remele, Ex. H, p. 72; Deposition of Dr. Janice Warren, Ex. A, p. 121-122.

**RESPONSE**: Admit in part; Deny in part. Dr. Remele told Dr. Warren "You need to send it back. The Board is not going to be happy. I'm not happy." Defendant's Ex. H, p. 72; Dr. Warren declined to return the furniture to protect the District's business reputation with its vendor. Plaintiff's Exhibit 12, Janice Warren's June 22, 2020, Deposition, pp. 121, line 15 - 122, line 5.

24. Issues with Dr. Warren's performance during her interim tenure became so significant that Dr. Remele began authoring a document of Dr. Warren's deficiencies. *See* "Issues Leading to a Lack of Confidence in Dr. Warren," authored by Dr. Remele and authenticated in her deposition, attached to Defendants' Motion as Exhibit I.

**RESPONSE**: Deny. Dr. Remele began authoring a list of malicious criticisms and factually erroneous allegations in September of 2017 and poisoning the Board's perception of Dr. Warren's performance on September 12, 2017, four days after the September 8, 2017, Status Hearing in Federal Court. The remaining members of the Board did not investigate the allegations or question Dr. Remele's erroneous stance. Plaintiff's Exhibit 12, Janice Warren's June 22, 2020, Deposition, p. 124, line 9 - p. 125, line 18.

25. Later, in November of 2017, several other instances of fiscal irresponsibility occurred. By early November, all four high schools in the District had hired a testing coordinator to resume charge of all testing responsibility at each of the four schools. *See* Deposition of Dr. Linda Remele, Ex. H, p. 83-84, 88-89 and "Issues Leading to a Lack of Confidence in

Dr. Warren," authored by Dr. Remele and authenticated in her deposition, attached to Defendants' Motion as Exhibit I, ¶¶ 10-11.

**RESPONSE**: Deny.  Defendants' citation to Ex. H, 83-84, 88-89 is citation to Dr. Remele's testimony regarding the reorganization of testing and the use of the media specialists for testing not the hiring of testing coordinators for four schools.  In testimony cited by Defendants, Dr. Remele admitted that she alone, in violation of Board policy, was questioning the reorganization and that she was not aware of the Federal mandate that necessitated the reorganization.  Dr. Remele admitted that the Superintendent and her Cabinet had the authority to determine the best method for handling the reorganization of testing to address the federal mandate.  Plaintiff's Exhibit 9, June 15, 2020, Deposition of Linda Remele, pp.83, line 12 - 92, line 4.

26.    Under Dr. Warren's administration, all four coordinators were instructed to lend only a helping role until April of the following year.  *Id.*   This mandated delay meant the District was forced to pay four testing coordinators for more than six months before any actually began coordinating testing. *Id.*

**RESPONSE**: Deny. Defendants' citation to its Ex. H, 83-84, 88-89 is citation to Dr. Remele's testimony regarding the reorganization of testing and the use of the media specialists for testing not the hiring of testing coordinators for four schools.

Around September 2017, Lajunna Green, District Testing Coordinator started working with HR and Superintendent Warren to post positions for test coordinators at each high school. This was the second year of ACT Aspire as the State assessment in Arkansas. The volume and magnitude of the test was massive. School teams of administrator, counselor, media specialist and instructional coaches were overwhelmed.  A message from Sam Altschul, Director of

Federal Programs, complicated the process. Sam Altschul shared that instructional coaches could not administer the summative assessment because it was a State required test and the coaches were paid from Title 1, Federal funds. This would cause the District to supplant; which is a violation of state and federal guidelines. Elementary schools and middle schools didn't have test coordinators; therefore, these schools had to have media specialist and counselors oversee the annual summative assessments given in the spring and instructional coaches had to oversee the 6-8 interim assessments given throughout the year. This was frustrating to every school in the district even high schools that had test coordinators. At one time during 2017, all four high schools had the additional support of a test coordinator. However, two of testing coordinators at two different school decided this was too much work and not what they anticipated. They resigned and HR spent the remainder of the 17-18 school year advertising for replacements. We determined that the Arkansas Department of Education ("ADE") assessments, interim and summative, were best for the District at the time because there was no cost for districts to use the ADE assessments. Plaintiff's Exhibit 15, September 9, 2020, Affidavit of Dr. Janice Warren.

27. Dr. Warren ordered 150 imprinted umbrellas to give as Christmas gifts to Central Office staff, the total cost of which was $2,436.84. *See* Deposition of Dr. Janice Warren, Ex. A, p. 96-97, p. 102.

**RESPONSE**: Admit.

28. The Board informed her that this purchase would be an audit finding and was an inappropriate use of taxpayer dollars. "Issues Leading to a Lack of Confidence in Dr. Warren," Ex. I, ¶ 15.

**RESPONSE**: Admit in part; Deny in part. Plaintiff admits that Dr. Remele, speaking for the Board during an Executive Session at its November 14, 2017, Board meeting, told the Plaintiff that a purchase would be an audit finding and was an inappropriate use of taxpayer

dollars.  Plaintiff denies that the purchase would have been an audit finding; she ordered the umbrella with the intention of personally paying for them. Taxpayer dollars would not be used.

Dr. Warren began investigating the viability of ordering the umbrellas in October of 2017.  Before ordering the umbrellas, Dr. Warren visited with Human Resources ("HR") staff about ordering umbrellas for the Central Office staff.  Kim White in HR provided information on a company that the District often used. Dr. Warren also visited with the District's Auditor, Stacie Derean, who was already on site for the District's audit.  Dr. Warren spoke with her about the umbrellas and T-shirts for the staff.  Stacie Derean stated that T-shirts would be cleaner because the T-shirts could be part of the attire required for staff to wear on a certain day. Stacie Derean also said umbrellas could possibly send up a red flag because it could not be justified as required. From this conversation, Dr. Warren knew that if she wanted the umbrellas, she would have to pay for them. Knowing and intending to pay for the umbrellas when they were ordered, Dr. Warren ordered the umbrellas on November 1, 2017.  Plaintiff's Exhibit 12, Janice Warren's June 22, 2020, Deposition, pp. 96, line 1 - 102, line 18; Plaintiff's Exhibit 15, September 9, 2020, Affidavit of Dr. Janice Warren, Plaintiff's Exhibit 16, purchase order for 150 umbrellas; Plaintiff's Exhibit 17, Dr. Janice Warren's personal check for $2436.84.

29.     As a result, the Board denied Dr. Warren's purchase order and she became personally responsible for the expense.  *See* Deposition of Dr. Janice Warren, Ex. A, p. 100.

**RESPONSE**:  Deny.  The cited authority, *See* Deposition of Dr. Janice Warren, Ex. A, p. 100, does not provide that Dr. Warren presented the purchase order to the Board or that the Board denied her request for payment of the purchase order or reimbursement.  Dr. Warren testified that she paid for the umbrellas.  Before ordering the umbrellas, Dr. Warren made the

decision to be responsible for the gift to her staff as Interim Superintendent to build morale. Plaintiff's Exhibit 12, Janice Warren's June 22, 2020, Deposition, p. 100.

30. In addition to concerns over Dr. Warren's handling of District finances, the Board became concerned with Dr. Warren's communication skills and seeming refusal to work cooperatively with the Board. *See* Deposition of Dr. Linda Remele, Ex. H, p. 93; Deposition of Alicia Gillen, Ex. C, p. 58.

**RESPONSE**: Deny. Dr. Remele's testimony pp. 93-96 addresses Dr. Warren's alleged failure to report to the Board incidents that building administrators had no record of occurring. When asked who on Dr. Warren's staff notified Dr. Warren of the incident, Dr. Remele responded that the notification was policy. Dr. Remele could not identify a staff member. Dr. Remele's purported source of information was the Mayor of the City of Sherwood. Dr. Remele has no personal knowledge of the incident.

Plaintiff served a Response to Dr. Remele's allegations including those referenced in Dr. Remele's testimony as cited by the Defendants. See Plaintiff's Exhibit 11, Defense counsel's assertion of Linda Remele's and Alicia Gillen's alleged "concerns" as undisputed facts raises a question of his compliance with his ethical duty of candor before this Court.

31. In August of 2017, Dr. Warren individually informed each Board Member about existing inequities between the facilities at Mills High School and Robinson Middle School after she herself learned of them from a District parent. *See* Deposition of Dr. Janice Warren, Ex. A, p. 57.

**RESPONSE**: Admits and further states that she received the call from the parent on or about Thursday, August 24th and began notifying the Board members on Friday, August 25th. *Id.*

32. The Board, through Dr. Remele, requested that Dr. Warren allow it to help in drafting a status report for the Federal Court overseeing PCSSD's desegregation case, as 'facilities' was one of the areas where PCSSD had not yet reached compliance. *See* Deposition of Dr. Janice Warren, Ex. A, p. 80; Deposition of Dr. Linda Remele, Ex. H, p. 131, p. 140.

**RESPONSE**: Deny. Dr. Warren sought Dr. Remele's help in providing Attorney Sam Jones with the information he needed to draft the Status Report. Dr. Warren assured Dr. Remele that she had been "most helpful." Plaintiff's Exhibit 12, pp. 80-84.

33. Instead of seeking Board input, Dr. Warren failed to share the report with any member of the Board prior to its filing and also represented – on numerous occasions – to the District's attorney, Sam Jones, that the Board had supported the document. *See* Deposition of Dr. Linda Remele, Ex. H, p. 140-141; Deposition of Dr. Janice Warren, Ex. A, p. 87; and Emailchain regarding Federal Court filing, attached to Defendants' Motion as Exhibit J.

**RESPONSE**: Deny. Defendants' citation to Dr. Janice Warren's deposition records Dr. Warren's testimony that she forwarded Attorney Sam Jones' draft to the Board when she received it. See also, Plaintiff's Exhibit 18, Dr. Warren's email forwarding, at 3:10 p.m., Attorney Sam Jones' email with his new draft of the Supplemental Status Report and Alicia Gillen's 6:18 p.m. response to the forwarded email.

On August 3, 2020, Plaintiff served Defendants with a copy of the emails in Plaintiff's Second Supplementary Response to Defendants' Third Set of Interrogatories. Defense Counsel's inclusion of the facts asserted in ¶ 33 as undisputed facts raises a question of his compliance with his ethical duty of candor before this Court.

34. In October of 2017, Dr. Remele learned from the community that a particularly dangerous situation had occurred at Sylvan Hills Freshman Academy. *See* Deposition of Dr. Linda Remele, Ex. H, p. 94-96.

**RESPONSE:** Deny. The alleged situation was not "particularly dangerous". Sylvan Hills Freshman Academy, Principal, Yvone L. West, II recalls the alleged October 26, 2017, incident as one that did not create an imminent or immediate threat and, therefore, following common practice, district level officials were not notified. See Plaintiff's Exhibit 19, Principal West's Sworn Affidavit. Linda Remele lacks personal knowledge of the incident.

On August 3, 2020, Plaintiff served Defendants with a copy of Principal West's Sworn Affidavit in Plaintiff's Second Supplementary Response to Defendants' Third Set of Interrogatories. Plaintiff's Exhibit 11, Plaintiff's Supplementary Response. Defense Counsel's inclusion of the facts asserted in ¶ 34 as undisputed facts raises a question of his compliance with his ethical duty of candor before this Court.

35. The Board was not timely notified of the October incident. *Id.*

**RESPONSE:** Deny. Principal, Yvone L. West, II, following common practice, did not notify District level officials because the incident did not create an imminent or immediate threat. Interim Superintendent Warren received no notice of the incident and had nothing to report. See Plaintiff's Exhibit 19 Principal West's Sworn Affidavit.

On August 3, 2020, Plaintiff served Defendants with a copy of Principal West's Sworn Affidavit in Plaintiff's Second Supplementary Response to Defendants' Third Set of Interrogatories. Defense Counsel's inclusion of the facts asserted in ¶ 35 as undisputed facts raises a question of his compliance with his ethical duty of candor before this Court.

36.     Ray & Associates has reached out to Dr. Warren on three separate occasions to enter her name into its pool of Superintendent candidates, but Dr. Warren has declined to do so each time.   *See* Deposition of Dr. Janice Warren, Ex. A, p. 141.

**RESPONSE:**  Admit in part; Deny in part.   Plaintiff admits that Ray and Associates has on three separate occasions solicited her participation in one of its Superintendent pools.  Each of these were out of state openings. See Defendants' Ex. A, p. 141, June 22, 2020, Deposition of Dr. Janice Warren.

Respectfully submitted this 9th day of September 2020,
Sarah Howard Jenkins
Ark. Sup. Ct. Reg. No. 97046
SARAH HOWARD JENKINS, PLLC
P.O. Box 242694
Little Rock, AR 72223
Telephone: (501) 406-0905
Email address:  sarah@shjenkinslaw.com
Attorney for Plaintiff