IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JANICE HARGROVE WARREN                                                          PLAINTIFF

v.                                            No. 4:19-cv-00655-BSM

CHARLES MCNULTY, et al.                                                        DEFENDANTS

**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON REMAINING CLAIM – BREACH OF CONTRACT**

Defendants, by their attorneys, Bequette, Billingsley & Kees, P.A., for their Supplemental Brief in Support of Motion for Summary Judgment on Remaining Claims – Breach of Contract pursuant to Rule 56 of the Federal Rules of Civil Procedure, allege and state:

**INTRODUCTION**

The motion for summary judgment deadline in this case was July 20, 2020, as outlined in the Final Scheduling Order.  *See* Dkt. No. 10.  By order of the Court, the motion deadline was extended to August 12, 2020.  *See* Dkt. No. 22.  Defendants timely filed their motion for summary judgment and brief in support on all of Plaintiff's claims.  *See* Dkt. Nos. 27-29.  Plaintiff, with leave from the Court, filed her First Amended Complaint on August 20, 2020, adding a common law breach of contract claim.  *See* Dkt. No. 31, ¶¶ 75-86.  Defendants could not have moved to dismiss Plaintiff's breach of contract claim prior to the dispositive motion deadline.  Now, Defendants move to dismiss the remaining claim not addressed in its first motion for summary judgment – Plaintiff's breach of contract claim.

**STANDARD OF REVIEW**

A motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under Rule 56(a), summary judgment is proper if the moving party has identified each claim or defense on which summary judgment is sought and has established that there is no genuine

dispute as to any material fact. Fed. R. Civ. P. 56(a). The burden of establishing this nonexistence rests squarely upon the moving party. *Walling v. Fairmont Creamery Co.*, 139 F.2d 318, 322 (8th Cir. 1943). Rule 56(c) directs the moving party to support its assertion by:

> citing to practical parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials, or by showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

"[A] judge's function [at this stage] is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "All doubts are resolved against [the moving party], and his supporting affidavits and depositions, if any, are [to be] carefully scrutinized by the court." *Walling v. Fairmont Creamery Co.*, 139 F.2d 318, 322 (8th Cir. 1943). Accordingly, when the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial and summary judgment is proper. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts").

In order to prevent summary judgment, the non-moving party must establish that a genuine issue of material fact exists by pinpointing significant probative evidence. *Matsushita*, 475 U.S. at 585-586 (*citing* Fed. R. Civ. P. 56(e)). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995). Mere allegations or denials will not suffice; rather, the non-moving party must come forward with specific facts showing a genuine issue for trial. *Matsushita*, 475 U.S. at 587.

Hence, a court may grant summary judgment if the moving party has established its right to a judgment with such clarity as to leave no room for controversy, and the non-moving party is not entitled to recover under any discernible circumstances. *See LeCroy v. Dean Witter Reynolds, Inc.*, 585 F. Supp. 753 (D.C. Ark. 1984).

## ARGUMENT AND AUTHORITY

Under Arkansas law, to prevail on a breach of contract claim, a plaintiff must prove that: (1) an agreement existed; (2) the agreement was breached; and (3) resulting damages occurred. *Foreman Sch. Dist. No. 25 v. Steele*, 347 Ark. 193, 202, 61 S.W.3d 801, 807 (2001). "In general, damages for breach of contract are those damages which would place the injured party in the same position as if the contract had not been breached." *Highland Indus. Park, Inc. v. BEI Def. Sys. Co.*, 357 F.3d 794, 800 (8th Cir. 2004) (quoting *Dawson v. Temps Plus Inc.*, 337 Ark. 247, 258 (1999)). In keeping with the unique circumstances inherent in the education arena, the Arkansas Supreme Court has held that it is reasonable to expect a school district to *substantially comply* with statutory requirements and its own personnel policies. *See McElroy v. Jasper Sch. Dist.*, 273 Ark. 143, 617 S.W.2d 356, 357-358 (1981); *Maxwell v. Southside Sch. Dist.*, 273 Ark. 89, 618 S.W.2d 148, 129 (1981). Strict compliance, however, is not necessary. *Roberts v. Van Burden Pub. Sch.*, 773 F.2d 949, 959 (8th Cir. 1985). Substantial compliance is consistent with the clear texts of the Arkansas Teacher Fair Dismissal Act, Ark. Code Ann. § 16-17-1501, which governs employment contracts for all licensed employees of school districts.[1]

In her Amended Complaint (Dkt. No. 31), Warren raises a breach of contract claim. Warren alleges that the PCSSD Board breached the terms of her employment contract when it did

---

[1] The Arkansas Teacher Fair Dismissal Act does not govern the employment of superintendents or assistant superintendents and is therefore not *per se* applicable to Warren. However, the statute clarifies the Arkansas Legislature's intent that school districts must only substantially comply with personnel policies to meet their contractual obligations to employees.

not conduct a formal evaluation of her performance as Interim Superintendent, as well as when it declined to grant her a preference in the hiring process for the Superintendent position. *Pl's Amend. Compl.*, ¶ 77, ¶ 80, ¶ 85. Neither of these allegations, however, are entirely accurate, nor do they establish a breach of contract claim.

Warren's contract to serve as Interim Superintendent began on July 18, 2017 and ended June 30, 2018, per her Interim Superintendent's Contract. *See* Dkt. No. 40-4. Warren served out the full term of her contract. Per Warren's own argument, PCSSD Board Policy 1.7P instructs that the Board "conduct formal and informal evaluations of the Superintendent annually or no less often than prior to any contract extension." *Pl's Amend. Compl.*, ¶ 80. Warren was not the Superintendent, but only an Interim. Board Policy 1.7P is not applicable to her. Furthermore, even in Warren's role as Interim Superintendent, she did not begin in the role until July 18, even after the start of the contract year had begun and following the abrupt termination of Dr. Guess. Consequently, Warren was not entitled to a formal annual review of her performance. This is consistent with the purpose of the policy, which is to evaluate the performance of the Superintendent *prior to any contract extension*, and Warren conceded she knew her appointment was only for an interim appointment. *See* Dkt. No. 27-1, p. 17 of 29 (Warren Depo.).

Furthermore, Warren *did* receive intermittent feedback on her performance at PCSSD Board meetings throughout her time as Interim Superintendent. *See* Dkt. No. 40-9, p. 70 of 78 (Remele Depo.) and Dkt. No. 40-10, p. 55 of 60 (Gillen Depo.). On occasion, when the Board met in Executive Session, Warren would be given oral feedback as to her performance. *Id.* These informal evaluations occurred intermittently throughout Warren's term as Interim Superintendent. As the Board did provide periodic, informal feedback, a breach of Warren's employment contract did not occur.

However, even assuming, *arguendo,* that the Board was under a contractual obligation to formally evaluate Warren's performance in her interim role as superintendent, she must prove damages as an essential element. *See Foreman Sch. Dist. No. 25*, 347 Ark. At 202 (2001). Any damage to Warren for the Board's alleged failure to give her a formal evaluation during her interim tenure was only a breach of her interim contract, at best, which was set to expire on June 30, 2018. Warren served in the interim role through June 30, 2018, at the pay listed in the interim contract, and thereafter returned to her previous position at her same rate of pay. The Board's alleged failure to provide her a formal evaluation caused Warren no damages as Interim Superintendent.

Warren next contends that, as an employee of PCSSD, she was entitled to a hiring preference when she applied for the position of Superintendent. *Pl's Amend. Compl.*, ¶ 76. She argues that the "Board's policy preference of promoting internal candidates over hiring equally qualified external candidates applied to the Board's process in selecting a Superintendent in 2018." *Id.* As a result, she argues, "the Board had a duty of substantial compliance with its declared policy to prefer internal candidates when selecting the three finalists and in selecting the person to be offered the position of Superintendent." *Id.* at ¶ 77.

The plain reading of the policy, Promotion and Transfer Policy ("Policy"), indicates it is not applicable to the role of Superintendent. The Policy reads:

> The general policy of the District is to employ the most able and best qualified persons with the proper credentials for all positions. However, PCSSD favors promotions from within so that where, in the *opinion of the administration*, ability, qualifications, and credentials of an existing employee are equal to those of an outside applicant, the existing employee will be favored for promotion.
>
> Normally this will be accomplished by licensed employees within the District being extended the advantage of first consideration for promotion.
>
> Vacant or new positions shall be advertised internally and externally *by the administration*. The *administration shall in its sole discretion* determine the minimum qualifications related to degrees, certifications, experience, and the like, for each position and clearly state the same in the written notice of

5

>vacancy.  Internal advertising will be by posting of vacancies within the various buildings and at the central office.  The duration of inside and outside advertising, and the media and targets for outside advertising, *will be determined by the administration*.  Deadlines for applying shall be clearly stated on the face of any advertisements or notices.
>
>All teachers are subject to assignment and transfer at the direction of the Superintendent.  Insofar as possible, teachers shall be assigned to positions for which they are best qualified.  Also, while keeping in mind the needs of students, the need to have a balanced faculty, and in the interest of efficiency and economy, reasonable effort shall be made to honor teacher preference in assignments.  When a tentative decision has been made to transfer a teacher to another school, he/she will be notified by the Superintendent or his or her designee.  When the tentative assignment involves changes within a building, the teacher will be notified by the principal.  In all transfer cases, every effort will be made to advise the teacher at the earliest possible time.

*See* Policy, Dkt. No. 40-7, p. 1 of 13 (emphasis added).

In the "opinion of the administration" language in the first paragraph, along with the other references to the administration's role in the Policy, is the operative language that clearly instructs the Policy is not applicable to the superintendent position.  It is the Board that selects a superintendent, not the administration.  It is the Board that determines the minimum qualifications for the superintendent, not the administration.  It is the Board that decides the advertising for the position, not the administration.  Instead, the administration is charged with interviewing and recommending for hire every other employee of PCSSD, but not the superintendent. The Arkansas General Assembly has made clear its intent that the school board selects the superintendent, and the process is different than any other employee of a school district.  *See* Ark. Code Ann. § 6-13-620.  The Policy cannot be applicable to the superintendent, as it would contravene the exclusive role of the Board to hire the position and would be an illogical reading of the policy.

Further support that the Policy is not applicable to the selection of a superintendent is located under the heading, <u>Promotion to Administrative Position</u>, which then references the "*Employment Guidelines for Above Entry Level Positions*."  The document discusses an interview committee for selecting administrative positions, which includes the appropriate assistant

6

superintendent and the immediate supervisor for the open position. Dkt. No. 40-7, p. 8 of 13. Yet, the superintendent is interviewed and selected by the Board, as was the case here. It is clear the Policy has no application to the search for a superintendent.

Members of the PCSSD Board also testified that the internal preference highlighted by Warren only applies to the hiring of certified staff, and not to the hiring of a Superintendent. *See* Dkt. No. 40-9, p. 57-58 of 78 (Remele Depo.) and Dkt. No. 40-10, p. 44 of 60 (Gillen Depo.). The Board's understanding of the Policy is consistent with its plain reading – it is not applicable to the superintendent.

As this Policy did not apply to the hiring process for a superintendent, the PCSSD Board could not, and did not, breach Warren's employment contract by declining to award her a preference.

## CONCLUSION

Dr. Warren was serving as the Assistant Superintendent for Equity and Pupil Services at PCSSD when she accepted the appointment as Interim Superintendent on July 18, 2017. The term of the contract was for one-year. In the Spring of 2018, the Board hired McNulty to serve as PCSSD's new Superintendent. His contract began on July 1, 2018. Upon Dr. McNulty's assumption of the role on July 1, Warren's tenure as Interim Superintendent naturally concluded as a matter of contract law. At this time, she resumed her role – and her salary – as the Assistant Superintendent for Equity and Pupil Services. At no point was Warren deprived of any provision granted to her under her one-year contract for Interim Superintendent, nor under her contract as the Assistant Superintendent for Equity and Pupil Services. As no benefit was withheld and no obligation unsatisfied, the PCSSD Board did not breach any element of either of Dr. Warren's employment contracts. As a breach did not occur, Warren could not, and did not, suffer damages. Consequently, her claim for breach of contract should be dismissed.

For the foregoing reasons, Defendants respectfully submit that they are entitled to judgment as a matter of law and that Plaintiff's Complaint be dismissed with prejudice.

Respectfully submitted,

BEQUETTE, BILLINGSLEY & KEES, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Phone: (501) 374-1107
Fax: (501) 374-5092
Email: jbequette@bbpalaw.com
Email: ckees@bbpalaw.com

By: _____**W. Cody Kees**_____
      W. Cody Kees, Ark. Bar #2012118
      Jay Bequette, Ark. Bar #87012