IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JANICE HARGROVE WARREN**                                                       **PLAINTIFF**

v.                                         No. 4:19-cv-00655-BSM

**CHARLES MCNULTY, et al.**                                                   **DEFENDANTS**

### PLAINTIFF'S SURREPLY AND MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COMES now the Plaintiff, Dr. Janice Warren, through her attorney, Sarah Howard Jenkins, PLLC, with her Surreply in opposition to Defendants' Motion for Summary Judgment and says herein and her accompanying Memorandum:

1. This Court may only grant summary judgment for the movant if they show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. Civ. Proc. Rule 56(a). The court should state on the record the reasons for granting or denying the motion. *Id.*

2. Defendants must provide a properly supported motion with *admissible evidence*. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986)(emphasis added); *Texas Department of Community Affairs v. Burdine* ("Burdine"), 101 S.Ct. 1089, 67 L.Ed.2d 207, 450 U.S. 248 (1981) (the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection)*Walling v. Fairmont Creamery Co.*, 139 F2d 318, 323 (8th Cir. 1943) (evidence must be admissible facts). Defendants have supported their motion with admissible evidence (Dkt. No. 43, p. 51-79; Dkt. No.40-45). Indeed, Defendants argue in their Reply that "PCSSD need only 'show that admissible evidence will be

1

available at trial.'" (Dkt. No. 48, p. 9).  Therefore, Defendants admit that a trial is necessary. More importantly, if Board members Remele and Gillen lacked personal knowledge when they generated their lists of accusations in 2017, how will they acquire personal knowledge of these events the week of November 16, 2020?  Their testimony and their writings are inadmissible for the purposes of Summary Judgment and inadmissible at trial.

       3.      Defendants assertion that their inadmissible evidence for Summary Judgment will become admissible at trial raises a question of the credibility of Defendants' primary witnesses, Linda Remele and Alicia Gillen.  Will they alter their testimony?  Credibility is an issue for the jury; this Court may not address the question of credibility for the purposes of Summary Judgment.  *Reeves v. Sanderson Plumbing, Prods. Inc.*, 530 U.S. 133, 134,147, 120 S.Ct. 2097 (2000).

       4.      Defendants argue that the Board's failure to follow its own policy does not support an inference of discrimination because the Board's Promotion and Transfer policy does not apply to the Board. (Dk. No. 48, p. 5-7).  Defendants' argument misses the mark.  Arkansas law mandates the incorporation of personnel policies governing licensed personnel into the terms of their contracts, including the contract of a superintendent.

> (a) The personnel policies of all school districts shall be considered to be incorporated as terms of the *licensed personnel contracts* and shall be binding on the licensed personnel and the school district.

Ark. Code Ann. § 6-17-204 (2018)(emphasis added).  Despite the title of Ark. Code Ann. § 6-17-204, "Incorporation into Teachers' Contracts," the statutory language mandates the inclusion of a district's personnel policies into every contract of licensed personnel.  *See also,* Ark. Code Ann. § 6-13-620(5)(A)(ii)(b)(2) (§ 6-17-301(a), Employment of Licensed Personnel (including

superintendents, deputy and assistant superintendents, high school principals, coaches, and teachers and others in the category of "licensed personnel"). Arkansas Code Annotated § 6-13-620, the statutory delineation of the powers and duties of a district's board, authorizes a board to hire a superintendent and directs a board to provide a contract that include the district's personnel policies. Ark. Code Ann. § 6-13-620 Powers and Duties (2018).

> (b) The employment contract shall:
>
> > (2) Incorporate all personnel policies adopted by June 30 to be in effect on July 1 of the following employee contract year, subject to the requirements and exceptions contained in §§ 6-17-204 and 6-17-205.

*Id.; See* Dkt. No. 40-31, p. 11, line 22 - p. 12, line 18, deposition of Paul Brewer, Assistant Superintendent for Personnel, School Year 2017-18 (PCSSD only has one set of hiring policies for certified employees).

When Dr. Warren applied for the position of Superintendent, her employment contract as Interim Superintendent included PCSSD's personnel policies that granted her a hiring preference. PCSSD's Board had a duty to substantially comply with its own policies. Regardless of the "body," department, or division that has the responsibility of "administrating" the processes of hiring for PCSSD, the contract rights of certified employees had to be honored. These rights aren't nullified by the fact that PCSSD's Board rather than HR is tasked with making the hiring decision. The Board's failure to adhere to its own policy provides an inference of discrimination.

5. Defendants assert its failure to pay Dr. Warren equal pay was justified because she was not similarly situated to her comparators (Dkt. No. 58, p. 8). Their argument is unpersuasive. An employer has the burden of proof that a differential in pay, 9% here, was within a recognized exception to the Equal Pay Act, *Corning Glass Works v. Brennan*, 417 U.S.

[1]

188, 94 S. Ct. 2223, 41 L. Ed. 2d 1 (1974), or under Title VII, *Washington Cty. v. Gunther*, 452 U.S. 161, 101 S. Ct. 2242, 68 L. Ed. 2d 751 (1981).  Defendants seek to justify their disparate treatment of Dr. Warren on three reasons:  1) she was not the permanent superintendent but a "placeholder;" 2) her predecessor's contract, Dr. Guess, was negotiated by Commissioner Key when PCSSD was under State control and not the Board; and 3) she could return to her job.  None of these excuses establish a difference in the work expected to be accomplished, the skill needed, the effort required, the responsibility imposed, or the work conditions.  *Corning*, *supra*.  These are legitimate bases for pay differentials.  Title is not a distinction.

The evidence substantiates that Defendants excuses are a pretext for discriminatory conduct.  First, PCSSD's Board of Education is a legal entity a public corporation with powers, duties, and privileges created by State law and not the individual members.  Ark. Code Ann. §§ 6-13-101, -102.  From 2011 through 2017, PCSSD offered and paid Dr. Guess an annual salary of $215,000.  While under State control, the Commissioner of Education supervised PCSSD's superintendent but at all times PCSSD was the obligated party in the contractual relationship not the Commissioner (Dkt. No. 40-59).  PCSSD held the right to terminate Dr. Guess' contract on 30 days-notice (Dkt. No. 40-59).  PCSSD through its Board offered and paid Dr. McNulty $215,000 in 2018 (Dkt. No. 40-36).  The legal entity not the individual members was the responsible party.

Although the Defendants call her "a placeholder," Dr. Warren was obligated to assume all the powers and duties vested in the position by applicable laws, regulations, and Board Policy (Dkt. 40-4, ¶ 1).  Dr. Warren had full authority with regards to the operation of the District, the educational program, and all other matters (Dkt. 40-4, ¶ 3).  She fulfilled these obligations and more.  Board member Keller, praised the ease of transition and successful opening of the 2017

1

1

school year (Dkt. No. 55, p. 9). Dr. Warren's leadership provided stability and encouragement to a staff rocked by the termination of their six-year leader approximately 30-days before the start of the school year. In addition to the day-to-day administration of a district with 12,000 students, Dr. Warren worked with Attorney Jones not only with regards to the discriminatory conduct in facilities but also the overarching 36-year discrimination case. She commenced monthly special gatherings of Central Office staff to build morale and encourage the productive relationships among staff. She worked with HR and the testing coordinator on the issues surrounding testing. Personnel relaxed and were confident of fair treatment with Dr. Warren leading the District. Dr. Janice was not a placeholder but a functioning, vibrant, and effective leader of PCSSD. At her appointment as Interim Superintendent, staff were elated and morale soared; "Employees felt valued, appreciated, and more importantly felt they could communicate concerns and ideas with fear of being reprimanded or terminated." (Dkt.40-56)

Returning to her position as Assistant Superintendent for Equity and Pupil Services, a contract subject to annual renewal, was not substantially dissimilar from the rights held by both Guess and McNulty if terminated without cause. Both were subject to termination on 30 days-notice; Dr. Guess would be compensated for six-months (Dkt. 40-59) but Dr. McNulty would be compensated for 12-months (Dkt. No. 40-36, ¶ 14). The Defendants fail to establish an acceptable justification for Dr. Warren's disparate treatment in compensation. It was a pretext for discrimination.

6. Defendants again cross the line on their discussion of facilities. This matter will be addressed in a Motion in Limine.

7. This Court may only grant summary judgment if "'the moving party has established his right to a judgment with such *clarity* as to leave no room for controversy and the

non-moving party is *not* entitled to recover under any discernible circumstances.'" *LeCroy v. Dean Witter* Reynolds, Inc, 585 F.Supp. 753 (E.D. Ark. 1984) (emphasis added), *quoting*, *Butler v. MFA Life Insurance Co*., 591 F.2d 448, 451 (8th Cir.1979).  Defendants have not met this test.

8. Plaintiff has demonstrated material questions of fact:  1) Defendants failed to point to admissible evidence in the record to support its motion*; Celotex, supra., Burdine, supra.,* and *Wall, supra.*; 2) the Defendants' explanation or reasons, the purported legitimate nondiscriminatory reasons are unworthy of credence; a reasonable jury could disbelieve the purported legitimate reasons put forth by the Defendants; 3) Dr. Warren established a prima facie case that is sufficient to establish intentional discrimination,  *Reeves v. Sanderson Plumbing, Prods. Inc.*, 530 U.S. 133, 134,147, 120 S.Ct. 2097 (2000); and 4) Dr. Warren's evidence should persuade this Court that a discriminatory reason more likely motivated the PCSSD rather than the excuses the Defendants have asserted, *Wallace v. DTG Operations*, 442 F.3d 1112 (8th Cir. 2006), *citing*, *Burdine*, *supra*.

Wherefore, for these reasons and those articulated in Plaintiff's Response to the Defendants' Motion for Summary Judgment, this Court must deny Defendants' Motion for Summary Judgment.

Respectfully submitted this 2nd day of October 2020,

    Sarah Howard Jenkins
    AR Bar No. 97046
    SARAH HOWARD JENKINS, PLLC
    P.O. BOX 242694
    Little Rock, AR 72223
    Telephone No. (501) 406-0905
    sarah@shjenkinslaw.com
    Attorney for the Plaintiff

1