**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**JANICE HARGROVE WARREN**                                                    **PLAINTIFF**


**v.**                                    **No. 4:19-cv-00655-BSM**


**CHARLES MCNULTY, et al.**                                                **DEFENDANTS**


**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* REGARDING
FACILITIES**

**FACTUAL BACKGROUND**

Less than 40 days after her appointment as Interim Superintendent, Dr. Warren reported

to PCSSD's attorney, Sam Jones, and the Board that video footage revealed that PCSSD had

engaged in racially discriminatory conduct in constructing the District's facilities in

predominately White versus predominately Black communities. PCSSD's attorney reported the

discriminatory practices to Chief U.S. District Judge Price Marshall in a status report on

September 5, 2017.  On September 8, 2017, Judge Marshall requested the Court Expert, Margie

L. Powell, to report on the equality of construction of the Mills *High* School ("Mills") and

Robinson *Middle* School ("Robinson") sports facilities.  During this time frame, Derek Scott, the

Executive Director of Operations who oversaw the maintenance and construction of the District's

facilities, tendered his resignation to, then, Interim Superintendent Janice Warren.

In March of 2018, Dr. Warren applied for the permanent position of PCSSD

Superintendent.  She was included among the group of nine top candidates by the educational

search firm that conducted the superintendent search.  However, the Board did not offer Dr.

Warren the opportunity to interview as a finalist.  As stated in her complaint filed on October 23,

1

2019, the Board denied her, a qualified employee, the right to interview in retaliation of her notice to the PCSSD's attorney and the Federal Court of Derek Scott's discriminatory construction of Mills and in violation of her protected statuses as a Black person and a female.

On February 17, 2020, the individual defendants served their Responses to Dr. Warren's First Request for the Production of Documents. Among the documents were two unsigned and undated documents. One asserted that Dr. Warren is "partially responsible for any disparity in the building of Mills" (Dkt. No. 40-65). The other contained the following statement: "None of this facilities [sic] would be over budget would [sic] have happen [sic] if she would have done her job in Equity Services" (Dkt. No. 40-70).

Judge Marshall set the trial of Mills' discriminatory construction for July 14, 2020. In preparation for that trial, Intervenors deposed Dr. Warren on April 8, 2020. At the end of her four-hour deposition, Austin Porter, attorney for the Intervenors, questioned Dr. Warren's monitoring of facilities as Assistant Superintendent of Equity and Pupil Services. Those questions were her first notice that her performance was an issue in that case (Action #1). PCSSD is a corporate body that acts by and through its Board, cabinet, and employees. Ark. Code Ann. §§ 6-13-102, -109 (school superintendent), -118 (disbursing officer), -653 (board review and approval of salary increases). Consequently, the performance of Derek Scott, PCSSD's Executive Director of Operations, other cabinet members, and administrative personnel was the subject of the July 14th trial.

PCSSD's leaders have a reputation for retaliating against its employees (Dkt. Nos. 40-56 (teacher's letter), 40-69 (redacted letter)). Dr. Warren sought to protect her reputational interest and that of other administrative personnel to continue their employment and to prevent the

blemishing of their employment records.  Dr. Warren wanted to ensure that the findings of fact in *LRSD v. PCSSD* (Action #1) could not be used as defenses against her in this case (Action #2).

Dr. Warren believed that given the effect of the principles of collateral estoppel, disposing of *LRSD v. PCSSD* (Action #1), whether by judgment or consent decree, might impair or impede her ability to protect her rights in this case (Action #2).  The disposing of *LRSD v. PCSSD* (Action #1) might also impair Dr. Warren's employment rights and interests and the rights and interests of other cabinet members and administrative personnel.  Indeed, it was the possibility that a consent decree with agreed to findings of fact adverse to innocent administrative personnel might inflict the greatest harm to the direct and substantial employment rights of nonparty-cabinet members and administrative employees, including Dr. Warren. *Coates v. Kelley*, 957 F.Supp. 1080, 1086 (E.D. Ark 1997) (determining that the Eighth Circuit Court would embrace the application of collateral estoppel from a consent decree based on a finding that the parties agreed to preclude future litigation by the parties and those in privity with the parties).

In denying Dr. Warren's Motion to Intervene in *LRSD v. PCSSD*, Judge Marshall observed that PCSSD, in its briefing, was clear that it did not intend to blame Dr. Warren for the inequities that resulted in Mills' construction (Dkt. No. 40-2, p. 3).  If PCSSD disagreed with Judge Marshall's findings of its position, PCSSD did not attempt to correct Judge Marshall's order or that finding of fact as permitted by Fed. R. Civ. Pro. 60(b)(6).  Relying on PCSSD's representations in its briefing and its subsequent conduct, Dr. Warren did not appeal Judge Marshall's denial of her Motion to Intervene.

PCSSD now seeks to survive its own Motion for Summary Judgment by raising in this case, contrary to its briefing in *LRSD v. PCSSD*, the issue of Dr. Warren's performance as

Assistant Superintendent for Equity and Pupil Services ("Assistant Superintendent") and her duty to monitor facilities as required by Plan 2000. Employing this tactic violates the both the integrity of judicial system and principles of good faith and equitable conduct.  PCSSD's assertion, in this case, of any allegation that Dr. Warren is responsible for the construction inequities between Mills and Robinson or that she failed to monitor facilities as part of Plan 2000 must be barred by the doctrines of judicial estoppel and equitable estoppel.

        1.      PCSSD's assertions are barred by principles of judicial estoppel.

Judicial estoppel is an equitable doctrine designed to protect the integrity of the judicial process by prohibiting parties from *deliberately* changing positions according to the exigencies of the moment. *New Hampshire v. Maine*, 532 U.S. 742, 749-50, 121 S.Ct. 1808 (2001)(New Hampshire asserted an inconsistent position on the location of its boundary with Maine from that asserted in a 1977 consent decree and judgment); *Jones v. Bob Evans Farms, Inc.,* 811 F.3d 1030, 1033 (8th Cir. 2016); but see *Gray v. City of Valley Park, Mo*., 567 F.3d 976, 981–82 (8th Cir. 2009) (recognizing judicial estoppel and declining to apply judicial estoppel because the change in position questioned the Court's jurisdiction).  "[J]udicial estoppel prevents parties from 'playing fast and loose with the courts.'" *New Hampshire*, *supra,* 750, 121 S. Ct. at 1814–15, 149 L. Ed. 2d 968 (2001).  In *New Hampshire, supra,* the State of New Hampshire entered a consent decree in 1977 with the State of Maine, agreeing that New Hampshire's boundary with Maine was located in middle of the Piscataqua River's main navigable channel.  *New Hampshire, supra,* at 742, 121 S. Ct., at 1810 (2001).  Thereafter, in 2001, New Hampshire asserted that its boundary with Maine rested on Maine's shoreline.  *Id.*  The State of Maine filed a motion to dismiss New Hampshire's complaint.  The U.S. Supreme Court granted Maine's motion, ruling

that New Hampshire was barred by the doctrine of judicial estoppel from asserting a position contrary to that taken in the 1977 action.  *Id.*, at 755.

Recognizing that judicial estoppel is a flexible, equitable principle, the U.S. Supreme Court identified several factors that inform the decision to apply the doctrine in a particular case: (1) whether a party's later position is inconsistent with its earlier position; (2) whether the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding creates the perception that either the first or the second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *New Hampshire*, *supra*., at 750-51, 121 S.Ct., at 1808.

> a.      PCSSD's position in this case is inconsistent with the position taken before Chief Justice Marshall in *LRSC v. PCSSD*.

Contrary to its briefing in *LRSC v. PCSSD*, the Defendants in their Statement of Facts in this case seek to blame Dr. Warren by asserting that she had a duty to monitor facilities under Plan 2000 but was unaware of the inequities in construction until notified by an irate parent (Dkt. No. 29, p.1, ¶ 3).  Here, the Defendants invite this Court to infer that Dr. Warren had a duty to discover the inequities and failed to discover the inequities.

> (1).  Inconsistent Position:  *LRSD v. PCSSD*

The question set for trial July 14, 2020, was PCSSD's unitary status.  PCSSD asserted its good faith and substantial performance of Plan 2000, which included Dr. Warren's performance of her duties as Assistant Superintendent. (See Exhibit 1, PCSSD's Motion for Unitary Status, Doc. 5533*, LRSD v. PCSSD*.)  Intervenors argued that PCSSD had not produced evidence of effective good faith compliance with Plan 2000. (See Exhibit 2, Doc. 5543, at 12*, LRSD v. PCSSD*.)  PCSSD sought Judge Marshall's determination of its substantial performance of its

duties under Plan 2000, including its duty of Monitoring (Exhibit 1, p.8, § IV, PCSSD's Motion for Unitary Status).  The Intervenors sought a determination of PCSSD's noncompliance with Plan 2000, remedies for the breach of Plan 2000 and the resulting inequities, and continued supervision by that Court.  There were three issues before that Court:  1) has PCSSD substantially performed its obligations under Plan 2000, 2) if not, why not, and 3) should remedial relief be granted.

As a corporate body, PCSSD's performance occurred through the efforts of its cabinet members, administrative personnel, and employees.  In her motion to intervene, Dr. Warren asked the Court to determine and declare that she and other innocent cabinet members and administrative personnel substantially performed their duties under Plan 2000.  She wanted Judge Marshall to declare the findings he made in reaching its conclusion that PCSSD had or had not substantially performed Plan 2000.  Dr. Warren sought to protect herself and other innocent nonparty cabinet members and administrative employees from a judgment or consent decree that failed to reflect their good faith substantial performance as distinguished from the misappropriation or misapplication of State funds by the wrongdoers.  The omission of findings regarding the good faith substantial performance and innocent, cabinet members, and administrators created an imminent risk of reputational injury and retaliation for Dr. Warren and her colleagues.

Dr. Warren argued in her Motion to Intervene, that her interests and PCSSD's interests were adverse.  PCSSD could not represent her interests.  If she was responsible for the inequities, as the White female Board members asserted in their unsigned and undated documents, how could PCSSD defend Dr. Warren in defending its substantial performance.  In its opposition to Dr. Warren's intervention in *LRSD v. PCSSD*, PCSSD argued that Dr. Warren had not

established that her interests were not adequately represented.  The resulting inferences from PCSSD's position, as demonstrated in Judge Marshall's order, were: 1) PCSSD adequately represents Dr. Warren's interest in defending PCSSD's performance of Plan 2000; and 2) PCSSD is not blaming Dr. Warren for the inequities in Mills' discriminatory construction.  To blame her, PCSSD would acknowledge that it had not performed its duty of monitoring and its duty regarding facilities.  In defending its performance, PCSSD ratified Dr. Warren's performance.  Dr. Warren performed her obligations with excellence.  Indeed, the Court's Expert observed the significant impact of Dr. Warren's performance on the reversal of PCSSD's stagnant development before Dr. Warren's arrival and, thereafter, its positive strides toward unitary status (Dkt. No. 40-1).

> b.      Inconsistent Position: *Warren v. McNulty*

In this case, Defendants argue that Dr. Warren did not perform her obligations under Plan 2000.  PCSSD seeks to blame her for the construction inequities.  Defendants assert:

(1).      "Dr. Warren's *role Assistant Superintendent for Equity and Pupil Services including monitoring all phases of Plan 2000* of the District's desegregation plan, which included the District's obligations as to facilities" (Dkt. 29, Undisputed Material Facts, p. 1, ¶ 3)(emphasis added).

(2).      "As the District's Equity Officer, Warren *bore the ultimate responsibility for monitoring* all desegregation efforts undertaken in regard to facilities, just as she did for the other five areas under Plan 2000" (Dkt. No. 48, Defendant's Reply, p. 12, ¶1)(emphasis added).

(3).      *She did not*, at any point, however, meet with Mr. Scott personally to view building plans, walk through the joint budget for the two projects, or critique either building's

compliance with Plan 2000. (Dkt. No. 48, Defendant's Reply, p. 12, ¶2, inviting an inference that Dr. Warren had a duty to meet with Derek Scott personally and did not do so)(emphasis added).

(4).   "*[T]he first time Warren expressed interest in viewing the progress* being made at either campus was only after receiving an irate phone call from a parent about the glaring differences between the newly constructed Mills High School and Robinson Middle School. (Dkt. No. 48, Defendant's Reply, 12, ¶2, inviting an inference that Dr. Warren had a duty to visit the construction site and did not do so).

PCSSD's position changed in this case.  Here, Defendants assert:  Dr. Warren you are ultimately responsible for knowing the status of the construction of Mills.  You had a duty to meet with Derek Scott and to inspect the construction site. PCSSD's position in *LRSD v. PCSSD* is distinguishable:

> We substantially performed as required by Plan 2000, including our obligation to monitor facilities. Dr. Warren, we are defending your performance.

PCSSD cannot have it both ways. The doctrine of judicial estoppel bars the assertion of two contrary positions.

b.   PCSSD misled Judge Marshall.

Judge Marshall accepted PCSSD's briefing, including defense counsel's Rule 11(b)(1) certification, and considered the lack of a risk of harm to Dr. Warren as part of his analysis of Dr. Warren's right to intervene.

> She [Dr. Warren] is correct that some questions at her late-April deposition suggested that she may be partly responsible for any PCSSD failings on Mills and Robinson. Some papers produced in discovery from two Board members blame

her. In the briefing, however, PCSSD is clear that it does not intend to blame Dr.

Warren . . . .

(Dkt. No. 2, p. 3.) PCSSD's position was accepted; PCSSD was successful in *LRSD v. PCSSD*.

Judge Marshall denied Dr. Warren's motion to Intervene.  *See Jones v. Bob Evans Farms, Inc.,*

811 F.3d 1030, 1033 (8th Cir. 2016) (district court upheld on its application of judicial estoppel,

debtor was successful in the first action when its unsecured creditors' claims were dismissed).

Now, contrary to its position in *LRSD v. PCSSD,* PCSSD takes an inconsistent position in

this proceeding.  Defendants' conduct creates the perception that Judge Marshall was misled by

PCSSD regarding its intention on the question of holding Dr. Warren responsible for the

inequities in Mills' construction.

   c. Defendants goal of placing blame here results in an unjust
    advantage in *LRSD v. PCSSD* here and is prejudicial to Dr. Warren.

Having misled Judge Marshall, PCSSD reaped an unjust benefit in *LRSD v. PCSSD* and

now seeks to extract a benefit here from its contrary position in this case.  Having persuaded

Judge Marshall that Dr. Warren was not at risk, PCSSD only faced the Intervenors in *LRSD v.*

*PCSSD*.  The Intervenors' action against PCSSD in *LRSD v. PCSSD* was based on breach of

contract.  The Intervenors' goal was limited to demonstrating that PCSSD had not adhered to its

good faith obligation to construct Mills in a nondiscriminatory manner and to establish PCSSD's

failure to invest $50,000,000 on the construction of an equal facility for the Mills community as

required by that Court. PCSSD's breach was not only patent but well documented before the trial

in that case.  (Dkt. No. 31-3, Margie Powell's November 2017 report to the Court; Dkt. No. 31-2,

Arkansas Democrat Gazette article). Dr. Warren was the only potential plaintiff in that case

whose goal exceeded merely confirming the breach but also examining the cause, the racial

animus demonstrated, and manner of the breach.  Furthermore, PCSSD did not have to air fully

"It's dirty laundry" before Judge Marshall and address the racial animus and discriminatory conduct of some of its leaders.  Dr. Warren acquiesced to PCSSD asserted position that she was not a risk by foregoing her right to appeal Judge Marshall's order.

This Court should be able to rely on defense counsel's Rule 11(b)(1) certification that Defendants' Statement of Facts and their Reply are not presented for an improper purpose.  Fed. R. Civ. Pro. 11(b)(1).  But,that is not the case. This Court is being misled as well.  Defendants are asserting a position inconsistent with that taken in *LRSD v. PCSSD* in violation of the policy goal of judicial integrity.  The Defendants have not disclosed to this Court their contrary position in *LRSD v. PCSSD* nor responded to Dr. Warren's Objection in her Response to the Defendants' Undisputed Facts (Dkt. No. 42, ¶ 3).  More importantly, Defendants did not raise Dr. Warren's performance as Assistant Superintendent in its Motion for Summary Judgment and Brief in Support but waited until its Reply to raise the issue, seeking to create a dispute in order to survive its own Motion for Summary Judgment.  PCSSD's assertion of facts regarding Dr. Warren's performance in monitoring District facilities as Assistant Superintendent in its Reply is an attempt to move for summary judgment after the dispositive motion's deadline.  Defendants must be estopped!  This Court should apply the doctrine of judicial estoppel to protect the integrity of the judicial processes in the United States District Court for the Eastern District of Arkansas. PCSSD's has been inconsistent in its litigation and its conduct is duplicitous. Its position in *LRSD v. PCSSD* was accepted and PCSSD reaped an advantage there.

In their Reply, Defendants, with notice that their conduct *sub judice* was inconsistent with that taken in *LRSD v. PCSSD*, went beyond the scope of their Motion for Summary and Brief in Support and enlarged their accusations of blame against Dr. Warren.  Reply (Dkt. No. 48, p. 11, ¶ 2 through p. 12, lines 1-14).  Defendants failed to adhere to Fed. R. Civ. Pro.

10

56(c)(1)(A) when they provided only a portion of Dr. Warren's deposition.  Rule 56(c)(1)(A) requires a party to provide the whole of a deposition or document and to cite to that portion of the whole that is relevant.  *Id.*  Here, Defendants not only failed to provide the whole of Dr. Warren's deposition but also omitted a material part of Dr. Warren's testimony when she discussed her reason for not seeking private meetings with Derek Scott or reviewing building plans or joint budgets, even if one assumes monitoring required those actions.  In pertinent part, she states:

> 0063
>
> 1 Q  Okay. So, I was asking if you did anything
>
> 2 outside of obtaining these reports to learn of the
>
> 3 status of the facilities?  That was my question.
>
> 4 A  No. Because everything that I thought I needed
>
> 5 to know was being reported in regard to Plan 2000 from
>
> 6 every department head who was in charge of that
>
> 7 department.  So, he was making his reports as he was
>
> 8 supposed to based on the Plan 2000, and then the
>
> 9 monitoring plan that was approved Plan 2000, Shawn did
>
> 10 staffing, Sherman did discipline. So, we all made
>
> 11 these Monday reports in regard to our particular area.
>
> 12 And then, in addition to that, Derek made a monthly
>
> 13 report to the Board. So, I'm getting weekly reports
>
> 14 on each area, as well as monthly.

15 Q   Yes.  Weekly reports in the Cabinet meeting?

16 A   Yes.

17 Q   Monthly reports?

18 A   Board meeting.

19 Q   Did anything that was reported by Derek Scott in

20 either the Board meeting or the Cabinet meetings give

21 you concern about the district's obligations as to

22 Facilities?

23 A   No.

Dkt. No. 40-12, p. 63, lines 1-23; see also Dkt. 40-12, pp. 63-68. PCSSD has consistently

asserted its adherence to Plan 2000. See, e.g., Exhibit 3, Minutes of May 27, 2015, Bi-monthly

Monitoring Meeting (attendees: Court representative Margie Powell, Joshua Intervenors

representative Joy Springer, ADE representatives Willie Morris and Aleta Fletcher, and attorneys for

PCSSD and JNPSD); Exhibit 4, PCSSD's Status Report Regarding Facilities, *LRSD v. PCSSD*,

Dkt. No. 5170, ¶ 9, filed 12/02/15 (updating the Court on the numerous meetings regarding the

construction process including Plan 2000).  PCSSD cannot change its position now because of

the "exigencies of the moment."  *New Hampshire, supra*.  Defendants are playing fast and loose

with the Courts.

    2.      PCSSD's conduct in *LRSD v. PCSSD* subjects Defendants to the doctrine of equitable estoppel.

Equitable estoppel or estoppel *in pais* is an equitable doctrine that bars the alleging of

facts or a state of facts because of previous allegations or previous conduct or in consequence of

a final adjudication.  See generally, Black's Law Dictionary (3rd ed. 1933).  Both federal and

state law recognize the doctrine of equitable estoppel.  If the application of the doctrine is

asserted in the litigation of federal statutory rights, the federal doctrine applies. *In re Wertz*, 557 B.R. 695, 705 (Bankr. E.D. Ark. 2016).  Pursuant to federal equitable estoppel, "the party requesting the estoppel must show that the defendants have engaged in 'affirmative conduct . . . that was designed to mislead or was unmistakably likely to mislead' a plaintiff." *Bell v. Fowler*, 99 F.3d 262, 268-69 (8th Cir.1996).  Intent is a necessary element of equitable estoppel under federal law; the defendant must intend to mislead the plaintiff.  *Dring v. McDonnell Douglas Corp.,* 58 F.3d 1323, 1329 (8th Cir.1995) (defendant must have engaged in a "deliberate design" that "lulled or tricked" the plaintiff); *In re Wertz, supra,* at 706.  The party asserting equitable estoppel must rely or change position because of the other's conduct.

        a.    PCSSD engaged in affirmative conduct designed to mislead Dr. Warren.

PCSSD's briefing led Chief Justice Marshall to believe Dr. Warren was not at risk of being blamed for the inequities in the Mills' construction.  Judge Marshall's order was issued on July 2, 2020.  PCSSD had a reasonable time before the July 14th trial to move the Court to correct its order by clarify its opposition to Dr. Warren's performance as Assistant Superintendent but it did not.  Fed. R. Civ. Pro. 52(a)(6), 54(b) or 60(b)(6); *see, e.g. Holmes v. United States*, 898 F.3d 785, 792 (8th Cir. 2018)(Rule 60(b)(6) relief is only available if exceptional circumstances deny the moving party a full and fair opportunity to litigate his claim and prevent the moving party from receiving adequate redress); *Rogers v. Frank, 972 F.2d 354* (8th Cir. 1992) (Fed. R. Civ. P. 52(a): the district court's findings of facts may be reversed only if they are clearly erroneous); *Planned Parenthood of Arkansas & E. Oklahoma Inc. v. Gillespie*, No. 4:15-CV-00566 KGB, 2018 WL 6252499, at *1 (E.D. Ark. Sept. 24, 2018)(the exact standard applicable to the granting of a motion under Rule 54(b) is not clear, though it is

typically held to be less exacting than a motion under Rule 59(e), which is in turn less exacting than the standards enunciated Rule 60(b)).

    b.  Dr. Warren did not appeal Chief Justice Marshall's order.

  Dr. Warren had a right to appeal Judge Marshall's denial of her Motion to Intervene. Judge Marshall's order characterized PCSSD's briefing as establishing no intention to blame Dr. Warren for the inequities in the Mills construction.  PCSSD did nothing to correct Judge Marshall's finding of its lack of intent to blame Dr. Warren.  PCSSD's acquiescing to Judge Marshalls' finding induced Dr. Warren's decision to forego an appeal because of PCSSD's briefing.  Therefore, PCSSD and its Board must be barred from asserting as a defense or otherwise Dr. Warren's performance as Assistant Performance.

    c.  Dr. Warren's reliance was reasonable.

  A party invoking equitable estoppel doctrine must show a change of position in reasonable reliance on the other party's misleading representation. *Walker v. Trinity Marine Products, Inc.*, 721 F.3d 542 (8th Cir. 2013).  Here, PCSSD sought to bar Dr. Warren's intervention and in its briefing led Judge Marshall to believe that Dr. Warren's interests were adequately represented. Judge Marshall accepted PCSSD's position. PCSSD did not seek to modify or correct Judge Marshall's finding that PCSSD did not intent to blame Dr. Warren. PCSSD's failure to seek relief was conduct that induced Dr. Warren's decision to forego appealing Judge Marshall's order. The issue of PCSSD's substantial performance in *LRSD v. PCSSD* and the pendency of this case entailed significant responsibilities and liabilities. Unless it was playing fast and loose with the courts, PCSSD could not lightly dismiss Judge Marshall's findings. Dr. Warren's reliance was reasonable.

CONCLUSION

Defendants must be estopped!  The integrity of the judicial processes requires it and Plaintiff's reliance demands it.  As demonstrated, the factors of judicial estoppel "firmly tip the balance of equities in favor of barring" the Defendants' assertion of an inconsistent position in this case to the position recognized by Judge Marshall in *LRSD v. PCSSD*.  *New Hampshire, supra.,* 751, 121 S. Ct. at 1815 (2001).  Having benefited from its position in *LRSD v. PCSSD* that PCSSD would not blame Dr. Warren for the inequities in the Mills' construction, PCSSD and its Board may not do so in this case without harming the perception of judicial processes in the United States District Court in Eastern District of Arkansas and Dr. Warren's reliance.

> Respectfully submitted this 14th day of October 2020,
> Sarah Howard Jenkins
> Ark. Sup. Ct. Reg. No. 97046
> SARAH HOWARD JENKINS, PLLC
> P.O. Box 242694
> Little Rock, AR 72223
> Telephone: (501) 406-0905
> Email address:  sarah@shjenkinslaw.com
> Attorney for Plaintiff

15