IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

LITTLE ROCK SCHOOL DISTRICT                               PLAINTIFF

v.                         CASE NO. 4:82CV866DPM

PULASKI COUNTY SPECIAL
SCHOOL DISTRICT, ET AL.                                   DEFENDANT

EMILY MCCLENDON, ET AL.                                   INTERVENORS

Intervenors' Response to PCSSD's Notice of Unitary Status

Intervenors Emily McClendon, et al., by and through their attorneys **Austin Porter Jr., d/b/a PORTER LAW FIRM**, **John W. Walker, P.A.**, and Robert Pressman, for their Response to the Notice Regarding Unitary Status as filed by JNPSD, state the following:

[A.] Discipline

PCSSD begins generally by asserting that "several initiatives and systems have been implemented . . ." and that its "primary focus is to reduce discipline and eliminate the disparity." [**Doc. # 5533 at 1**]. PCSSD then proceeds to more than two pages of assertions regarding particular initiatives and systems. "Several initiatives" became approximately 20 claimed initiatives. [**At 2-3**].

The District refers to its "Annual Discipline report(s)" which it describes as "[including] discipline data, including in-school suspensions, data analysis and recommendations." [**Doc. # 5533 at 2**]. This is a description of only a small part of the



information included in a complete version of the report (meaning the version containing more than the "Discipline Summary"). Omission encompasses the data permitting identification of racial disparity, by school and the District as a whole, for each form of discipline. Inclusion of enrollment by race, separately by gender, is a key factor. This data allows identification of disparity. The gender numbers are needed; disparity at times differs by gender. Another feature, the Report identifies for each form of discipline the number of group members subject to one or more instances of a technique and the total uses of the technique. In short, the report can be used to evaluate the asserted two dimension "primary focus." Intervenors will perform analyses based on multiple annual reports.

Two initiatives are "multiage classrooms for elementary students" and "alternative learning classrooms for secondary students." [**At 3**]. Intervenors will address assignment criteria, school locations, programming, duration of assignments, and racial make-up.

Many other initiatives are said to produce documents. Documentary discovery and efforts to assess implementation, its duration, and consistency from school to school are appropriate steps. Methods will be found to test other assertions. *See* <u>LRSD v. State of Arkansas,</u> 664 F.3d 738, 749, 750, 751 and *passim*+ (8th Cir. 2011) (repeated emphasis on actual implementation of Plan 2000 requirement).

The District includes excerpts from the "Comments" section of the Court expert's report. [**Doc. # 5533 at 1-2**]. Intervenors did not have the opportunity to provide input,

2

to be considered for possible inclusion in this report. Intervenors plan to identify the expert's request for information to the District on this topic and to secure a copy of all documents provided to the expert by the District. Intervenors will request an interview opportunity to learn other elements of the process followed in preparing the report and to discuss its content. One wonders, for example, how many of the claimed documents evidencing implementation the Court expert examined.

The District identified eliminating disparity in discipline as one focal point. It is noteworthy that neither the District's notice, nor the expert's report discusses disparity in a manner taking account of enrollment for each racial group. Consideration of enrollment is necessary to permit comparison of discipline rates.

[B.] Achievement

PCCSD expresses its belief in its unitary status, claiming "[compliance] in good faith with the requirements of Plan 2000 and the goals of the Ross plan." It asserts "a structured, systemic and targeted instructional approach that positively affects achievement for all students while specifically targeting African American students to reduce the performance gap with their non-black peers." [**Doc. # 5533 at 4**]. The text then identifies approximately 22 "approach[es]." There are four references to a 2019-20 activity; one of these relates to the AVID program, mentioned at three points in this section. [**At 5, 6, 6-7**]. Several months of implementation cannot "prove a long-term good-faith commitment to the requirements of the plan." LRSD v. State of Arkansas, 664 F.3d at 755 (citation omitted)." Intervenors will identify ways to assess actual

3

implementation of the programs identified, including the duration element.

There are two references to the Donaldson program. [At 6, 7] Intervenors will assess PCSSD's implementation efforts regarding the program.

There is no reference to data bearing on the existence and the extent of the achievement gap. Intervenors will conduct discovery and other information gathering on this topic. See LRSD v. State of Arkansas, 664 F.3d at 756-57.

[C.] Facilities; PCSSD's Notice and Intervenors' Planned Efforts

The PCSSD facilities section is brief, one and one-third total pages, with approximately one-third devoted to the period of State control. [**Doc. # 5533 at 7-8** (Oct. 24, 2019)]. For this roadmap segment, three matters discussed by PCSSD in its sixth facility report and here warrant discussion.

*First*. The following text, with no reference to the old ROTC Building at Mills, appears in the sixth PCSSD facility report [Doc. 5522 at 1 (Sept. 30, 2019):

> The architects have completed some preliminary design recommendations for additional classroom programming at Mills High School. While the administration has a recommendations of the options presented [sic], it may prove prudent to conduct additional evaluation and receive public and patron input before publishing these new concepts.

The District suggests, somewhat tentatively, future explanation of this work. [**Doc. # 5522 at 2**].

The PCSSD notice memo includes this sentence [**Doc. # 5533 at 8** (Oct. 24, 2019)]:

> However, there is much additional information to present to the Court at the

4

appropriate time as to why PCSSD believes it to be unitary in facilities.

The PCSSD notice memo then states regarding new Mills High [**Doc. # 5533 at 8**]:

> The Mills High School project is substantially complete except for final decisions as to whether or not to convert the current ROTC Building to a new facility to house special programs.

Using this "roadmap," Intervenors might well get lost. The first quotation might encompass a substantial additional effort at new Mills High. The second quotation expresses a secret. The third quotation refers only to the ROTC Building. Intervenors do not understand PCSSD's plan.

*Second*. PCSSD writes that "the Arkansas Department of Education implemented a "'sustainment, restoration and modernization plan' (SRM) that resulted in the current construction projects." [**Doc. # 5533 at 7**]. It then cites "a facilities three-tiered platform for success ultimately overseen by the elected PCSSD Board of Directors." [**At 7, 8**]. Discovery will pursue these documents.

*Third*. The reference in the notice memo to the ADE plan is part of a paragraph mentioning the period of State control and planning following the return to PCSSD Board of Directors oversight. [**Doc. # 5533 at 7**]. The paragraph includes this thought:

> Most of the substantial decisions that resulted in commencement of construction of Mills High School, the Mills Middle School conversion, Robinson Middle School and the construction at Sylvan Hills High School site were made and approved by the Commissioner of Education while PCSSD was under the control of the State of Arkansas and functioned with the Commissioner of Education as its school board. [**At 7**]

The State control point, with mention of "current momentum," is also made briefly in

5

the first paragraph of the PCSSD response to Intervenors' facility report comments. [**Doc. # 5537 at 1**].

Intervenors maintain that the State/Commissioner's role will support requiring the State's participation in a remedy, if the Court ultimately agrees that a Mills High, Plan 2000-based remedy is warranted. Documents show a State role in both: [i] the March 2016 reduction of the budget for the new Mills High project (**Doc. # 5528, Exh. 5**), not corrected until well into the construction period (**Doc. # 5337 at 6-7** [Oct. 9, 2017]) and [ii] changes in "the original design of Mills that was presented to the Advisory Board and the Commissioner. . . . " [**Doc. # 5337 at 5**] Beyond this however, if the Court reaches this point on remedy, the cited State role will provide no advantage to PCSSD in a facility unitary status effort. The PCSSD school directors will be subject to an earlier Plan 2000 violation supporting a remedy, by reason of their substitution as defendants in their official capacities. *See* Rule 25(d)(1), Fed.R.Civ.Pro.; [**Case Doc. # 4608 at 2-5** (Aug. 15, 2011)].

<u>Intervenors provide notice</u> that they will be seeking in the hearing relief to address the inequality of Mills High School, as well as relief regarding College Station and Harris Elementary Schools. *See* Part D. below. Plan B did not include a new Robinson Middle School. It included a $5 million dollar rehabilitation project to make Mills Middle School available. Intervenors will consider this step in the light of the Robinson Middle School project and the equality mandate of Plan 2000.

The PCSSD notice memo states [**Doc. # 5533 at 8**]: "the Sylvan Hills High

6

School project continues apace . . . ." Preparation will include a comparison of the new Mills High School and the new Sylvan Hills High School. This step was delayed by the status of construction at the time of the initial visit by the Court and the parties. Intervenors have provided considerable notice of their anticipated evidentiary plans to date. *See* **Case Docs. # 5403, 5406-07** (documents regarding Intervenors' motion for facility relief); **Doc. # 5528** (Intervenors' comments on PCSSD facility reports).

The PCSSD response to Intervenors' comments was frequently significantly lacking in merit, or non-responsive. The following discussion adds to the roadmap regarding Intervenors' plans.

[1] PCSSD identified the planned capacity of new Mills High as 750 not only in the October 21, 2016 notice letter, but also in its State-required 2018 Facility Master Plan [Tab 6, page 1 ("A new Mills High School to house 750 students is currently under construction . . . ."] Three District reports have identified the "current" and the "future" capacity as 700. [E.g. **Doc. # 5495, Exh. 10**]

[2] PCSSD acknowledged ["change"] in "the original design of Mills that was presented to the Advisory Board and the Commissioner . . . ." [**Doc. # 5337, Oct. 9**, 2017, at 5] The District's response ignores this admission, mentioning only the report that PCSSD's Derek Scott directed the deletion of six classroom from the Mills project. The source of this report does require development; and before, not during the trial. If validated, it can hardly be dismissed as "just another allegation about changes that were made in the middle of the Mills High School construction project." *See* **Doc.# 5537 at**

7

3. After Mills High opened, PCSSD replied to Mills High stakeholders' complaint about teachers "sharing classrooms." The response accepted this contention and indicated that the condition should be temporary. [**Doc. # 5528, Exh. 2 at 6-7** ("This plan will remain in place for the time being.") ]

[3] The material on PCSSD's response to the Mills stakeholders includes a statement by PCSSD Executive Director for Operations Curtis Johnson. Alluding to new Mills and new Robinson, he stated: "Right now there's current litigation that's in place so I'm unable to really discuss in great detail. <u>What I will say is there are some things by comparisons that we as a district have to address.</u>"  [**Doc. # 5528, Exh. 2 at 3** (emphasis added)] PCSSD's written response to the stakeholders' eight facility concerns accepted their description of an issue in six instances. [**Doc. # 5528, Exh. 2 at 6-8**]. The District's response on this point does not mention the issues raised by stakeholders, Mr. Johnson's statement, or the District's written reply. [**Doc. # 5537 at 3**]

[4] Intervenors relied upon Mrs. Joy Springer's notes of a March 7, 2019, monitoring visit to new Mills and follow-up in October during the current school year (17 concerns). The heading to the March notes reads: "Observations <u>and interviews with school administrators, office staff, and various other staff persons in the school</u>." [5528, Exh. 4 (emphasis added)] PCSSD's critique ignores the reference to staff input, characterizing Intervenors' discussion, pejoratively, as "every whim and desire of Intervenors," "Ms. Springer[s] . . . allegations," "Intervenors['] alleg[ations]," and "Ms. Springer['s] added allegations to her laundry list of alleged and perceived wrongdoings

8

. . . ." [**Doc. # 5537 at 1, 3, 4, 5**].

[5] Intervenors commented on elements of the PCSSD facility reports buttressing their contention that new Mills High is a deficient, unequal facility. The matters discussed are [a] the slow pace in identifying future use, if any, of the ROTC building, relevant because of a need to find space for the new "DRIVEN program" [**Doc. # 5528 at 7-8**]; [b] Robinson Middle advantaged by having a large space for initiating a new, supplemental program, with this space not provided in new Mills High [**Doc. # 5528 at 8**]; [c] the need for "upgrades" at new Mills [**Doc. # 5528 at 8**]; and [d] indications of deficient construction at new Mills [**Doc. # 5528 at 8, 9-10**]. As next shown, PCSSD avoided a substantive response to two of these contentions and provided additional evidence supportive of Intervenors' concern or repeated the evidence relied upon in two instances.

[6] [a] The snail's pace in addressing the ROTC building/DRIVEN program issue continues [**Doc. # 5537 at 6** ("status has [not] meaningfully changed"); [b] response limited to continued effort regarding space at new Robinson Middle; no addressing of comparison in available space, the point obvious from Intervenors' text [**Doc. # 5537 at 6**]; [c] response states that "Intervenors complain about ongoing upgrades . . . [**Doc. # 5537 at 6**]; obvious from Intervenors' text that need for upgrades was cited as evidence of inequality of new Mills; and [d] facts showing deficient construction are repeated [**Doc. # 5537 at 6** ("protection panels"), at 7 ("replacement of glass . . . was for safety purposes").

9

[7] In explaining the conclusion that new Robinson Middle is superior to new Mills High the Court on September 24, 2018 cited a disparity in lighting adequacy. This followed the Court's prefacing its list of differences with the comment, much can be addressed. After two 60-day report spreadsheets identified dollar amounts spent (**Doc. # 5474, Exh. 1**), Intervenors sought a "tangible action." [**Doc. # 5528 at 9**] The reply again mentioned expenditures and added: "Any perceived differences are perceptions and not economic slights." [**At 9**] Recently, PCCSD was again "non-responsive." [**Doc. # 5537 at 6-7**].

[8] PCCSD's responses to "Intervenors' Allegations about Expenditures . . ." provide two additional examples of the District avoiding replies to Intervenors' substantive point. [**Doc. # 5537 at 7**]. *First*. The discussion regarding "spreadsheets" is off target. Documents provided by PCSSD evidenced that the District's initial and subsequent charts in the 60-day reports cited maximum contract amounts, not expenditures. Intervenors' request for clarifying data, first made on August 8, 2019, has yet to be fulfilled. [**Doc. # 5528 at 11-12**]. *Second*. Intervenors did discuss record material regarding budget amounts and expenditures for new Mills and new Robinson Middle. However, the discussion began with regard to his Honor having found that PCSSD had been candid regarding actions being off track regarding Mills; and ended : "In sum, whatever the ultimate expenditure, it will be necessary to consider the relationship of the inadequacies and inequality of the new Mills High facility to the district's earlier off-track performance." [**Doc. # 5528 at 11-12**]. PCSSD did not

10

address this contention. Intervenors also note that the District's belated notice letter of October 21, 2016 indicated that the parameters of the Mills High facility were in place as of that time. *See* **Doc. 5528, Exh. 1 at 5** ("The building pad for the school project is in place and foundation work will begin in the next few weeks.")

[D.] College Station and Harris Elementary Schools

Tab 6, the "Narrative Analysis" of the District's 20115 Facility Master Plan, provides [at 1]:

> College Station (2 buildings) – Repairs over the past three years and planned upgrades will improve this campus but absent a complete replacement, facility parity is not attainable.

> Harris Elementary School (5 buildings) – Significant repairs over the past three years and planned repairs will improve this campus but absent a complete replacement, facility parity is not attainable.

In response to Intervenors' February 7, 2019 inquiry, PCSSD counsel replied that "it remains the position of the District that it is premature to undertake any final planning regarding College Station and Harris Elementary Schools. " PCSSD now repeats that response. [**Doc. # 5337 at 8**]. The District simultaneously asserts that "it is unitary in the area of facilities." [**Doc. # 5337 at 8**]. The Court's JNPSD facility ruling teaches that even if PCSSD identifies a Plan 2000-compliant facility remedy for these two schools before July 2020, the proper course will be for the Court to retain jurisdiction to insure proper implementation. [**Doc. # 5445 at 20** (ruling on JNPSD unitary status motion) (Sept. 25, 2018)].

Factual development regarding College Station and Harris will be necessary.

11

[D]. <u>Monitoring</u>

PCSSD has produced various monitoring reports regarding Plan 2000 implementation. However, follow-up efforts have not been sufficient to produce good faith, fully effective Plan 2000 implementation.

                                                  Respectfully submitted,

<u>Austin Porter Jr. - No. 86145</u>
PORTER LAW FIRM
323 Center Street, Suite 1035
Little Rock, Arkansas 72201
Telephone: 501-244-8200
Facsimile: 501-372-5567
Email: aporte5640@aol.com

Robert Pressman
22 Locust Avenue
Lexington, MA 02421
Telephone: 781-862-1955

Shawn G. Childs
<u>Lawrence A. Walker</u>
JOHN W. WALKER, P.A.
1723 S. Broadway
Little Rock, Arkansas 72206
Telephone: 501-374-3758
johnwalkeratty@aol.com
schilds@jwwlawfirm.com
lwalker@jwwlawfirm.com

ATTORNEYS FOR INTERVENORS