IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JANICE HARGROVE WARREN                                                    PLAINTIFF

v.                                      No. 4:19-cv-00655-BSM

CHARLES MCNULTY, et al.                                                   DEFENDANTS

**PLAINTIFF'S BRIEF IN SUPPORT OF HER SECOND MOTION *IN LIMINE* REGARDING THE INADMISSIBILITY OF REMELE'S LIST AND GILLEN'S LIST AND TESTIMONY ABOUT THESE DOCUMENTS AND THE ALLEGATIONS CONTAINED THEREIN**

**Factual Background**

Four days after the September 8, 2017, status conference addressing Mill's High School discriminatory construction before Chief District Judge Marshall, Dr. Linda Remele, PCSSD's White female Board President and a decision maker, began compiling a list of accusations against Dr. Janice Warren, PCSSD's then sitting Interim Superintendent. This list of malicious criticisms and factually erroneous allegations ("Remele's List") recites facts that are not within Dr. Remele's personal knowledge (51.9%), and are recordings of out of court statements made by Remele or others. Eighty-eight, point six percent (88.6%) of these statements are inadmissible hearsay or double hearsay.

Alicia Gillen, a White female Board Member and a decision maker, produced a similar list ("Gillen's List").  Ms. Gillen does not recall when in 2017 she created her list (Dkt. No. 40-10, p. 110, line 20-21).   This list of allegations recites facts, 66%, that are not within Ms. Gillen's personal knowledge and 100% are out of court statements made or written by her. These statements are inadmissible hearsay or double hearsay.  On February 17, 2020, these two unsigned and undated documents were included among the individual defendants' Responses to

1

Dr. Warren's First Request for the Production of Documents. These lists of malicious criticisms and factually inaccurate allegations and testimony about the lists and the allegations recorded thereon are inadmissible. These lists and the malicious criticism they record are the Defendants' purported legitimate nondiscriminatory reasons for their conduct (Dkt. No. 28, pp. 20-22).

**Assessment of the Admissibility of Defendants' Evidence**

Rule 602 of the Federal Rules of Evidence (Fed. R. Evid.) mandates that a witness may only testify "if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." *Id.*; *United States v. Lyon*, 567 F.2d 777, 783–84 (8th Cir. 1977) (Rule [602] excludes testimony concerning matters the witness did not observe or had no opportunity to observe); *United States v. Wirtz*, 357 F. Supp. 2d 1164, 1169 (D. Minn. 2005). The goal of Fed. R. Evid. 602 is the elimination of unreliable evidence and to conserve time. 27 Fed. Prac. & Proc. Evid. § 6023 (2d ed.). "[A] witness testifying about a fact which can be perceived by the senses must: (1) have had an opportunity to observe, (2) have *actually observed* the fact, and (3) presently recall the observed fact." 1 McCormick On Evid. § 10 (8th ed.) (emphasis added). Personal knowledge includes inferences but inferences must be based on observation and experience. *United States v. Wirtz*, 357 F. Supp. 2d 1164, 1169 (D. Minn. 2005).

A.   REMELE'S LIST

Remele's document and her deposition testimony (Dkt. No. 9, pp. 75-98) regarding the document and the events listed are inadmissible accusations, hearsay and double hearsay of events, not within Linda Remele's personal knowledge. The allegations presented as legitimate nondiscriminatory reasons in Defendants' Brief, pages 20-22, fall within Federal Rules of Evidence ("Fed. R. of Evid.") 602, 801(c), 805.

1.   Dr. Remele lacks personal knowledge and the statements are hearsay.

Neither the document referred to as Remele's List, Defendant's Exhibit I nor Linda Remele's deposition testimony about her concerns can be presented in a form that is admissible. First, eighty-eight, point six percent (88.6%) of the contents of Linda Remele's list and her testimony about the events on her list are not within Linda Remele's personal knowledge as required by Fed. R. Evid. 602. She did not observe or have an opportunity to observe the facts that she alleges. Dr. Remele recorded what others reported to her.

Second, these "concerns" are hearsay and, in some instances, double hearsay and are inadmissible into evidence. *Arkansas Right to Life v. Butler*, 983 F.Supp. 1209 (W.D. Ark. 1997), judgment aff'd and remanded on other grounds, 1146 F.3 558 (8th Cir. 1998); Walling v. Fairmont Creamery Co., 139 F2d 318, 323 (8th Cir. 1943); Martinez v. Norris, Case No. 5:15-cv-171-JM-BD (E.D. Ark. July 13, 2020).   Plaintiff's Exhibit 40-45 charts the quality of each allegation by identifying if the statement is within Dr. Remele's personal knowledge, if the statement is hearsay, whether the statement is within an exception to hearsay, and if the statement is false. Below is an assessment of a sampling of the malicious criticisms from Remele's List.  Plaintiff counsel's objection and motion is supported by a substantive review of each statement comprising Dr. Remele's List of twenty-four malicious criticisms.  Dkt. No. 40-45; see also Plaintiff's Response to Remele's List, Dkt. No. 40-65.

> a. "Remodeling of the Superintendent's Suite" _ allegation #2, Remele's List. "On July 19, I hear she is having paneling in the supt [superintendent's] office painted -- later find out it has been removed." Entry #2, Remele's List, Defendants' Exhibit I."

Linda Remele heard from a third party that the Superintendent's Office was being painted and that the paneling was removed.  Linda Remele isn't competent to testify about what she heard or later learned.  If she cannot testify without personal knowledge, her document

3

containing a written statement of what she heard likewise lacks competency.  Fed. R. Evid. 602. Furthermore, the statement is hearsay and not within a recognized exception. Remele's List, Entry #2 is an out of court statement offered for the truth of the matter contained in the statement to prove that Dr. Warren lacked judgment regarding District finances.  The statement is inadmissible.

Not only is the statement inadmissible, is mischaracterizes the facts.  As Dr. Warren shares in her deposition:

> Page 112
>
> 11 Q Explain what you would have done about the
>
> 12 painting.
>
> 13 A And it might have been on the 19th, but I don't
>
> 14 think so, that Derek walked in the Superintendent's
>
> 15 office, and Doctor Guess and I were in there, and he
>
> 16 said that they had planned to paint the office. And I
>
> 17 remember asking him, "How are you going to pay for
>
> 18 that?" He said, "It's part of SRM [Sustainment, Restoration, and Modernization]." I said, "Oh,
>
> 19 okay." So, that's how it started, with the walls.
>
> 20 Q Okay. So, you are saying that -- are you
>
> 21 testifying that Derek Scott told you that that was
>
> 22 already in motion?
>
> 23 A It was already in the budget, yes.
>
> 24 Q Okay.

4

>       25 A That that was part of the plan for that
>
> 0113
>
>       1 particular school year. We had -- he had had a
>
>       2 three-year phase. And I remember this because I had
>
>       3 been on that SRM Committee, of different repairs
>
>       4 around the district that were being done, and Central
>
>       5 Office was a part of it.

Dkt. No. 40-12 Warren Deposition, pp. 112-113 (Derek Scott's statement is an Opposing Party Statements by Agents, Fed. R. Evid. 801(d)(2)(D). A secondary basis for Derek Scott's statement: it is not offered for the truth of the contents but that the words were spoken; not hearsay); Plaintiff's Exhibit 15, Warren Affidavit. Dr. Warren wasn't remodeling; she approved the recommendation of Derek Scott, Executive Director of Operations, to paint the walls. He recommended that the walls be painted as planned in the SRM Budget.  Only after inquiring about the source of the funds for the painting did Dr. Warren approve the painting of the office. See also Dkt. No.40-13, PCSSD 2017-18 SRM Budget, p.2 Paint & Finishes (Public Record). The SRM Budget allocated $950,000 for Paint and finishes and $230,000 for "District wide various cafeteria and Kitchens repainting/ceiling tile." Dkt. No. 40-13, PCSSD 2017-18 SRM Budget (Public Record).

      Board member Alicia Gillen testified that the Superintendent's office was inadequate but felt Dr. Warren needed "her bosses" to approve the painting of the office.  Dkt. No. 40-10, Gillen Deposition, p. 108, lines 6-23. Board Policy delineates the relative spheres of responsibility, day to day operations are within the Superintendent's jurisdiction; matters of policy are within the preview of the Board.  Gillen later acknowledges that the painting was not a matter of policy.

Dkt. No.40-10, Gillen Deposition, pp. 108, line 24 - 110, line 18.   The most troubling aspect of the Defendants' attempt to use this inadmissible hearsay allegation as a legitimate reason for their employment decision is the timing of Dr. Remele's accusation. Dr. Remele "heard" that the Superintendent's office was being painted on July 19, 2017; but Dr. Remele did not share her critical assessment of Dr. Warren until September 12, 2017, four days after the Status Hearing. "September 12 in executive session the board reminds you that you are interim and just to keep the ship afloat. Not make major changes and not remodel offices." Plaintiff's Exhibit 1, Remele's List, Entry #7; See also, Dkt. No. 40-67, Remele's List with Warren's Responses, and Dkt. No. 40-45, for an evidentiary evaluation of all the entries on Remele's List.

>b.   Warren purchased new office furniture:  Remele's List Entry #8. Defendants' offer the following allegation to prove that Dr. Warren demonstrated poor judgment:
>
> Sept 22 I hear you have purchased and installed new furniture in your offices. I call you and tell you as a friend that the board as a whole would not be happy with this as we told you not to remodel and I suggested you send the furniture back. You said you didn't think you could and I assured you the company would take it back as they do a huge volume of business with us and want to continue outfitting three new schools.

Plaintiff's Exhibit 1, Remele's List Entry #8.  Again, Linda Remele lacks personal knowledge about the facts alleged.  Linda Remele heard from a third party that Dr. Warren had ordered a new desk to replace the one resting on bricks.  Linda Remele isn't competent to testify about what she heard or later learned.  If she cannot testify without personal knowledge, her document containing her written statement of what she heard likewise lacks competency.  Fed. R. Evid. 602, 10A Fed. Prac. & Proc. Civ. § 2722 (4th ed.).  Furthermore, the statement is hearsay,

containing hearsay, double hearsay; neither statement is within a recognized exception. Fed. R. Evid.805.

> " Sept 22 I hear you have purchased and installed new furniture in your offices."

Out of court statement, offered for the truth of the contents. This statement by declarant, Linda Remele, is being offered against Janice Warren and isn't within an exception.

> "I call you and tell you as a friend that the board as a whole would not be happy with this as we told you not to remodel"

Here, Linda Remele has personal knowledge of what she said, but this portion of her statement is an out of court statement offered to prove that Dr. Warren demonstrated poor judgment. It too is not within an exception to hearsay. Although it is a party's statement, isn't being offered against the party who spoke it. Fed. R. Evid. 801(d)(2). On September 12, 2017, Linda Remele presented her accusation of remodeling to the Board and only then is Dr. Warren told not to "remodel". The desk was order by the Secretary to the Executive Director of Operations on July 28, 2017, to replace the one resting on bricks, along with a credenza for storage, and six chairs for the conference table. Dkt. No. 40-47, Virgo Invoice (Admissible: Public Record). The 2017-2018 SRM Budget included $570,000 for "Furnishings, Fixtures and Equipment (includes cafeteria tables at various schools)". Dkt. No. 40-13, 2017-2018 SRM Budget (Admissible: Public Record). The items ordered for Dr. Warren to make the office functional cost $6,078.66, including tax. Dkt. No. 40-47, Virco Invoice (Admissible: Public Record).

> "I suggested you send the furniture back."

Linda Remele has personal knowledge of what she said, but this portion of her statement is an out of court statement offered to prove that Dr. Warren demonstrated poor judgment.  It too isn't within an exception to hearsay.  It is a party's statement; but the statement is not being offered against the party who spoke it.  Fed. R. Evid. 801(d)(2)(A).

"You said you didn't think you could."

This portion of Entry #8 of Remele's List, is double hearsay.  The statement "you didn't think you could," is hearsay, Dr. Remele's statement about Dr. Warren's statement.  Had Remele stated "She said, 'I don't think I can'" double hearsay would be avoided; the statement would be a statement by a party offered against a party and within an exception to hearsay. Fed. R. Evid. 801(d)(2)(A).

More importantly, the Conditions of Sale provided that acknowledged purchase orders cannot be changed or cancelled without the seller's, Virco, consent.  That consent might be conditioned upon the payment of increased or additional expenses including a 25% cancellation fee, if the order was cancelled or changed within a minimum of 20 days prior to the expected delivery date as acknowledged.  Dkt. No. 40-47, p. 21, Virco Invoice, footnoted boilerplate (Admissible:  Public Record).  Virco acknowledged the order on July 31, 2017, and gave a three to four weeks expected delivery date.  Id., at p. 21, Virco Invoice, handwritten note (Admissible: Public Record).  The expected delivery date was August 21 through August 28, 2017.  Linda Remele's September 22nd request that the furniture be returned was well beyond the 20-day period of August 21 through August 28.  Dr. Warren, however, was concerned about PCSSD's business reputation with a valued supplier.  Dkt. No. 40-15, Warren's Affidavit.  Plaintiff objects to the admission of Entry #8, Remele's List.

        c.      Work load of testing coordinators:  Remele's List, Entry #11.

> You said the 4 high schools would continue to hire a testing coordinator. As of the meeting on
>
> > Nov 2 I believe all 4 high schools have a testing coordinator but that has not relieved the media specialist at those 4 high schools of the testing responsibility. The newly hired coordinators are on contract and working but have been told to only take over a helping role and the media specialist is still the responsible person for testing up until the summative testing and then they will be in charge of the testing. This is another COST item. We are paying for 4 testing coordinators who are not coordinating testing until April.

Defendants' Exhibit I, Remele's List, Entry #11, Argument, Defs. Brief, p. 21 (emphasis added).

Here, again, Dr. Remele lacks personal knowledge and is opining about the status of the hiring of the testing coordinators and their work load.  "I believe."  The coordinators "have been told".  Entry #11 reflects a lack of personal knowledge and the absence of an investigation or inquiry by Remele to determine the facts or the role of the District's employees.  What the testing coordinators were told is double hearsay. In point of fact, two of the District's testing coordinators resigned because of the work load.  Dkt. No. 40-15, Warren Affidavit.

> 2017 was the second year ACT Aspire was being used as the ADE [Arkansas Department of Education] summative assessment.  I was informed by Sam Altschul, Director of Federal Programs, that Instructional coaches could not administer the summative assessment because the test was a State required test and the coaches were paid with Title 1 funds.  Therefore, we assigned interim assessments to coaches and summative assessments to media specialists. The volume of the work and time spent preparing, testing was overwhelming for everyone.

Dkt. No. 40-15, Warren Affidavit.  Dr. Remele admits in her deposition testimony that under Board Policy the organization of testing to comply with a Federal mandate was within the Superintendent's authority.  Dkt. No. 40-9, p. 91, line 8 - p. 92, line 4; Remele Deposition (not hearsay Fed. R. Evid. 801 (d)(2)(A)).

Plaintiff objects to the admission of Entry #11, Remele's List, Linda Remele lacks personal knowledge of the facts. Entry #11 contains double hearsay.  Entry #11 is an out of court statement offered to prove the truth of what is stated and contains hearsay, "The newly hired coordinators have been told to only take over a helping role and the media specialist is still the responsible person for testing up until the summative testing and then they will be in charge of the testing."

> d.   Dr. Warren purchased umbrellas for Central Office Staff:  Remele's List Entry #15, Defendants' Argument, Dkt. No. 28, p. 21.
>
> 11/14/17 ordered a hundred and fifty imprinted umbrellas for central office staff to give as Christmas gifts. Cost of $2,436.84 was told it would be an audit finding as you can't do that with taxpayer dollars. Dr. Warren said she was told it was not an audit finding. I know she was told exact opposite.

Plaintiff's Exhibit 1, Remele's List Entry #15, Defendants' Argument, p. 21.  Linda Remele lacks personal knowledge of the facts asserted and isn't competent to testify about the facts asserted. Fed. R. Evid. 602.  If her testimony regarding the facts is inadmissible, a document containing the same assertion is likewise inadmissible.

As Dr. Warren states in her affidavit, after visiting with the State Auditor and being told that the umbrellas might raise a red flag, she decided to purchase the umbrellas rather than T-shirts as recommended by the Auditor, knowing that the umbrellas would be a personal expense. The invoice for the umbrellas was not presented to the Board and the Board was not asked to

10

approve the purchase. The Board never inquired about Dr. Warren's plans. Dkt. No.40-15, Warren Affidavit. The inadmissible statement mischaracterizes the facts and the inference that Dr. Warren intended to use taxpayer money for the gift is false. The allegation that the Board denied Dr. Warren's purchase order is false!

Plaintiff objects to the admission of Entry #15, Remele's List. Linda Remele lacks personal knowledge of the facts and the statement is hearsay. Entry #15 is an out of court statement offered to prove the truth of what is stated. Furthermore, Entry #15 contains double hearsay, the statement of what the Auditor said. Neither statement is within a hearsay exception. Linda Remele has personal knowledge of statements made to her by Dr. Warren. The statement, "Dr. Warren said she was told it was not an audit finding," is not hearsay. It is an Opposing Party Statement offered against the party who purportedly made the statement. Fed. R. Evid. 801(d)(2)(A). Only this phrase of Entry #15 is admissible in the form presented. 10A Fed. Prac. & Proc. Civ. § 2722 (4th ed.).

Linda Remele did not inquire about Dr. Warren's plans. Her goal was to accuse, discredit, and malign Dr. Warren's credibility as the Board entered it processes for selecting a superintendent search firm. The accusation was made on November 14, the date of the first presentation by a superintendent search firm. Without asking Dr. Warren about her plans for paying for the umbrellas, Entry #15 results in an inference that mischaracterizes Dr. Warren's intent.

> e. Purported Failure to report a dangerous situation to the Board: Remele's List, Entry #14, Defs. Argument, Dkt. No. 28, at p. 22.
>
> On Wed Oct 25 a potentially dangerous situation occurred at SH Freshman Academy. The board was not notified of this and had to hear it from the community later that night. I called you about it on Thursday to see why we

11

> were not notified and why Freshman Academy and Cato were not placed on lockdown. You indicated you had just heard the details that morning. That it is not true and should not be true. Your staff should keep you aware of any potential threat to students and staff and I know they did. You did not choose to inform the Board and did not question why the schools were not placed on lockdown once it was determined a threat have been made against a school.

Linda Remele lacks personal knowledge of the incident at Sylvan Hills Freshman Academy. She is not competent to testify on these facts. If her testimony about the alleged event is inadmissible, the document, Plaintiff's Exhibit 1, restating the inadmissible testimony is likewise inadmissible.

Dr. Remele accuses Dr. Warren of choosing not to inform the Board of the incident. Yvone West, then Principal at Sylvan Hills Freshman Academy recalls that a new student's refusal to enter the scanning device led to the discovery of a knife in her possession. He states under oath:

> At no time was any other students or staff in imminent danger. The student was issued a citation by the Sherwood Police Department and was sanctioned according to the PCSSD student handbook. This is a common practice when incidents such as this occur. Instances and cases where there is an imminent or immediate threat, district level officials (the superintendent or his/her designee) are notified and guidance is given on the next steps. Because it was determined that there was not any immediate threat or concern, this incident was handled at the local school building.

12

Dkt. No. 40-19, Affidavit Principal West, Sylvan Hills.  The Principal handled the incident as is customary at the building level without notifying the Superintendent or her designee.  Dr. Remele lacked personal knowledge about the incident; her sources were wrong.

- B. Alicia Gillen's testimony about her concerns and her list are inadmissible but provide evidence of pretext.

Defendants refer to Alicia Gillen's, the other White female Board member, "serious concerns" about Dr. Warren's performance as Interim Superintendent and cite Alicia Gillen's deposition testimony to support their allegation of legitimate nondiscriminatory reasons for their conduct.  Dkt. No. 40-10, Gillen Deposition p. 15-16, Dkt. No. 28, Defs. Brief, p. 20, line 5. The referenced testimony refers to a list of concerns Dkt. No. 40-70 ("Gillen's List").   Gillen's List like Remele's List and much of Gillen's testimony is inadmissible.  Gillen's undated list is a series of accusations that reveal both her lack of personal knowledge about the event or topic, and the operation of the District. These allegations are hearsay and most are not within an exception.  More importantly, Gillen repudiates several of her concerns in her deposition testimony.  Gillen's List and her testimony are inadmissible.

    (1)    "New furniture lying to the Board about funding"

This written statement is an out of court statement offered for the truth of the contents to prove that Dr. Warren demonstrated poor judgment when handling District finances. Dkt. No. 28, Defs. Brief, p. 20.  This written statement is hearsay and not within an exception if offered to prove the truth of the contents of the statement. Fed. R. Evid. 801.  Gillen admits in her deposition that she lacked personal knowledge regarding the source of funding for the furniture and lacked knowledge that Derek Scott, Executive Director of Operations, made the recommendation to paint.  Dkt. No. 40-10, p. 105, line 13 - p. 107, line 17. If her deposition testimony is offered for the truth of the statement to prove that Dr. Warren lacked fiscal

judgment, her testimony is inadmissible. Plaintiff objects to the admission of Gillen's List and Entry #1 of that List.

    (2) "Law suit documents that were filed. That were not sent to board"

This is an out of court statement offered for the truth of the contents to prove that Dr. Warren was not working cooperatively with the Board. Dkt. No. 28, Defs. Brief, p. 21. This written statement is hearsay and isn't within an exception to hearsay. Fed. R. Evid. 801. Here, the statement lacks specificity to determine if Gillen is referring to the copy of the Supplemental Status Report that was forwarded to her on September 5, 2017, at 3:10 p.m. and responded to at 6:18 p.m. or some other unidentified court documents. Dkt. No. 40-18, Status Report Emails. Plaintiff objects to the admission of Gillen's List and entry #2 of that List.

    (3) "None of this [sic] facilities [sic] would be over budget would have happen if she would have done her job in Equity Services"

This is an out of court statement offered for the truth of the contents to prove that Dr. Warren was not working cooperatively with the Board. Dkt. No. 28, Defs. Brief, p. 21. This written statement is hearsay and isn't within an exception to hearsay. Fed. R. Evid. 801. Alicia Gillen's evasive deposition testimony on this allegation, a total of nine pages, demonstrates that she lacks personal knowledge about Dr. Warren's job responsibilities and isn't competent to testify on the question of whether Dr. Warren performed her job. See Dkt. No. 40-10, Gillen deposition, p. 16, line 5 - p. 25, line 24. Plaintiff objects to the admission of Gillen's List and Entry #3 of that List.

    (4) "What was her role . . . she knew about the court order"

This is an out of court statement offered for the truth of the contents, inviting an inference that Dr. Warren was not doing her job. Alicia Gillen's deposition testimony demonstrates that

she lacks personal knowledge about Dr. Warren's responsibilities and Plan 2000. Plaintiff objects to the admission of Gillen's List and Entry #4 of that List.

   (5) "Where is [sic] the monitoring reports with facilities"

Entry #5 is an out of court statement offered for the truth of the contents to prove that Dr. Warren was not working cooperatively with the Board and inviting an inference that Dr. Warren was not performing her job. Alicia Gillen's deposition testimony demonstrates that she lacks personal knowledge about Dr. Warren's responsibilities and isn't competent to testify on the issue of Dr. Warren's responsibilities or Dr. Warren's performance of her responsibilities. When asked if the monthly monitoring reports by Derek Scott on facilities that were recorded in the Board minutes caused her concern, Gillen stated that she did not believe that facilities reports were factual and did not communicate her concerns to Dr. Warren or anyone else. If she had knowledge or a reason to know that the reports were erroneous, she had a duty to inform someone. Dkt. No. 40-10, p. 32, line 22 - p. 34, line 18.

   (6) "Terminated a coach when Paul Brewer was on Vacation against his instructions"

Gillen lacks personal knowledge about the circumstances referenced in her statement and isn't competent to testify. Consequently, her written statement isn't admissible. This assertion also demonstrates her lack of knowledge regarding the order of authority within the District. She assumes that the Black female Interim Superintendent is subject to the direction of White male *Assistant* Superintendent of Personnel. Similarly, in Entry #8, Gillen characterizes the Black female Interim Superintendent's desire to terminate Denise Palmer, the District's former CFO as an abuse of power but explains Charles McNulty's termination of Denise Palmer as permissible because he is forming his Cabinet. Gillen clearly has separate standards for White males and Black females. Dkt. No. 40-10, p.110, line 25 - p. 113, line 16. Plaintiff objects to the admission

of Gillen's List and entry #6 of that List. Entry #8, if offered to prove that Dr. Warren abused her power as Interim Superintendent, this evidence is inadmissible hearsay.

## CONCLUSION

Both Linda Remele and Alicia Gillen lacked personal knowledge of the events and allegations they recorded. Much of their malicious criticisms and factually erroneous allegations violate the important bar to admissibility, hearsay. Again, violating the preference for reliable evidence. 1 McCormick On Evid. § 10 (8th ed.). It is the declarant whose testimony must be tested by cross-examination; the declarant's conduct observed by the jury, not Linda Remele or Alicia Gillen. Therefore, this Court is asked to assess and rule on the admissibility of Remele List and Gillen's List in advance of trial to avoid unnecessary delay during trial.

Respectfully submitted this 16th day of October 2020,
Sarah Howard Jenkins
Ark. Sup. Ct. Reg. No. 97046
SARAH HOWARD JENKINS, PLLC
P.O. Box 242694
Little Rock, AR 72223
Telephone: (501) 406-0905
Email address: sarah@shjenkinslaw.com
Attorney for Plaintiff