**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**JANICE HARGROVE WARREN**                                    **PLAINTIFF**

**V.**               **Case No.:  4:19-cv-655-BSM**

**CHARLES MCNULTY, ET AL.**                                  **DEFENDANTS**

**PLAINTIFF'S FED. R. CIV. P. 26(a)(3) PRETRIAL DISCLOSURES**

1) Submitted by:      Dr. Janice Warren, Plaintiff

2) Counsel for Dr. Janice Warren:

        Sarah Howard Jenkins
        Sarah Howard Jenkins, PLLC
        27 Talais Drive
        Little Rock, AR 72223
        (501) 406-0905 (office)
        (501) 960-8835 (cell)

3) Claims and Relief Sought:
   a) PCSSD is liable for its Board's discriminatory adverse employment act because of

      Plaintiff's sex. 42 U.S.C. § 1981a(a)(1); 42 U.S.C. § 1981a(b)(3); 42 U.S.C. § 2000e-

      5(g)(1).

         *Relief Sought*:  Title VII Sex Discrimination: Backpay, interest on backpay at the

         applicable federal discount rate; Front pay, adjusted for raises, bonuses,

         differences between Plaintiff's retirement benefits, vacation pay, life insurance,

medical and health benefits, and that granted to Dr. Charles McNulty, the person hired;

Compensatory damages for humiliation, embarrassment, injury to reputation, opposition on Plaintiff's application for Deputy Superintendent set by the jury;

Punitive damages: 42 U.S.C. § 1981a(b)(3) of $300,000;

Costs (filing fees, payments for notaries, court reporters, transcript preparation, witness fees); and

Attorneys' fees.

b)  PCSSD is liable for its Board's racially discriminatory acts. 42 U.S.C. § 1981a (a)(1); 42 U.S.C. § 1981a(b)(3); 42 U.S.C. § 2000e-5(g)(1).

*Relief Sought*, Title VII Race Discrimination: Backpay, interest on backpay at the applicable federal discount rate; Front pay, adjusted for raises, bonuses, the difference between Plaintiff's vacation pay, retirement benefits, life insurance, medical and health benefits, and that granted to Dr. Charles McNulty, the person hired;

Compensatory damages for humiliation, embarrassment, injury to reputation, opposition on Plaintiff's application for Deputy Superintendent;

Punitive damages: 42 U.S.C. § 1981a(b)(3) of $300,000;

Costs (filing fees, payments for notaries, court reporters, transcript preparation, witness fees); and

Attorneys' fees.

c)  PCSSD Board's engaged in adverse employment actions and violated Dr. Warren's statutory right to challenge racially discriminatory practices by her employer and not be retaliated against for doing so. 42 U.S.C. § 2000e-3(a); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 799 (1973).  PCSSD is liable for its Board's racially retaliatory acts. 42 U.S.C. § 1981a(a)(1); 42 U.S.C. § 1981a(b)(3); 42 U.S.C. § 2000e-5(g)(1).

> *Relief Sought*, Title VII Retaliation: Backpay, interest on backpay at the applicable federal discount rate; Front pay, adjusted for raises, bonuses, difference between Plaintiff's retirement benefits, vacation pay, life insurance, medical and health benefits, and that granted to Dr. Charles McNulty, the person hired;

> Compensatory damages for humiliation, embarrassment, injury to reputation, opposition on Plaintiff's application for Deputy Superintendent;

> Punitive damages: 42 U.S.C. § 1981a(b)(3) of $300,000;

> Costs (filing fees, payments for notaries, court reporters, transcript preparation, witness fees); and

> Attorneys' fees.

d)  *Section 1981 Race Discrimination*: Mike Kemp, Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, and Brian Maune decided not to extend Dr. Warren's role as Interim Superintendent or to promote her to Superintendent, excluded her from the pool of finalists, and hired a lesser qualified White male as Superintendent.  When they willfully engaged in these adverse employment actions, they did so with malice or with reckless indifference against Dr. Warren for racially discriminatory reasons.  42 U.S.C. 1981(a) (b) & (c). PCSSD is liable for the wrongful acts of Mike Kemp, Linda Remele, Shelby

Thomas, Alicia Gillen, Eli Keller, and Brian Maune. 42 U.S.C. § 1981, 42 U.S.C. § 1983;

Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989).

> *Relief Sought*, Section 1981 Race Discrimination by PCSSD: Backpay,
> interest on backpay at the applicable federal discount rate; Front pay, adjusted for
> raises, bonuses, difference between Plaintiff's retirement benefits, vacation pay,
> life insurance, medical and health benefits, and that granted to Dr. Charles
> McNulty, the person hired;

> Compensatory damages for humiliation, embarrassment, injury to
> reputation, opposition on Plaintiff's application for Deputy Superintendent;

> Punitive damages, 42 U.S.C. § 1981, $6.5 million;

> Costs (filing fees, payments for notaries, court reporters, transcript
> preparation, witness fees); and

> Attorneys' fees.

e) *Section 1981 Race Discrimination* (Board members in their individual capacities): It is
   common knowledge that race discrimination in employment is illegal under federal law.
   Mike Kemp, Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, and Brian Maune
   cannot claim ignorance of this fact. When they took adverse actions against Dr. Warren
   on the basis of race, they did so with malice or with a reckless indifference to Dr.
   Warren's right to be free from race discrimination in employment. Moreover, Linda
   Remele, Board President, and Shelby Thomas, Board Vice President, attended the
   January 22, 2018, Arkansas School Board Association training that included a session
   conducted by PCSSD's legal counsel entitled: "Employing a Superintendent: From
   Dating to Divorce" that addressed discrimination in the process of hiring a

superintendent.  Linda Remele, Board President, and Shelby Thomas, Board Vice

President had actual knowledge that discrimination in employment is illegal and willfully

engaged in illegal, adverse employment acts with malice against Dr. Warren with regard

to her federally protected rights.  Therefore, Linda Remele, Board President, and Shelby

Thomas, Board Vice President are personally liable for compensatory and punitive

damages. 42 U.S.C. § 1981 (a) (b) (c).

> *Relief Sought*, Race Discrimination, 42 U.S.C. § 1981 (a) (b) (c), (Board
>
> members in their individual capacities):
>
>> Compensatory damages for humiliation, embarrassment, injury to
>
> reputation, opposition on Plaintiff's application for Deputy Superintendent;
>
>> Punitive damages of $6.5 million;
>
>> Costs (filing fees, payments for notaries, court reporters, transcript
>
> preparation, witness fees); and
>
>> Attorneys' fees.

f) *Section 1981 Retaliation Race Discrimination*, 42 U.S.C. §§ 1981, 1983, PCSSD's

Liability:  When Mike Kemp, Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller,

and Brian Maune, retaliated against Dr. Warren for notifying the District's Attorney of

race discrimination by the District, they did so in their capacity as the PCSSD Board and

in their capacity as a final policymaker for the PCSSD.  Therefore, the PCSSD is liable

for their wrongful acts. 42 U.S.C. §§ 1981 (a)(b)(c), 42 U.S.C. § 1983; Pembaur v. City

of Cincinnati, 475 U.S. 469, 481-483 (1986) (plurality opinion).

> *Relief Sought*, Section 1981 Retaliation Race Discrimination by PCSSD:
>
> Backpay, interest on backpay at the applicable federal discount rate;

Front pay, adjusted for raises, bonuses, the difference between Plaintiff's

retirement benefits, vacation pay, life insurance, medical and health benefits, and

that granted to Dr. Charles McNulty, the person hired;

Compensatory damages for humiliation, embarrassment, injury to

reputation, opposition on Plaintiff's application for Deputy Superintendent;

Punitive damages, 42 U.S.C. § 1981, $6.5 million;

Costs (filing fees, payments for notaries, court reporters, transcript

preparation, witness fees); and

Attorneys' fees.

g) *Section 1981 Retaliation* (Board members in their individual capacities):  It is common

knowledge that race discrimination in public education is illegal under federal law.

*Cooper v. Aaron*, 358 U.S. 1, 78 S.Ct. 1401 (1958); *Little Rock School Dist. v. Pulaski*

*County Special School Dist. No*. 1, 921 F.2d 1371 (8th Cir. 1990).  Mike Kemp, Linda

Remele, Shelby Thomas, Alicia Gillen, Eli Keller, and Brian Maune cannot claim

ignorance of this fact. Thus, when they retaliated against Dr. Warren for notifying the

District's attorney and, thereby, the Federal Court of racial discrimination in the

construction of the District's facilities, they were aware of Dr. Warren's right to be free

from race discrimination by her employer and acted intentionally not accidentally with

malice or with a reckless indifference to Dr. Warren's right to be free from race

discrimination by her employer. Consequently, they are personally liable for

compensatory and punitive damages. 42 U.S.C. § 1981(a)(b)(c).

*Relief Sought*, Section 1981 Retaliation (Board members in their individual

capacities):

Compensatory damages for humiliation, embarrassment, injury to reputation, opposition on Plaintiff's application for Deputy Superintendent;

Punitive damages of $6.5 million;

Costs (filing fees, payments for notaries, court reporters, transcript preparation, witness fees); and

Attorneys' fees.

h) *Race & Sex Discrimination*, 42 U.S.C. § 1983, Board members in their individual capacities:  When Mike Kemp, Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, and Brian Maune engaged in adverse employment actions, they deprived Dr. Warren of her Federal statutory rights to free of race and sex discrimination in employment and contractual relations. Mike Kemp, Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, and Brian Maune are liable in their individual capacities for the harm that resulted.  42 U.S.C. §§ 1983, 1981(a) (b) & (c), and 2000e; *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Giron v. City of Alexander*, 693 F. Supp.2d 904 (E.D. Ark. 2010).

*Relief Sought*:

Backpay, interest on backpay at the applicable federal discount rate;

Front pay, adjusted for raises, bonuses, difference between Plaintiff's retirement benefits, vacation pay, medical and health benefits, and that granted to the Dr. Charles McNulty, person hired;

Compensatory damages for humiliation, embarrassment, injury to reputation, opposition on Plaintiff's application for Deputy Superintendent;

Punitive Damages:  $1.5 million, Dr. Linda Remele; $1 million each, Gillen,

Keller, Kemp, Maune, and Thomas;

Costs (filing fees, payments for notaries, court reporters, transcript preparation, witness fees); and

Attorneys' fees.

i) *Breach of Contract*:   Dr. Warren's 2017-2018 agreement with PCSSD was an enforceable contract. Both Dr. Warren and PCSSD provided consideration for the other's promises. PCSSD Personnel Policies for Certified Staff (2017-2018) required an annual evaluation of staff, granted an interview to qualified internal candidates an interview if they applied for jobs, and recognized a preference for promoting internal candidates over hiring equally qualified external candidates.  The Board's personnel policies were incorporated into Dr. Warren's annual contract with PCSSD.  Ark. Code Ann. § 6-17-204(a) (2018). Although the Board had five significant opportunities to give Dr. Warren with a formal written evaluation for her service as Interim Superintendent, it did not.

The Board's policy preference of promoting internal candidates applied to the Board's processes in selecting a Superintendent in 2018.  The Board had a duty of substantial compliance with its declared policy to prefer Dr. Warren as a qualified internal candidate and to grant her an interview when selecting the three finalists and the person to be offered the position of Superintendent.  *McElroy v. Jasper School Dist.*, 617 S.W.2d 356, 273 Ark. 143 (Ark. 1981); *Helena-West Helena School Dist. No. 2 v. Randall*, 796 S.W.2d 586, 32 Ark.App. 50 (Ark. App. 1990).

Dr. Warren was a qualified internal certified candidate for the 2018 position of PCSSD Superintendent.  The Board had a contractual duty to determine if Dr. Warren was entitled to a preference in their consideration of the individuals for interviews as

finalists. The Board did not discuss its policy and did not assess Dr. Warren's entitlement

to a preference or to an interview.  The Board had no rational basis for denying Dr.

Warren a preference in the hiring processes for Superintendent or for denying her an

interview.  The Board failed to adhere to its statutory and contractual duty of substantial

compliance with its policies. Dr. Warren's abilities, qualifications, and credentials

exceeded the abilities and qualifications of the three men selected as finalists, including

Dr. Charles McNulty who was offered the position of Superintendent. PCSSD breached

its contract with Dr. Warren and must answer in damages.

*Relief Sought*, Breach of Contract: expectation measure of damages, $215,000 per

year from July 2018, for a reasonable time, plus prejudgment interest from the date of the

breach to the date of the judgment entered by this Court, post-judgment interest at the

maximum rate allowed by law, and her attorneys' fees and costs.  Ark. Code Ann. § 16-

22-308; *Curry v. Thornsberry*, 128 S.W.3d 438 (2008).

j)   All equitable relief to which Dr. Janice Warren may be entitled.

4)  Prospects for settlement:  Unlikely

5)   This Court's jurisdiction:

a)   The bases of the Court's subject matter jurisdiction:

This Court has subject matter jurisdiction over this cause of action under 28 U.S.C. § 1331

because this is a civil action arising under the laws of the United States, specifically 42 U.S.C. §§

1981, 1983, 2000e-2(a)(1), 2000e-2(a)(2), 2000e-3(a), and 2000e-5(f)(1).

This Court has Supplemental Jurisdiction over Dr. Warren's state law claim against PCSSD

pursuant to 28 U.S.C. § 1367(a).  Dr. Warren's state law claim arises from the same nucleus of

operative facts asserted against PCSSD and the PCSSD Board members in their official and

individual capacities such that Dr. Warren's state law claim is essentially the same case or

controversy under Article III of the United States Constitution. Dr. Warren, as a plaintiff, would be expected to try these claims in one judicial proceeding. *Osborn v. The President, Directors, and Company of the Bank of the United States*, 22 U.S. (9 Wheat.) 738, 822-28 (1824); see also *Kokkonen v. Guardian Life Ins. Co*., 511 U.S. 375 (1994) (discussing the two purposes of ancillary jurisdiction, the first being applicable here).

b)  This Court's personal jurisdiction:

This Court has personal jurisdiction over defendants Mike Kemp, Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, Brian Maune, and PCSSD because at all times relevant to this cause of action, each of the foregoing had continuous and systematic contacts with the State of Arkansas that are sufficient to justify the State's exercise of judicial power with respect to all claims Dr. Warren may have against each of them. *Int'l Shoe Co. v. Washington*, 316 U.S. 310, 317 (1945) (citations omitted).

6)    A list of pending motions:

a)    Plaintiff's Second Motion to Compel Responses to Plaintiff's First Set of Interrogatories, filed 6/8/20, Dkt. No. 18;

b)    Defendants' Motion for Summary Judgment, filed 8/12/20, Dkt. No. 27;

c)    Defendants' Motion to Strike Plaintiff's Memorandum of Points and Authorities in Opposition to their Motion for Summary Judgment, and Response to Defendants' Statement of Undisputed Facts, and Addendum reordering Exhibits, filed 9/25/20, Dkt. No. 46;

d)    Defendants' Motion to File Supplemental Brief in Support of Motion for Summary Judgment, filed 9/25/20, Dkt. No. 49;

e)    Defendants' Motion to Strike Plaintiff's Surreply to Defendants' Motion for Summary Judgment, filed 10/5/20, Dkt. No. 56;

f)    Plaintiff's First Motion *in Limine* – Facilities, filed 10/15/20, Dkt. No. 58;

g)    Defendants' First Motion *in Limine* – Regarding General Matters, filed 10/16/20,

Dkt. No. 61;

     h)    Plaintiff's Second Motion *in Limine* – Admissibility of Evidence, filed 10/16/20, Dkt. No. 63;

7)  Summary of the facts:

STATEMENT OF FACTS

Pulaski County Special School District ("PCSSD") has the honor of being one of the nation's longest running desegregation suits because of racial inequities.[1] During the 31st year of PCSSD's Federal Court supervision, former Superintendent Dr. Jerry Guess, driven by a vision of unification, urged Dr. Janice Warren to join his team in 2012 as Director of Elementary Education. He was acquainted with her success in substantially reducing the achievement gap between White and Black children and re-establishing the fiscal integrity of Crossett School District during her ten-year service as Superintendent from 2001 through 2011. Crossett was declared fiscally distressed eight months after Janice Warren became Superintendent because of the declining enrollment and a shrinking economic base. Dr. Warren applied for the position of PCSSD's Director of Elementary Education.

Dr. Warren was an experienced agent of change in the public education arena, advancing the educational opportunities for students, staff, and other stakeholders. She began her career in educational leadership as an Elementary School Principal (K-5) for Crossett School District, Crossett, AR (1988-1991).  She, then, supervised four elementary schools PK-5 as an Administrative Assistant of Crossett School District (1992-1995).  She continued her ascension

---

[1] Tangipahoa Parish School System, Louisiana, 54 years in 2019 and continuing; East Baton Rouge Parish School System, 51 years, ended on July 14th, 2007.

in leadership to the position of Assistant Superintendent for the Crossett School District (1996–2001) as the elementary supervisor and elementary curriculum coordinator before being appointed Superintendent.

With more than ten years of successful multicultural education experience at the district level, Janice Warren commenced her tenure with PCSSD's with an infectious smile that communicated to all, "We can get this done!" In May of 2013, the duties of Interim Assistant Superintendent for Equity and Pupil Service were added to her responsibilities.  Margie Powell, then Federal Monitor in the Little Rock Office of Desegregation Monitoring for the United States District Court, observed in her 2014 *Update on the Status of PCSSD's Implementation of Its Desegregation Plan,* that after a little more than a year, Janice Warren, while assigned both roles of Interim Assistant Superintendent for Equity and Pupil Services and Director of Elementary Education, both full time jobs, "managed to shepherd the District to within reach of obtaining unitary status."  Plaintiff's Exhibit 1, p. 40.  Before Janice Warren took the reins of the office of Equity and Pupil Service, monitoring under Plan 2000 was dismal.  That changed with the implementation of the Educational Equity School Monitoring procedures under Dr. Warren's leadership.  Margie Powell, the Court's Expert, explains in her January 2020 report:

> Plan 2000 is twenty years old, and information gathering and methods used to interpret data has changed considerably. Schools have tools and ways of gathering and processing information that were not available when the Plan was written. Virtually every element of the educational process has an online component. Fortunately, the PCSSD has progressed into the new era of information gathering and data processing, and has a new monitoring tool; Educational Equity School Monitoring. This new computer program has promises of being a real game

changer. The new monitoring reports have more detailed information reflecting

the school's entire educational process and, the report has an equity focus in each

area examined. School personnel no longer have to wait until the end of the

school year to modify or eliminate programs, practices, or interventions that are

not working. In the PCSSD, if an updated monitoring report is needed today, it's

available today.

Court Expert, Margie Powell, Monitoring Report, Case 4:82-cv-00866-DPM (Dkt. No. 5559), filed 01/10/20.

In an unlikely turn of events Dr. Jerry Guess was terminated on July 18, 2017, by the District's new Board, six months in its infancy.  The Board didn't like his handling of then 36-year desegregation lawsuit.  Dr. Janice Warren, Assistant Superintendent for Equity and Pupil Services, who is a Black female was asked to assume the District's leadership role.  She was PCSSD's first female leader and the third Black to hold the office of Interim Superintendent.  In the District's prior 34-year history, it had hired six White males and three Black males to serve as Superintendent. Two of the Black males were Interim Superintendents when promoted to Superintendent.

Although effective from July 18, 2017, Dr. Warren signed her contract on August 8, 2017.  Pursuant to State law, the Board's Certified Personnel Policies, including customary procedures, were a part of her contract. The Certified Personnel Policies imposed on the Board: 1) the duty to evaluate its certified staff annually and to provide written evaluations, 2) the obligation to grant qualified certified staff an interview if they applied for a job openings, and 3) to grant qualified, certified staff a hiring preference over equally qualified external candidates.

Disparate treatment by the PCSSD Board commenced, immediately.  Led by Dr. Linda

Remele, a White female, the Board offered and paid Dr. Warren $195,000, $20,000 or 9.3% less, for the same work that Jerry Guess received $215,000 annually from 2011-2016, the period when the District's status of fiscal distress under Arkansas law made it subject to State control. Although PCSSD faced new financial challenges in 2014, PCSSD acknowledged in 2014 that it wasn't its operating funds that resulted in the District's designation of fiscal distress but repeated non-compliance with audit findings and a declining reserve balance.  Despite the inequitable salary, Dr. Warren commenced her tenure as Interim Superintendent with a "flawless transition and commencement of the academic school year."  Plaintiff's Exhibit 55, Board Minutes, August 8, 2017.  Shortly, thereafter, when the racial inequity in the construction of District facilities, harkening back to the District's 1950's separate and unequal treatment of Blacks, was revealed, the District fortunately had Janice Warren at its reins.  No high level coverup would transpire; the boil of racial discrimination would be lanced and those responsible would resign.

On or about August 24, an irate Mills parent called Dr. Warren and complained about the inequitable construction of Mills High School's athletic facility in the predominately Black community as compared with the Robinson Middle School athletic facility in a predominately White community.  After assessing the validity of the complaint, Dr. Warren notified each Board member and scheduled each to view the video footage that compared the two athletic facilities. With the District's Attorney, Sam Jones, she began a proactive process of notifying, correcting, and minimizing as much as possible more than a twenty-million-dollar act of racial injustice to the predominately Black community within the District. Chief Justice Price Marshall commended the District on its proactive notification to the Court of the problems. Seven days after PCSSD file its updated status report notifying the Court of the construction inequities and four days after the status hearing in Federal Court, Dr. Remele, the White female

Board President, began at the September 12, 2017, Board meeting a campaign to discredit and taint Janice Warren's impeccable professional history.  At this same meeting, the Board, as an official act, decided to commence its search for a permanent superintendent.  Rather than being celebrated, Janice Warren was denigrated and belittled and labeled as incommunicative by Dr. Remele and Alicia Gillen, the other White female member of the Board.  Dr. Warren was wrongfully accused of a lack of fiscal integrity because she approved the Executive Director of Operations' recommendation to paint, as he planned in the SRM budget, the Superintendent's office.  Motivated by racial animus and "same class" bias, Remele told the 25-year district level education veteran, "We don't air our dirty laundry" and "Just keep the ship afloat." "You're just an interim." Plaintiff's Exhibit 12, pp. 103, line 23 - p. 104, line 25, Warren Deposition; Plaintiff's Exhibit 9, p. 139, line 22 - p. 140, line12, Deposition of Linda Remele ("Remele Deposition").

　　　　Linda Remele began compiling her list of malicious criticisms and false, factually erroneous accusations ("Remele's List").  This list of inadmissible hearsay, with many double hearsay entries, of events not within Linda Remele's personal knowledge is being championed as evidence of legitimate nondiscriminatory reasons for the Board's retaliatory conduct, its justification for not including Janice Warren in the pool of finalist for the position of Superintendent, and not hiring her as the permanent Superintendent.

While asserting friendship and feigning the desire for Janice Warren's success, Linda Remele had staff to monitor and report the Interim Superintendent's every move; Releme called building principals and inquired about the Interim Superintendent's presentations and discussions. "I hear."  "They tell me."  "I told you."  These words often fell from Remele's lips. This was the environment in which the first Black female Interim Superintendent worked.  When Jerry Guess,

a White male, was the District leader, he operated insulated, functioning independently as a "silo with zero communication." Plaintiff's Exhibit 10, Gillen Deposition, p. 45, line 23 through page 46, line 18.

At its November 14, 2017, meeting, Remele and Gillen verbally attacked Dr. Warren's performance again with their lists of accusations further poisoning the perception of the Board's silent male majority membership against Dr. Warren's suitability for the position.  That same night, the Board received its first presentation by a third-party provider of its superintendent search services and the second on November 29, 2017.  At its December 12, 2017, the Board voted to hire Ray and Associates, an Iowa company.  The PCSSD Board did not give Dr. Warren an evaluation of her performance as Interim Superintendent before it hired Ray and Associates.

As part of its responsibilities, Ray and Associates posted the PCSSD's Superintendent advertisement online.  Dr. Warren applied for the position in early 2018 before the March 12, 2018, deadline. Thirty-six individuals submitted applications for the opening, 14 women and 22 men.  On March 27, 2018, Ray and Associates presented nine individuals, including Dr. Warren, two Black females and seven men -- three White and four Black, screened as Top Candidates among those who satisfied PCSSD's ten qualifications.  These nine were recommended to the PCSSD Board for interviews.

On March 27, 2018, the PCSSD Board selected three males, two Black and one White, for final interviews. In violation of her contract rights as a qualified certified employee and its own policies, the Board did not invite Dr. Warren to interview. The PCSSD Board did not give Dr. Warren a reason for not including her as a finalist, and the Board did not provide her with an evaluation of her performance as Interim Superintendent.  Dr. Warren's experience and credentials exceeded those of the three men selected for interviews, including Dr. Charles

McNulty, the sole White male the candidate selected interviews and, ultimately, for the position. Dr. McNulty's credentials exceeded that of the two Black males invited to interview.  One of the two Black males withdrew before his scheduled interview.  He lacked teaching experience, a minimum requirement for the issuance of an Arkansas Superintendent's license.

Linda Remele, PCSSD Board President, does not dispute that Dr. Warren was qualified for the position of Superintendent and does not dispute that Dr. Warren did not become less qualified for the position of Superintendent between the time Dr. Warren was appointed Interim Superintendent and when Dr. Warren applied for the position of Superintendent.  Plaintiff's Exhibit 61, p. 40 Remele Dep. *Beasley v. McNulty*.  Neither Dr. Remele nor other members of the Board sought to include Dr. Warren among the finalists and did not grant Dr. Warren an interview.  The Board did not discuss, as part of their processes, Dr. Warren's right to a hiring preference as a qualified internal certified candidate as required by PCSSD's Board Policies for Certified Personnel.  On April 3, 2018, the Board hired a lesser qualified White male external candidate.

Dr. Warren filed a charge with the EEOC and, thereafter, received her right to sue letter. Within the 90-day filing period, Dr. Warren filed her action with this Court under Title VII, Section 1981 and Section 1983.  Later, her Complaint was amended to add a State law breach of contract claim.

8) Proposed stipulations: None.

9) Contested Issues of Fact:

   a) Thirty-six individuals applied for the position of PCSSD Superintendent, 14 women and 22 men.  Nine top candidates were presented to the Board and recommended for interviews.  Whether the remaining 28 applicants were qualified or unqualified for the position of superintendent and whether Ray

and Associates based its recommendation solely on the data collected during

its processes are contested facts.

b) Whether the video presentations of the nine top candidates to the Board by

Ray and Associates was an interview.

c) Whether the Board reviewed Dr. Warren's application and her candidacy and assessed her

right to a hiring preference as required by the PCSSD Certified Personnel Policies.

d) Whether the Board Member's completion of the "Matrix for Reaching

Candidate Consensus" was a substantially subjective or an objective process.

e) Whether "multiple" or only two White female Board members developed serious concerns

about Dr. Warren's performance during her tenure as Interim Superintendent.

f) Whether the Superintendent, including her cabinet, or the Board has responsible for the day

to day operations of the district such as the determining the needed for appropriate

maintenance and care of District facilities, including the Superintendent's suite, the

purchasing of furniture, painting, ordering of materials and supplies.

g) Whether Dr. Remele, in violation of Board Policy, was intruding into the day-to-day

administration of the District, the purview of the Superintendent during 2017-2018.

h) Whether a Federal mandate necessitated the reorganization of PCSSD testing.

i) Whether the four high school Testing Coordinators were being paid but they

were not working.

j)  Whether before ordering the gift umbrellas, Dr. Warren made the decision to

be responsible for the gift to the Central Office staff.

k) Whether Dr. Warren shared the September 5, 2017, status report with the

members of the Board before it was filled.

l) Whether Dr. Warren represented to the District's attorney, Sam Jones, that

the Board supported the document.

m)  Whether the alleged October 26, 2017, incident at Sylvan Hills Freshman

Academy created an imminent or immediate threat.

n)  Whether Dr. Warren's contractual obligations were comparable to those of

Dr. Jerry Guess and Dr. Charles McNulty

o)  Whether Dr. Linda Remele received information regarding the applicants designated as Top

Candidates the from either Dr. Carl Davis or Dr. Bill Newman, the Ray and Associates

Consultants handling PCSSD's Superintendent Search, before the March 27, 2018, Board

meeting.

p)  Dr. Warren's right to and amount of compensatory damages.

q)  Dr. Warren's right to and amount of punitive damages.

10)  Contested Legal Issues:

a)  Whether Dr. Remele's List of Concerns and testimony regarding her List are

inadmissible.

b)  Whether Alicia Gillen's List of Concerns and testimony regarding her List are

inadmissible.

c)  Whether the Defendants purported legitimate nondiscriminatory reasons are a pretext for

intentional discrimination.

d)  Whether Plaintiff was discriminated against because of her sex.

e)  Whether Plaintiff was discriminated against because of her race.

f)  Whether the Board retaliated against Dr. Warren because of the position she took against

race discrimination by her employer as prohibited by Title VII.

g)  Whether Dr. Warren was retaliated against as prohibited by Section 1981.

h)  Whether Dr. Warren suffered Race & Sex Discrimination prohibited by 42 U.S.C. §

1983.

    i)    Whether PCSSD breached its contract with Dr. Warren.

    j)    Whether the Dr. Warren is entitled to equitable relief.


11)  A list and brief description of exhibits, documents, charts, graphs, models, schematic diagrams, summaries, and similar objects which may be used in opening statement, closing argument, or any other part of the trial, other than solely for impeachment purposes, whether or not they will be offered in evidence. Separately designate those documents and exhibits which the party expects to offer and those which the party may offer.

    a)    Documents and other things Plaintiff expect to offer:

        (1)    Board's Phone Records

        (2)    Margie Powell, Update on the Status of PCSD's Implementation of its Desegregation Plan (Dkt. No. 5020), filed 06/03/14

        (3)    Judge Price Marshall's Order, Case No. 4:82-cv-00866 (Dkt. No. 5652), filed July 2, 2020

        (4)    PCSSD's Response to Warren Motion to Intervene in Case No. 4:82-cv-00866

        (5)    Intervenors' Response to Warren Motion to Intervene in Case No. 4:82-cv-00866 (Dkt. No. 5543)

        (6)    PCSSD Plan 2000

        (7)    PCSSD's Letter Notice of Fiscal Distress Declaration

        (8)    PCSSD's Letter Notice of Release from State Control and Fiscal Distress Declaration

        (9)    Dr. Janice Warren's Interim Superintendent's Contract dated 8/8/2017

        (10)    The PCSSD Superintendent Search Approved Process and Timeline

        (11)    Board's Uniform Responses to Plaintiff's First Set of Interrogatories

(12) Chart of Board's Uniform Responses to Plaintiff's First Set of Interrogatories

(13) PCSSD's Transfer and Promotion Policy

(14) The Consensus-Building Matrix, General Information, Purpose and Directions

(15) The Consensus-Building Matrix

(16) Chart of the Defendants uniform responses to Plaintiff's First Set of Interrogatories, update to include all sub questions to #12

(17) SY 17-18 SRM Projects

(18) Purchase order for 150 umbrellas

(19) Dr. Janice Warren's personal check for $2436.84

(20) Dr. Warren's/Atty Sam Jones' email exchange re filing of the Supplemental Status Report and Alicia Gillen's 6:18 p.m. response.

(21) Principal West's Sworn Affidavit

(22) PCSSD's Superintendent Ad

(23) PCSSD's Board Policies, Sections 1 & 2

(24) Board Minutes: 7/18/2017, 8/8/17, 9/12/2017, 11/14/17, 11/21/2017, 12/12/2017, 3/27/18, 4/3/18,

(25) Videos of Nine Top Candidates

(22) August 2017 Video Comparison of Mills and Robinson Athletic facilities

(23) Candidate Comparison Chart (Warren, McNulty, Pruitt, and Harris)

(24) Employees' (65) Signed Petition regarding Dr. Warren's exclusion from pool of finalists

(25)   PCSSD Overtime Policy

(26)   Paul Brewer's Deposition and Darrick Williams emails regarding
       PCSSD's employment custom

(27)   ASBA, Legal Seminar handout Employing a Superintendent

(28)   Dr. Jerry Guess' Superintendent Contracts (2011-2018)

(29)   Dr. Charles McNulty's Superintendent Contract (2018-2021)

(30)   Ray and Associates, Regional Superintendent Salary Chart (Arkansas
       2015-2018)

(31)   Ray and Associates Superintendent Search Results

(32)   PCSSD & Joshua Staffing Stipulations

(33)   Chart of the Inadmissibility of Remele's List & Gillen's List

(34)   Virco Invoice

(35)   PCSSD's September 5, 2017, Supplemental Status Report

(36)   PCSSD's Elementary Principals' (100%) Letter in Support of Dr. Warren
       inclusion in the pool of finalists

(37)   Police Report Regarding Robinson Gun Incident

(38)   PCSSD's 2017-2918 Annual Personnel Hiring and Deployment Report

(39)   List and Locations of Arkansas' Female Superintendents

(40)   PCSSD Superintendent Applicant Pool

(41)   Teacher's Letter regarding Staff's Perspective of Dr. Warren

(42)   Contract Employee's email regarding Dr. Warren's service as Interim
       Superintendent

(43)   PCSSD's 10/24/19 Motion for Unitary Status

(44)   Citizen's Comment regarding Dr. Warren's Service

(45)   Remele's Deposition, Beasley v. McNulty

(46)   Commissioner Key & Dr. Jerry Guess' March 15, 2016, Agreement

(47)   Email dated March 14, 2014, to WD&D from Baldwin regarding the construction-price goal for Mills (Case No. 4:82-cv-00866 (Dkt. No. 5339-1)

(48)   Remele's List of Concerns with Dr. Warren's Responses

(49)   Dr. Warren's Responses to Gillen's List of Concerns

(50)   Earnest Duckery Deposition Exhibits

(51)   Dr. Remele's List of Concerns

(52)   Alicia Gillen's List of Concerns

(53)   Employee's Redacted Letter regarding fear of retaliation

(54)   PCSSD's Staff and Community's Ten Top Themes for Hiring a Superintendent

(55)   ASBA Handbook

(56)   PCSSD's Superintendent's racial and gender history

(57)   Warren's EEOC Charge

(58)   PCSSD's Response to EEOC Charge

(59)   Warren's Right to Sue Letter

(60)   Minutes PCSSD's Bi-monthly Monitoring Meetings (FOIA Access Pending)

(61)   Minutes and emails of PCSSD's Facilities Board and Facilities Working Group (FOIA Access Pending

    c.     Documents and other things Plaintiff may offer:

       (1) Dr. Guess' Letter to Board Member Keller

       (2) Dr. Janice Warren's Employment Records

       (3) Dr. Linda Remele's Employment Records

       (4) Derek Scott's Employment Records

       (5) Baldwin & Shell Construction Documents

       (6) Warren, McNulty, Pruitt, and Harris Applications for Superintendency

12)  The names, addresses and telephone numbers of witnesses for the party. Separately identify witnesses whom the party expects to present and those whom the party may call. Designate witnesses whose testimony is expected to be presented via deposition and, if not taken stenographically, a transcript of the pertinent portion of the deposition testimony.

    a.     Witnesses Plaintiff expects to call:

- Paul Brewer, former PCSSD Administrator,

- Dr. JohnTackett, former PCSSD Administrator,

- Dr. Linda Remele, PCSSD Board President,

- Dr. Charles McNulty, Superintendent PCSSD,

- Federal Court Expert, Margie L. Powell,

- Chair of the Joshua Monitors, Joy Springer,

- Deborah Roush, former PCSSD employee

- Kay Robinson, current PCSSD employee,

- Dr. Carl Davis, Ray & Associates Consultant,

- Dr. Bill Newman, Ray & Associates Consultant

- Willie Morris, Former Associate Director/Lead Planner, Arkansas Department of Education, #4 Capitol Mall, Room 111-B, Little Rock, AR 72201-1071

- Aleta Flectcher, Program Fiscal Manager, Arkansas Department of Education, #4 Capitol Mall, Room 111-B, Little Rock, AR 72201-1071

- Earnest Duckery, WD&D Architects, 400 West Capitol Avenue, Suite 1800, Little Rock, AR 72201

- Johnny Key, Commissioner Arkansas Department of Education, #4 Capitol Mall, Room 111-B, Little Rock, AR 72201-1071

- Mike Kemp, Tina Ward, Shelby Thomas, Alicia Gillen, Eli Keller,

   and Brian Maune, former and current Board Members;

- Jeff Senn, Principal Maumele High School
  PCSSD Administration
  501-234-2501
  jsenn@pcssd.org

- ShyreL Lee, Principal
  Cato Elementary School
  PCSSD Administration
  501-234-5902
  slee@pcssd.org

- Dr. John McCraney
  Coordinator of Equity/Mentoring
  Equity & Pupil Services
  501-234-2088
  JMCCRANE@pcssd.org

- Dr. Sherman Whitfield
  Director of Pupil Services
  Equity & Pupil Services
  501-234-2022
  SAWHITFIELD@pcssd.org

- Dr. Jerry Guess, Superintendent
  Watson Chapel School District
  4100 Camden Road, Pine Bluff, AR 71603
  (870) 879-0220

- Linda Goodwin
  Retired Administrator

- Denise Palmer, Former PCSSD CFO
  (501) 605-7033

- Emma Watson, Principal PCSSD
  Mills Middle School

- Lajuana Green, Director
  Testing and Assessment

- Yvone West, PCSSD Principal
  Sylvan Hills North

- Brady Bracher, PCSSD Assistant Principal
  Robinson High School

- Pam Fitzgiven, PCSSD Teacher & PACT Employees' Rights
  Officer, 41 Single Oaks, Sherwood, AR 72120, (501) 773-9416

Witnesses Plaintiff May Call:

- Molly Schwartzhoff, Vice President, Ray and Associates

- Shawn Burgess, PCSSD Assistant Superintendent of Human
  Resources

- Darrick Williams, PCSSD Director of Human Resources

- Will Reid, former PCSSD employee

13)  The current status of discovery, a precise statement of the remaining discovery and an estimate of the time required to complete discovery.

This Court set June 24, 2020, as the discovery deadline.  As part of her Second Motion to Compel, Plaintiff requested extended discovery as a sanction against Defendants for outrageous conduct designed to delay and impede Plaintiff's acquisition of evidence. The Court has not ruled on Plaintff's Second Motion to Compel.  Plaintiff has pending FOIA requests to which Defendant PCSSD has not responded.

14)  An estimate of the length of trial and suggestions for expediting disposition of the action.

Plaintiff anticipates needing four days for her case and estimate a total of six days for the entire trial.  This Court's ruling on the admissibility of Defendants' evidence of Remele's and Gillen's Lists of Concern in advance of trial would greatly expedite the disposition of this action.

Respectfully submitted this 19th day of October 2020,
Sarah Howard Jenkins
Ark. Sup. Ct. Reg. No. 97046
SARAH HOWARD JENKINS, PLLC
P.O. Box 242694
Little Rock, AR 72223
Telephone: (501) 406-0905
Email address:  sarah@shjenkinslaw.com
Attorney for Plaintiff