**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**JANICE HARGROVE WARREN**                                                        **PLAINTIFF**


**v.**                                       **No. 4:19-cv-00655-BSM**


**CHARLES MCNULTY, et al.**                                              **DEFENDANTS**



<u>**PLAINTIFF'S BRIEF IN SUPPORT OF HER RESPONSE TO DEFENDANTS' FIRST
MOTION IN LIMINE REGARDING GENERAL MATTERS**</u>

<u>**BACKGROUND**</u>

This case is an employment discrimination case.  Dr. Janice Warren, a twenty-year

educational professional with an impeccable leadership career at the district level and building

level has sued her current employer, Pulaski County Special School District ("PCSSD"). Dr.

Warren commenced her employment with PCSSD in 2012 and was quickly given increasing

responsibilities as part of the district's administrative leadership.  On July 18th of 2017, she was

appointed Interim Superintendent with all the obligations, duties, and rights of her predecessor,

Dr. Jerry Guess. Without evaluating her performance as required by Board Policy and State law,

PCSSD's Board of Education did not extend her position as Interim Superintendent, did not offer

her the position of Superintendent, and did not offer her an interview as part of its selection

processes as required by its policies for internal, qualified, certified employees.

Dr. Warren alleged in her complaint and demonstrated in response to Defendants' Motion

for Summary Judgment, with admissible evidence in the record, that Defendants' conduct was

motivated by intentional discrimination because of her sex and race, and in retaliation of her

notification to the District's attorney, Sam Jones, and the Federal Court of PCSSD's

discriminatory construction of Mills High School.   In this case, Dr. Warren bears the ultimate

burden of persuasion on her Title VII, Sections 1981 and 1983 claims, and her breach of contract

claim.

Defendants now request this Court to bar the admission of witness testimony and the

introduction of exhibits on a substantial number of topics: a witnesses' reasons for leaving

PCSSD; settlement discussions; PCSSD's pending litigation; PCSSD's climate and/or culture;

unrelated racially inflammatory situations, social justice organizations, social justice movements

and current events; superintendent salaries; witnesses' deposition testimony in other pending

litigation; and seven miscellaneous issues.   Defendants argue that these topics are "irrelevant"

and "highly prejudicial." Defendants' request is inconsistent with the applicable standard and

must be denied.   Defendants' request is an attempt to impede Dr. Warren's proof of her case and

insulate the Defendants' from their liability, to cover up PCSSD's wrongful conduct, to prevent

the "airing of its dirty laundry," and to permit PCSSD to continue its culture of race and sex

discrimination, retaliation, and institutionalized fear.   Each request will be addressed below.

## A. **THE APPLICABLE STANDARD**

The Federal Rules of Evidence ("Fed. R. Evid.") govern the introduction of evidence in

this case.   Fed. R. Evid. 101.   Unless the United States Constitution, a federal statute, or the Fed.

R. Evid. or other rules issued by the Supreme Court direct otherwise, Fed. R. Evid. 402 declares

that relevant evidence is admissible.   Fed. R. Evid. 402.   Defendants only cite to the Federal

Rule of Evidence as authority for their broad request to bar and exclude the admission of

documents, witness testimony, and issues at the upcoming trial.   Pursuant to that authority,

Defendants' request must be denied.

The broad base mandate of Rule 402 may be limited by this Court's exercise of its discretion. Fed. R. Evid. 403. "'Discretion' means . . . that something is to be done according to the rules of reason and justice, not according to private opinion; according to law, and not humour. It is to be, not arbitrary, vague, and fanciful, but legal and regular. And it must be exercised within the limit, to which an honest man competent to the discharge of his office ought to confine himself.'" 22A Fed. Prac. & Proc. Evid. § 5212 (2d ed.), quoting, 19 A.L.I. Proceedings, p. 226 (1942). This exercise of reason and justice to exclude evidence is an extraordinary remedy and is subject to a condition precedent.  See, generally, 12 Fed. Proc., L. Ed. § 33:105 (exclusion of relevant evidence under Fed. R. Evid. 403 is an extraordinary remedy to be used sparingly).

Rule 403 provides:

> The court may exclude relevant evidence *if* its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403 (emphasis added).  Before granting the extraordinary remedy of excluding relevant evidence, this Court must balance the "probative value of and need for the evidence against the harm likely to result from its admission."  Only then *may* this Court exclude relevant evidence. This Court is not required to exclude the evidence despite its conclusion that the probative value is substantially outweighed by one or more of the dangers identified in Rule 403. *Id.*

Several factors impact this weighing process.  First, the evidence must be *unfairly* prejudicial not merely prejudicial or highly prejudicial as Defendants assert. Rule 403 requires

the weighing of probative value of evidence against *unfairly* prejudicial evidence.  Logically

powerful evidence that is relevant to the Plaintiff's case will be prejudicial to the Defendants,

just as logically powerful evidence that is relevant to Defendants' case will be prejudicial to the

Plaintiff.  The standard for the exclusion of prejudicial evidence articulated in Fed. R. Evid. 403

is "unfairly" prejudicial.  Fed. R. Evid. 403.  *Unfair* prejudice "speaks to the capacity of some

concededly relevant evidence to lure the factfinder into declaring guilt on a ground different

from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180, 117

S. Ct. 644, 650, 136 L. Ed. 2d 574 (1997), *Burris v. Gulf Underwriters Ins. Co.,* 787 F.3d 875,

881 (8th Cir. 2015) (prejudicial evidence of attorney's disciplinary history not unfairly

prejudicial).  Unfair prejudice "means an *undue* tendency to suggest decision on an improper

basis, commonly, though not necessarily, an emotional one."  *Old Chief, supra.*, 519 U.S. 172,

180, 117 S. Ct. 644, 650, 136 L. Ed. 2d 574 (1997), *quoting*, Advisory Committee's Notes on

Fed. Rule Evid. 403, 28 U.S.C.App., p. 860.  None of the Defendants' requested exclusions are

unfairly prejudicial or are likely to "lure" a federal jury to find facts contrary to proof of material

issues.

Second, the availability of other means of proof is an appropriate factor when deciding to

exclude relevant evidence that may also have an adverse element of *unfair* prejudice. "The

determination must be made whether the danger of undue prejudice outweighs the probative

value of the evidence *in view of the availability* of other means of proof and other facts

appropriate for making decision of this kind under 403."  *Old Chief, supra.*, at 184–85, 117 S. Ct.

644, 652, 136 L. Ed. 2d 574 (1997), *quoting*, Advisory Committee's Notes on Fed. Rule Evid.

404, 28 U.S.C.App., p. 861 (emphasis added).  See also 22 C. Wright & K. Graham, Federal

Practice and Procedure § 5250, pp. 546–547 (1978) ("The probative worth of any particular bit

of evidence is obviously affected by the scarcity or abundance of other evidence on the same point").

Third, the impact of negative inferences must be weighed. Of concern is the absence of evidence the jurors expect in the proof of employment discrimination.

> There lies the need for evidence in all its particularity to satisfy the jurors' expectations about what proper proof should be. Some such demands they bring with them to the courthouse, assuming, for example, that a charge of using a firearm to commit an offense will be proven by introducing a gun in evidence. A prosecutor who fails to produce one, or some good reason for his failure, has something to be concerned about. 'If [jurors'] expectations are not satisfied, triers of fact may penalize the party who disappoints them by drawing a negative inference against that party.'"

*Old Chief*, *supra*, at 188, 117 S. Ct. 644, 654, 136 L. Ed. 2d 574 (1997), *quoting*, Saltzburg, *A Special Aspect of Relevance: Countering Negative Inferences Associated with the Absence of Evidence*, 66 Calif. L.Rev. 1011, 1019 (1978).

In employment discrimination cases the plaintiff must prove and jurors expect to hear about the work environment; the work culture; the treatment of comparable employees; a comparison of benefits, compensation, duties, and quality of performance; the employer's conduct, words, and history.   If witnesses are barred from testifying about their reasons for leaving PCSSD and evidence of current or past litigation of PCSSD's discriminatory conduct is excluded, a substantial risk arises that the jury will draw the negative inference that Janice Warren is merely a single disgruntled PCSSD-employee complaining about an effective, fair, and law-abiding employer. If testimony about PCSSD's culture is barred and excluded, a risk is

created that the jury will infer that PCSSD provides a positive, healthy work environment when indeed PCSSD's employees, even in the highest echelons of authority, work in an environment charged with fear of retaliation and intimidation (See Dkt. No. 40-56 & 40-69).

Fourth, the Supreme Court recognized that the party with the burden of persuasion not only "needs evidentiary depth to tell a continuous story" but has a right to tell *its* story with its choice of evidence. "Making a case with testimony and tangible things not only satisfies the formal definition of an offense, but tells a colorful story with descriptive richness." *Old Chief, supra*, at 190, 117 S. Ct. at 654. The narrative itself is relevant. This Court must weigh the probative value of the evidence the Defendants seek to exclude and the purported dangers alleged by the Defendants against admission.

## B. RULE 403'S BALANCING TEST IS SATISFIED; THE EVIDENCE IS ADMISSIBLE.

Dr. Warren asserted causes of action pursuant to Title VII, Sections 1981 and 1983, and breach of contract. Evidence is relevant if it "has any tendency to make a fact more or less probable that it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401. The evidence that the Defendants seek to exclude is relevant to issues in this case. Furthermore, as demonstrated below, the evidence satisfies Rule 403's balancing test and is admissible.

### 1. Plaintiff's Burden of Proof:

In Title VII, Sections 1981 and 1983 litigation, the plaintiff has the burden of establishing by the preponderance of the evidence a prima facie case of discrimination. If established, the burden shifts to the defendant employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Cop. v. Green*, 411 U.S. 792, 802, 93 S.Ct.

6

1817 (1973). This is a burden of production that must be met through the introduction of admissible evidence. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *Texas Department of Community Affairs v. Burdine* ("Burdine") 101 S.Ct. 1089, 67 L.Ed.2d 207, 450 U.S. 248 (1981). If the defendants' burden isn't met, defendants' failure to "introduce evidence which, taken as true, that would permit the conclusion that there was a nondiscriminatory reason for the adverse action," the presumption of discrimination remains. *St. Mary Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2741 (1993).

If the defendant's burden of production is met, the plaintiff has an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *St. Mary Honor*, supra., at 515. The defendant, having satisfied its burden of production, the inference of discrimination is rebutted. The employee retains the ultimate burden of proof and persuasion of discrimination. *Wallace v. DTG Operations*, 442 F.3d 1112, 1119 (8th Cir. 2006); *Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011), *Tribble v. Westinghouse Electric Corp.*, 669 F.2d 1193, 1196 (8th Cir. 1982) (affirming the denial of employer's motion for a directed verdict on an ADEA claim). The "'factual inquiry' in a Title VII case[is] . . . 'whether the defendant intentionally discriminated against the plaintiff. [I]s the employer . . . treating some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Burdine*, 450 U.S. 248, n.5, 101 S.Ct. 1089 (1981), referencing, *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335, n. 15, 97 S.Ct. 1843, 1854, n. 15, 52 L.Ed.2d 396 (1977).

Thus, evidence that demonstrates that the Defendants, PCSSD and its individual Board Members, intentionally discriminated against Dr. Warren is relevant and admissible pursuant to Fed. R. Evid. 402.  Evidence regarding the Board's knowledge, or notice and the Board's intent

are relevant.  Similarly, evidence that demonstrates the Board's purpose, goal, and intent in adopting its policies is relevant. Unless the probative value of the evidence is *substantially* outweighed by the dangers listed in Fed. R. Evid. 403, this Court must admit the evidence.

    a. <u>Witnesses' Reasons for Leaving PCSSD</u>.

  Defendants argue that permitting former employees to testify on their reasons for leaving "would only be for the sake of suggesting the District has a high turnover rate, has a difficult time retaining qualified employees, or to otherwise suggest the District is not a favorable place to work.  This testimony has no relevance to the issues of the case and would only seek to prejudice the jury."

  Here, Defendants argue that this evidence isn't relevant and is merely prejudicial. Contrary to their assertion, the evidence is relevant and mere prejudice is an insufficient justification for excluding this testimony.  This evidence is relevant to demonstrate the Defendants' knowledge that there are problems in its work environment.  Evidence available from current employees is scarce.  Most are reluctant to come forward (Dkt. No. 40-69 redacted letter). One piece of evidence provides an inference that the problem is fear of retaliation. (Dkt. No. 40-56 Teacher's letter). Testimony from former employees will support the inference available from the scarce evidence from current employees. More importantly, this testimony is evidence of the Defendants' knowledge and their determined need to provide incentives to its employees, such as the right to an interview if the internal applicant is qualified for the position and the hiring preference for qualified certified internal applicant, to retain them (Dkt. No. 40-14, Board Policies). The experiences shared by former employees establish the District's actions that are elements of Dr. Warren's causes of actions, makes her case with testimony, and "tells a colorful story with descriptive richness." *Old Chief, supra.,* at 187, 117 S. Ct. at 653.  Finally,

PCSSD's employee trends as distinguished from Dr. Warren's eight years of exception performance are relevant on the issue of malice and the Board's indifference to her treatment.

The balance here weighs heavily for admissibility. *United States v. Hill*, 249 F.3d 707, 713 (8th Cir. 2001) (permitting evidence of past crime and concluding what was said or did [sic] at other times can be a critical part of the story of a crime [cause of action]). Plaintiff must not be barred from inquiring for the reason former employees separated from PCSSD.

b.  Settlement Discussions.

Defendants argue "[whether] the Plaintiff and Defendants have engaged in settlement discussions is irrelevant and should not be admitted. Defendants cite Fed. R. Evid. 408 to support their position. Rule 408 does not provide an absolute bar to admissibility, indeed, Rule 408 states exceptions to its provision on prohibited uses of compromise offers and negotiations. More importantly, Defendants fail to assert that the evidence is prejudicial. Therefore, relevant evidence of settlement discussions is admissible unless offered for a prohibited use to prove or disprove the validity or amount of a disputed claim or to impeach testimony on offering a valuable consideration in compromising the claim or conduct or a statement made during negotiations about the claim. Without the assertion of prejudice, the evidence, if relevant is admissible.

c.  PCSSD's Pending Litigation

Because Dr. Warren's action is not a class action, Defendants assert that PCSSD's past or currently pending claims or lawsuits, including similar claims against the District, are not relevant, including PCSSD's long term desegregation lawsuit. Defendants are incorrect. PCSSD's long term desegregation lawsuit is material to Dr. Warren's performance of her responsibilities as Assistant Superintendent of Equity and Pupil Services and her claims of

retaliation.   Furthermore, other prior claims, litigation, and settlements of similar lawsuits are relevant on the issue of damages.

        d.      <u>PCSSD's Climate and/or Culture.</u>

Defendants argue that Plaintiff's counsel's knowledge of the District's past discriminatory practices,

> whether alleged or proven, are not relevant to this case, and would only serve to prejudice a jury.   Plaintiff's counsel should be admonished from making global statements that the District has a history of alleged discriminatory practices or other insinuations that would lead a jury to believe the District has had any previous litigation or discriminatory practice outside of the specific facts at issue in this litigation, specifically regarding Plaintiff.

The District's 36-year history of sex and race discrimination in hiring its superintendents is relevant on the issue of the Board's knowledge and intent. Statistical evidence of the District's student composition and employees' sex and race and efforts to ameliorate or maintain historical disparate treatment is relevant on the issue of intentional discrimination. The continued, long-term pattern of discrimination reflects a reality that community values that support and approve of the disparate treatment of women and racial minorities, both protected classes, in the workforce has not changed in 36 years.   These facts support an inference that purposeful discrimination occurred in the hiring of PCSSD's Superintendent in 2018. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977) (statistics showing an imbalance is often a telltale sign of purposeful discrimination).   The District's history demonstrates that the District has and continues to treat people

differently based on sex, race. *Texas Department of Community Affairs v. Burdine* ("Burdine"), 450 U.S. 248, n.5 (1981), referencing, *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335, n. 15, 97 S.Ct. 1843, 1854, n. 15, 52 L.Ed.2d 396 (1977).

The District's history is relevant to Dr. Warren's burden of persuasion and is not unfairly prejudicial. The evidence is admissible and Plaintiff's counsel must not be admonished to raise, argue, or prove the District's history.

e.      Superintendent Salaries.

In *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 807, 93 S.Ct. 1817 (1973), the U.S. Supreme Court established a burden-shifting analysis for establishing a violation of Title VII. The same analysis is used for establishing a violation of Sections 1981 and 1983. Plaintiff has the burden of establishing by the preponderance of the evidence a prima facie case of discrimination. To establish her prima facie case, Plaintiff's must demonstrate (i) that she belongs to a protected class; (ii) that she applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite her qualifications, she was rejected; and (iv) the circumstances give rise to an inference of discrimination. *McDonnell*, *supra.*; *Nitschke v. McDonnell Douglas Corp.,* 68 F.3d 249, 251 (8th Cir.1995)(discussing the fourth factor in the context of ADE: the plaintiff must also "provide some 'additional showing' that age was a factor in the termination); *Halsell v. Kimberly-Clark Corp.*, 683 F.2d 285 (8th Cir. 1982) (discussing the fourth factor; the employer continued to seek applicants of comparable qualifications).

To satisfy her burden of establishing circumstances that give rise to an inference of sex and race discrimination, Dr. Warren provided admissible evidence of her prior disparate

treatment as Interim Superintendent including her salary, the salary her male predecessor, the salary of the male hired in 2018 to fill the permanent position, and regional salaries from 2015 through 2018 (Dkt. No. 43, p. 28-29).  Dr. Warren also assert this evidence to establish that the Defendants' purported legitimate nondiscriminatory reasons were pretextual for actual intentional discrimination (Dkt. No. 43, p. 78-79).  This evidence is relevant; part of the Plaintiff's burden.  The truth is often prejudicial!  However, prejudicial isn't the standard for exclusion.  Rather, the evidence must be unfairly prejudicial.  These contracts and contract terms aren't unfairly prejudicial but tell the Plaintiff's story with richness.

Defendants argue, further, that Plaintiff's title was justification for the 9% difference in compensation that its failure to pay Dr. Warren equal pay was justified because she was not similarly situated to her comparators (Dkt. No. 58, p. 8).  Their argument does not justify exclusion of this evidence. A federal jury has the ability to determine based on proof if the difference in pay was a pretext or justified based on title rather than responsibilities.  *See*, *Corning Glass Works v. Brennan*, 417 U.S. 188, 94 S. Ct. 2223, 41 L. Ed. 2d 1 (1974), or under Title VII, *Washington Cty. v. Gunther*, 452 U.S. 161, 101 S. Ct. 2242, 68 L. Ed. 2d 751 (1981).  Defendants seek to justify their disparate treatment of Dr. Warren on three reasons: 1) she was not the permanent superintendent but a "placeholder;" 2) her predecessor's contract, Dr. Guess, was negotiated by Commissioner Key when PCSSD was under State control and not the Board; and 3) she could return to her job.  None of these excuses establish a difference in the work expected to be accomplished, the skill needed, the effort required, the responsibility imposed, or the work conditions. *Corning, supra*. These are legitimate bases for pay differentials.  Title is not a distinction.

The evidence substantiates that Defendants excuses are a pretext for discriminatory conduct.  First, PCSSD's Board of Education is a legal entity a public corporation with powers, duties, and privileges created by State law and not the individual members.  Ark. Code Ann. §§ 6-13-101, -102.  From 2011 through 2017, PCSSD offered and paid Dr. Guess an annual salary of $215,000.  While under State control, the Commissioner of Education supervised PCSSD's superintendent but at all times PCSSD was the obligated party in the contractual relationship not the Commissioner (Dkt. No. 40-59).  PCSSD held the right to terminate Dr. Guess' contract on 30 days-notice (Dkt. No. 40-59).  PCSSD through its Board offered and paid Dr. McNulty $215,000 in 2018 (Dkt. No. 40-36).  The legal entity not the individual members was the responsible party.

Although the Defendants call her "a placeholder," Dr. Warren was obligated to assume all the powers and duties vested in the position by applicable laws, regulations, and Board Policy (Dkt. 40-4, ¶ 1).  Dr. Warren had full authority with regards to the operation of the District, the educational program, and all other matters (Dkt. 40-4, ¶ 3). She fulfilled these obligations and more.  Board member Keller, praised the ease of transition and successful opening of the 2017 school year (Dkt. No. 55, p. 9).  Dr. Warren's leadership provided stability and encouragement to a staff rocked by the termination of their six-year leader approximately 30-days before the start of the school year.  In addition to the day-to-day administration of a district with 12,000 students, Dr. Warren worked with Attorney Jones not only with regards to the discriminatory conduct in facilities but also the overarching 36-year discrimination case.  She commenced monthly special gatherings of Central Office staff to build morale and encourage the productive relationships among staff.  She worked with HR and the testing coordinator on the issues surrounding testing.  Personnel relaxed and were

confident of fair treatment with Dr. Warren leading the District.  Dr. Janice Warren was not a placeholder but a functioning, vibrant, and effective leader of PCSSD.  At her appointment as Interim Superintendent, staff were elated and morale soared; "Employees felt valued, appreciated, and more importantly felt they could communicate concerns and ideas without fear of being reprimanded or terminated."  (Dkt.40-56)

Returning to her position as Assistant Superintendent for Equity and Pupil Services, a contract subject to annual renewal, was not substantially dissimilar from the rights held by both Guess and McNulty if terminated without cause.  Both were subject to termination on 30 days- notice; Dr. Guess would be compensated for six-months (Dkt. 40-59) but Dr. McNulty would be compensated for 12-months (Dkt. No. 40-36, ¶ 14).

The superintendents' salaries and their contracts are relevant to Dr. Warren's burden of persuasion and is not unfairly prejudicial.  The evidence is admissible. Fed. R. Evid. 403.

f.   <u>Witnesses' Deposition Testimony in Other Pending Litigation.</u>

Defendants asks this Court to bar the admission and use of witnesses' deposition testimony in other litigation in this case because the jury will be unduly confused.  Federal Rule of Civil Procedure 32 ("Fed. R. Civ. Pro.") authorizes the use of depositions at a hearing or trial against a party, to contradict or impeach the testimony given by the deponent as a witness.  Moreover, Fed. R. Civ. Pro. 32 (3) permits an adverse party to use for any purpose the deposition of a party who was the party's officer, director or designee under Rule 30(b)(6). 8A Fed. Prac. & Proc. Civ. § 2144 (3d ed.).

Here, Dr. Remele's deposition testimony in a prior litigation is highly probative.  The deposition was taken on June 4, 2019, after the hiring of the permanent Superintendent.  Dr.

Remele testified in her more recent deposition that her concerns regarding Dr. Warren's performance arose and were recorded in September of 2017 before the hiring decision was made.  This evidence invites an inference that her concerns impacted her decision regarding Dr. Warren's qualifications for the permanent position.  Furthermore, the qualifications for the position were set by the Board in 2018, after Dr. Remele created her list of concerns. If the term "qualifications" is a term of special meaning, it is the Board that established the meaning with its policies, in its advertisement, and in its application in selecting the permanent superintendent.

Neither the use of Dr. Remele's deposition testimony in another case nor asserted special meeting of the term qualifications will confuse the jury.  Dr. Remele's prior testimony is relevant for impeachment and producing the truth.

g.   Miscellaneous Issues.

Finally, Defendants ask this Court to provide a number of instructions to Plaintiff's Counsel on certain matter from witnesses, void dire, and opening and closing statements:

(1)    that the District has settled prior employment-related claims

Response:    As addressed earlier, prior settlements of similar claims are relevant to establish knowledge, malice, intent and reckless disregards for the Plaintiff's federal rights.

(2)    that juries in this state or around the nation have awarded damages to Plaintiff in employment cases, and referencing the amount of those awards;

Response:    As part of her burden of proof on her breach of contract claim, Plaintiff must prove her damages with reasonable certainty to avoid speculation by the jury.  Because Plaintiff's expectation damages are analogous to her

damages for Title VII sex and race discrimination and Section 1981 and 1983 damages, evidence of damage awards in employment cases are relevant and not unfairly prejudicial.

(3)     that any recovery made by the Plaintiff in this case would be shared with her attorneys or that Plaintiff has been required to incur expenses to bring this action; Plaintiff's attorney's fees are relevant to her recovery;

 Response:     Attorneys' fees are an element of the harm suffered by the Defendants' actions but are generally determined by the Court.

(4)     the size or wealth of the District and telling the jury that it should "do unto others as you would have them do unto you" or should apply "Golden Rule" telling the jury that it should attempt to "send the District a message" or any other such language which is calculated to have the jury assess damages based upon emotional response and not upon the evidence and the Court's instructions;

Response:     Fed. R. Evid. 403 does not authorize a blanket exclusion of any form of evidence.

(5)     referring to any objections to interrogatories or other discovery made by the District;

Response:     If objections are relevant to a material issue, Fed. R. Evid. 403, absent a determination of unfair prejudice is admissible.

6)  Plaintiff should be prohibited from exhibiting for the jury or offering into evidence for the jury any reports and/or photographs and/or exhibits which were not responsive and forwarded to Defendants on a timely basis in response to Defendants' written discovery responses or pursuant to the orders of this Court;

Response:      Evidence that was produced by the Defendants or within

Defendants' custody or control whether actually produced for the Defendants does

not result in surprise and is admissible.

(7)      Plaintiff be prohibited from introducing hearsay statements through Plaintiff or her

witnesses.

Response:  Defendants hereby concede that both Dr. Remele's List and Alicia

Gillen's List are inadmissible.


Respectfully submitted this 21th day of October, 2020,
Sarah Howard Jenkins
Arkansas Bar #97046
SARAH HOWARD JENKINS, PLLC
P.O. Box 242694
Little Rock, Arkansas 72223
Phone: (501) 406-0905
sarah@shjenkinslaw.com (email)