IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JANICE HARGROVE WARREN                                          PLAINTIFF

v.                              No. 4:19-cv-00655-BSM

CHARLES MCNULTY, et al.                                          DEFENDANTS

**MEMORANDUM IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION IN LIMINE REGARDING FACILITIES**

      Defendants, by and through its attorneys, Bequette, Billingsley & Kees, P.A., respectfully submits this Memorandum in Support of its Response to Plaintiff Janice Warren's Motion in Limine regarding the use of facilities' evidence. For the reasons set forth herein, Plaintiff's Motion should be denied.

**INTRODUCTION**

      On October 14, 2020, Dr. Janice Warren ("Dr. Warren") filed a Motion in Limine requesting that Pulaski County Special School District ("PCSSD") be prohibited from asserting or alleging – in any capacity – that Dr. Warren "is responsible for the construction inequities between Mills and Robinson, or that she failed to monitor facilities as part of Plan 2000." Dr. Warren argues that PCSSD is "playing fast and loose with the Courts," and "must be estopped!" based on the doctrines of judicial estoppel and equitable estoppel. In arguing her Motion, Dr. Warren mischaracterizes any position taken, or statement made, by PCSSD in an attempt to limit discussion of her job performance. Warren's Motion should be denied as: (1) the doctrine of judicial estoppel is not implicated as PCSSD has not clearly assumed inconsistent positions in order to gain a benefit; and (2) the doctrine of equitable estoppel does not apply as Dr. Warren

1

cannot demonstrate a single way in which PCSSD has acted with the intent to deceive or mislead any party involved in this suit.

## DISCUSSION

1. **The doctrine of judicial estoppel does not apply as PCSSD has not taken a position inconsistent with the one it occupied in *LRSD v. PCSSD*.**

Judicial estoppel is an equitable remedy fashioned to protect the integrity and machinery of the judicial process. *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S. Ct. 1808, 1815 (2001). Under this doctrine, which is invoked on a case-by-case basis and is subject to a court's discretion, parties are barred from taking inconsistent positions in the same or related litigation. *Infodeli v. W. Robidoux*, No. 4:15-CV-00364-BCW, 2020 U.S. Dist. LEXIS 66539, at *13 (W.D. Mo. Mar. 17, 2020) (citing *Wyldes v. Hundley*, 69 F.3d 247, 25 (8th Cir. 1995); *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 905 (8th Cir. 2005)). While no exhaustive formula exists to calculate whether judicial estoppel applies, courts generally consider whether: (1) a party's later position(s) are clearly inconsistent with its earlier position; (2) the party has succeeded in persuading a court to accept that party's earlier position, leading to the perception that either the first or second court was misled; and (3) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *New Hampshire v. Maine*, 532 U.S. 742, 750-751, 121 S. Ct. 1808 (2001).

   a. **PCSSD's position in this case is not clearly inconsistent with the position it took in *LRSD v. PCSSD*.**

In her Motion and accompanying Brief, Dr. Warren argues that the doctrine of judicial estoppel applies as, "PCSSD has been inconsistent in its litigation and its conduct duplicitous." Pl's Brief in Support of Motion in Limine – Facilities (Dkt. No. 59 at p. 10).

2

### i.  Inconsistent Position: *LRSD v. PCSSD*.

Dr. Warren begins by highlighting the case of *Little Rock School District v. Pulaski County Special School District,* 4:82-cv-00866-DPM, which is focused squarely on PCSSD's unitary status and desegregation-related actions. Dkt. 59 at p. 5. Six weeks prior to the start of that trial, Dr. Warren filed a Motion to Intervene based on her belief that findings of fact in that case could be used against her in other pending litigation. *See* Judge Marshall's Order in *LRSD v. PCSSD*, Dkt, No. 5652, p. 2 and Pl's Brief in Support of Motion in Limine – Facilities, Dkt. No. 59 at p.3. Specifically, Dr. Warren was concerned that blame for the disparities in construction between Mills and Robinson may be placed upon her and subsequently imported into this case as a defense, among other possibilities. Dkt. 59 at p. 6. In its Opposition Brief, PCSSD stressed that the subject matter of *LRSD v. PCSSD* was Pulaski County Special School District's compliance with Plan 2000, not the individual performance of any one cabinet member or administrator. PCSSD's Brief in Opposition to Warren's Motion to Intervene in *LRSD v. PCSSD* (Dkt. No. 5607).m PCSSD further emphasized that Dr. Warren had failed to articulate how her interests were inadequately represented or amounted to more than an indirect or tangential aside in the case. *Id*.

After considering Dr. Warren's Motion, PCSSD's Opposition Brief and the position of the McClendon Intervenors, U.S. District Judge Price Marshall issued an Order denying Dr. Warren's Motion to Intervene on the grounds that it was not timely. *See* Judge Marshall's Order in *LRSD v. PCSSD*, Dkt, No. 5652, p. 4. In his Order, Judge Marshall briefly noted that, "PCSSD is clear [in its briefing] that it does not intend to blame Dr. Warren [for any PCSSD failings on Mills and Robinson]." *Id.* at 3. This statement, Dr. Warren alleges, along with PCSSD's decision not to clarify or correct the Order, caused her to forego an appeal of the Motion's denial and rely on the inference that "PCSSD [did not] blame Dr. Warren for the inequities in Mills' discriminatory

3

construction." Dkt. 59 at p. 3, 7. Moreover, Dr. Warren concludes that, in not correcting Judge Marshall, PCSSD intentionally misled him regarding its intention of holding her responsible for the construction inequities at a future time. *Id*. at 8-9.

Dr. Warren's argument is misguided, however, as PCSSD did not take issue with Judge Marshall's Order because Judge Marshall also postured in his Order that, "adding a third side right before trial to an already complicated two-sided dispute would prejudice [the parties] […] [who had] been working hard to meet each other's evidence and arguments." *See* Judge Marshall's Order in *LRSD v. PCSSD*, Dkt, No. 5652, p. 4. In other words, the specific and fact-intensive inquiry into an individual's job performance – like that of Dr. Warren or of any other individual cabinet member or administrator - was a burdensome and unjust issue to insert for consideration at that stage of the proceedings. PCSSD agreed with both the rationale and the outcome of the Order. Furthermore, Judge Marshall was issuing an opinion in that specific and separate case, unlike the one here, where Dr. Warren has squarely put her job performance at issue as the plaintiff in this employment matter.

        **ii.**     **Inconsistent Position:** *Warren v. McNulty.*

Dr. Warren next contends that PCSSD is advancing an inconsistent position in this case by speculating that PCSSD will introduce evidence at trial that seeks to place blame for the construction disparities on Dr. Warren. Dkt. 59 at p. 7. This "fast and loose conduct" consists of four "assertions" made by PCSSD throughout the course of this litigation. *Id*. at 7-8. Dr. Warren's contention is theatrical, however, as PCSSD has done nothing more than highlight specific responsibilities intrinsic to the position of Assistant Superintendent for Equity and Pupil Services. *See* PCSSD Certified Administrative/Professional/Technical/Supervisory Job Classification – Assistant Superintendent for Equity and Pupil Services, attached as Exhibit 1 to the Response

Motion. Assertion #1 appeared in PCSSD's Statement of Undisputed Material Facts, which was filed on August 12, 2020:

> Dr. Warren's role [as] Assistant Superintendent for Equity and Pupil Services include[s] monitoring all phases of Plan 2000 of the District's desegregation plan, which included the District's obligations as to facilities.

Assertion #2, found in PCSSD's Memorandum Reply Brief in Support of Defendants' Motion for Summary Judgment, which was filed September 25, 2020, reads:

> As the District's Equity Officer, [Dr.] Warren bore the ultimate responsibility for monitoring all desegregation efforts undertaken in regard to facilities, just as she did for the other five areas under Plan 2000.

PCSSD did not spontaneously impose upon Dr. Warren the duty to monitor the District's desegregation plan as she contends that these "assertions" demonstrate. Conversely, Dr. Warren herself testified in a deposition on June 22, 2020 that her role as Assistant Superintendent for Equity and Pupil Services encompassed monitoring all phases of the District's desegregation plan, including facilities. *See* Depo. of Dr. Janice Warren, Dkt. No. 40-12, p. 61-62. She also admitted that, "coordinating and implementing PCSSD's desegregation plan and […] serving as the liaison between the PCSSD and the Federal Court and its monitors" were among her primary job responsibilities. Amend. Compl. ¶ 17. Moreover, the 'job goal' for the position of Assistant Superintendent for Equity and Pupil Services reads, in relevant part, "plan, direct, control and monitor the District's overall desegregation plan," while 'Performance Responsibility No. 2' is to, "Coordinate and implement the District's desegregation plan with all departments through monitoring to preclude discrimination on the basis of race […]". *See* PCSSD Certified Administrative/Professional/Technical/Supervisory Job Classification – Assistant Superintendent for Equity and Pupil Services. Accordingly, PCSSD's mention of Dr. Warren's duty to monitor all phases of Plan 2000 is not only more than an assertion, it is a relevant and recognized function of

5

the position that she has occupied since May of 2013. *See* PCSSD Certified Administrative/Professional/Technical/Supervisory Job Classification – Assistant Superintendent for Equity and Pupil Services; Amend. Compl. ¶ 17.

Ergo, as PCSSD did not adopt a position as to Dr. Warren's potential responsibility for any perceived shortcomings under Plan 2000 in *LRSD v. PCSSD*, nor has it assumed a position as to that same issue in this case, PCSSD cannot be accused of *clearly* occupying inconsistent and contradictory positions in order to gain an advantage. Accordingly, the doctrine of judicial estoppel does not apply.

2. **The doctrine of equitable estoppel does not apply as Dr. Warren has not demonstrated that PCSSD intended to deceive or mislead her, or any other involved party.**

"Equitable estoppel is an equitable doctrine invoked to avoid injustice in particular cases." *Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 59, 104 S. Ct. 2218, 2223 (1984). **"When a claim of equitable estoppel is made with respect to a federal statute, federal law principles of equitable estoppel apply,"** and the party asserting the doctrine bears the burden of proof. *In re Wertz*, 557 B.R. 695, 705 (Bankr. E.D. Ark. 2016) (quoting *In re Heflin*, 464 B.R. 545, 553 (Bankr. D. Conn. 2011)). To succeed on a claim of equitable estoppel under federal law, "the party requesting the estoppel must show that the defendants have engaged in 'affirmative … conduct that was designed to mislead or was unmistakably likely to mislead' a plaintiff." *Bell v. Fowler*, 99 F.3d 262, 269 (8th Cir. 1996) (quoting *Garfield v. J.C. Nichols Real Estate*, 57 F.3d 662, 666 (8th Cir. 1995)). Thus, the moving party must demonstrate that the defendants deliberately intended to mislead or trick the plaintiff. *In re Wertz*, 557 B.R. 695, 705 (Bankr. E.D. Ark. 2016).

Dr. Warren bases her prayer for equitable estoppel on the assertion that PCSSD's decision not to correct or clarify Judge Marshall's Order induced her decision to forego an appeal of that

Order. Dkt. 59 at p. 14. She attempts to bolster this proposition by noting that PCSSD had a reasonable amount of time - 12 days leading up to trial - within which to act and that, as a result, it was reasonable for Dr. Warren to change her position in reliance on PCSSD's inaction. *Id*. at 13. What Dr. Warren fails to note, however, is the grounds upon which Judge Marshall actually based his denial. Dr. Warren's Motion to Intervene was ultimately denied because of its timeliness, not because of anything that PCSSD specifically said or did. *See* Judge Marshall's Order in *LRSD v. PCSSD*, p. 4. In fact, of the four-page Order, roughly three full pages are dedicated to a discussion of Rule 24 of the Federal Rules of Civil Procedure and its requirement that a request to intervene be "timely," while consideration of PCSSD's intent is limited to approximately half of a paragraph. *Id.* Further, Dr. Warren has not presented any other act, omission, or statement of PCSSD's that demonstrates its intent to mislead, trick, or lull her.

As a claim of equitable estoppel requires that the non-moving party intend to mislead the moving party, the doctrine of equitable estoppel does not apply.

## CONCLUSION

Dr. Warren has not made a compelling argument as to why justice demands that PCSSD be estopped from asserting – in any capacity – that Dr. Warren is responsible, in whole or in part, for the construction inequities between Mills and Robinson, and/or that she failed to adequately monitor facilities as part of Plan 2000. Dr. Warren has failed to acknowledge that, as the plaintiff in this case, she knowingly and voluntarily began a discussion that is centered on her employment history, job performance, and reputation.

For the foregoing reasons, PCSSD respectfully requests that Dr. Warren's Motion to limit facilities-based evidence be denied.

Respectfully submitted,

BEQUETTE, BILLINGSLEY & KEES, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Phone: (501) 374-1107
Fax: (501) 374-5092
Email: jbequette@bbpalaw.com
Email: ckees@bbpalaw.com

By: _____**W. Cody Kees**_____
      Jay Bequette, #87012
      W. Cody Kees, #2012118

8