IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JANICE HARGROVE WARREN**                                                            **PLAINTIFF**

v.                          No. 4:19-cv-00655-BSM

**CHARLES MCNULTY, et al.**                                                          **DEFENDANTS**

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

*A.  FACTUAL BACKGROUND*

This matter is an employment discrimination/breach of contract case.  In an unlikely turn of events PCSSD Superintendent Jerry Guess was terminated on July 18, 2017.  The District's new Board, six months in its infancy, didn't like his handling of then, 36-year desegregation lawsuit.  Dkt. No 40-20, Guess' Letter to Keller.  Janice Warren, a Black female, was asked to assume the District's leadership role.  She was PCSSD's first female to lead the District and the third Black to hold the office of Interim Superintendent.

On or about August 24, an irate Mills parent called Dr. Warren and complained about the inequitable construction of Mills High School's athletic facility in the predominately Black community as compared with the Robinson Middle School athletic facility in a predominately White community.  After assessing the validity of the complaint, Dr. Warren notified each Board member and scheduled each for a viewing of the video footage that compared the two athletic facilities.  Dkt. No 40-12, p. 68, lines 8- p. 69, line 8, Deposition of Janice Warren ("Warren Deposition").  With the District's Attorney, Sam Jones, she began a proactive process of notifying, correcting, and minimizing as much as possible more than a twenty-million-dollar act

of racial injustice to the predominately Black community within the District. Chief Judge Price Marshall commended the District on its proactive notification to the Court of the problems. Dkt. No 40-12, pp. 120, line 18, p. 121, Warren Deposition.

Seven days after the Court was notified of the inequities by the filing of an updated status report and four days after the status hearing in Federal Court, Linda Remele, the White female Board President, began on September 12, 2017, at the Board's meeting, a campaign to discredit and taint Janice Warren's impeccable professional history. Dkt. No 40-65. At the same time, the Board determined that it would commence a search for a permanent superintendent. Dkt. No 40-75, Minutes Sept. 12, 2017; Complaint ¶ 22.

Dr. Warren applied for the position of PCSSD Superintendent in early 2018. On March 27, 2018, Ray and Associates presented nine individuals, included Dr. Warren, two Black females and seven men -- three White and four Black, screened as Top Candidates. Dkt. No 40-22, Image of Nine Top Candidates. These satisfied PCSSD's ten qualifications and were recommended to the PCSSD Board for interviews. Dkt. No 40-21, Superintendent Search Ad.

On March 27, 2018, the PCSSD Board selected three males, two Black and one White, for final interviews. Dkt. No 40-43, Board Minutes dated March 27, 2018; Dkt. No 40-7, PCSSD Personnel Policies for Certified Staff (2017-2018) ("Personnel Policies 2017-2018"). In violation of her contract rights and its own policies, the Board did not accord her a hiring preference, did not invite Dr. Warren to interview, and did not evaluate her performance as Interim Superintendent. Dkt. No 40-9, Remele's Deposition at p. 133, lines 9-24.

Dr. Warren filed a charge with the EEOC and, thereafter, received her right to sue letter. Within the 90-day filing period, Dr. Warren filed her action with this Court under Title VII, Sections 1981, 1983. Later, her Complaint was amended to add a State law breach of contract

claim.  Defendants, PCSSD and six of the seven-member Board, filed their Motion for Summary Judgment on August 12, 2020, and with permission of this Court have supplemented their Brief in Support of the Motion to address Dr. Warren's State law breach of contract claim. Dr. Warren tenders this Brief in Opposition to Defendants' motion.

### B.  MOTION FOR SUMMARY JUDGMENT:  THE APPLICABLE STANDARD

PCSSD and its Board of Education ("Board"), both in their official and individual capacities, are defendants in this Title VII, §§ 1981 and 1983 employment discrimination and breach of contract case.  Defendants have moved this Court to grant them judgment as a matter of law pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. Pro.") 56.

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.
>
> The court should state on the record the reasons for granting or denying the motion.

Fed. Civ. Proc. Rule 56(a).

The applicable substantive law is the source of and identifies those facts that are material.  If the parties dispute facts that "affect the outcome of the suit under the governing law," the motion must be denied.  *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).  Defendants must provide a properly supported motion with admissible evidence; only then is the Plaintiff required to go beyond her allegations with "'any significant probative evidence tending to support the complaint.'"  *Id*., at 249, internal citations omitted.  Summary judgment is only proper for the Defendants if, with admissible evidence, they demonstrate that Plaintiff Janice Warren's contract claims have no basis in fact.  Wright, Miller & Kane, 10A Fed. Prac. & Proc. Civ. § 2727.1 (4th ed. 2020) ("Fed. Prac. & Proc. Civ.").  This Court may only grant summary judgment if "'the moving party has established his right to a judgment with such

*clarity* as to leave no room for controversy and the non-moving party is *not* entitled to recover under any discernible circumstances.'" *LeCroy v. Dean Witter* Reynolds, Inc, 585 F.Supp. 753 (E.D. Ark. 1984) (emphasis added), *quoting*, *Butler v. MFA Life Insurance Co.*, 591 F.2d 448, 451 (8th Cir.1979).  See also *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (reversing, pointing out that the moving parties' submissions had not foreclosed the possibility of the existence of certain facts from which a jury could infer that there had been a meeting of the minds).

  C.  *DR. WARREN AND PCSSD WERE BOUND TO AN ENFORCEABLE CONTRACT.*

  Arkansas law provides that general contract law applies to teacher, and, therefore, certified employment contracts and ambiguities are to be construed against the drafts-person. *Helena-W. Helena Sch. Dist. No. 2 v. Randall*, 32 Ark. App. 50, 53, 796 S.W.2d 586, 587 (1990); *Maddox v. St. Paul Sch. Dist.*, 16 Ark. App. 112, 113, 697 S.W.2d 130, 131 (1985).  Dr. Warren's Interim Superintendent contract involved the exchange of promises. Both, Dr. Warren and PCSSD, provided consideration for the other's promises. Dr. Warren promised to undertake and perform the delineated duties and responsibilities and PCSSD promised to pay and otherwise support Dr. Warren.  PCSSD Personnel Policies for Certified Staff (2017-2018) ("Personnel Policies 2017-2018") were incorporated into Dr. Warren's contract with PCSSD and provided additional consideration for her undertaking.  Ark. Code Ann. § 6-17-204(a) (2017). These policies are binding on both parties.  Ark. Code Ann. § 6-17-204(a) (2018).

  As a matter of contract law, PCSSD custom, and fair dealing, the Board had a duty of substantial compliance with its declared policy to prefer internal candidates when selecting the three finalists and in selecting the person to be offered the position of Superintendent.  *McElroy v. Jasper School Dist.*, 617 S.W.2d 356, 273 Ark. 143 (Ark. 1981) (recognizing the principle of

substantial compliance in the context of a probationary teacher) (emphasis added); *Helena-West Helena School Dist. No. 2 v. Randall*, 796 S.W.2d 586, 32 Ark.App. 50 (Ark. App. 1990).

Dr. Warren was an internal certified candidate for the 2018 position of PCSSD Superintendent. The Board had a contractual duty to determine if Dr. Warren was entitled to a preference in their consideration of the individuals selected for interviews as finalists. The granting of preference was within the Board's discretion. If the Board abused its discretion, it failed to satisfy its obligation of substantial compliance with its policies. *Leola School District v. McMahan*, 289 Ark. 496, 712 S.W.2d 903 (1986). An abuse of discretion must be established with clear and convincing evidence. A board's decision that is not supportable on any rational basis is arbitrary, capricious, and discriminatory and fails to satisfy its duty of substantial compliance with its policies. *Lamar Sch. Dist. No. 39 v. Kinder*, 278 Ark. 1, 642 S.W.2d 885 (1982).

### D.  PCSSD's Certified Staff Policies Are Applicable to Superintendents

Only a Board of Directors is authorized to hire a superintendent. Ark. Code Ann. § 6-13-620(5)(A)(i)(a) (2018). Defendants argue that the Board's failure to follow its own policy was not a breach of contract because the Board is not subject to its Promotion and Transfer Policy when it administrates the hiring of a superintendent. (Defs. Brief, Dk. No. 70, pp. 5-7). However, Defendants' argument that the Board is not bound by its policies misses the mark. Arkansas Law mandates that Boards of Directors must "Enact, enforce, and *obey* school district policies" (Ark. Code Ann. § 6-13-620(4) (2018)) and "Employ staff, including a superintendent of schools to oversee the day-to-operations of the school district." Ark. Code Ann. § 6-13-620(5)(A)(i)(a) (2018). "Superintendents and assistant superintendents may be employed under contract terms and conditions that incorporate all elements prescribed by the State Board of

Education." Ark. Code 6-13-620(5)(A)(i)(c) (2018). Most importantly, the statute further provides that "The employment contract *shall* . . . Incorporate all personnel policies adopted by June 30 to be in effect on July 1 of the following employee contract year subject to the requirements and exceptions contained in §§ 6-17-204 and 6-17-205." Ark. Code Ann. § 6-13-620(5)(A)(i)(b)(2)(emphasis added). The cited statutory references further delineate the Board's obligation when hiring a superintendent:

> The personnel policies of all school districts shall be considered to be incorporated as terms of the *licensed personnel contracts* and shall be *binding* on the licensed personnel and *the school district*.

Ark. Code Ann. § 6-17-204(a)(2018) (emphasis added). Section 6-17-205 isn't relevant to the issues addressed herein; however, section 6-17-204 is. The title to section, § 6-17-204(a), "Incorporation into Teachers' Contracts," suggests that it is limited to Teachers. But, the first subsection references "licensed" personnel and not teachers and subsection 6-17-204(c)(2)(B)(ii)(b) distinguished those "continuing contract employees" that are subject to *The Teacher Fair Dismissal Act* of 1983 from those who are continuing contract employees and not subject to *The Teacher Fair Dismissal Act* of 1983, reinforcing the broad applicability of § 6-17-204(a) to all licensed personnel. Furthermore, the scope of "licensed personnel" is illustrated in Ark. Code Ann. § 6-17-301(a)(1), *Employment of Licensed Personnel*:

> A school district board of directors may employ superintendents, deputy superintendents, assistant superintendents, and high school principals, as well as department heads, coaches, teachers, *and other* licensed personnel by written contract for a period of time not more than three (3) years.

*Id*. (emphasis added).

PCSSD's Personnel Policies are the only personnel policies applicable to licensed/certified personnel including the Superintendent. "[E]ffective July 1, 2016. After July 1, 2016, the written policies contained herein are the *sole and only* personnel policies for certified employees of PCSSD." Personnel Policies, p. 4, Plaintiff's Exhibit 1; see also deposition of Paul Brewer, PCSSD Assistant Superintendent for Personnel 2009-2019, Dkt. No. 40-31, p.11, line 22 – p. 12, line 5.  Contrary to the Defendants' argument, the statutory directions for employing licensed or certified personnel reveal a consistent thread:  a district's personnel policies are included in the contracts of licensed/certified personnel, including the contracts of superintendents and interim superintendents.

1. <u>The Board had a duty to substantially comply with its policies.</u>

Regardless of the "body," department, or division that has the responsibility of "administrating" the processes of hiring for PCSSD, the contract rights of certified employees must be honored.  These rights were not nullified by the fact that PCSSD's Board rather than HR is tasked with making the hiring decision.  The Board's failure to adhere to its policies was not only a breach of contract but also provides an inference of discrimination. With regard to Dr. Warren's application for Superintendent, the Board did not substantial comply with its policies. Ark. Code Ann. § 6-17-204(a) (2018). *McElroy v. Jasper School Dist.*, 617 S.W.2d 356, 273 Ark. 143 (Ark. 1981) (recognizing the principle of substantial compliance); *Helena-West Helena School Dist. No. 2 v. Randall*, 796 S.W.2d 586, 32 Ark.App. 50 (Ark. App. 1990).

When Dr. Warren applied for the position of Superintendent, her employment contract as Interim Superintendent included the Personnel Policies and pursuant thereto she was granted three rights raised in the amended complaint in this action:  1) a hiring preference, 2) a right to an

interview based on PCSSD-custom, and 3) a right to an evaluation of her work as Interim Superintendent before "any extension" of her contract. Ark. Code Ann. § 6-17-204(a) (2017).

      a. The hiring preference

The Personnel Policies provide in pertinent part:

> PROMOTION AND TRANSFER POLICY
>
> The general policy of the District is to employ the most able and best qualified persons with the proper credentials for all positions. However, PCSSD favors promotions from within so that where, in the opinion of the administration, ability, qualifications, and credentials of an existing employee are equal to those of an outside applicant, the existing employee will be favored for promotion. Normally this will be accomplished by licensed employees within the District being extended the advantage of first consideration for promotion.

Personnel Policies, p. 115. Because PCSSD favored promotions from within, the Board was required to determine if Dr. Warren's "ability, qualifications, and credentials" were equal to the eight external candidates included among the nine Top Candidates recommended and presented by Ray and Associates on March 27, 2018. To substantially with its Policy, the Board needed to review its policy, determine its applicability, and assess Dr. Warren's relative comparison to any selected external candidate. When the Board selected the three male external candidates for interviews, their abilities, qualifications, and credentials should have been reviewed and compared with Dr. Warren's application to assess her candidacy vis-à-vis their relative abilities, qualifications, and credentials of the three external candidates. See, the Candidate Comparison Chart, Dkt. 40-23. The Board failed to make a colorable attempt to comply with its policy.

Alicia Gillen and Shelby Thomas testified that the Board did not discuss its Personnel Policy as part of its deliberations.  Gillen Deposition, p. 85, line 1 – p. 86, line 10 (Dkt. 40-10); Thomas Deposition, p. 39, line 11 – p. 40, line 1 (Dkt. 40-32).  All seven Board members objected to the need, if any, to grant Dr. Warren a preference or that a preference was required.  Dkt. No. 40-68, question 12b.  Indeed, Dr. Remele admits that the comparison of candidates only occurred among the three external candidates selected for interviews.  When asked for evidence that Dr. McNulty was superior to Dr. Warren, Dr. Remele testified:

> 14  Q    And so, you are saying that his experience in
> 15  multi-cultural education exceeded that of Doctor
> 16  Warren?  Is that what you are saying?
> 17  A    If you will go back to the fact that Doctor
> 18  Warren was not interviewed at that point in time.  She
> 19  was in the nine.  At this point, we are comparing him
> 20  with the other people that interviewed in a
> 21  face-to-face interview.

Remele Deposition, Dkt. 40-9, p. 117, lines 12-21.  No comparison of Dr. Warren's abilities, qualifications, and credentials occurred.  The Board only assessed the abilities, qualifications, and credentials of the three external candidates. Board member Shelby Thomas determined candidate superiority among the nine Top Candidates based on the brief video presentations, "not necessarily what is documented on paper."  Thomas Deposition, p. 43, line 1 – 13 (Dkt. 40-32).  The Board had a statutory duty to substantially comply with its Personnel Policies.  It did not.  The Board's failure to review its policy and to examine the Dr. Warren's ability, qualifications, credential relative to those of the external candidates selected is not supportable on any rational

basis and failed to satisfy its duty of substantial compliance with its policies. *Lamar Sch. Dist. No. 39 v. Kinder*, 278 Ark. 1, 642 S.W.2d 885 (1982).

> b. The Board did not interview Dr. Warren for the position of Superintendent and failed to substantially comply with the District's employment custom for qualified internal candidates.

Both prior to and after Dr. Warren's 2018 application for the superintendency, PCSSD maintained a custom that granted certified or qualified internal applicants an interview. Paul Brewer, Asst. Super. Personnel, 2009-2019, Deposition, p. 12, line 6-25 (Dkt. No. 40-31). See also Darrick Williams' emails reflecting the custom in 2020 (Dkt. No. 40-30). The Board did not substantially comply with this long-term custom. Defendants may reply that Dr. Warren's video presentation was an "interview." This assertion is inconsistent with the description of the presentation of the videos by Ray and Associates, the company hired to handle and manage the screening of candidates. In point of fact, the video presentation was implemented to assist the Board in determining those to be invited for interviews. See The Consensus Building Matrix: General Information, Purpose and Direction, ¶ 1; see also Ray & Associates description of Stage 4, March 27, 2018, video review as the Candidate Presentation to select candidates for interviews. Dkt. No. 40-5.

> c. The Board did not substantially comply with its statutory duty or its Policy to evaluate Dr. Warren's performance as Interim Superintendent.

A school district's board of directors is required to evaluate its superintendent annually but no less "often than prior to *any* extension of his or her employment contract." Ark. Code 6-13-620 (2017) (emphasis added). Similarly, Board Policy 1.7.P: Powers and Duties of the Board provides that

> The Board shall concern itself primarily with the broad questions of policy as it exercises its legislative and judicial duties. The administrative functions of the District are delegated to the Superintendent who shall be responsible for the effective administration and supervision of the District. Some of the duties of the Board include:
>
> . . . .
>
> 4. Conducting formal and informal evaluations of the Superintendent annually or no less often than prior to any contract extension . . . .

PCSSD Board Policy 1.7P (4) (11/14/17) (https://www.pcssd.org/board-policies--150)(last viewed 10/29/2020). The Personnel Policies contain both broad general provisions regarding evaluation and assessment of licensed/certified employees and detailed, specific evaluation tools for teachers (TESS) and building level administrators (LEADS). Neither TESS nor LEADS is applicable to the evaluation of a superintendent or an interim superintendent. The broad general policy statement is applicable to all licensed/certified personnel. The Personnel Policy states:

> PERSONNEL POLICIES GOALS
>
> The Board recognizes that a dynamic and efficient staff is necessary for maintenance of a quality school system. The Board's specific personnel goals are:
>
> (4)     To conduct an employee appraisal program that will contribute to the continuous improvement of staff performance.

Personnel Policies, Evaluation, p. 5.

Dr. Warren's Interim Superintendent contract ran from July 18, 2017, to June 30, 2018. At the end of her tenure as Interim Superintendent or upon termination of the Interim Superintendent for cause, Dr. Warren was entitled to return to her position as Asst. Super. or another position upon mutual agreement.

> Return to Previous Position. Upon the expiration of this Agreement, or in the event of the termination of this Agreement, the parties hereto here by agree that Interim Superintendent shall return to her position as Assistant Superintendent for Equity and Pupil Services, or such other position in the District as the parties may mutually agree.

Warren's Interim Superintendent Contract, p. 4, ¶ 14 (Dkt. 40-10). On May 4, 2018, Dr. Warren executed an agreement to serve as Asst. Super. for the 2018-2019 school year or 244 days. Plaintiff's Exhibit 2. Dr. Warren's employment contract with the District was extended by that May 4, 2018, agreement through the 2018-2019 school year. Arkansas Law imposed a duty on PCSSD's Board to evaluate Dr. Warren prior to May 4, 2018, the date her employment contract extended. Dr. Remele acknowledged that Dr. Warren was entitled to an evaluation but was not given one; the matter was not placed on a Board agenda. Remele Deposition, June 4, 2019, *Beasley v. McNulty*, Case No. 4:18-cv-508-DPM, pp. 39 – 41 (Dkt. No. 40-61).

Now, Defendants argue that the Board provided feedback throughout the year and, therefore, no breach occurred. The Defendants invite an inference that Board substantially complied with its statutory obligation of providing an evaluation by giving "feedback." The purported feedback was not a colorable attempt to comply with the duty to evaluate.

Using Dr. McNulty's 2018-2019 Superintendent Evaluation as guide for determining compliance the broad policy goal of the Personnel Policy, the Board's "feedback" falls woefully short of compliance with the duty to evaluate Dr. Warren. Dr. McNulty was rated in three broad categories with descriptors defining the details of the broad category. Dr. McNulty was provided a written copy of the evaluation signed by each member of the Board. Plaintiff's Exhibit 3, p. 6. The broad categories were:

      I.      Educational Leadership:  The superintendent provides leadership and direction to PCCSD that is based on desired student achievement.

      II.      District Management: The superintendent demonstrates effective planning and management of district administration, finances, personnel, and operations.

      III.      Board & Community Relations:  The superintendent maintains a positive and productive relationship with the board and the community.

Plaintiff's Exhibit 3, pp. 1-5.

Unlike Dr. McNulty's experience, on September 12, 2017, Dr. Warren was confronted with a recitation of allegations by Dr. Linda Remele; on November 14, 2017, Dr. Warren was invited to join an Executive Session and was verbally attacked with oral allegations by the two white female members of the Board as the nine men sat silently along the sides of the conference table.  Dr. Warren was not given a written list of the purported concerns, no advance notice of the allegations was provided, the allegations were not investigated by the women before being asserted.  Dr. Warren was not given an opportunity to respond to the allegations. Twelve months later, after this suit was filed, two undated and unsigned lists of allegations were delivered to Dr. Warren as part of the individual Defendants' response to a Request for Document Production, an unlike location for the good faith feedback on one's performance.  Subsequent investigations reveal that most of the allegations were unfounded.  See, Response to Remele's Document Dkt. 40-65 and the Evidentiary Evaluation of Remele's List Dkt. No. 40-45.  Ms. Gillen later admitted she lacked personal knowledge of some of the incidents on her list of nine accusations and demonstrated that she did not understand Dr. Warren's job responsibilities.  Gillen was, therefore, was unqualified to evaluate Dr. Warren's performance.  See Dkt. No. 40-10, Gillen's Deposition, p. 16, line 5 - p. 25, line 24, p. 105, line 13 - p. 107, line 17, p.110, line 25 - p. 113.

No investigation was made by the full Board or a Board Committee before or after the accusations were vehemently hurled at Dr. Warren on November 14, 2017. The accusations are those of Linda Remele and Alicia Gillen.  The remaining members' indifference to Dr. Warren's rights is implied from their silence. See, e.g*., Maxwell v. Southside Sch. Dist*., 273 Ark. 89, 90, 618 S.W.2d 148, 148 (1981) (the court compares the stated goals of the personnel policy with the procedure followed by the board and concluded that no colorable attempt at complying with the personnel policy was made).  Dr. Warren's feedback did not address her educational leadership, or district management, or community relations.  Dr. Remele and Ms. Gillen accused her of not communicating with the Board because Dr. Warren did not provide status reports and other legal documents to the Board when Board-history indicates that the Board had no expectation of receiving that information because the prior Superintendent did not share the information with the Board.  Moreover, Dr. Warren involved the Board in the assessment of the Mills High School inequities, emailed the proposed Supplemental Status Report before filing, and kept the Board updated on the issue as the investigation progressed.

      2.  Dr. Warren's Damages

The Board's failure to provide Dr. Warren with a good faith assessment of her performance puts her at risk in seeking future employment as a superintendent and results in a severe blemish on her exceptional performance as a PCSSD employee, including her tenure as Interim Superintendent.  The failure to assess Dr. Warren's entitlement to a hiring preference and the failure to grant her an interview were rights that must be measured by her expectation interest, the value of being appointed Superintendent for a reasonable time.  These are valuations that juries are expect to make in our system of law.

CONCLUSION

PCSSD and its Board failed to substantially comply with its policies and thereby breached the employment contract with Dr. Warren. Plaintiff asks this Court to deny Defendants' Motion for Summary Judgment on not only Dr. Warren's breach of contract claim but her other claims as previously requested. Plaintiff requests that she be awarded her attorney's fees and all other legal and equitable relief to which she is entitled.

        Respectfully submitted this 29th day of October 2020,
        Sarah Howard Jenkins
        Ark. Sup. Ct. Reg. No. 97046
        SARAH HOWARD JENKINS, PLLC
        P.O. Box 242694
        Little Rock, AR 72223
        Telephone: (501) 406-0905
        Email address: sarah@shjenkinslaw.com
        Attorney for Plaintiff