IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JANICE HARGROVE WARREN                                PLAINTIFF

v.                     CASE NO. 4:19-CV-00655-BSM

PULASKI COUNTY SPECIAL
SCHOOL DISTRICT, *et al.*                                                 DEFENDANTS

## ORDER

Defendants' motion for summary judgment [Doc. No. 27] is denied.

### I. BACKGROUND

Dr. Janice Hargrove Warren is suing the Pulaski County Special School District ("PCSSD") and its school board for race and sex discrimination, retaliation, and breach of contract. The undisputed facts are as follows.

Warren is a black woman who was PCSSD's Director of Elementary Education and Assistant Superintendent of Equity and Pupil Services. Pl.'s Resp. Defs.' F. No. 1, Doc. No. 42. She was given a one-year contract to serve as PCSSD's interim superintendent while the school board searched for a permanent superintendent. *Id*. at Nos. 2, 6.

Upon taking the interim position, Warren approved the repainting of the superintendent's office and was instructed to make no other renovations. *Id*. at No. 20–21. Warren then purchased 150 imprinted umbrellas—totaling $2,436.84—as Christmas gifts for Central Office staff. *Id*. at Nos. 27–29. Warren ultimately paid for the umbrellas with her own money. Board member Linda Remele recorded these events in a document entitled, "Issues Leading to a Lack of Confidence in Dr. Warren." *Id.* at No. 24; Mot. Summ. J, Ex.

I, Doc. No. 27.

Approximately one month after Warren became the interim superintendent, a parent called her to report inequities between the athletic facilities at a predominantly-black school and predominantly-white school. *See id.* at Nos. 6, 31. Warren notified the board, as well as PCSSD's lawyer, of the parent's report. *Id.* at No. 31. At the time, this court was overseeing a desegregation plan for PCSSD, and "facilities" was one area in which PCSSD was noncompliant. *See id.* at No. 32. PCSSD's lawyer filed a status report, *id.* at No. 33, and a hearing was held, *see id.* at No. 24.

The board utilized a third-party search firm, Ray & Associates, to help with its superintendent search. Pl.'s Resp. Defs.' F. at Nos. 8–9. Ray & Associates recommended Warren, along with eight other applicants, to PCSSD. *Id*. at No. 12. The nine finalists included two black women, four black men, and three white men. *Id*. at No. 13. Warren was the only internal PCSSD applicant. Each board member completed a form to identify the candidates to be interviewed. *Id.* at No. 13; Pl.'s Addendum, Ex. 8, Doc. No. 40; *see* Mot. Summ. J., Ex. F. The board interviewed three men, two black and one white, before hiring the white man. Pl.'s Resp. Defs.' F. Nos. 14, 17.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party

demonstrates that there is no genuine dispute of material fact, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). All reasonable inferences must be drawn in a light most favorable to the non-moving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

### III. DISCUSSION

A.  Race and Sex Discrimination

Summary judgment is denied on Warren's race and sex discrimination claims because she has established a prima facie case of discrimination, and there are genuine issues of fact in dispute. Whether the school district discriminated against Warren will be determined by an examination and weighing of the facts by a jury and is not properly decided in a summary judgment.

Warren has presented no "direct evidence" of race or sex discrimination. *See McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 873 (8th Cir. 2007). She must therefore create an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). This requires Warren to first establish a prima facie case of discrimination. *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008). To meet her burden, she must show that (1) she is a member of a protected class, (2) she was meeting PCSSD's legitimate job expectations, (3) she suffered

an adverse employment action, and (4) similarly situated employees outside the protected class were treated differently. *Id*. If Warren establishes a prima facie case, PCSSD must offer evidence to show there was a legitimate, nondiscriminatory reason for its actions. *McGinnis*, 496 F.3d at 873. If PCSSD articulates such a reason, the burden returns to Warren to show that PCSSD's reason is pretextual. *Id*.

*1. Prima Facie Case*

When the facts are viewed in the light most favorable to Warren, it is clear that she has alleged a prima facie case of discrimination. Warren is a member of a protected class because she is a black woman.

The parties dispute whether Warren was meeting PCSSD's expectations, so, at this stage of the case, the facts are viewed in favor of Warren. Consequently, she was meeting PCSSD's expectations as indicated by Ray & Associates's determination that she should be considered for the permanent position. Pl.'s Resp. Defs.' F. at 12. The school board also "commended [her] for hitting the ground running and for the flawless transition with Cabinet and Staff." PCSSD Meeting Minutes, Ex. 55, Doc. No. 40. Further, school board member Linda Remele considered Warren to be well-qualified. Dep. Linda Remele, Ex. 61 at 40, Doc. No. 40. Finally, she met PCSSD's expectations by reporting the athletics facilities' inequities, because PCSSD was operating under a desegregation plan, and the superintendent is charged with implementing "an educational program in accordance with State and Federal requirements and the needs of the District." Pl.'s Resp. Mot. Summ. J. at 43, Doc. No. 43.

This court "commended the District on its proactive notification to the Court" of the inequities. *Id*. at 3.

Whether Warren suffered an adverse employment action turns on what was required under her interim contract and the district's policies. When the record is viewed in the light most favorable to Warren, there is enough to overcome summary judgment on this issue. Warren asserts that she suffered an adverse employment action when PCSSD failed to interview her for the permanent position. *Id*. at 6. Defendants argue that this was not an adverse action because Warren was not terminated from the interim position, nor from the Assistant Superintendent for Equity and Pupil Services position. Defs.' Supp. Br. Mot. Summ. J. at 10, Doc. No. 28. In support of this argument, defendants point out that the Eighth Circuit has never held that denying a candidate a finalist slot is a materially adverse employment action. *Id*. at 11, 24. In reply, Warren argues that the failure to interview her was an adverse action because she was an internal candidate, and PCSSD's Transfer and Promotion Policy required the district to give a preference to her because she was a qualified internal candidate. Pl.'s Resp. Mot. Summ J. at 26.

Finally, the record is sufficient to determine that Warren was treated differently than similarly situated persons not in her protected class. In support of Warren's argument that she was more qualified for the job than the men who were interviewed, she points out that one of the black men lacked the teaching experience required for an Arkansas superintendent's license, while she met the experience requirement. *Id*. at 17. She argues

5

that the other black man and the white man had experience in districts that lacked sufficient diversity to prepare them for PCSSD, which was operating under a desegregation plan. *Id*. at 18.

### 2. PCSSD's Nondiscriminatory Reasons

Defendants essentially argue that nothing in the record shows that they engaged in discriminatory conduct. In support of this, they point out that their candidate pool was diverse and came from a national search. Defendants also argue that seven of their nine candidates were black, and the fact that they hired one of the two non-black candidates does not demonstrate racial discrimination. Defs.' Supp. Br. Mot. Summ. J. at 27. Moreover, even if Warren was the most qualified candidate, she was not the "best" candidate for the position. *Id.* at 24. Indeed, Warren's communication and budget-management skills concerned them. *Id*. at 20–22.

### 3. Pretext

Warren contends that the qualifications of the black male finalists were substantially less than McNulty's, and that their presence "served as a pretext for creating a racially diverse pool" of finalists. Pl.'s Resp. Mot. Summ. J. at 17–19. Warren further argues that defendants' reasons are pretextual because school board member Remele compiled the document, "Issues Leading to a Lack of Confidence in Dr. Warren," Mot. Summ. J, Ex. I, immediately after the status hearing on the district's unequal athletic facilities. Pl.'s Resp. Mot. Summ. J. at 53. Although these arguments may not overcome the scrutiny of the jury,

6

they are sufficient to overcome summary judgment because all factual inferences are viewed in the light most favorable to Warren.

Despite the school district's well-made arguments, all reasonable must be drawn in favor of Warren, the non-moving party. *See Holland*, 487 F.3d at 643. Warren has offered reasonable explanations to support pretext, so summary judgment is denied.

B.      Retaliation

Summary judgment is denied on Warren's retaliation claim because there are genuine issues of fact in dispute.

To make a prima facie case of retaliation, Warren must show that (1) she engaged in statutorily protected activity, (2) an adverse employment action was taken against her, and (3) a causal connection exists between the two events. *Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 928 (8th Cir. 2007); *Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1042–43 (8th Cir. 2007). Warren argues that she engaged in protected activity when she reported the inequities between the facilities at a predominantly-black and predominantly-white school. She alleges that the board's decision not to consider her for superintendent was an adverse employment action. Warren argues that these events are causally connected because seven days after PCSSD's attorney reported the inequities to the court, the board held a meeting and decided not to promote her. Am. Compl. ¶ 67.

Defendants argue that Warren did not engage in protected conduct, but even if she had, the decision not to promote her was not an adverse employment action. *See* Mot.

7

Summ. J. at 15–17. They argue that there is no agenda item discussing the use of Ray & Associates from the relevant board meeting, and that Warren simply assumes the board decided to use a third-party search firm at that meeting, since the minutes from the meeting "suggest" it was a covered topic. *Id.* at 18. Defendants also argue that they chose not to interview Warren at the PCSSD office six months after she reported the facilities' inequities, which weighs against temporal proximity. *See id.* at 18–19.

Because there are material issues of fact in dispute, summary judgment is denied on Warren's retaliation claim.

  C.  <u>Breach of Contract</u>

Summary judgment is denied on Warren's breach of contract claim because there are material issues of fact in dispute.

Warren must prove the existence of an agreement, breach of that agreement, and resulting damages, to succeed on her claim. *Foreman Sch. Dist. No. 25 v. Steele*, 347 Ark. 193, 202 (2001). The parties agree that they entered into a one-year contract for Warren to serve as interim superintendent. Pl.'s Resp. Defs.' F. Nos. 2, 6. Warren argues that the "Personnel Policies for Certified Staff" were incorporated into their contract and bind both parties. Pl.'s Resp. Defs.' Supp. Br. Mot. Summ. J. at 5, Ex. 17, Doc. No. 83. She argues that PCSSD's policy specifies a preference for promoting internal candidates over equally qualified external candidates, and that defendants breached their contract by not interviewing her for the permanent position. Am. Compl. ¶ 77. Warren also argues that defendants failed

to provide her a formal evaluation of her performance as interim superintendent. *Id.* ¶ 79.

Defendants argue that Warren's allegations are not "entirely accurate." Defs.' Supp. Br. Mot. Summ. J. at 5. They argue that the internal preference policy does not apply to superintendents, so they did not breach their contract by narrowing the pool to external applicants. *See id.* Defendants argue that Warren was not entitled to formal evaluations because she was "only an Interim," and the purpose of the evaluation policy is to assess a superintendent "prior to any contract extension." *Id.* The parties dispute whether the video that Warren submitted constituted an interview. Pl.'s Resp. Defs.' F. at No. 13.

Because there are material issues of fact in dispute, summary judgment is denied on Warren's breach of contract claim.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment [Doc. No. 27] is denied.

IT IS SO ORDERED this 29th day of March, 2021.

_____
UNITED STATES DISTRICT JUDGE