IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JANICE HARGROVE WARREN                                    PLAINTIFF


v.                           Case No. 4:19-cv-00655-BSM


CHARLES MCNULTY, et al.                                   DEFENDANTS


## PLAINTIFF'S BRIEF IN SUPPORT OF HER UNOPPOSED MOTION FOR TRIAL DEPOSITION BY MICHELLE OLIVER JOHNSON

This matter is an employment discrimination, Title VII, 42 U.S.C. §§ 1981 and 1983, and breach of contract case brought by Dr. Janice Warren ("Dr. Warren"), Assistant Superintendent for Equity and Pupil Services ("Asst. Sup. Equity") and former Interim Superintendent, against her employer Pulaski County Special School District ("PCSSD").  Dr. Warren is a black female.

This Court has subject matter jurisdiction over this cause of action under 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, specifically 42 U.S.C. §§ 1981, 1983, 2000e-2(a)(1), 2000e-2(a)(2), 2000e-3(a), and 2000e-5(f)(1). Furthermore, this Court has Supplemental Jurisdiction over Dr. Warren's State law claim against PCSSD pursuant to 28 U.S.C. § 1367(a).

The trial of this matter is scheduled for the week of September 20, 2021.  The parties have requested a jury trial.

FACTUAL BACKGROUND

On July 18, 2017, Dr. Jerry Guess was terminated as Superintendent of PCSSD. PCSSD's new Board, six months in its infancy, didn't like his handling of the then 36-year

1

desegregation lawsuit.  Dkt. #40-20, Guess' Letter to Keller.  Janice Warren, a Black female, was asked to assume the leadership role as Interim Superintendent.  She was the first female to lead PCSSD and the third Black to hold the office of Interim Superintendent.  On or about August 24, an irate Mills parent called Dr. Warren and complained about the inequitable construction of Mills High School athletic facility in the predominately Black community as compared with the Robinson Middle School athletic facility in a predominately White community.  After assessing the validity of the complaint, Dr. Warren notified each Board member and scheduled each for a viewing of the video footage that compared the two athletic facilities.  Dkt. #40-12, p. 68, lines 8- p. 69, line 8, Deposition of Janice Warren ("Warren Deposition").  With the PCSSD's Attorney, Sam Jones, Dr. Warren began a proactive process of notifying, correcting, and minimizing more than a twenty-million-dollar act of racial injustice to the predominately Black community within PCSSD. Chief Judge Price Marshall commended PCSSD on its proactive notification to the Court of the problems (*Id*. pp. 120, line 18, p. 121, Warren Deposition) and used PCSSD's proactive effort as one of the bases for holding that PCSSD performed its good faith obligation to eradicate discrimination. (Dkt. 5730, Memorandum & Order of Unitary Status, Case No. 4:82-cv-00866-DPM.)

In March of 2018, Dr. Warren applied for the position of PCSSD Superintendent.  On March 27, 2018, the PCSSD Board selected three males, two Black and one White, for final interviews. In violation of her contract rights and its own policies, the Board did not invite Dr. Warren to interview.  (Dkt. #40-42, Board Minutes dated March 27, 2018;  Dkt. #40-7, PCSSD Transfer & Promotion Policy.)  The PCSSD Board did not give Dr. Warren a reason for not including her as a finalist, and the Board did not provide her with an evaluation of her performance as Interim Superintendent. (Dkt. # 40-9, Remele's Deposition at p. 133, lines 9-24.)

Not including Dr. Warren in the pool of finalist for an interview because of her race, sex, and in

retaliation of her opposition to PCSSD's discriminatory practices in the construction of its

facilities were adverse employment actions and a breach of her employment contract.  Failing to

follow its own policies that required interviewing and granting an internal candidate because of

her race, sex, and in retaliation for her opposition of PCSSD's discriminatory practices were

adverse employment acts. (Dkt. #40-7, PCSSD Transfer & Promotion Policy).

Dr. Warren filed a charge with the EEOC and, thereafter, received her right to sue letter.

Within the 90-day filing period, Dr. Warren filed her action with this Court under Title VII,

Sections 1981, 1983.  Later, her Complaint was amended to add a State law breach of contract

claim.  Defendants, PCSSD and six Board members, have asserted as a defense that the

inequities in the Mills construction were a byproduct of Dr. Warren's failure to perform her job

as Asst. Sup. for Equity and Pupil Services.  Until school year 2016-2017, Mrs. Michelle

Johnson's duties were conducted as part of the Office of the Asst. Sup. for Equity and Pupil

Services staff under Dr. Warren's supervision.  Mrs. Johnson's testimony relates to her duties as

part of the staff and Dr. Warren's responsibilities as Asst. Sup. for Equity and Pupil Services.

## ARGUMENT

The entire process of witness testimony is subject to the control of the District Court.

Fed. R. Evid. 611(a)(1).  Fed. R. Evid. 611(a)(1) instructs the District Court to "exercise

reasonable control over the mode and order" of witness examination so that the examination is

"effective for determination of the truth; avoid wasting time; and protect witnesses from

harassment or undue embarrassment." Fed. R. Evid 611(a)(1).  Fed. R. Civ. Pro. authorizes upon

a finding that "exceptional circumstances make it desirable—in the interest of justice and with

due regard to the importance of live testimony in open court—to permit the deposition to be

used" as a substitute for live testimony. *McDowell v. Blankenship*, 759 F.3d 847, 851 (8th Cir. 2014). The "exceptional circumstances" . . . "phrase unquestionably grants the district court considerable discretion in determining whether to admit deposition testimony." *Id.* The Eighth Circuit has interpreted Rule 32(a)(4)(E) as permitting "deposition testimony where, in the district court's judgment, live testimony from the deponent is impossible or highly impracticable and 'the interest[s] of justice,' 'with due regard to the importance of live testimony in open court,' counsel in favor of admissibility." *Id.*

1.    **The circumstances surrounding Mrs. Johnson's availability are exceptional.**

Mrs. Johnson is willing to testify in this case that is scheduled for trial the week of September 20, 2021. Her testimony is material.



Mrs. Johnson has not self-procured her unavailability. Live in court testimony is highly impracticable for Mrs. Johnson.

The timing of the video deposition will be coordinated with defense counsel. Defense counsel will be given reasonable notice of the video deposition and will have the opportunity to cross examine Mrs. Johnson. The video deposition will give the jury an opportunity to assess Mrs. Johnson's conduct, testimony, and credibility.

**2.       Plaintiff's motion is unopposed.**

Plaintiff's counsel discussed the filing of this Motion with defense counsel Cody Kees. Defendants are not opposing this Motion.  Although the parties' agreement is relevant for this Court's deliberation, the Court's decision is solely an exercise of its discretion.

## CONCLUSION

The plaintiff has met her burden to provide an explanation for the witness' potential absence.  See, generally, *Jauch v. Corley*, 830 F.2d 47, 50 (5th Cir. 1987).  Because of the circumstances surrounding the availability of Mrs. Johnson, plaintiff request this Court to find that exceptional circumstance make it desirable to permit the use of Mrs. Johnson's deposition rather than require her in court testimony.  Plaintiff further asks that this Court to not only permit the taking of Mrs. Johnson's video deposition but to also receive Mrs. Johnson's video deposition into evidence.

Respectfully submitted this 1st day of September, 2021,
<u>Sarah Howard Jenkins</u>
Arkansas Bar #97046
SARAH HOWARD JENKINS, PLLC
P.O. Box 242694
Little Rock, Arkansas 72223
Phone: (501) 406-0905
sarah@shjenkinslaw.com (email)