FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 0 8 2021

TAMMY H. DOWNS, CLERK
By:_____ *Mo*
                                    DEP CLERK

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## ~~WESTERN~~ DIVISION
CENTRAL

Janice Hargrove Warren                                    **PLAINTIFF**

v.                        **Case No 4:19-CV-655 BSM**

Charles McNulty, et al.                                    **DEFENDANTS**

## MOTION TO QUASH OF SECRETARY
## OF EDUCATION JOHNNY KEY

Secretary of Education Johnny Key, who is not a party to the present case, sets forth the following:

1. On September 2, 2021, plaintiff Janice Warren served a subpoena upon Secretary of Education Johnny Key seeking to have him testify at trial in the present case.

2. The subpoena included a cover letter listing items about which Warren seeks Key to testify, and also attached documents "to assist [Key] in preparing [his] testimony."

3. For the reasons set forth in his Brief in Support, Key does not have personal knowledge of facts relevant to this case.

4. Because Key does not have personal knowledge of facts relevant to Warren's case, any testimony sought would be inadmissible under Federal Rules of Evidence 401 and 602, thus rendering his compulsory attendance at trial unreasonable and unduly burdensome under Federal Rule of Civil Procedure 45(d)(3)(A)(iv).

For the foregoing reasons, Secretary of Education Johnny Key respectfully requests that this Court quash the subpoena issued against him.

Respectfully submitted,

By:    <u>Lori Freno</u> (97042)
       General Counsel

1

Arkansas Department of Education
Four Capitol Mall, Room 302A
Little Rock, AR  72201
Phone:  (501) 682-4234
Fax:  (501) 682-4249
lori.freno@ade.arkansasag.gov

Attorney for Secretary of Education Johnny Key

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2021, I sent a copy of the foregoing to the following via

regular U.S. Mail and electronic mail:

> Sarah Howard Jenkins
> 37 Deauville Circle
> P.O. Box 242694
> Little Rock, AR  72223
> sarah@shjenkinslaw.com
>
> Austin Porter, Jr.
> Porter Law Firm
> 323 Center Street, Suite 1300
> Little Rock, AR  72201
> Aporte5640@aol.com
>
> George Jay Bequette, Jr.
> William Cody Kees
> Bequette, Billingsley, and Kees
> Simmons Bank Building
> 425 West Capitol Avenue
> Suite 3200
> Little Rock, AR  72201
> jbequette@bbpalaw.com
> ckees@bbpalaw.com

Lori Freno

*Serve*

# SARAH HOWARD JENKINS, PLLC
## ATTORNEY AT LAW

Sarah Howard Jenkins
(Licensed to practice in Arkansas & Arizona)
Email: sarah@shjenkinslaw.com
Telephone: (501) 406-0905

37 Deauville Circle
PO Box 242694
Little Rock, Arkansas 72223

September 1, 2021

Mr. Johnny Key
Commissioner of Education, Cabinet Secretary
Arkansas Department of Education                    via:  process service
4 Capitol Mall
Little Rock, AR 72201

Dear Mr. Key:

Plaintiff, Dr. Janice Warren, believes that your testimony on three areas is critical to ascertaining the truth and resolving issues in her pending lawsuit, *Warren v. McNulty*, 4:19-cv-00655 BSM.  Those areas are:

      1.    The March 15, 2016, Agreement between you and former Pulaski County Special School District ("PCSSD") Superintendent, Dr. Jerry Guess;

      2.    The June 13, 2015, PCSSD and Baldwin & Shell Construction Contract and the January 11, 2017, Mills High School Construction Change Order between PCSSD, Wittenberg, Delony & Davidson Architects, and Baldwin & Shell Construction Co.; and

      3.    ADE's Monitoring Protocol of PCSSD in 2016-2017.

Copies of the agreements listed in paragraphs 1 & 2 above are enclosed to assist you in preparing for your testimony.  Plaintiff anticipates that she may call you mid-morning on September 20, 2021.

Best regards,

*Sarah Howard Jenkins*

Sarah Howard Jenkins
SARAH HOWARD JENKINS, PLLC

**EXHIBIT**

*1*

*MOTION TO QUASH*

AO 88  (Rev. 02/14)  Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Arkansas ▼

| | |
|---|---|
| JANICE HARGROVE WARREN | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  4:19-cv-00655-BSM |
| CHARLES MCNULTY, et al. | ) |
| *Defendant* | ) |

## SUBPOENA TO APPEAR AND TESTIFY
## AT A HEARING OR TRIAL IN A CIVIL ACTION

To:                                    Johnny Key
Commissioner of Education & Cabinet Secretary of Education, Arkansas Department of Education

*(Name of person to whom this subpoena is directed)*

**YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place set forth below to testify at a hearing or trial in this civil action. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place: Richard Sheppard Arnold United States Courthouse | Courtroom No.: 2D |
|---|---|
| 500 West Capitol Avenue | Date and Time: 09/20/2021 9:00 am |
| Little Rock, AR 72201 | |

You must also bring with you the following documents, electronically stored information, or objects *(leave blank if not applicable)*:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    09/01/2021

                    *CLERK OF COURT*
                                                        OR

                                                        Sarah Howard Jenkins
    *Signature of Clerk or Deputy Clerk*                *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Dr. Janice Warren
_____ , who issues or requests this subpoena, are:
SARAH HOWARD JENKINS, PLLC, P.O. Box 242694, Little Rock, Arkansas 72223; sarah@shjenkinslaw.com; (501) 406-0905 (office), (501) 960-8835 (mobile)

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88 (Rev. 02/14) Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action (page 2)

Civil Action No. 4:19-cv-00655-BSM

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*  Johnny Key, Commissioner and Sec. of Edu.

on *(date)*

☐ I served the subpoena by delivering a copy to the named person as follows:

on *(date)*                      ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88 (Rev. 02/14) Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action (page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

### (c) Place of Compliance.

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises at the premises to be inspected.

### (d) Protecting a Person Subject to a Subpoena; Enforcement.

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or

  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

### (e) Duties in Responding to a Subpoena.

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

### (g) Contempt.
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ░AIA® Document A133™ – 2009

## Standard Form of Agreement Between Owner and Construction Manager as Constructor *where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price*

**AGREEMENT** made as of the Thirtieth day of June in the year Two Thousand Fifteen
*(In words, indicate day, month and year.)*

**BETWEEN** the Owner:
*(Name, legal status and address)*

Pulaski County Special School District
925 East Dixon Road
Little Rock, AR 72206
501-490-2000

and the Construction Manager:
*(Name, legal status and address)*

Baldwin & Shell Construction Co.
P.O. Box 1750
Little Rock, AR 72203
501-374-8677

for the following Projects:
*(Name and address or location)*

Multiple Projects as Designated Below:

Mills High School Replacement Project
1205 East Dixon Road
Little Rock, AR 72206

PCSSD Antiquated Facilities Replacement Planning & Design
TBD
Little Rock, AR

The Architect:
*(Name, legal status and address)*

Mills High School Replacement Project
Wittenberg, Delony & Davidson, Inc.
400 W. Capitol Ave, Suite 1800
Little Rock, AR 72201
501-376-6681

PCSSD Antiquated Facilities Replacement Planning & Design
Witsell Evans & Rasco Architects/Planners
901 West 3rd Street
Little Rock, AR 72201

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

AIA Document A201™–2007, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

**Init.**

**/**

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:09:02 on 07/31/2015 under Order No.5313423826_1 which expires on 01/11/2016, and is not for resale.
User Notes:                                                                                                          (1483949634)

**1**

501-374-5300

The Owner's Designated Representative:
*(Name, address and other information)*

Derek Scott
Pulaski County Special School District
925 East Dixon Road
Little Rock, AR 72206
501-490-2000

The Construction Manager's Designated Representative:
*(Name, address and other information)*

Roy Horsey, Sr. Project Manager
Baldwin & Shell Construction Co.
P.O. Box 1750
Little Rock, AR 72203
501-374-8677

The Architect's Designated Representative:
*(Name, address and other information)*

Mills High School Replacement Project
Brad Chilcote, Vice President
Wittenberg, Delony & Davidson, Inc.
400 W. Capitol Ave, Suite 1800
Little Rock, AR 72201
501-376-6681

PCSSD Antiquated Facilities Replacement Planning & Design
Eldon Bock, Principal/COO
Witsell Evans & Rasco Architects/Planners
901 West 3rd Street
Little Rock, AR 72201
501-374-5300

The Owner and Construction Manager agree as follows.

Init.

/

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA®
Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.**
This document was produced by AIA software at 10:09:02 on 07/31/2015 under Order No.5313423826_1 which expires on 01/11/2016, and is not for resale.
User Notes:                                                                                              (1483949634)

| TABLE OF ARTICLES

**1   GENERAL PROVISIONS**

**2   CONSTRUCTION MANAGER'S RESPONSIBILITIES**

**3   OWNER'S RESPONSIBILITIES**

**4   COMPENSATION AND PAYMENTS FOR PRECONSTRUCTION PHASE SERVICES**

**5   COMPENSATION FOR CONSTRUCTION PHASE SERVICES**

**6   COST OF THE WORK FOR CONSTRUCTION PHASE**

**7   PAYMENTS FOR CONSTRUCTION PHASE SERVICES**

**8   INSURANCE AND BONDS**

**9   DISPUTE RESOLUTION**

**10   TERMINATION OR SUSPENSION**

**11   MISCELLANEOUS PROVISIONS**

**12   SCOPE OF THE AGREEMENT**

## ARTICLE 1   GENERAL PROVISIONS
### § 1.1 The Contract Documents
The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to the execution of this Agreement, other documents listed in this Agreement, and Modifications issued after execution of this Agreement, all of which form the Contract and are as fully a part of the Contract as if attached to this Agreement or repeated herein. Upon the Owner's acceptance of the Construction Manager's Guaranteed Maximum Price proposal, the Contract Documents will also include the documents described in Section 2.2.3 and identified in the Guaranteed Maximum Price Amendment and revisions prepared by the Architect and furnished by the Owner as described in Section 2.2.8. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. If anything in the other Contract Documents, other than a Modification, is inconsistent with this Agreement, this Agreement shall govern.

### § 1.2 Relationship of the Parties
The Construction Manager accepts the relationship of trust and confidence established by this Agreement and covenants with the Owner to cooperate with the Architect and exercise the Construction Manager's skill and judgment in furthering the interests of the Owner; to furnish efficient construction administration, management services and supervision; to furnish at all times an adequate supply of workers and materials; and to perform the Work in an expeditious and economical manner consistent with the Owner's interests. The Owner agrees to furnish or approve, in a timely manner, information required by the Construction Manager and to make payments to the Construction Manager in accordance with the requirements of the Contract Documents.

### § 1.3 General Conditions
For the Preconstruction Phase, AIA Document A201™–2007, General Conditions of the Contract for Construction, shall apply only as specifically provided in this Agreement. For the Construction Phase, the general conditions of the contract shall be as set forth in A201–2007, which document is incorporated herein by reference. The term "Contractor" as used in A201–2007 shall mean the Construction Manager.

## ARTICLE 2   CONSTRUCTION MANAGER'S RESPONSIBILITIES
The Construction Manager's Preconstruction Phase responsibilities are set forth in Sections 2.1 and 2.2. The Construction Manager's Construction Phase responsibilities are set forth in Section 2.3. The Owner and Construction

**Init.**

**/**

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:09:02 on 07/31/2015 under Order No.5313423826_1 which expires on 01/11/2016, and is not for resale. User Notes:                                                                                                                  (1483949634)

**3**

Manager may agree, in consultation with the Architect, for the Construction Phase to commence prior to completion of the Preconstruction Phase, in which case, both phases will proceed concurrently. The Construction Manager shall identify a representative authorized to act on behalf of the Construction Manager with respect to the Project.

### § 2.1 Preconstruction Phase
**§ 2.1.1** The Construction Manager shall provide a preliminary evaluation of the Owner's program, schedule and construction budget requirements, each in terms of the other.

### § 2.1.2 Consultation
The Construction Manager shall schedule and conduct meetings with the Architect and Owner to discuss such matters as procedures, progress, coordination, and scheduling of the Work. The Construction Manager shall advise the Owner and the Architect on proposed site use and improvements, selection of materials, and building systems and equipment. The Construction Manager shall also provide recommendations consistent with the Project requirements to the Owner and Architect on constructability; availability of materials and labor; time requirements for procurement, installation and construction; and factors related to construction cost including, but not limited to, costs of alternative designs or materials, preliminary budgets, life-cycle data, and possible cost reductions.

**§ 2.1.3** When Project requirements in Section 3.1.1 have been sufficiently identified, the Construction Manager shall prepare and periodically update a Project schedule for the Architect's review and the Owner's acceptance. The Construction Manager shall obtain the Architect's approval for the portion of the Project schedule relating to the performance of the Architect's services. The Project schedule shall coordinate and integrate the Construction Manager's services, the Architect's services, other Owner consultants' services, and the Owner's responsibilities and identify items that could affect the Project's timely completion. The updated Project schedule shall include the following: submission of the Guaranteed Maximum Price proposal; components of the Work; times of commencement and completion required of each Subcontractor; ordering and delivery of products, including those that must be ordered well in advance of construction; and the occupancy requirements of the Owner.

### § 2.1.4 Phased Construction
The Construction Manager shall provide recommendations with regard to accelerated or fast-track scheduling, procurement, or phased construction. The Construction Manager shall take into consideration cost reductions, cost information, constructability, provisions for temporary facilities and procurement and construction scheduling issues.

### § 2.1.5 Preliminary Cost Estimates
**§ 2.1.5.1** Based on the preliminary design and other design criteria prepared by the Architect, the Construction Manager shall prepare preliminary estimates of the Cost of the Work or the cost of program requirements using area, volume or similar conceptual estimating techniques for the Architect's review and Owner's approval. If the Architect or Construction Manager suggest alternative materials and systems, the Construction Manager shall provide cost evaluations of those alternative materials and systems.

**§ 2.1.5.2** As the Architect progresses with the preparation of the Schematic Design, Design Development and Construction Documents, the Construction Manager shall prepare and update, at appropriate intervals agreed to by the Owner, Construction Manager and Architect, estimates of the Cost of the Work for each project of increasing detail and refinement and allowing for the further development of the design until such time as the Owner and Construction Manager agree on a Guaranteed Maximum Price for the Work. Such estimates shall be provided for the Architect's review and the Owner's approval. The Construction Manager shall inform the Owner and Architect when estimates of the Cost of the Work exceed the latest approved Project budget and make recommendations for corrective action.

### § 2.1.6 Subcontractors and Suppliers
The Construction Manager shall develop bidders' interest in the Project.

**§ 2.1.7** The Construction Manager shall prepare, for the Architect's review and the Owner's acceptance, a procurement schedule for items that must be ordered well in advance of construction. The Construction Manager shall expedite and coordinate the ordering and delivery of materials that must be ordered well in advance of construction. If the Owner agrees to procure any items prior to the establishment of the initial Project Price Amendment or future Project Price Amendments, the Owner shall procure the items on terms and conditions acceptable to the Construction Manager. Upon the establishment of each Project Price Amendment, the Owner shall assign all contracts for these items to the Construction Manager and the Construction Manager shall thereafter accept responsibility for them.

**Init.**

**/**

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:09:02 on 07/31/2015 under Order No.5313423826_1 which expires on 01/11/2016, and is not for resale.
User Notes:                                                                                              (1483949634)

**4**

### § 2.1.8 Extent of Responsibility

The Construction Manager shall exercise reasonable care in preparing schedules and estimates. The Construction Manager, however, does not warrant or guarantee estimates and schedules except as may be included as part of any Project Price Amendment or the Guaranteed Maximum Price. The Construction Manager is not required to ascertain that the Drawings and Specifications are in accordance with applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, but the Construction Manager shall promptly report to the Architect and Owner any nonconformity discovered by or made known to the Construction Manager as a request for information in such form as the Architect may require.

### § 2.1.9 Notices and Compliance with Laws

The Construction Manager shall comply with applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities applicable to its performance under this Contract, and with equal employment opportunity programs, and other programs as may be required by governmental and quasi governmental authorities for inclusion in the Contract Documents.

### § 2.2 Project Price Proposals, Project Price Amendments, Guaranteed Maximum Price  and Project Time

§ 2.2.1 Prior to establishment of the Guaranteed Maximum Price,  each project, as defined above, shall be priced for approval by Owner.  Upon approval of each Project Price proposal,  a Project Price Amendment shall be issued establishing the Construction Manager's estimate of the Cost of the Work,  including contingencies described in Section 2.2.4, and the Construction Manager's Fee for the individual project.  Upon approval of all Project Price proposals and issuance of all Project Price Amendments the Guaranteed Maximum Price shall then be established and equal the sum of all Project Price Amendments, subject to adjustments by approved Project Change Orders. .

§ 2.2.2 To the extent that the Drawings and Specifications are anticipated to require further development by the Architect, the Construction Manager shall provide in each Project Price Amendment  for such further development consistent with the Contract Documents and reasonably inferable therefrom. Such further development does not include such things as changes in scope, systems, kinds and quality of materials, finishes or equipment, all of which, if required, shall be incorporated by Change Order.

§ 2.2.3 The Construction Manager shall include with each Project Price proposal a written statement of its basis, which shall include the following:

    .1    A list of the Drawings and Specifications, including all Addenda thereto, and the Conditions of the Contract;

    .2    A list of the clarifications and assumptions made by the Construction Manager in the preparation of the Project Price proposal, including assumptions under Section 2.2.2, to supplement the information provided by the Owner and contained in the Drawings and Specifications;

    .3    A statement of the proposed Project Price, including a statement of the estimated Cost of the Work organized by trade categories or systems, allowances, contingency, and the Construction Manager's Fee;

    .4    The anticipated date of Substantial Completion upon which the proposed Project Price Amendment is based; and

    .5    A date by which the Owner must accept the Project Price Amendment..

§ 2.2.4 In preparing the Construction Manager's Project Price proposals, the Construction Manager shall include its contingency for the Construction Manager's exclusive use to cover those costs considered reimbursable as the Cost of the Work but not included in a Change Order.

§ 2.2.5 The Construction Manager shall meet with the Owner and Architect to review each Project Price proposal. In the event that the Owner and Architect discover any inconsistencies or inaccuracies in the information presented, they shall promptly notify the Construction Manager, who shall make appropriate adjustments to the Project Price proposal, its basis, or both.

§ 2.2.6 If the Owner notifies the Construction Manager that the Owner has accepted the Project Price proposal in writing before the date specified in the Project Price proposal, the Project Price proposal shall be deemed effective without further acceptance from the Construction Manager. Following acceptance of a Project Price, the Owner and

Init.

/

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:09:02 on 07/31/2015 under Order No.5313423826_1 which expires on 01/11/2016, and is not for resale.
User Notes:                                                                                                        (1483949634)

Construction Manager shall execute a Project Price Amendment amending this Agreement, a copy of which the Owner shall provide to the Architect. The sum total of all Project Price Amendments shall set forth the agreed upon Guaranteed Maximum Price with the information and assumptions for each project upon which it is based.

**§ 2.2.7** The Construction Manager shall not incur any cost to be reimbursed as part of the Cost of the Work with the exception of pre-construction reimbursable costs as indicated in 4.1.2 prior to the commencement of the Construction Phase, unless the Owner provides prior written authorization for such costs.

**§ 2.2.8** The Owner shall authorize the Architect to provide the revisions to the Drawings and Specifications to incorporate the agreed-upon assumptions and clarifications contained in each Project Price Amendment. The Owner shall promptly furnish those revised Drawings and Specifications to the Construction Manager as they are revised. The Construction Manager shall notify the Owner and Architect of any inconsistencies between a Project Price Amendment and the revised Drawings and Specifications.

**§ 2.2.9** The Construction Manager shall include in the Guaranteed Maximum Price all sales, consumer, use and similar taxes for the Work provided by the Construction Manager that are legally enacted , whether or not yet effective, at the time a Project Price Amendment is executed.

### § 2.3 Construction Phase
### § 2.3.1 General
**§ 2.3.1.1** For purposes of this agreement and Section 8.1.2 of A201–2007, the date of commencement of the Work shall mean the date of commencement of the Construction Phase of each individual project.

**§ 2.3.1.2** The Construction Phase shall commence upon the Owner's acceptance of the Construction Manager's Project Price  proposal and execution of a Project Price Amendment or the Owner's issuance of a Notice to Proceed, whichever occurs earlier.

### § 2.3.2 Administration
**§ 2.3.2.1** Those portions of the Work that the Construction Manager does not customarily perform with the Construction Manager's own personnel shall be performed under subcontracts or by other appropriate agreements with the Construction Manager. The Owner may designate specific persons from whom, or entities from which, the Construction Manager shall obtain bids. The Construction Manager shall obtain bids in accordance with applicable Arkansas law from Subcontractors and from suppliers of materials or equipment fabricated especially for the Work and shall deliver such bids to the Architect. The Owner shall then determine, with the advice of the Construction Manager and the Architect, which bids will be accepted. The Construction Manager shall not be required to contract with anyone to whom the Construction Manager has reasonable objection.

**§ 2.3.2.2** If an individual Project Price Amendment  has been established and when a specific bidder (1) is recommended to the Owner by the Construction Manager, (2) is qualified to perform that portion of the Work, and (3) has submitted a bid that conforms to the requirements of the Contract Documents without reservations or exceptions, but the Owner requires that another bid be accepted, then the Construction Manager may require that a Change Order be issued to adjust the Project Time and the Project  Price Amendment by the difference between the bid of the person or entity recommended to the Owner by the Construction Manager and the amount and time requirement of the subcontract or other agreement actually signed with the person or entity designated by the Owner.

**§ 2.3.2.3** Subcontracts or other agreements shall conform to the applicable payment provisions of this Agreement, and shall not be awarded on the basis of cost plus a fee without the prior consent of the Owner. If the Subcontract is awarded on a cost-plus a fee basis, the Construction Manager shall provide in the Subcontract for the Owner to receive the same audit rights with regard to the Subcontractor as the Owner receives with regard to the Construction Manager in Section 6.11 below.

**§ 2.3.2.4** If the Construction Manager recommends a specific bidder that may be considered a "related party" according to Section 6.10, then the Construction Manager shall promptly notify the Owner in writing of such relationship and notify the Owner of the specific nature of the contemplated transaction, according to Section 6.10.2.

Init.

/

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA®** Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:09:02 on 07/31/2015 under Order No.5313423826_1 which expires on 01/11/2016, and is not for resale. User Notes:                                                                                                                                              (1483949634)

**§ 2.3.2.5** The Construction Manager shall schedule and conduct meetings to discuss such matters as procedures, progress, coordination, scheduling, and status of the Work. The Construction Manager shall prepare and promptly distribute minutes to the Owner and Architect

**§ 2.3.2.6** Upon the execution of a Project Price Amendment, the Construction Manager shall prepare and submit to the Owner and Architect a construction schedule for the Work and submittal schedule in accordance with Section 3.10 of A201–2007.

**§ 2.3.2.7** The Construction Manager shall record the progress of the Project. On a monthly basis, or otherwise as agreed to by the Owner, the Construction Manager shall submit written progress reports to the Owner and Architect, showing percentages of completion and other information required by the Owner. The Construction Manager shall also keep, and make available to the Owner and Architect, a daily log containing a record for each day of weather, portions of the Work in progress, number of workers on site, identification of equipment on site, problems that might affect progress of the work, accidents, injuries, and other information required by the Owner.

**§ 2.3.2.8** The Construction Manager shall develop a system of cost control for the Work, including regular monitoring of actual costs for activities in progress and estimates for uncompleted tasks and proposed changes. The Construction Manager shall identify variances between actual and estimated costs and report the variances to the Owner and Architect and shall provide this information in its monthly reports to the Owner and Architect, in accordance with Section 2.3.2.7 above.

**§ 2.4 Professional Services**
Section 3.12.10 of A201–2007 shall apply to both the Preconstruction and Construction Phases.

**§ 2.5 Hazardous Materials**
Section 10.3 of A201–2007 shall apply to both the Preconstruction and Construction Phases.

**§ 2.6 Construction Manager Certifications:**
The Construction Manager shall perform the Work in accordance with the Contract Documents. The Construction Manager shall execute such certifications, as requested by Owner, which shall include but not be limited to certifications that the Construction Manager has performed the work in accordance with the Contract Documents, applicable building codes, and the criteria established by the Arkansas State Board of Education and the Arkansas Department of Education.

**ARTICLE 3   OWNER'S RESPONSIBILITIES**
**§ 3.1 Information and Services Required of the Owner**
**§ 3.1.1** The Owner shall provide information with reasonable promptness, regarding requirements for and limitations on the Projects, including a written program which shall set forth the Owner's objectives, constraints, and criteria, including schedule, space requirements and relationships, flexibility and expandability, special equipment, systems sustainability and site requirements.

**§ 3.1.2** Prior to the execution of any Project Price Amendment, the Construction Manager may request in writing that the Owner provide reasonable evidence that the Owner has made financial arrangements to fulfill the Owner's obligations under the Contract. Thereafter, the Construction Manager may only request such evidence if (1) the Owner fails to make payments to the Construction Manager as the Contract Documents require, (2) a change in the Work materially changes the Contract Sum, or (3) the Construction Manager identifies in writing a reasonable concern regarding the Owner's ability to make payment when due. The Owner shall furnish such evidence as a condition precedent to commencement or continuation of the Work or the portion of the Work affected by a material change. After the Owner furnishes the evidence, the Owner shall not materially vary such financial arrangements without prior notice to the Construction Manager and Architect.

**§ 3.1.3** The Owner shall establish and periodically update the Owner's budget for the Projects, including (1) the budget for the Cost of the Work as defined in Section 6.1.1, (2) the Owner's other costs, and (3) reasonable contingencies related to all of these costs. If the Owner significantly increases or decreases the Owner's budget for the Cost of the Work, the Owner shall notify the Construction Manager and Architect. The Owner and the Architect, in consultation with the Construction Manager, shall thereafter agree to a corresponding change in the Projects' scope and quality.

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:09:02 on 07/31/2015 under Order No.5313423826_1 which expires on 01/11/2016, and is not for resale.
User Notes:                                                                                              (1483949634)

**§ 3.1.4 Structural and Environmental Tests, Surveys and Reports.** During the Preconstruction Phase, the Owner shall furnish the following information or services with reasonable promptness. The Owner shall also furnish any other information or services under the Owner's control and relevant to the Construction Manager's performance of the Work with reasonable promptness after receiving the Construction Manager's written request for such information or services. The Construction Manager shall be entitled to rely on the accuracy of information and services furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.

**§ 3.1.4.1** The Owner shall furnish tests, inspections and reports required by law and as otherwise agreed to by the parties, such as structural, mechanical, and chemical tests, tests for air and water pollution, and tests for hazardous materials.

**§ 3.1.4.2** The Owner may furnish surveys to Construction Manager describing physical characteristics, legal limitations and utility locations for the site of the Projects, and a legal description of the sites. The Construction Manager shall independently locate such utility lines and shall be responsible for all breaks and damage to such lines during construction. Construction Manager shall immediately restore service in the event of any breaks and damage to such lines during construction. Construction Manager shall fully inspect and familiarize itself with the plans, specifications, and site of the Project.

**§ 3.1.4.3** The Owner, when such services are requested, shall furnish services of geotechnical engineers, which may include but are not limited to test borings, test pits, determinations of soil bearing values, percolation tests, evaluations of hazardous materials, seismic evaluation, ground corrosion tests and resistivity tests, including necessary operations for anticipating subsoil conditions, with written reports and appropriate recommendations.

**§ 3.1.4.4** During the Construction Phase, the Owner shall furnish information or services required of the Owner by the Contract Documents with reasonable promptness. The Owner shall also furnish any other information or services under the Owner's control and relevant to the Construction Manager's performance of the Work with reasonable promptness after receiving the Construction Manager's written request for such information or services.

**§ 3.2 Owner's Designated Representative**
The Board of Education of the Owner is the only agent of the Owner that can make binding decisions to approve changes in the scope of the Work, approve and execute change orders, or agree to an extension to the date of substantial or final completion of the Work. The Owner hereby designates its Superintendent, or his designee, as the Owner's representative who shall have express authority to bind the Owner with respect to all other matters requiring the Owner's approval or authorization, such decisions to be rendered promptly and such information to be furnished expeditiously so as to avoid unreasonable delay in the services or Work of the Construction Manager. Except as otherwise provided in Section 4.2 of A201-2007, the Architect does not have such authority.

**§ 3.2.1 Legal Requirements.** The Owner shall furnish all legal, insurance and accounting services, including auditing services, that may be reasonably necessary at any time for the Projects to meet the Owner's needs and interests.

**§ 3.3 Architect**
The Owner shall retain an Architect to provide services, duties and responsibilities as described in AIA Document B103™–2007, Standard Form of Agreement Between Owner and Architect, including any additional services requested by the Construction Manager that are necessary for the Preconstruction and Construction Phase services under this Agreement. The Owner shall provide the Construction Manager a copy of the executed agreement between the Owner and the Architect, and any further modifications to the agreement.

**ARTICLE 4    COMPENSATION AND PAYMENTS FOR PRECONSTRUCTION PHASE SERVICES**
**§ 4.1 Compensation**
**§ 4.1.1** For the Construction Manager's Preconstruction Phase services, the Owner shall compensate the Construction Manager as follows:

**§ 4.1.2** For the Construction Manager's Preconstruction Phase services described in Sections 2.1 and 2.2:
*(Insert amount of, or basis for, compensation and include a list of reimbursable cost items, as applicable.)*

**Init.**

**/**

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:09:02 on 07/31/2015 under Order No.5313423826_1 which expires on 01/11/2016, and is not for resale. User Notes:                                                                                                      (1483949634)

**8**

All Pre-construction Services costs including exploratory construction work, reproduction and distribution of pricing documents, direct travel and meeting costs and all other pre-construction costs, with the exception of human resource costs, incurred for each individual project.  All Pre-construction Services costs shall be included in the Guaranteed Maximum Price and shall be due and payable upon completion of the Pre-construction Phase of each Project as further defined in paragraph 4.2.2. .

All Pre-construction Services fees shall be included in the Construction Manager's Fee as defined in paragraph 5.1.1, included in the Guaranteed Maximum Price and broken down per Project Amendment at the rate of one half percent (1/2%) of the estimated Cost of the Work and due and payable quarterly during of the Pre-construction Phase of each Project as further defined in paragraph 4.2.2.

§ 4.1.3 If the Preconstruction Phase services covered by this Agreement have not been completed within One hundred eighty ( 180) days of the date of this Agreement, through no fault of the Construction Manager, the Construction Manager's compensation for Preconstruction Phase services shall be equitably adjusted.

§ 4.1.4 Compensation based on Direct Personnel Expense includes the direct salaries of the Construction Manager's personnel providing Preconstruction Phase services on the Project and the Construction Manager's costs for the mandatory and customary contributions and benefits related thereto, such as employment taxes and other statutory employee benefits, insurance, sick leave, holidays, vacations, employee retirement plans and similar contributions

§ 4.1.5 There shall be no increase in compensation or expenses payable to Construction Manager for work performed or expenses incurred due to Construction Manager's own fault or error. The parties agree that the Construction Manager's compensation and/or expenses may be subject to a possible downward adjustment due to the own fault or error of the Construction Manager and the Construction Manager's performance under this agreement.  Owner shall have the right to withhold from payments due Construction Manager any sums necessary to protect Owner from and against any loss or damage which may result from the negligence or unsatisfactory services of the Construction Manager, failure by Construction Manager to perform its obligations, or claims filed against Construction Manager and/or Owner relating to Construction Manager's services or work.

§ 4.2 Payments
§ 4.2.1 Unless otherwise agreed, payments for services shall be made monthly in proportion to services performed.

§ 4.2.2 Payments are due and payable upon presentation of the Construction Manager's invoice. Amounts unpaid ten ( 10 ) days after the invoice date shall bear interest at the rate entered below, or in the absence thereof at the legal rate prevailing from time to time at the principal place of business of the Construction Manager.
*(Insert rate of monthly or annual interest agreed upon.)*

Pre-construction Services Cost & Fees:  Included in each project Schedule of Values and initial Application for Payment for each individual project under the terms of conditions as outlined in Article 7 of this Agreement.  No retention shall be held on Pre-construction Services Cost & Fees.

## ARTICLE 5   COMPENSATION FOR CONSTRUCTION PHASE SERVICES
§ 5.1 For the Construction Manager's performance of the Work as described in Section 2.3, the Owner shall pay the Construction Manager the Contract Sum in current funds for the Construction Manager's performance of the Contract. The Contract Sum is the Cost of the Work as defined in Section 6.1.1 plus the Construction Manager's Fee.

§ 5.1.1 The Construction Manager's Fee:
*(State a lump sum, percentage of Cost of the Work or other provision for determining the Construction Manager's Fee.)*

The Construction Manager's fee shall be calculated on a Project Basis and itemized in each Project Amendment. Once all Project Amendments have been executed the total lump sum fee shall be established within  the Guaranteed Maximum Price by taking the total estimated cost of the work for all projects including all approved Change Orders and then applying a Four and Eighty-five Hundredths Percent (4.85%) fee. The lump sum fee will not be reduced based on savings.

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:09:02 on 07/31/2015 under Order No.5313423826_1 which expires on 01/11/2016, and is not for resale.
User Notes:                                                                                                                                          (1483949634)

**§ 5.1.2** The method of adjustment of the Construction Manager's Fee for changes in the Work:

The lump sum fee will be adjusted by any addition in scope at the rate of Four and Eighty-five Hundredths Percent (4.85%) by change order subject to limitations as defined in Article 5.3.

**§ 5.1.3** Limitations, if any, on a Subcontractor's overhead and profit for increases in the cost of its portion of the Work:

**§ 5.1.4** Rental rates for Construction Manager-owned equipment shall not exceed eighty-five percent ( 85% ) of the standard rate paid at the place of the Project.

**§ 5.1.5** Unit prices, if any:
*(Identify and state the unit price; state the quantity limitations, if any, to which the unit price will be applicable.)*

| Item | Units and Limitations | Price per Unit ($0.00) |
|------|----------------------|------------------------|

**§ 5.1.5** Allowances, if any:
*(Identify and state the allowance; state the quantity limitations, if any, to which the allowance will be applicable.)*

| Item | Units and Limitations | Price per Unit ($0.00) |
|------|----------------------|------------------------|

**§ 5.1.6** There shall be no increase in compensation or expenses payable to Construction Manager for work performed or expenses incurred due to Construction Manager's own fault or error. The parties agree that the Construction Manager's compensation and/or expenses may be subject to a possible downward adjustment due to the own fault or error of the Construction Manager and the Construction Manager's performance under this agreement. Owner shall have the right to withhold from payments due Construction Manager any sums necessary to protect Owner from and against any loss or damage which may result from the negligence or unsatisfactory services of the Construction Manager, failure by Construction Manager to perform its obligations, or claims filed against Construction Manager and/or Owner relating to Construction Manager's services or work.

**§ 5.2 Guaranteed Maximum Price**
**§ 5.2.1** The Construction Manager guarantees that the Contract Sum shall not exceed the Guaranteed Maximum Price set forth in the total of all Project Amendments subject to approved Change Orders. To the extent the Cost of the Work exceeds the Guaranteed Maximum Price, the Construction Manager shall bear such costs in excess of the Guaranteed Maximum Price without reimbursement or additional compensation from the Owner.
*(Insert specific provisions if the Construction Manager is to participate in any savings.)*

All savings shall accrue one hundred percent (100%) to the Owner

**§ 5.2.2** The Guaranteed Maximum Price is subject to additions and deductions by Change Order as provided in the Contract Documents and the Date of Substantial Completion for each project shall be subject to adjustment as provided in the Contract Documents.

**§ 5.3 Changes in the Work**
**§ 5.3.1** The Owner may, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions. The Owner shall issue such changes in writing. The Architect may make minor changes in the Work as provided in Section 7.4 of AIA Document A201–2007, General Conditions of the Contract for Construction. The Construction Manager shall be entitled to an equitable adjustment in the Contract Time as a result of changes in the Work. Owner shall have no obligation to pay for any change in services performed in the absence of a written agreement signed by both parties.

**§ 5.3.2** Adjustments to the individual Project Price Amendments on account of changes in the Work subsequent to establishment of the Guaranteed Maximum Price may be determined by any of the methods listed in Section 7.3.3 of AIA Document A201–2007, General Conditions of the Contract for Construction.

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:09:02 on 07/31/2015 under Order No.5313423826_1 which expires on 01/11/2016, and is not for resale.
User Notes:                                                                                                   (1483949634)

§ **5.3.3** In calculating adjustments to subcontracts (except those awarded with the Owner's prior consent on the basis of cost plus a fee), the terms "cost" and "fee" as used in Section 7.3.3.3 of AIA Document A201–2007 and the term "costs" as used in Section 7.3.7 of AIA Document A201–2007 shall have the meanings assigned to them in AIA Document A201–2007 and shall not be modified by Sections 5.1 and 5.2, Sections 6.1 through 6.7, and Section 6.8 of this Agreement. Adjustments to subcontracts awarded with the Owner's prior consent on the basis of cost plus a fee shall be calculated in accordance with the terms of those subcontracts.

§ **5.3.4** In calculating adjustments to the Guaranteed Maximum Price, the terms "cost" and "costs" as used in the above-referenced provisions of AIA Document A201–2007 shall mean the Cost of the Work as defined in Sections 6.1 to 6.7 of this Agreement and the term "fee" shall mean the Construction Manager's Fee as defined in Section 5.1 of this Agreement.

§ **5.3.5** If no specific provision is made in Section 5.1.2 for adjustment of the Construction Manager's Fee in the case of changes in the Work, or if the extent of such changes is such, in the aggregate, that application of the adjustment provisions of Section 5.1.2 will cause substantial inequity to the Owner or Construction Manager, the Construction Manager's Fee shall be equitably adjusted on the same basis that was used to establish the Fee for the original Work, and the Guaranteed Maximum Price shall be adjusted accordingly.

## ARTICLE 6   COST OF THE WORK FOR CONSTRUCTION PHASE
### § 6.1 Costs to Be Reimbursed
§ **6.1.1** The term Cost of the Work shall mean costs necessarily incurred by the Construction Manager in the proper performance of the Work. Such costs shall be at rates not higher than the standard paid at the place of the Projects except with prior consent of the Owner. The Cost of the Work shall include only the items set forth in Sections 6.1 through 6.7.

§ **6.1.2** Where any cost is subject to the Owner's prior approval, the Construction Manager shall obtain this approval prior to incurring the cost. The parties shall endeavor to identify any such costs prior to executing any Project Price Amendment..

### § 6.2 Labor Costs
§ **6.2.1** Wages of construction workers directly employed by the Construction Manager to perform the construction of the Work at the site or, with the Owner's prior approval, at off-site workshops.

§ **6.2.2** Wages or salaries of the Construction Manager's supervisory and administrative personnel when stationed at the site with the Owner's prior approval.
*(If it is intended that the wages or salaries of certain personnel stationed at the Construction Manager's principal or other offices shall be included in the Cost of the Work, identify in Section 11.5, the personnel to be included, whether for all or only part of their time, and the rates at which their time will be charged to the Work.)*

§ **6.2.3** Wages and salaries of the Construction Manager's supervisory or administrative personnel engaged at factories, workshops or on the road, in expediting the production or transportation of materials or equipment required for the Work, but only for that portion of their time required for the Work.

§ **6.2.4** Costs paid or incurred by the Construction Manager for taxes, insurance, contributions, assessments and benefits required by law or collective bargaining agreements and, for personnel not covered by such agreements, customary benefits such as show up time, sick leave, medical and health benefits, holidays, vacations and pensions, provided such costs are based on wages and salaries included in the Cost of the Work under Sections 6.2.1 through 6.2.3.

§ **6.2.5** Bonuses, profit sharing, incentive compensation and any other discretionary payments paid to anyone hired by the Construction Manager or paid to any Subcontractor or vendor, with the Owner's prior approval.  Compensation programs, profit sharing, incentive compensation and other employee benefits established within the Construction Manager's Employee Handbook are not subject to Owner's prior approval.  A copy of the employee handbooks are attached as Exhibits "A" & "B".

Init.

/

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:09:02 on 07/31/2015 under Order No.5313423826_1 which expires on 01/11/2016, and is not for resale. User Notes:                                                                                                                                          (1483949634)

11

**§ 6.2.6** The costs for the Construction Manager's management personnel stationed at offices other than the site office, will be reimbursed at a rate of $85/hour, for their time spent on-site, including travel, in discharge of duties connected with the work.

### § 6.3 Subcontract Costs
Payments made by the Construction Manager to Subcontractors in accordance with the requirements of the subcontracts.

### § 6.4 Costs of Materials and Equipment Incorporated in the Completed Construction
**§ 6.4.1** Costs, including transportation and storage, of materials and equipment incorporated or to be incorporated in the completed construction.

**§ 6.4.2** Costs of materials described in the preceding Section 6.4.1 in excess of those actually installed to allow for reasonable waste and spoilage. Unused excess materials, if any, shall become the Owner's property at the completion of the Work or, at the Owner's option, shall be sold by the Construction Manager. Any amounts realized from such sales shall be credited to the Owner as a deduction from the Cost of the Work.

### § 6.5 Costs of Other Materials and Equipment, Temporary Facilities and Related Items
**§ 6.5.1** Costs of transportation, storage, installation, maintenance, dismantling and removal of materials, supplies, temporary facilities, machinery, equipment and hand tools not customarily owned by construction workers that are provided by the Construction Manager at the sites and fully consumed in the performance of the Work. Costs of materials, supplies, temporary facilities, machinery, equipment and tools that are not fully consumed shall be based on the cost or value of the item at the time it is first used on the Project sites less the value of the item when it is no longer used at the Project sites. Costs for items not fully consumed by the Construction Manager shall mean fair market value.

**§ 6.5.2** Rental charges for temporary facilities, machinery, equipment and hand tools not customarily owned by construction workers that are provided by the Construction Manager at the sites and costs of transportation, installation, minor repairs, dismantling and removal. The total rental cost of any Construction Manager-owned item may not exceed the purchase price of any comparable item. Rates of Construction Manager-owned equipment and quantities of equipment shall be subject to the Owner's prior approval.

**§ 6.5.3** Costs of removal of debris from the site of the Work and its proper and legal disposal.

**§ 6.5.4** Costs of document reproductions, facsimile transmissions and long-distance telephone calls, postage and parcel delivery charges, telephone service at the site and reasonable petty cash expenses of the site offices.

**§ 6.5.5** That portion of the reasonable expenses of the Construction Manager's supervisory or administrative personnel incurred while traveling in discharge of duties connected with the Work.

**§ 6.5.6** Costs of materials and equipment suitably stored off the site at a mutually acceptable location, subject to the Owner's prior approval.

### § 6.6 Miscellaneous Costs
**§ 6.6.1** Premiums for that portion of insurance and bonds required by the Contract Documents that can be directly attributed to this Contract. Self-insurance for either full or partial amounts of the coverages required by the Contract Documents, with the Owner's prior approval.

**§ 6.6.2** Sales, use or similar taxes imposed by a governmental authority that are related to the Work and for which the Construction Manager is liable.

**§ 6.6.3** Fees and assessments for the building permit and for other permits, licenses and inspections for which the Construction Manager is required by the Contract Documents to pay.

**§ 6.6.4** Fees of laboratories for tests required by the Contract Documents, except those related to defective or nonconforming Work for which reimbursement is excluded by Section 13.5.3 of AIA Document A201–2007 or by other provisions of the Contract Documents, and which do not fall within the scope of Section 6.7.3.

Init.

/

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:09:02 on 07/31/2015 under Order No.5313423826_1 which expires on 01/11/2016, and is not for resale.
User Notes:                                                                                          (1483949634)

12

**§ 6.6.5** Royalties and license fees paid for the use of a particular design, process or product required by the Contract Documents; the cost of defending suits or claims for infringement of patent rights arising from such requirement of the Contract Documents; and payments made in accordance with legal judgments against the Construction Manager resulting from such suits or claims and payments of settlements made with the Owner's consent. However, such costs of legal defenses, judgments and settlements shall not be included in the calculation of the Construction Manager's Fee or subject to the Guaranteed Maximum Price. If such royalties, fees and costs are excluded by the last sentence of Section 3.17 of AIA Document A201–2007 or other provisions of the Contract Documents, then they shall not be included in the Cost of the Work.

**§ 6.6.6** Costs for electronic equipment, software, and data processing applicable to the work.

**§ 6.6.7** Deposits lost for causes other than the Construction Manager's negligence or failure to fulfill a specific responsibility in the Contract Documents.

**§ 6.6.8** Legal, mediation and arbitration costs, including attorneys' fees, other than those arising from disputes between the Owner and Construction Manager, reasonably incurred by the Construction Manager after the execution of this Agreement in the performance of the Work and with the Owner's prior approval, which shall not be unreasonably withheld.

**§ 6.6.9** Subject to the Owner's prior approval, expenses incurred in accordance with the Construction Manager's standard written personnel policy for relocation and temporary living allowances of the Construction Manager's personnel required for the Work. See Exhibits "A" & "B".

**§ 6.7 Other Costs and Emergencies**
**§ 6.7.1** Other costs incurred in the performance of the Work if, and to the extent, approved in advance in writing by the Owner.

**§ 6.7.2** Costs incurred in taking action to prevent threatened damage, injury or loss in case of an emergency affecting the safety of persons and property, as provided in Section 10.4 of AIA Document A201–2007.

**§ 6.7.3** Costs of repairing or correcting damaged or nonconforming Work executed by the Construction Manager, Subcontractors or suppliers, provided that such damaged or nonconforming Work was not caused by negligence or failure to fulfill a specific responsibility of the Construction Manager and only to the extent that the cost of repair or correction is not recovered by the Construction Manager from insurance, sureties, Subcontractors, suppliers, or others.

**§ 6.7.4** The costs described in Sections 6.1 through 6.7 shall be included in the Cost of the Work, notwithstanding any provision of AIA Document A201–2007 or other Conditions of the Contract which may require the Construction Manager to pay such costs, unless such costs are excluded by the provisions of Section 6.8.

**§ 6.8 Costs Not To Be Reimbursed**
**§ 6.8.1** The Cost of the Work shall not include the items listed below:
.1   Salaries and other compensation of the Construction Manager's personnel stationed at the Construction Manager's principal office or offices other than the site office, except as specifically provided in Section 6.2, or as may be provided in Article 11;
.2   Expenses of the Construction Manager's principal office and offices other than the site office;
.3   Overhead and general expenses, except as may be expressly included in Sections 6.1 to 6.7;
.4   The Construction Manager's capital expenses, including interest on the Construction Manager's capital employed for the Work;
.5   Except as provided in Section 6.7.3 of this Agreement, costs due to the negligence or failure of the Construction Manager, Subcontractors and suppliers or anyone directly or indirectly employed by any of them or for whose acts any of them may be liable to fulfill a specific responsibility of the Contract;
.6   Any cost not specifically and expressly described in Sections 6.1 to 6.7;
.7   Costs, other than costs included in Change Orders approved by the Owner, that would cause the Guaranteed Maximum Price to be exceeded; and
.8   Costs for services incurred during the Preconstruction Phase as further defined in Section 4.1.2.

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:09:02 on 07/31/2015 under Order No.5313423826_1 which expires on 01/11/2016, and is not for resale.
User Notes:                                                                                                           (1483949634)

**13**

**§ 6.9 Discounts, Rebates and Refunds**
**§ 6.9.1** Cash discounts obtained on payments made by the Construction Manager shall accrue to the Owner if (1) before making the payment, the Construction Manager included them in an Application for Payment and received payment from the Owner, or (2) the Owner has deposited funds with the Construction Manager with which to make payments; otherwise, cash discounts shall accrue to the Construction Manager. Trade discounts, rebates, refunds and amounts received from sales of surplus materials and equipment shall accrue to the Owner, and the Construction Manager shall make provisions so that they can be obtained.

**§ 6.9.2** Amounts that accrue to the Owner in accordance with the provisions of Section 6.9.1 shall be credited to the Owner as a deduction from the Cost of the Work.

**§ 6.10 Related Party Transactions**
**§ 6.10.1** For purposes of Section 6.10, the term "related party" shall mean a parent, subsidiary, affiliate or other entity having common ownership or management with the Construction Manager; any entity in which any stockholder in, or management employee of, the Construction Manager owns any interest in excess of ten percent in the aggregate; or any person or entity which has the right to control the business or affairs of the Construction Manager. The term "related party" includes any member of the immediate family of any person identified above.

**§ 6.10.2** If any of the costs to be reimbursed arise from a transaction between the Construction Manager and a related party, the Construction Manager shall notify the Owner of the specific nature of the contemplated transaction, including the identity of the related party and the anticipated cost to be incurred, before any such transaction is consummated or cost incurred. If the Owner, after such notification, authorizes the proposed transaction, then the cost incurred shall be included as a cost to be reimbursed, and the Construction Manager shall procure the Work, equipment, goods or service from the related party, as a Subcontractor, according to the terms of Sections 2.3.2.1, 2.3.2.2 and 2.3.2.3. If the Owner fails to authorize the transaction, the Construction Manager shall procure the Work, equipment, goods or service from some person or entity other than a related party according to the terms of Sections 2.3.2.1, 2.3.2.2 and 2.3.2.3.

**§ 6.11 Accounting Records**
The Construction Manager shall keep full and detailed records and accounts related to the cost of the Work and exercise such controls as may be necessary for proper financial management under this Contract and to substantiate all costs incurred. The accounting and control systems shall be satisfactory to the Owner. The Owner and the Owner's auditors shall, during regular business hours and upon reasonable notice, be afforded access to, and shall be permitted to audit and copy, the Construction Manager's records and accounts, including complete documentation supporting accounting entries, books, correspondence, instructions, drawings, receipts, subcontracts, Subcontractor's proposals, purchase orders, vouchers, memoranda and other data relating to this Contract. The Construction Manager shall preserve these records for a period of three years after final payment, or for such longer period as may be required by law.

**ARTICLE 7   PAYMENTS FOR CONSTRUCTION PHASE SERVICES**
**§ 7.1 Progress Payments**
**§ 7.1.1** Based upon Applications for Payment submitted to the Architect by the Construction Manager and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Construction Manager as provided below and elsewhere in the Contract Documents. Separate Applications for Payment shall be submitted for each Project. Each Application for Payment stands on its own and has no bearing or relationship to the Application for Payment of another Project under this Agreement. It is expressly agreed by all parties that no Application for Payment for one project will be withheld or modified in response to another Project.

**§ 7.1.2** The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

**§ 7.1.3** Provided that an Application for Payment is received by the Architect not later than the last day of a month, the Owner shall make payment of the certified amount to the Construction Manager not later than the fifteenth day of the following month. If an Application for Payment is received by the Architect after the application date fixed above,

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:09:02 on 07/31/2015 under Order No.5313423826_1 which expires on 01/11/2016, and is not for resale.
User Notes:                                                                                                                                     (1483949634)

payment shall be made by the Owner not later than ten ( 10 ) days after the Architect receives the Application for Payment.
*(Federal, state or local laws may require payment within a certain period of time.)*

**§ 7.1.4** With each Application for Payment, the Construction Manager shall, at the Owner's request, submit payrolls, petty cash accounts, receipted invoices or invoices with check vouchers attached, and any other evidence required by the Owner or Architect to demonstrate that cash disbursements already made by the Construction Manager on account of the Cost of the Work equal or exceed progress payments already received by the Construction Manager, less that portion of those payments attributable to the Construction Manager's Fee, plus payrolls for the period covered by the present Application for Payment.

**§ 7.1.5** Each Application for Payment shall be based on the most recent schedule of values submitted by the Construction Manager in accordance with the Contract Documents. The schedule of values shall allocate the entire Project Price Amendment among the various portions of the Work The Construction Manager's Pre-construction Phase Fee and Construction Phase Fee shall be shown as separate line items. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Construction Manager's Applications for Payment.

**§ 7.1.6** Applications for Payment shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment. The percentage of completion shall be the lesser of (1) the percentage of that portion of the Work which has actually been completed, or (2) the percentage obtained by dividing (a) the expense that has actually been incurred by the Construction Manager on account of that portion of the Work for which the Construction Manager has made or intends to make actual payment prior to the next Application for Payment by (b) the share of the value allocated to that portion of the Work in the schedule of values.

**§ 7.1.7** Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

.1    Take that portion of the Project Price Amendment properly allocable to completed Work as determined by multiplying the percentage of completion of each portion of the Work by the share of the Project Price Amendment allocated to that portion of the Work in the schedule of values. Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.9 of AIA Document A201–2007;

.2    Add that portion of the Project Price Amendment properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work, or if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing;

.3    Add the Construction Manager's Fee. The Construction Manager's Fee shall be computed upon the Cost of the Work at the percentage rate stated in Section 5.1.1 less the percentage rate stated in Section 4.1.2 for the Construction Manager's Preconstruction Phase Fee to determine an adjusted Fee value for Construction or, if the Construction Manager's Fee is stated as a fixed sum in that Section, shall be an amount that bears the same ratio to the fixed-sum fee as the Cost of the Work bears to a reasonable estimate of the probable Cost of the Work upon its completion. Apply a retainage of five percent (5%) to the Construction Manager's adjusted Fee for Construction. No retainage will be applied to the Construction Manager's Preconstruction Phase Fee.

.4    Subtract retainage of zero percent ( 0% ) from that portion of the Work that the Construction Manager self-performs;

.5    Subtract the aggregate of previous payments made by the Owner;

.6    Subtract the shortfall, if any, indicated by the Construction Manager in the documentation required by Section 7.1.4 to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Owner's auditors in such documentation; and

.7    Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of AIA Document A201–2007.

.8    Retainage will not be withheld on materials stored on site or at an insured warehouse

.9    In accordance with Arkansas Law, upon 50% completion of the Work no further retainage will be withheld.

Init.

/

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:09:02 on 07/31/2015 under Order No.5313423826_1 which expires on 01/11/2016, and is not for resale.
User Notes:                                                        (1483949634)

**15**

**§ 7.1.8** The Owner and Construction Manager shall agree upon (1) a mutually acceptable procedure, subject to limitation in Arkansas Law, for review and approval of payments to Subcontractors and (2) the percentage of retainage held on Subcontracts, and the Construction Manager shall execute subcontracts in accordance with those agreements.

**§ 7.1.9** Except with the Owner's prior approval, the Construction Manager shall not make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site.

**§ 7.1.10** In taking action on the Construction Manager's Applications for Payment, the Architect shall be entitled to rely on the accuracy and completeness of the information furnished by the Construction Manager and shall not be deemed to represent that the Architect has made a detailed examination, audit or arithmetic verification of the documentation submitted in accordance with Section 7.1.4 or other supporting data; that the Architect has made exhaustive or continuous on-site inspections; or that the Architect has made examinations to ascertain how or for what purposes the Construction Manager has used amounts previously paid on account of the Contract. Such examinations, audits and verifications, if required by the Owner, will be performed by the Owner's auditors acting in the sole interest of the Owner.

### § 7.2 Final Payment

**§ 7.2.1** Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Construction Manager when

    .1    the Construction Manager has fully performed the Contract except for the Construction Manager's responsibility to correct Work as provided in Section 12.2.2 of AIA Document A201-2007, and to satisfy other requirements, if any, which extend beyond final payment;

    .2    the Construction Manager has submitted a final accounting for the Cost of the Work and a final Application for Payment; and

    .3    a final Certificate for Payment has been issued by the Architect.

The Owner's final payment to the Construction Manager shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

**§ 7.2.2** The Owner's auditors will review and report in writing on the Construction Manager's final accounting within 30 days after delivery of the final accounting to the Architect by the Construction Manager. Based upon such Cost of the Work as the Owner's auditors report to be substantiated by the Construction Manager's final accounting, and provided the other conditions of Section 7.2.1 have been met, the Architect will, within seven days after receipt of the written report of the Owner's auditors, either issue to the Owner a final Certificate for Payment with a copy to the Construction Manager, or notify the Construction Manager and Owner in writing of the Architect's reasons for withholding a certificate as provided in Section 9.5.1 of the AIA Document A201-2007. The time periods stated in this Section supersede those stated in Section 9.4.1 of the AIA Document A201-2007. The Architect is not responsible for verifying the accuracy of the Construction Manager's final accounting.

**§ 7.2.3** If the Owner's auditors report the Cost of the Work as substantiated by the Construction Manager's final accounting to be less than claimed by the Construction Manager, the Construction Manager shall be entitled to request mediation of the disputed amount without seeking an initial decision pursuant to Section 15.2 of A201-2007. A request for mediation shall be made by the Construction Manager within 30 days after the Construction Manager's receipt of a copy of the Architect's final Certificate for Payment. Failure to request mediation within this 30-day period shall result in the substantiated amount reported by the Owner's auditors becoming binding on the Construction Manager. Pending a final resolution of the disputed amount, the Owner shall pay the Construction Manager the amount certified in the Architect's final Certificate for Payment.

**§ 7.2.4** If, subsequent to final payment and at the Owner's request, the Construction Manager incurs costs described in Section 6.1.1 and not excluded by Section 6.8 to correct defective or nonconforming Work, the Owner shall reimburse the Construction Manager such costs and the Construction Manager's Fee applicable thereto on the same basis as if such costs had been incurred prior to final payment, but not in excess of the Guaranteed Maximum Price. If the Construction Manager has participated in savings as provided in Section 5.2.1, the amount of such savings shall be

**Init.**

**/**

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:09.02 on 07/31/2015 under Order No.5313423826_1 which expires on 01/11/2016, and is not for resale.
User Notes:                                                                                                    (1483949634)

recalculated and appropriate credit given to the Owner in determining the net amount to be paid by the Owner to the Construction Manager.

## ARTICLE 8   INSURANCE AND BONDS
For all phases of the Project, the Construction Manager and the Owner shall purchase and maintain insurance, and the Construction Manager shall provide bonds as set forth in Article 11 of AIA Document A201–2007.
*(State bonding requirements, if any, and limits of liability for insurance required in Article 11 of AIA Document A201–2007.)*

All insurance policies and certificates shall be project specific and not represent the total of all projects within this Agreement.

| Type of Insurance or Bond | Limit of Liability or Bond Amount ($0.00) |
|---|---|
| Performance and Payment Bond issued on Standard Arkansas Bond Forms | 100% of the Project Amendment Price subject to adjustment by Change Order |

§ 8.1.1 Workers' Compensation and Employers' Liability meeting statutory limits mandated by state and federal laws. If (1) limits in excess of those required by statute are to be provided, or (2) the employer is not statutorily bound to obtain such insurance coverage or (3) additional coverages are required, additional coverages and limits for such insurance shall be as follows:

§ 8.1.2 Commercial General Liability including coverage for Premises-Operations, Independent Contractors' Protective, Products-Completed Operations, Contractual Liability, Personal Injury and Broad Form Property Damage (including coverage for Explosion, Collapse and Underground hazards):

    $1,000,000   Each Occurrence
    $2,000,000   General Aggregate
    $1,000,000   Personal and Advertising Injury
    $2,000,000   Products-Completed Operations Aggregate

    .1    The policy shall be endorsed to have the General Aggregate apply to each Project and Owner only.
    .2    Products and Completed Operations insurance shall be maintained for a minimum period of at least one ( 1 ) year(s) after either 90 days following Substantial Completion or final payment, whichever is earlier.
    .3    The Contractual Liability insurance shall include coverage sufficient to meet the obligations in Section 3.17 of A201™–2007.

§ 8.1.3 Automobile Liability (owned, non-owned and hired vehicles) for bodily injury and property damage:
    $1,000,000   Each Accident

§ 8.1.4 Other coverage:

To Be Determined

## § 8.2 ADDITIONAL INSURANCE REQUIRED OF THE CONSTRUCTION MANAGER
The Construction Manager shall purchase and maintain liability and property insurance for each Project in the form of a Builder's Risk "all-risk" policy form, including full coverage for earthquake and flood (if flood risk is present) including the interests of the, Owner, Construction Manager, Contractor and all Subcontractors and including waivers of subrogation, as set forth in Sections 11.3.7 of A201™–2007. Such insurance shall be written for the full amount of each individual Project Price subject to adjustment by approved change orders, or greater if required by law:

§ 8.2.1 Property Insurance Deductibles:
    TBD    Deductible Per Occurrence to be considered Cost of the Work and reimbursed by Owner unless loss is determined to be due to negligence of Construction Manager.
    TBD    Aggregate Deductible
    TBD    Deductible for Flood and Earthquake Occurrence
    TBD    Aggregate Deductible

**AIA Document A133™ – 2009** (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:09:02 on 07/31/2015 under Order No.5313423826_1 which expires on 01/11/2016, and is not for resale. User Notes:                (1483949634)

**§ 8.2.2** Boiler and Machinery insurance with a limit of:   TBD   .
*(If not a blanket policy, list the objects to be insured.)*

## ARTICLE 9    DISPUTE RESOLUTION
**§ 9.1** Any Claim between the Owner and Construction Manager shall be resolved in accordance with the provisions set forth in this Article 9 and Article 15 of A201–2007. However, for Claims arising from or relating to the Construction Manager's Preconstruction Phase services, no decision by the Initial Decision Maker shall be required as a condition precedent to mediation or binding dispute resolution, and Section 9.3 of this Agreement shall not apply.

**§ 9.2** For any Claim subject to, but not resolved by mediation pursuant to Section 15.3 of AIA Document A201–2007, the method of binding dispute resolution shall be as follows:
*(Check the appropriate box. If the Owner and Construction Manager do not select a method of binding dispute resolution below, or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be resolved by litigation in a court of competent jurisdiction.)*

[   ]   Arbitration pursuant to Section 15.4 of AIA Document A201–2007

[ X ]   Litigation in a court of competent jurisdiction with a venue for such litigation in Pulaski County, Arkansas

[   ]   Other: *(Specify)*

**§ 9.3 Initial Decision Maker**
The Architect will serve as the Initial Decision Maker pursuant to Section 15.2 of AIA Document A201–2007 for Claims arising from or relating to the Construction Manager's Construction Phase services, unless the parties appoint below another individual, not a party to the Agreement, to serve as the Initial Decision Maker.
*(If the parties mutually agree, insert the name, address and other contact information of the Initial Decision Maker, if other than the Architect.)*

## ARTICLE 10    TERMINATION OR SUSPENSION
**§ 10.1 Termination Prior to Establishment of the Guaranteed Maximum Price**
**§ 10.1.1** Prior to the execution of the initial Project Amendment, the Owner may terminate this Agreement upon not less than seven days' written notice to the Construction Manager for the Owner's convenience and without cause, and the Construction Manager may terminate this Agreement, upon not less than seven days' written notice to the Owner, for the reasons set forth in Section 14.1.1 of A201–2007.

**§ 10.1.2** In the event of termination of this Agreement pursuant to Section 10.1.1, the Construction Manager shall be equitably compensated for Preconstruction Phase services performed prior to receipt of a notice of termination. In no event shall the Construction Manager's compensation under this Section exceed the compensation set forth in Section 4.1.

**§ 10.1.3** If the Owner terminates the Contract pursuant to Section 10.1.1 after the commencement of the Construction Phase but prior to the execution of the initial Project Price Amendment or subsequent Project Price Amendments, the Owner shall pay to the Construction Manager an amount calculated as follows, which amount shall be in addition to any compensation paid to the Construction Manager under Section 10.1.2:
.1   Take the Cost of the Work incurred by the Construction Manager to the date of termination;
.2   Add the Construction Manager's Fee computed upon the Cost of the Work to the date of termination at the rate stated in Section 5.1 or, if the Construction Manager's Fee is stated as a fixed sum in that Section, an amount that bears the same ratio to that fixed-sum Fee as the Cost of the Work at the time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion; and
.3   Subtract the aggregate of previous payments made by the Owner for Construction Phase services.

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:09:02 on 07/31/2015 under Order No.5313423826_1 which expires on 01/11/2016, and is not for resale.
User Notes:                                                                                          (1483949634)

The Owner shall also pay the Construction Manager fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Construction Manager which the Owner elects to retain and which is not otherwise included in the Cost of the Work under Section 10.1.3.1. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Construction Manager shall, as a condition of receiving the payments referred to in this Article 10, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Construction Manager, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Construction Manager under such subcontracts or purchase orders. All Subcontracts, purchase orders and rental agreements entered into by the Construction Manager will contain provisions allowing for assignment to the Owner as described above.

If the Owner accepts assignment of subcontracts, purchase orders or rental agreements as described above, the Owner will reimburse or indemnify the Construction Manager for all costs arising under the subcontract, purchase order or rental agreement, if those costs would have been reimbursable as Cost of the Work if the contract had not been terminated. If the Owner chooses not to accept assignment of any subcontract, purchase order or rental agreement that would have constituted a Cost of the Work had this agreement not been terminated, the Construction Manager will terminate the subcontract, purchase order or rental agreement and the Owner will pay the Construction Manager the costs necessarily incurred by the Construction Manager because of such termination.

### § 10.2 Termination Subsequent to Establishing Guaranteed Maximum Price
Following execution of all Project Price Amendments and establishment of the Guaranteed Maximum Price and subject to the provisions of Section 10.2.1 and 10.2.2 below, the Contract may be terminated as provided in Article 14 of AIA Document A201–2007.

§ 10.2.1 If the Owner terminates the Contract after establishment of the Guaranteed Maximum Price , the amount payable to the Construction Manager pursuant to Sections 14.2 and 14.4 of A201–2007 shall not exceed the amount the Construction Manager would otherwise have received pursuant to Sections 10.1.2 and 10.1.3 of this Agreement.

§ 10.2.2 If the Construction Manager terminates the Contract after establishment of the Guaranteed Maximum Price , the amount payable to the Construction Manager under Section 14.1.3 of A201–2007 shall not exceed the amount the Construction Manager would otherwise have received under Sections 10.1.2 and 10.1.3 above, except that the Construction Manager's Fee shall be calculated as if the Work had been fully completed by the Construction Manager, utilizing as necessary a reasonable estimate of the Cost of the Work for Work not actually completed.

### § 10.3 Suspension
The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201–2007. In such case, the Guaranteed Maximum Price and Contract Time shall be increased as provided in Section 14.3.2 of AIA Document A201–2007, except that the term "profit" shall be understood to mean the Construction Manager's Fee as described in Sections 5.1 and 5.3.5 of this Agreement.

## ARTICLE 11    MISCELLANEOUS PROVISIONS
§ 11.1 Terms in this Agreement shall have the same meaning as those in A201–2007.

### § 11.2 Ownership and Use of Documents
Section 1.5 of A201–2007 shall apply to both the Preconstruction and Construction Phases.

### § 11.3 Governing Law
Section 13.1 of A201–2007 shall apply to both the Preconstruction and Construction Phases.

### § 11.4 Assignment
The Owner and Construction Manager, respectively, bind themselves, their agents, successors, assigns and legal representatives to this Agreement. Neither the Owner nor the Construction Manager shall assign this Agreement without the written consent of the other, except that the Owner may assign this Agreement to a lender providing financing for the Project if the lender agrees to assume the Owner's rights and obligations under this Agreement. Except as provided in Section 13.2.2 of A201–2007, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:09:02 on 07/31/2015 under Order No.5313423826_1 which expires on 01/11/2016, and is not for resale.
User Notes:                                                                                                                           (1483949634)

## § 11.5 Other provisions:

**11.5.1** The date of commencement and completion will be established by the individual Project Price Amendments

## § 11.5.2 Modification to Agreement
Modifications to this Agreement shall not be construed against the maker of the modification. To the extent that conflicts exist between the Contract Documents and any such amendments thereto, the amendments shall prevail over the original forms. In no event shall any understanding or agreement, contract modification, change order or other matter which would constitute a deviation from the terms of this contract be effective or binding upon the Owner unless expressly stated and agreed to in writing executed by the Owner.

## § 11.6 Conflict of Interest
The Construction Manager represents and warrants that no director, board member or employee of the Owner is in any manner interested directly or indirectly in this Agreement or in any of the expected profits which might arise therefrom; further, that no attempt has been made to influence or gain favorable advantage by communicating directly or indirectly with any official of the Owner. It is understood that any action taken which might tend to degrade the integrity of the competitive bidding process will be considered as grounds for disqualification or a breach of this Agreement.

## § 11.7 Indemnification and Legal Compliance
In accordance with standards of care applicable to construction managers, the Construction Manager shall observe and comply with federal, state and local laws, statutes, orders, ordinances and regulations. To the fullest extent permitted by law, Construction Manager shall indemnify and hold harmless Owner, its agents, employees, officers and board members from and against any liabilities, damages, and costs (including reasonable attorney's fees and costs of defense) arising out of the death or bodily injury to any person or the destruction or damage to any property, to the extent caused during Construction Manager's performance of its obligation under this Agreement by the negligent acts, errors, and omissions of the Construction Manager or anyone for whom Construction Manager is legally responsible.

## § 11.8 Non-Collusive Affidavit
The Construction Manager and the individual personally signing this Agreement represent and warrant that this Agreement is neither collusive nor made for or on behalf of any person not named.

## § 11.9 Penalty for Collusion
If at any time it shall be found that the person, firm or corporation to whom a contract has been awarded has, in presenting any bid, colluded with any other party or parties, then, in the sole discretion of the Owner, the contract so awarded shall be null and void or considered breached and the contractor shall be liable to the Owner for any and all loss and damage of whatsoever nature, which the Owner may suffer and Owner may seek a replacement for such person, firm or corporation.

## § 11.10 Non-Discrimination
The Construction Manager shall not discriminate against, or segregate, a person or a group of persons on account of race, color, creed, religion, sex, sexual orientation, marital status, familial status, national origin, ancestry, disability or condition of acquired immune deficiency syndrome (AIDS) or AIDS-related complex in carrying out its duties and obligations pursuant to this Agreement nor shall the Construction Manager or any person claiming under or through the Construction Manager establish or permit any such practice or practices of discrimination or segregation. The Construction Manager must include in any and all subcontracts a provision similar to the preceding.

## § 11.11 Proprietary Information
All information submitted by the Construction Manager to Owner is public information. The Construction Manager should not include in any information submitted to the Owner which Construction Manager believes to be a trade secret or otherwise privileged or confidential. If the Construction Manager wishes to provide such information to Owner, then the material should be supplied under separate cover and identified as confidential. The Owner does not warrant or agree to, but will endeavor to, keep that information confidential. Construction Manager acknowledges that information in the possession of the Owner may be subject to the provisions of the Arkansas Freedom of Information Act.

Init.

/

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:09:02 on 07/31/2015 under Order No.5313423826_1 which expires on 01/11/2016, and is not for resale.
User Notes:                                                                                                                    (1483949634)

**§ 11.12 Severability**
The finding or determination of any part or parts of the General Instruction, Terms and Conditions is void, unenforceable, invalid or voidable shall result in only that part being stricken with the remainder to continue in full force and effect.

**§ 11.13 No-Smoking Policy**
Owner has a NO Smoking Policy on all school properties.  It is the policy of the Owner that all uses of tobacco and tobacco products, including smokeless tobacco, will be prohibited on all facilities.  At no time will the use of tobacco products be permitted in the classrooms, corridors, restrooms, locker rooms, work areas, cafeterias, offices, faculty lounges, gymnasiums, all other rooms and school grounds.  This policy applies to all visitors, the Construction Manager, subcontractors and vendors.  This policy is strictly enforced without exception.

## ARTICLE 12   SCOPE OF THE AGREEMENT
**§ 12.1** This Agreement represents the entire and integrated agreement between the Owner and the Construction Manager and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both Owner and Construction Manager.

**§ 12.2** The following documents comprise the Agreement:
.1   AIA Document A133–2009, Standard Form of Agreement Between Owner and Construction Manager as Constructor where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price
.2   AIA Document A201–2007, General Conditions of the Contract for Construction
.3   AIA Document E201™–2007, Digital Data Protocol Exhibit, if completed, or the following:

.4   AIA Document E202™–2008, Building Information Modeling Protocol Exhibit, if completed, or the following:

.5   Other documents:
     *(List other documents, if any, forming part of the Agreement.)*

This Agreement is entered into as of the day and year first written above.

OWNER *(Signature)*                              CONSTRUCTION MANAGER *(Signature)*

Dr. Jerry Guess, Superintendent                 Bobby Gosser Jr., President – Central Arkansas Division
*(Printed name and title)*                       *(Printed name and title)*

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 10:09:02 on 07/31/2015 under Order No.5313423826_1 which expires on 01/11/2016, and is not for resale.
User Notes:                                                                              (1483949634)

# ▓AIA® Document G701™ – 2001

## *Change Order*

| | | |
|---|---|---|
| **PROJECT** *(Name and address):* | **CHANGE ORDER NUMBER:** PA-003 | OWNER: ☐ |
| Mills High School Replacement | **DATE:** January 11, 2017 | ARCHITECT: ☐ |
| 1205 East Dixon Road | | CONTRACTOR: ☐ |
| Little Rock, AR 72206 | | |
| **TO CONTRACTOR** *(Name and address):* | **ARCHITECT'S PROJECT NUMBER:** | FIELD: ☐ |
| Baldwin & Shell Construction Co. | **CONTRACT DATE:** June 30, 2015 | OTHER: ☐ |
| PO BOX 1750 | **CONTRACT FOR:** General Construction | |
| Little Rock, AR 72203 | | |

**THE CONTRACT IS CHANGED AS FOLLOWS:**
*(Include, where applicable, any undisputed amount attributable to previously executed Construction Change Directives)*
The Bid Package #3 for the Mills High School Replacement Project is to be released in full for the Base Bid price of Thirty Million Three Hundred Ninety One Thousand Seventy Two Dollars and Zero Cents ($30,391,072.00).

Attachment 1 – Statement of Project Price
Attachment 2 – List of Allowances
Attachment 3 – List of Unit Prices
Attachment 4 – List of Drawings, Specifications, Addenda
Attachment 5 – Clarifications and Assumptions

| | | |
|---|---|---:|
| The original Contract Sum was | $ | .00 |
| The net change by previously authorized Change Orders | $ | 7,308,928.00 |
| The Contract Sum prior to this Change Order was | $ | 7,308,928.00 |
| The Contract Sum will be increased by this Change Order in the amount of | $ | 30,391,072.00 |
| The new Contract Sum including this Change Order will be | $ | 37,700,000.00 |

The Contract Time will be unchanged by Zero (0) days.
The date of Substantial Completion as of the date of this Change Order therefore is August 20, 2018

**NOTE:** This Change Order does not include changes in the Contract Sum, Contract Time or Guaranteed Maximum Price which have been authorized by Construction Change Directive until the cost and time have been agreed upon by both the Owner and Contractor, in which case a Change Order is executed to supersede the Construction Change Directive

**NOT VALID UNTIL SIGNED BY THE ARCHITECT, CONTRACTOR AND OWNER.**

| Wittenberg Delony & Davidson Architects | Baldwin & Shell Construction Co. | Pulaski County Special School District |
|---|---|---|
| **ARCHITECT** *(Firm name)* | **CONTRACTOR** *(Firm name)* | **OWNER** *(Firm name)* |
| 400 West Capitol Avenue, Suite 1800 | PO BOX 1750 | 925 East Dixon Road |
| Little Rock, AR 72201 | Little Rock, AR 72203 | Little Rock, AR 72206 |
| **ADDRESS** | **ADDRESS** | **ADDRESS** |
| **BY** *(Signature)* | **BY** *(Signature)* | **BY** *(Signature)* |
| Bradley R. Chilcote | Bobby Gosser Jr. | Dr. Jerry Guess |
| *(Typed name)* | *(Typed name)* | *(Typed name)* |
| 1·11·2017 | 1–11–17 | |
| **DATE** | **DATE** | **DATE** |

AIA Document G701™ – 2001. Copyright © 1979, 1987, 2000 and 2001 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:20:44 on 01/11/2017 under Order No. 1386674036 which expires on 01/09/2018, and is not for resale.
User Notes:                                                                          (3B9ADA17)

1



January 11, 2017

Dr. Jerry Guess, Superintendent
Pulaski County Special School District
925 East Dixon Road
Little Rock, AR 72206

Re: Project Price Proposal
    Mills Replacement High School - Pulaski County Special School District
    Bid Package #3

Dear Dr. Guess,

We are pleased to present to you a Project Price Proposal of $30,391,072 for Bid Package # 3 (High School and Field House) for the Mills Replacement High School for Pulaski County Special School District in Little Rock, Arkansas. A detailed Breakdown of Costs is included as Attachment 1. The List of Allowances is included as Attachment 2. The List of Unit Prices is included as Attachment 3. The List of Contract Documents as prepared by Wittenberg, Delony and Davidson Architects is included as Attachment 4. Clarifications and Assumptions are included as Attachment 5.   An itemization of the deductive value engineering items is included as Attachment 6.   Together, Attachments 4, 5 and 6 define the scope of work for this package.

This Project Price Proposal in the amount of $30,391,072 plus previous contract change orders will increase the Contract Sum to $37,700,000.

This Project Price Proposal must be accepted by Change Order on or before the proposed start date of January 16, 2017. The duration for this portion of the work is approximately twenty (20) calendar months.

Please note that prior to the establishment of the Guaranteed Maximum Price, each project shall be priced for approval by the Owner. Upon approval of each Project Price Proposal, a Project Price Amendment shall be issued establishing the Construction Manager's estimate of the Cost of the Work, including contingencies and the Construction Manager's Fee for the individual project. Upon approval of all Project Price Proposals and issuance of all Project Price Amendments the Guaranteed Maximum Price shall then be established and equal the sum of all Project Price Amendments, subject to adjustments by approved Project Change Orders.

Should you have any questions, please do not hesitate to call.

Sincerely,
BALDWIN & SHELL CONSTRUCTION


Thomas Rutherford
Senior Project Estimator – Central Arkansas Division

Central Arkansas Division



cc: Derek Scott – Executive Director, Operations PCSSD
    Jerry Holder, Pulaski County Special School District
    Brad Chilcote – Wittenberg, Delony and Davidson Architects
    Roy Horsey, Baldwin & Shell Construction Company

**Attachment 1**
**Breakdown of Costs**
**Bid Package 3**
**Mills Replacement High School – Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

**BALDWIN & SHELL**
CONSTRUCTION COMPANY

| NO. | ITEM NAME | COST |
|---|---|---|
| 00600 | Performance Bond | 260,626 |
| 00601 | Builders' Risk / Lia. Insurance | 334,498 |
| 00990 | Fee | 1,453,776 |
| 01000 | General Conditions | 954,702 |
| 01011 | CM/GC Contingency | 315,090 |
| 01012 | Owner Contingency | 49,715 |
| 01020 | Allowances | 738,000 |
| 01060 | Permits | 11,861 |
| 01400 | Quality Control / Testing Allowance | 80,000 |
| 01500 | Const. Facilities & Temp. Controls | 32,435 |
| 01505 | Temporary Utilities | 37,083 |
| 01515 | Temporary Roads & Staging | 51,461 |
| 01540 | Hoisting and Equipment | 287,834 |
| 01700 | Project Clean Up | 103,864 |
| 02300 | Earthwork / Erosion Control | 25,392 |
| 02630 | Storm Drainage | 63,869 |
| 02720 | Gravel Base at Maintenance Parking | 15,907 |
| 02766 | Site Concrete | 603,289 |
| 02820 | Fencing and Gates | 68,287 |
| 02900 | Landscaping | 175,000 |
| 03303 | Building Concrete | 2,553,992 |
| 03400 | Structural Precast Concrete | 125,000 |
| 04200 | Masonry | 1,768,132 |
| 05100 | Furnish & Erect Structural Steel | 2,894,994 |
| 05130 | Miscellaneous Metals | 4,000 |
| 05700 | Ornamental Railings | 189,812 |
| 05810 | Expansion Joint Covers | 27,032 |
| 06100 | Rough Carpentry | 227,777 |
| 06200 | Finish Carpentry & Millwork | 234,958 |
| 07110 | Dampproofing | 209,671 |
| 07400 | Metal Roof & Wall Panels | 923,294 |
| 07500 | Membrane Roofing | 795,638 |
| 08110 | Doors, Frames & Finish Hardware | 373,118 |
| 08220 | Misc. Installation | 65,888 |
| 08330 | Overhead & Coiling Doors | 303,280 |
| 08500 | Ticket Window | 2,824 |
| 08600 | Skylights | 49,450 |
| 08800 | Glass, Glazing & Curtain Wall Systems | 718,254 |
| 09250 | Drywall, Metal Studs & Ceilings | 2,192,772 |
| 09400 | Terrazzo | 78,912 |
| 09600 | Wood Athletic & Stage Flooring | 202,364 |
| 09650 | Resilient Flooring | 157,700 |
| 09600 | Resinous Epoxy Flooring | 50,000 |
| 09900 | Painting | 560,577 |
| 10000 | Misc. Building Specialties | 9,265 |
| 10110 | Visual Display Boards | 53,886 |

**Attachment 1**
**Breakdown of Costs**
**Bid Package 3**
**Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

| NO. | ITEM NAME | COST |
|---|---|---|
| 10150 | Toilet Compartments & Accessories | 68,638 |
| 10350 | Flagpoles | 7,514 |
| 10520 | Fire Extinguishers & Cabinets | 4,000 |
| 10530 | Protective Covers | 48,367 |
| 11480 | Athletic Equipment | 61,166 |
| 12350 | Modular Casework | 410,401 |
| 12490 | Roller Shades | 51,907 |
| 13120 | Pre-Engineered Buildings | 836,964 |
| 14200 | Elevators | 66,250 |
| 14400 | Wheel chair Lifts | 22,233 |
| 15100 | Mechanical | 4,753,126 |
| 15300 | Fire Suppression | 337,600 |
| 16100 | Electrical | 3,101,920 |
| 16420 | Low Voltage Adjustment | 185,707 |
| | | |
| | | |
| | | |
| | | |

**TOTAL - BID PACKAGE 3**                                           30,391,072

See Attached Clarifications and Assumptions

**Attachment 2**

**List of Allowances**

**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**

**Little Rock, Arkansas**

**01/11/2017**

The following are allowances included in Bid Package # 3 Mills Replacement High School, Little Rock, Arkansas Price Proposal.

**Lump Sum Allowance A: Testing:**

We have included an Allowance Amount of $ 50,000 for work related to Specification Section 01 45 00 Testing Laboratory Services.

**Lump Sum Allowance B: Resilient Tile Flooring:**

We have included an Allowance Amount of $ 110,000 for work related to Specification Section 09 65 19 Resilient Tile Flooring.

**Lump Sum Allowance C: Carpet Sheet – (Broadloom)**

 We have included an Allowance Amount of $ 8,000 for work related to Specification Section 09 68 00 Carpet Sheet – (Broadloom).

**Lump Sum Allowance D: Carpet Tile**

We have included an Allowance Amount of $ 50,000 for work related to Specification Section 09 68 00 Carpet Tile.

**Lump Sum Allowance E: Signage - Interior**

We have included an Allowance Amount of $ 25,000 for work related to Specification Section 10 14 00 Signage – Interior.

**Attachment 2**

**List of Allowances**

**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**

**Little Rock, Arkansas**

**01/11/2017**

**Lump Sum Allowance F: Signage - Exterior**

We have included an Allowance Amount of $ 75,000 for work related to Specification Section 10 14 00 Signage – Exterior.


**Lump Sum Allowance H: Stage Rigging and Curtain Systems**

We have included an Allowance Amount of $ 470,000 for work related to Specification Section 11 61 33 Stage Rigging and Curtain Systems.

**Attachment 3 – List of Unit Prices**

**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**

**Little Rock, Arkansas**

**01/11/2017**

---

**Bid Package #3 Unit Price # 1: Foundation Undercut and Replacement with Soil:**
Undercut & Replacement at Foundation Trenches:  For undercut of unsuitable material at building, off-site disposal, and importing, placing, and compacting select fill material at undercut areas only, This is in addition to the excavation and stripping required to establish grades shown on the drawings which is to be included in the base bid.

 Foundation Trench Undercutting: $75.00 per cubic yard.


**Bid Package #3 Unit Price # 2: Trench Rock Excavation:**
For Trench Rock removed and disposed of offsite and backfilled with specified material per cubic yard In Place.

Trench Rock Excavation: $ 470.00 per cubic yard.


**Bid Package #3 Unit Price # 3 Undercut Foundations:**
For unsuitable material below finished foundation subgrade removed and backfilled with lean concrete per cubic yard In Place.

Foundation Undercut $140.00 per cubic yard.


**Bid Package #3 Unit Price # 4: Drilled Pier Spoil Removal**
Drilled pier spoils, removed and disposed of offsite, per Cubic Yard.

Spoils Removal $ 20.00 per cubic yard


**Bid Package #3 Unit Price # 5: Drilled Pier Unit Prices – Add/ Deduct Amounts as follows:**
**Add/ Deduct drilled pier excavation for each diameter per linear foot:**
24" Drilled Piers:  Add $ 5.46/LF   Deduct $ 2.75/LF

30" Drilled Piers    Add $ 8.05/LF   Deduct $ 3.75/LF

36" Drilled Piers    Add $ 12.36/LF   Deduct $ 6.00/LF

42" Drilled Piers    Add $ 16.67/LF   Deduct $ 8.00/LF

**Attachment 3 – List of Unit Prices**

**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**

**Little Rock, Arkansas**

**01/11/2017**

**Bid Package #3 Unit Price # 6: Drilled Pier Unit Prices – Add/ Deduct Amounts as follows:**
**Add/ Deduct drilled pier concrete placement for each diameter per linear foot:**
24" Drilled Piers:  Add $ 16.17/LF   Deduct $ 14.06/LF

30" Drilled Piers    Add $ 24.26/LF   Deduct $ 21.09/LF

36" Drilled Piers    Add $ 34.66/LF   Deduct $ 30.14/LF

42" Drilled Piers    Add $ 47.367/LF   Deduct $ 41.18/LF

**Bid Package #3 Unit Price # 7: Drilled Pier Unit Prices – Add/ Deduct Amounts as follows:**
**Add/ Deduct drilled pier reinforcing steel placement for each diameter per linear foot:**
24" Drilled Piers:  Add $ 12.39/LF   Deduct $ 0.00/LF

30" Drilled Piers    Add $ 12.81/LF   Deduct $ 0.00/LF

36" Drilled Piers    Add $ 15.94/LF   Deduct $ 0.00/LF

42" Drilled Piers    Add $ 19.77/LF   Deduct $ 0.00/LF

**Bid Package #3 Unit Price # 8: Drilled Pier Unit Prices – Add/ Deduct Amounts as follows:**
**Add/ Deduct Temporary Casing for each diameter per linear foot:**
24" Drilled Piers:  Add $ 36.84   Deduct N/A

30" Drilled Piers    Add $ 42.14/LF   Deduct N/A

36" Drilled Piers    Add $ 44.84/LF   Deduct $ 0.00/LF

42" Drilled Piers    Add $ 50.41/LF   Deduct $ 0.00/LF

Unit Prices as stated above are Direct Costs. Indirect Costs such as Bonds, Insurance, Permits, Data Processing and Fees are included in the Project Price but are excluded from the stated Unit Prices above.

List of Contract Documents
**Bid Package 3**
**Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

### Specifications

| Section | Description | Dated |
|---|---|---|
| 00 21 13 | Instructions to Bidders | 10/21/2016 |
| 00 31 32 | Geotechnical Data | 10/21/2016 |
| 00 60 00 | Bonds | 10/21/2016 |
| 00 72 13 | General Conditions | 10/21/2016 |
| 00 73 00 | Supplementary Conditions | 10/21/2016 |
| 00 73 19 | OSHA Guidelines for Trench Safety | 10/21/2016 |
| 01 11 00 | Summary Of Work | 10/21/2016 |
| 01 21 00 | Allowances | 10/21/2016 |
| 01 22 00 | Unit Prices | 10/21/2016 |
| 01 33 00 | Submittal and Substitution Procedures | 10/21/2016 |
| 01 35 04 | LEED Requirements | 10/21/2016 |
| 01 35 05 | LEED Certification Procedures | 10/21/2016 |
| 01 35 06 | LEED Submittal Forms | 10/21/2016 |
| 01 35 07 | LEED Material Cost Summary | 10/21/2016 |
| 01 35 08 | LEED Wood-Containing Product List | 10/21/2016 |
| 01 35 09 | LEED Metal-Containing Product List | 10/21/2016 |
| 01 35 12 | LEED Prohibited Content Installer Content | 10/21/2016 |
| 01 43 39 | Mockups | 10/21/2016 |
| 01 45 00 | Testing Laboratory Services | 10/21/2016 |
| 01 50 00 | Temporary Facilities and Controls | 10/21/2016 |
| 01 57 23 | Temporary Storm Water Pollution Control | 10/21/2016 |
| 01 74 19 | Construction Waste Management | 10/21/2016 |
| 01 74 23 | Cleaning | 10/21/2016 |
| 01 81 90 | Indoor Quality Management | 10/21/2016 |
| 01 78 00 | Closeout Submittals | 10/21/2016 |
| 02 41 13 | Selective Site Demolition | 10/21/2016 |
| 02 43 00 | Demolition and Removal of Facilities | 10/21/2016 |
| 03 01 00 | Site Concrete Work | 10/21/2016 |
| 03 15 00 | Site Concrete Expansion, Construction and Contraction Joints | 10/21/2016 |
| 03 10 00 | Concrete Forming & Accessories | 10/21/2016 |
| 03 20 00 | Concrete Reinforcement | 10/21/2016 |
| 03 20 01 | Site Concrete Reinforcing | 10/21/2016 |
| 03 30 00 | Cast-In-Place Concrete | 10/21/2016 |
| 03 31 00 | Structural Cast In Place Concrete | 10/21/2016 |
| 03 35 43 | Polished Concrete Finishing | 10/21/2016 |
| 03 47 00 | Site Cast-In-Place Concrete | 10/21/2016 |
| 03 48 43 | Precast Concrete Trim | 10/21/2016 |

**List of Contract Documents**
**Bid Package 3**
**Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

| | | |
|---|---|---|
| 04 05 13 | Masonry Mortaring | 10/21/2016 |
| 04 05 23 | Masonry Accessories | 10/21/2016 |
| 04 20 00 | Unit Masonry | 10/21/2016 |
| 05 05 16 | Preparation Of Hot-Dip Galvanized Steel Surfaces For Painting | 10/21/2016 |
| 05 10 00 | Structural Steel | 10/21/2016 |
| 05 50 00 | Metal Fabrications | 10/21/2016 |
| 05 20 00 | Metal Joists | 10/21/2016 |
| 05 30 00 | Metal Decking | 10/21/2016 |
| 05 40 00 | Cold Formed Structural Framing | 10/21/2016 |
| 05 44 13 | Cold Formed Metal Roof Trusses | 10/21/2016 |
| 05 50 00 | Metal Fabrications | 10/21/2016 |
| 05 55 00 | Steel Stairs And Railings | 10/21/2016 |
| 05 73 00 | Decorative Metal Railings | 10/21/2016 |
| 06 10 00 | Rough Carpentry | 10/21/2016 |
| 06 16 43 | Gypsum Sheathing | 10/21/2016 |
| 06 20 23 | Interior Finish Carpentry | 10/21/2016 |
| 06 40 00 | Architectural Woodwork | 10/21/2016 |
| 06 42 18 | Flush Wood Paneling System | 10/21/2016 |
| 06 61 16 | Solid Surfacing Fabrications | 10/21/2016 |
| 07 10 00 | Dampproofing and Waterproofing | 10/21/2016 |
| 07 19 00 | Water Repellants | 10/21/2016 |
| 07 21 00 | Thermal Insulation | 10/21/2016 |
| 07 27 26 | Fluid Applied Weather Barriers | 10/21/2016 |
| 07 41 13 | Metal Roof Panels | 10/21/2016 |
| 07 42 13 | Metal Wall Panels | 10/21/2016 |
| 07 42 13.19 | Insulated Metal Wall Panels | 10/21/2016 |
| 07 54 01 | Induction Fastening System For Membrane Roofing | 10/21/2016 |
| 07 54 23 | Thermoplastic Polyolefin Roofing | 10/21/2016 |
| 07 60 00 | Flashing and Sheet Metal | 10/21/2016 |
| 07 72 00 | Roof Accessories | 10/21/2016 |
| 07 84 00 | Firestopping | 10/21/2016 |
| 07 92 00 | Joint Sealants | 10/21/2016 |
| 08 11 13 | Hollow Metal Doors and Frames | 10/21/2016 |
| 08 11 73 | Sliding Metal Fire Doors | 10/21/2016 |
| 08 14 00 | Wood Doors | 10/21/2016 |
| 08 33 00 | Coiling Doors & Grilles | 10/21/2016 |
| 08 33 33 | Side Coiling Doors | 10/21/2016 |
| 08 34 73 | Sound Control Door Assemblies | 10/21/2016 |
| 08 41 13 | Aluminum Framed Entrances & Storefronts | 10/21/2016 |
| 08 44 13 | Glazed Aluminum Curtain Walls | 10/21/2016 |
| 08 62 16 | Pyramidal Unit Skylights | 10/21/2016 |

List of Contract Documents
**Bid Package 3**
**Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

| | | |
|---|---|---|
| 08 62 26 | Plastic Glazed Circular Skylights | 10/21/2016 |
| 08 71 00 | Hardware | 10/21/2016 |
| 08 71 00.03 | Hardware | 10/21/2016 |
| 08 80 00 | Glazing | 10/21/2016 |
| 09 21 16 | Gypsum Board Assemblies | 10/21/2016 |
| 09 21 16.23 | Gypsum Board Shaft Wall Assemblies | 10/21/2016 |
| 09 31 00 | Thin Set Tile | 10/21/2016 |
| 09 51 00 | Acoustical Ceilings | 10/21/2016 |
| 09 64 66 | Wood Athletic Flooring | 10/21/2016 |
| 09 64 69 | Anchored Resilient Wood Stage Flooring | 10/21/2016 |
| 09 65 13 | Resilient Base and Accessories | 10/21/2016 |
| 09 67 26 | Decorative Quartz Epoxy Flooring | 10/21/2016 |
| 09 84 00 | Acoustic Room Components | 10/21/2016 |
| 09 91 00 | Painting | 10/21/2016 |
| 10 11 00 | Visual Display Units | 10/21/2016 |
| 10 14 00 | Signage | 10/21/2016 |
| 10 28 13 | Toilet Accessories | 10/21/2016 |
| 10 44 00 | Fire Protection Specialties | 10/21/2016 |
| 10 51 13 | Metal Lockers | 10/21/2016 |
| 10 71 13 | Exterior Sun Control Devices | 10/21/2016 |
| 10 73 10 | Protective Covers | 10/21/2016 |
| 10 75 00 | Flagpoles | 10/21/2016 |
| 10 80 00 | Other Specialties | 10/21/2016 |
| 11 40 00 | Food Service Equipment | 10/21/2016 |
| 11 65 00 | Sports Nets | 10/21/2016 |
| 11 66 00 | Athletic Equipment | 10/21/2016 |
| 11 68 33.33 | Baseball Field Equipment | 10/21/2016 |
| 12 24 13 | Roller Window Shades | 10/21/2016 |
| 12 32 13 | Manufactured Wood Veneer Faced Casework | 10/21/2016 |
| 12 32 16 | Manufactured Plastic Laminate Clad Casework | 10/21/2016 |
| 12 61 00 | Fixed Audience Seating | 10/21/2016 |
| 12 66 13 | Telescoping Bleachers | 10/21/2016 |
| 13 34 16.53 | Bleachers | 10/21/2016 |
| 13 34 19 | Metal Building Systems | 10/21/2016 |
| 14 21 00 | Electric Traction Elevator | 10/21/2016 |
| 14 42 16 | Vertical Wheelchair Lifts | 10/21/2016 |
| 21 05 00 | Common Work Results for Fire Suppression | 10/21/2016 |
| 21 05 48 | Vibration and Seismic Control for Fire Suppression | 10/21/2016 |
| 21 05 53 | Identification for Fire Suppression | 10/21/2016 |
| 21 13 00 | Fire Suppression Sprinkler Systems | |

**List of Contract Documents**
**Bid Package 3**
**Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

| | | |
|---|---|---|
| 22 05 00 | Common Work Results for Plumbing | 10/21/2016 |
| 22 05 13 | Common Electrical Work Requirements for Plumbing Equipment | 10/21/2016 |
| 22 05 16 | Expansion Compensation for Plumbing | 10/21/2016 |
| 22 05 19 | Meters and Gauges for Plumbing | 10/21/2016 |
| 22 05 48 | Vibration and Seismic Control for Plumbing | 10/21/2016 |
| 22 05 53 | Identification for Plumbing Piping and Equipment | 10/21/2016 |
| 22 07 19 | Plumbing Piping Insulation | 10/21/2016 |
| 22 10 05 | Plumbing Piping | 10/21/2016 |
| 22 10 06 | Plumbing Piping Specialties | 10/21/2016 |
| 22 30 00 | Plumbing Equipment | 10/21/2016 |
| 22 40 00 | Plumbing Fixtures | 10/21/2016 |
| 22 66 00 | Chemical Waste Systems for Laboratory Facilities | 10/21/2016 |
| 23 05 00 | Common Work Results for Heating, Ventilating and Air Conditioning | 10/21/2016 |
| 23 05 13 | Common Electrical Requirements for HVAC Equipment | 10/21/2016 |
| 23 05 16 | Expansion Compensation In Heating, Ventilating and Air Conditioning System | 10/21/2016 |
| 23 05 19 | Meters and Gauges for HVAC | 10/21/2016 |
| 23 05 48 | Supports and Anchors | 10/21/2016 |
| 23 05 53 | Identification for HVAC Piping and Equipment | 10/21/2016 |
| 23 05 93 | Testing, Adjusting, and Balancing for Heating Ventilating and Air Conditioning | 10/21/2016 |
| 23 07 13 | Duct Insulation for Heating, Ventilating and Air Conditioning | 10/21/2016 |
| 23 07 16 | HVAC Equipment Insulation | 10/21/2016 |
| 23 07 19 | HVAC Piping Insulation | 10/21/2016 |
| 23 09 23 | Direct Digital Control System for HVAC | 10/21/2016 |
| 23 21 13 | Hydronic Piping | 10/21/2016 |
| 23 21 14 | Hydronic Specialties | 10/21/2016 |
| 23 21 23 | Hydronic Pumps | 10/21/2016 |
| 23 23 00 | Refrigerant and Condensate Piping | 10/21/2016 |
| 23 25 00 | HVAC Water Treatment | 10/21/2016 |
| 23 31 00 | HVAC Ducts and Casings | 10/21/2016 |
| 23 31 01 | Dust Conveying Duct System | 10/21/2016 |
| 23 33 00 | Air Duct Accessories | 10/21/2016 |
| 23 34 23 | HVAC Power Ventilators | 10/21/2016 |
| 23 34 25 | Laboratory Exhaust System | 10/21/2016 |
| 23 36 16 | Air Terminal Units - Variable Volume | 10/21/2016 |
| 23 37 00 | Air Inlets and Outlets | 10/21/2016 |
| 23 38 13 | Commercial Kitchen Ventilation System | 10/21/2016 |
| 23 38 14 | Kitchen Ventilation System | 10/21/2016 |
| 23 38 15 | Range Top Fire Suppression Systems | 10/21/2016 |
| 23 51 00 | Double Wall Gas Vent ( Category IV ) | 10/21/2016 |
| 23 52 33 | Heat Generation ( Boilers ) | 10/21/2016 |
| 23 53 33 | Gas Fired Unit Heaters | 10/21/2016 |

**List of Contract Documents**
**Bid Package 3**
**Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

| | | |
|---|---|---|
| 23 64 26 | Rotary Screw Water Chillers ( Air Cooled ) | 10/21/2016 |
| 23 72 00 | Air to Air Energy Recovery Equipment | 10/21/2016 |
| 23 73 13 | Modular Indoor Central Station Units | 10/21/2016 |
| 23 74 13 | Packaged Rooftop Air Conditioning Units (1 to 10 Tons ) | 10/21/2016 |
| 23 74 14 | Packaged Rooftop Air Conditioning Units (12-1/2 to 25 Tons ) | 10/21/2016 |
| 23 74 15 | Packaged Rooftop Air Conditioning Units ( 50 Tons & Larger ) | 10/21/2016 |
| 23 74 33 | Packaged Make Up Air Units ( Gas ) | 10/21/2016 |
| 23 81 25 | Computer Room Environmental Control System | 10/21/2016 |
| 23 81 27 | Variable Flow Refrigerant System | 10/21/2016 |
| 23 81 28 | Ductless Mini-Splits | 10/21/2016 |
| 26 05 00 | Common Work Results for Electrical | 10/21/2016 |
| 26 05 19 | Low Voltage Electrical Power Conductors and Cable | 10/21/2016 |
| 26 05 26 | Grounding and Bonding for Electrical Systems | 10/21/2016 |
| 26 05 29 | Hangers and Supports for Electrical Systems | 10/21/2016 |
| 26 05 33 | Raceway and Boxes for Electrical Systems | 10/21/2016 |
| 26 05 48 | Vibration and Seismic Controls for Electrical Systems | 10/21/2016 |
| 26 05 53 | Identification for Electrical Systems | 10/21/2016 |
| 26 05 73 | Arc Flash Hazard Analysis / Short Circuit / Coordination Study | 10/21/2016 |
| 26 22 00 | Dry Type Transformers | 10/21/2016 |
| 26 24 13 | Switchboards | 10/21/2016 |
| 26 24 16 | Panelboards | 10/21/2016 |
| 26 27 26 | Wiring Devices | 10/21/2016 |
| 26 28 16 | Enclosed Switches and Circuit Breakers | 10/21/2016 |
| 26 29 23 | Variable Frequency Controller | 10/21/2016 |
| 26 32 00 | Packaged Gas Engine Generator Systems | 10/21/2016 |
| 26 36 23 | Enclosed Transfer Switch | 10/21/2016 |
| 26 41 13 | Lightning Protection System | 10/21/2016 |
| 26 56 68 | Exterior Athletic Lighting | 10/21/2016 |
| 27 00 00 | Computer Network System - Category 6A | 10/21/2016 |
| 27 41 00 | Audio Video Systems | 10/21/2016 |
| 27 50 00 | Intercom / Clock Communications System | 10/21/2016 |
| 28 10 00 | Electronic Access Control and Intrusion Detection | 10/21/2016 |
| 28 31 00 | Fire Detection and Alarm ( Addressable ) | 10/21/2016 |
| 31 00 00 | Earthwork | 10/21/2016 |
| 31 05 14 | Borrow | 10/21/2016 |
| 31 05 19.13 | Geotextile for Earthwork | 10/21/2016 |
| 31 10 00 | Site Clearing | 10/21/2016 |
| 31 11 01 | Clearing and Grubbing | 10/21/2016 |
| 31 23 10 | Trenching and Backfilling | 10/21/2016 |
| 31 23 23.13 | Stone Backfill | 10/21/2016 |

**List of Contract Documents**
**Bid Package 3**
**Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

| | | |
|---|---|---|
| 31 23 16.26 | Rock Removal | 10/21/2016 |
| 31 23 23.43 | Geofoam | 10/21/2016 |
| 31 25 00 | Erosion and Sedimentation Controls | 10/21/2016 |
| 31 31 16 | Termite Control | 10/21/2016 |
| 31 37 00 | Riprap | 10/21/2016 |
| 31 63 29 | Drilled Concrete Piers & Shafts | 10/21/2016 |
| 32 11 23 | Aggregate Base Course | 10/21/2016 |
| 32 12 16 | Asphalt Paving | 10/21/2016 |
| 32 13 13 | Concrete Paving | 10/21/2016 |
| 32 13 73 | Concrete Paving & Joint Sealants | 10/21/2016 |
| 32 17 23 | Pavement Markings | 10/21/2016 |
| 32 17 26 | Tactile Warning Surfacing | 10/21/2016 |
| 32 31 13 | Chain Link Fences & Gates | 10/21/2016 |
| 32 39 00 | Manufacturing Site Specialties | 10/21/2016 |
| 32 52 00 | Synthetic Turf | 10/21/2016 |
| 32 84 00 | Automatic Lawn Irrigation System | 10/21/2016 |
| 32 92 19 | Temporary Seeding & Mulching | 10/21/2016 |
| 32 92 19.1 | Seeding | 10/21/2016 |
| 32 92 23 | Sodding | 10/21/2016 |
| 32 93 23 | Exterior Plants | 10/21/2016 |
| 33 31 15 | PVC Sewer Pipe | 10/21/2016 |
| 33 39 13 | Manhole Construction | 10/21/2017 |
| 33 40 00 | Storm Drainage | 10/21/2016 |
| 33 42 13 | Pipe Culvert | 10/21/2016 |
| 33 42 16 | Precast Reinforced Concrete Box Culverts | 10/21/2016 |
| 33 43 00 | Corrugated High Density Polyethylene (HDPE) Pipe | 10/21/2016 |
| 33 44 60 | Sub-Drainage | |

**List of Contract Documents**
**Bid Package 3**
**Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

**Drawings**

| Plan No. | Description | Dated |
|---|---|---|
| | **BID PACKAGE 1 DRAWINGS** | |
| | Title Sheet | 7/8/2016 |
| T0.01 | Data Sheet | 7/8/2016 |
| LS1.01 | Life Safety Plan - 1st Floor | 7/8/2016 |
| LS1.02 | Life Safety Plan - 2nd Floor | 7/8/2016 |
| C0.0 | Cover / Index Sheet | 7/8/2016 |
| C1.0 | Overall Topographic Survey | 7/8/2016 |
| C2.0 | Overall Demolition & Erosion Control Plan | 7/8/2016 |
| C2.1 | Demolition & Erosion Control Plan I | 7/8/2016 |
| C2.2 | Demolition & Erosion Control Plan II | 7/8/2016 |
| C2.3 | Demolition & Erosion Control Plan III | 7/8/2016 |
| C2.4 | Demolition & Erosion Control Plan IV | 7/8/2016 |
| C2.5 | Demolition & Erosion Control Plan V | 7/8/2016 |
| C2.6 | Demolition & Erosion Control Plan VI | 7/8/2016 |
| C4.0 | Overall Grading Plan | 7/8/2016 |
| C4.1 | Grading Plan I | 7/8/2016 |
| C4.2 | Grading Plan II | 7/8/2016 |
| C4.3 | Grading Plan III | 7/8/2016 |
| C4.4 | Grading Plan IV | 7/8/2016 |
| C4.5 | Grading Plan V | 7/8/2016 |
| C4.6 | Grading Plan VI | 7/8/2016 |
| C4.7 | Overall Drainage Plan   *Revised per Addendum Number  2* | 7/26/2016 |
| C5.0 | Overall Utility Utilities Plan | 7/8/2016 |
| C5.1 | Overall Utility Sanitary Sewer Plan | 7/8/2016 |
| C5.2 | Overall Utility Sanitary Sewer Profiles | 7/8/2016 |
| C5.3 | Overall Utility Sanitary Sewer Profiles | 7/8/2016 |
| C5.4 | Overall Utility Sanitary Sewer Profiles | 7/8/2016 |
| C5.5 | Overall Utility Sanitary Sewer Profiles | 7/8/2016 |
| C5.6 | Overall Utility Waterline Plan  *Revised per Addendum Number 2* | 7/26/2016 |
| C5.7 | Overall Utility Waterline Profiles   *Revised per Addendum Number 2* | 7/26/2016 |
| C5.8 | Overall Utility Waterline Profiles  *Revised per Addendum Number 2* | 7/26/2016 |
| C5.9 | Overall Utility Waterline Profiles  *Revised per Addendum Number 2* | 7/26/2016 |
| C6.0 | Erosion Control Details | 7/8/2016 |
| C6.1 | Drainage Details I | 7/8/2016 |
| C6.2 | Drainage Details II | 7/8/2016 |
| C6.3 | Pre-Manufactured Bridge "A" Details | 7/8/2016 |
| C6.4 | Pre-Manufactured Bridge "B" & "C" Details  *Revised per Addendum Number* | 7/26/2016 |

**List of Contract Documents**
**Bid Package 3**
**Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

| | | |
|---|---|---|
| C6.5 | Utility Details | 7/8/2016 |
| A1.00 | Architectural Site Plan | 7/8/2016 |
| ES0.01 | Site Plan - Overall Demolition | 7/8/2016 |
| ES0.02 | Site Plan - Northwest - Demolition - Electrical | 7/8/2016 |
| ES0.03 | Site Plan - Southwest - Demolition - Electrical | 7/8/2016 |
| ES0.04 | Site Plan - North Central - Demolition - Electrical | 7/8/2016 |
| ES0.05 | Site Plan - South Central - Demolition - Electrical | 7/8/2016 |
| ES0.06 | Site Plan - Northeast - Demolition - Electrical | 7/8/2016 |
| ES0.07 | Site Plan - Southeast - Demolition - Electrical | 7/8/2016 |
| ES1.01 | Site Plan - Overall Electrical | 7/8/2016 |
| ES1.02 | Site Plan - Northwest - Electrical | 7/8/2016 |
| ES1.03 | Site Plan - Southwest - Electrical | 7/8/2016 |
| ES1.04 | Site Plan - North Central - Electrical | 7/8/2016 |
| ES1.05 | Site Plan - South Central - Electrical | 7/8/2016 |
| ES1.06 | Site Plan - Northeast - Electrical | 7/8/2016 |
| ES1.07 | Site Plan - Southeast - Electrical | 7/8/2016 |
| ES2.01 | Electrical Risers and Schedules | 7/8/2016 |
| ES2.02 | Symbols and Schedules | 7/8/2016 |

### BID PACKAGE 2 DRAWINGS

| | | |
|---|---|---|
| | Cover Sheet | 8/19/2016 |
| BB T0.01 | Data Sheet | 8/19/2016 |
| BB C7.0 | Baseball Field Layout & Details | 8/19/2016 |
| BB C7.1 | Baseball Field Miscellaneous Details | 8/19/2016 |
| BB C7.2 | Baseball Field Grading & Drainage Plans | 8/19/2016 |
| BB C7.3 | Baseball Field Utility Plan | 8/19/2016 |
| BB C7.4 | Baseball Field Irrigation Plan | 8/19/2016 |
| BB A1.00 | Architectural Site Plan - Baseball Field | 8/19/2016 |
| BB A1.01 | Floor Plan, Elevations, Room Schedule, Wall Sections | 8/19/2016 |
| BB A1.02 | Baseball Field Bleacher Drawings | 8/19/2016 |
| BB S1.0 | General Notes | 8/19/2016 |
| BB S1.1 | Baseball Fence Foundation Plan | 8/19/2016 |
| BB S1.2 | Dugout Foundation & Framing Plan Foundation & Framing Details | 8/19/2016 |
| BB S1.3 | Bleacher Shade Foundation Plan & Foundation Details | 8/19/2016 |
| BB S4.1 | Fence Elevations & Framing Details | 8/19/2013 |
| BB MP1.01 | Dugout Floor Plans - MP | 8/19/2016 |

List of Contract Documents
Bid Package 3
Mills Replacement High School - Pulaski County Special School District
Little Rock, Arkansas
01/11/2017

### BID PACKAGE 3 DRAWINGS- HIGH SCHOOL BUILDING

|  | Cover Page | 10/21/2016 |
|---|---|---|
| T0.01 | Data Sheet | 10/21/2016 |
| C3.0 | Overall Site Plan | 10/21/2016 |
| C3.1 | Site Plan II | 10/21/2016 |
| C3.2 | Site Plan II | 10/21/2016 |
| C3.3 | Site Plan III | 10/21/2016 |
| C3.4 | Site Plan IV | 10/21/2016 |
| C3.5 | Site Plan V | 10/21/2016 |
| C3.6 | Site Plan VI | 10/21/2016 |
| C6.6 | Site Details | 10/21/2016 |
| C6.7 | Site Details II | 10/21/2016 |
| C8.0 | Overall Landscape Plan | 10/21/2016 |
| C8.1 | Seeding & Sodding Plan | 10/21/2016 |
| C8.2 | Landscape Plan I | 10/21/2016 |
| C8.3 | Landscape Plan II | 10/21/2016 |
| C8.4 | Landscape Details | 10/21/2016 |
| LS1.01 | Life Safety Plan - 1st Floor | 10/21/2016 |
| LS1.02 | Life Safety Plan - 2nd Floor | 10/21/2016 |
| A1.01 | Composite Floor Plan - Level 1 | 10/21/2016 |
| A1.02 | Floor Plan - West Wing | 10/21/2016 |
| A1.03 | Floor Plan - East Wing | 10/21/2016 |
| A1.04 | Floor Plan - West (Center) | 10/21/2016 |
| A1.05 | Floor Plan - East (Center) | 10/21/2016 |
| A1.06 | Floor Plan - Auditorium & Chiller Plan | 10/21/2016 |
| A1.07 | Floor Plan - Gymnasium | 10/21/2016 |
| A1.08 | Composite Floor Plan - Level 2 | 10/21/2016 |
| A1.09 | Floor Plan Second Level - West Wing | 10/21/2016 |
| A1.10 | Floor Plan Second Level - East Wing | 10/21/2016 |
| A1.11 | Floor Plan Second Level - Auditorium | 10/21/2016 |
| A1.12 | Floor Plan Catwalk - Auditorium | 10/21/2016 |
| A1.13 | Rotunda Plan & RCP | 10/21/2016 |
| A1.14 | RCP Level 1 - Composite | 10/21/2016 |
| A1.15 | RCP - Level 1 - West Wing | 10/21/2016 |
| A1.16 | RCP - Level 1 - East Wing | 10/21/2016 |
| A1.17 | RCP - Level 1 - West ( Center ) | 10/21/2016 |
| A1.18 | RCP - Level 1 - East ( Center ) | 10/21/2016 |
| A1.19 | RCP - Level 1 - Auditorium | 10/21/2016 |
| A1.20 | RCP - Level 1 - Gymnasium | 10/21/2016 |
| A1.21 | RCP - Level 2 - Composite | 10/21/2016 |
| A1.22 | RCP - Level 2 - West Wing | 10/21/2016 |

**List of Contract Documents**
**Bid Package 3**
**Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

| | | |
|---|---|---|
| A1.23 | RCP - Level 2 - East Wing | 10/21/2016 |
| A1.24 | RCP - Level 2 - West ( Center ) | 10/21/2016 |
| A1.25 | RCP - Upper Level - Auditorium | 10/21/2016 |
| A1.26 | RCP Details | 10/21/2016 |
| A1.27 | Roof Plan | 10/21/2016 |
| A1.28 | Roof Plan Continued | 10/21/2016 |
| A1.29 | Roof Details | 10/21/2016 |
| A2.01 | Elevations | 10/21/2016 |
| A2.02 | Elevations | 10/21/2016 |
| A2.03 | Building Sections | 10/21/2016 |
| A2.04 | Building Sections | 10/21/2016 |
| A2.05 | Building Sections | 10/21/2016 |
| A2.06 | Building Sections | 10/21/2016 |
| A2.07 | Building Sections | 10/21/2016 |
| A2.08 | Building Sections | 10/21/2016 |
| A3.01 | Wall Sections | 10/21/2016 |
| A3.02 | Wall Sections | 10/21/2016 |
| A3.03 | Wall Sections | 10/21/2016 |
| A3.04 | Wall Sections | 10/21/2016 |
| A3.05 | Wall Sections | 10/21/2016 |
| A3.06 | Wall Sections | 10/21/2016 |
| A3.07 | Elevator Plans & Sections | 10/21/2016 |
| A3.08 | Enlarged Stair Plans, Sections & Details | 10/21/2016 |
| A3.09 | Enlarged Stair Plans, Sections & Details | 10/21/2016 |
| A3.10 | Mezzanine Stair Plan and Details | 10/21/2016 |
| A3.11 | Wall Partition Types | 10/21/2016 |
| A3.12 | Wall Partition Types | 10/21/2016 |
| A3.13 | Details | 10/21/2016 |
| A3.14 | Architectural Mock Up | 10/21/2016 |
| A3.15 | Auditorium Details | 10/21/2016 |
| A3.16 | Auditorium Details | 10/21/2016 |
| A3.17 | Auditorium Details | 10/21/2016 |
| A4.01 | Enlarged Toilet Plans | 10/21/2016 |
| A4.02 | Enlarged Locker & Toilet Plans | 10/21/2016 |
| A4.03 | Enlarged Toilet Plans | 10/21/2016 |
| A4.04 | Toilet Elevations | 10/21/2016 |
| A4.05 | Toilet Elevations | 10/21/2016 |
| A4.06 | Toilet Elevations | 10/21/2016 |
| A4.07 | Locker Elevations | 10/21/2016 |
| A4.08 | Interior Elevations | 10/21/2016 |
| A4.09 | Interior Elevations | 10/21/2016 |

List of Contract Documents
Bid Package 3
**Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

| A5.01 | Finish Schedule | 10/21/2016 |
|---|---|---|
| A5.02 | Door Schedule | 10/21/2016 |
| A5.03 | Door Elevations & Details | 10/21/2016 |
| A5.04 | Door Details | 10/21/2016 |
| A5.05 | Exterior Window Elevations | 10/21/2016 |
| A5.06 | Exterior Window Elevations | 10/21/2016 |
| A5.07 | Exterior Window Elevations | 10/21/2016 |
| A5.08 | Exterior Window Elevations | 10/21/2016 |
| A5.09 | Window Details | 10/21/2016 |
| A5.10 | Window Details | 10/21/2016 |
| A6.01 | Interior Window Elevations | 10/21/2016 |
| A6.02 | Interior Window Elevations | 10/21/2016 |
| A6.03 | Interior Window Elevations | 10/21/2016 |
| A7.01 | Millwork / Casework Elevations | 10/21/2016 |
| A7.02 | Millwork / Casework Elevations | 10/21/2016 |
| A7.03 | Millwork / Casework Elevations | 10/21/2016 |
| A7.04 | Millwork / Casework Elevations | 10/21/2016 |
| A7.05 | Millwork / Casework Elevations | 10/21/2016 |
| A7.06 | Millwork / Casework Elevations | 10/21/2016 |
| ID1.01 | 1st Floor Furniture Plan | 10/21/2016 |
| ID1.02 | 2nd Floor Furniture Plan | 10/21/2016 |
| ID1.03 | Floor Covering Plan - West Wing | 10/21/2016 |
| ID1.04 | Floor Covering Plan - East Wing | 10/21/2016 |
| ID1.05 | Floor Covering Plan - West Center | 10/21/2016 |
| ID1.06 | Floor Covering Plan - East Center | 10/21/2016 |
| ID1.07 | Floor Covering Plan - Auditorium | 10/21/2016 |
| ID1.08 | Floor Covering Plan - Gymnasium | 10/21/2016 |
| ID1.09 | Floor Covering Plan - Second Level - West Wing | 10/21/2016 |
| ID1.10 | Floor Covering Plan - Second Level - East Wing | 10/21/2016 |
| S1.00 | General Notes & Base Details | 10/21/2016 |
| S1.01 | Overall Foundation Plan | 10/21/2016 |
| S1.02 | Orchestra Pit Foundation Plan | 10/21/2016 |
| S1.03 | Foundation Plan @ Auditorium Area a | 10/21/2016 |
| S1.04 | Foundation Plan @ Gym Area B | 10/21/2016 |
| S1.05 | Foundation Plan@West Center Area C | 10/21/2016 |
| S1.06 | Foundation Plan @ East Center Area D | 10/21/2016 |
| S1.07 | Foundation Plan @West Wing Area E | 10/21/2016 |
| S1.08 | Foundation Plan @ East Wing Area F | 10/21/2016 |
| S1.09 | Foundation Plan @ North Canopy & Chiller Enclosure & Foundation Details | 10/21/2016 |
| S2.01 | Foundation Details | 10/21/2016 |
| S2.02 | Foundation Details | 10/21/2016 |

**List of Contract Documents**
**Bid Package 3**
**Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

| | | |
|---|---|---|
| S2.03 | Foundation Details | 10/21/2016 |
| S2.04 | Foundation Details | 10/21/2016 |
| S3.01 | Second Floor Framing Plan @ West Wing Area E | 10/21/2016 |
| S3.02 | Second Floor Framing Plan @ East Wing Area F | 10/21/2016 |
| S3.03 | Roof Framing Plan @ Auditorium Area A | 10/21/2016 |
| S3.04 | Roof Framing Plan @ Gym Area B | 10/21/2016 |
| S3.05 | Roof Framing Plan @ West Center Area C | 10/21/2016 |
| S3.06 | Roof Framing Plan @ East Center Area D | 10/21/2016 |
| S3.07 | Roof Framing Plan @ West Wing Area E | 10/21/2016 |
| S3.08 | Roof Framing Plan @ East Wing Area E | 10/21/2016 |
| S3.09 | Rotunda High Roof Framing Plan & Framing Details | 10/21/2016 |
| S3.10 | Auditorium Catwalks Framing Plans | 10/21/2016 |
| S3.11 | Loading Gallery & Grid Iron Framing Plan | 10/21/2016 |
| S3.12 | Roof Framing Plan @ North Entry Canopy & Framing Details | 10/21/2016 |
| S4.01 | Framing Details | 10/21/2016 |
| S4.02 | Framing Details | 10/21/2016 |
| S4.03 | Framing Details | 10/21/2016 |
| S4.04 | Framing Details | 10/21/2016 |
| S4.05 | Framing Details | 10/21/2016 |
| S4.06 | Framing Details | 10/21/2016 |
| S4.07 | Framing Details | 10/21/2016 |
| S4.08 | Framing Details | 10/21/2016 |
| S4.09 | Elevations & Framing Details | 10/21/2016 |
| S4.10 | Framing Details | 10/21/2016 |
| S4.01 | Stair Framing Plans & Details | 10/21/2016 |
| S4.12 | Framing Details | 10/21/2016 |
| S5.01 | Brace Elevations | 10/21/2016 |
| S5.02 | Brace Elevations | 10/21/2016 |
| S5.03 | Brace Elevations | 10/21/2016 |
| S6.1 | Catwalk Details | 10/21/2016 |
| FP1.00 | Fire Protection General Notes and Legends | 10/21/2016 |
| FP1.01 | First Floor Fire Protection - West Wing | 10/21/2016 |
| FP1.02 | First Floor Fire Protection - East Wing | 10/21/2016 |
| FP1.03 | First Floor Fire Protection - West (Center) | 10/21/2016 |
| FP1.04 | First Floor Fire Protection - East (Center) | 10/21/2016 |
| FP1.05 | First Floor Fire Protection - Auditorium | 10/21/2016 |
| FP1.06 | First Floor Fire Protection - Gymnasium | 10/21/2016 |
| FP1.07 | Second Floor Fire Protection - West Wing | 10/21/2016 |
| FP1.08 | Second Floor Fire Protection - East Wing | 10/21/2016 |
| FP2.01 | Fire Protection Details | 10/21/2016 |
| M1.01 | Level 1 - West Wing - HVAC | 10/21/2016 |

**List of Contract Documents**
**Bid Package 3**
**Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

| | | |
|---|---|---|
| M1.02 | Level 1 - East Wing - HVAC | 10/21/2016 |
| M1.03 | Level 1 - West (Center) - HVAC | 10/21/2016 |
| M1.04 | Level 1 - East (Center) - HVAC | 10/21/2016 |
| M1.05 | Level 1 - Auditorium & Orchestra Pit - HVAC | 10/21/2016 |
| M1.06 | Level 1 - Gymnasium - HVAC | 10/21/2016 |
| M1.07 | Level 2 - West Wing - HVAC | 10/21/2016 |
| M1.08 | Level 2 - East Wing - HVAC | 10/21/2016 |
| M1.09 | Auditorium Catwalk - HVAC | 10/21/2016 |
| M1.10 | Roof Plan - HVAC | 10/21/2016 |
| M2.01 | Enlarged Mechanical Room Plan and Piping Diagrams | 10/21/2016 |
| M2.02 | Sections - HVAC | 10/21/2016 |
| M2.03 | Sections - HVAC | 10/21/2016 |
| M2.04 | Sections - HVAC | 10/21/2016 |
| M3.01 | Details - HVAC | 10/21/2016 |
| M3.02 | Details - HVAC | 10/21/2016 |
| M4.01 | Schedules - HVAC | 10/21/2016 |
| M4.02 | Schedules - HVAC | 10/21/216 |
| M4.03 | Schedules - HVAC | 10/21/2016 |
| M4.04 | Schedules - HVAC | 10/21/2016 |
| M5.01 | Controls - HVAC | 10/21/2016 |
| M5.02 | Controls - HVAC | 10/21/2016 |
| M5.03 | Controls - HVAC | 10/21/2016 |
| M5.04 | Controls - HVAC | 10/21/2016 |
| P1.00 | Plumbing General Notes and Legends | 10/21/2016 |
| P1.01 | First Floor Plumbing - West Wing | 10/21/2016 |
| P1.02 | First Floor Plumbing - East Wing | 10/21/2016 |
| P1.03 | First Floor Plumbing - West (Center) | 10/21/2016 |
| P1.04 | First Floor Plumbing - East (Center) | 10/21/2016 |
| P1.05 | First Floor Plumbing - Auditorium | 10/21/2016 |
| P1.06 | First Floor Plumbing - Gymnasium | 10/21/2016 |
| P1.07 | Second Floor Plumbing - West Wing | 10/21/2016 |
| P1.08 | Second Floor Plumbing - East Wing | 10/21/2016 |
| P1.09 | Roof Plumbing - Overall | 10/21/2016 |
| P1.10 | Enlarged Kitchen Plan - Plumbing | 10/21/2016 |
| P1.11 | Enlarged Kitchen Plan - Plumbing | 10/21/2016 |
| P2.01 | Plumbing Details | 10/21/2016 |
| P2.02 | Plumbing Details | 10/21/2016 |
| P2.03 | Plumbing Details | 10/21/2016 |
| P2.04 | Plumbing Details | 10/21/2016 |
| P2.05 | Plumbing Details | 10/21/2016 |
| P3.01 | Plumbing Risers | 10/21/2016 |

List of Contract Documents
Bid Package 3
Mills Replacement High School - Pulaski County Special School District
Little Rock, Arkansas
01/11/2017

| | | |
|---|---|---|
| P3.02 | Plumbing Risers | 10/21/2016 |
| P3.03 | Plumbing Risers | 10/21/2016 |
| P3.04 | Plumbing Risers | 10/21/2016 |
| P3.05 | Plumbing Risers | 10/21/2016 |
| P3.06 | Plumbing Risers | 10/21/2016 |
| P3.07 | Plumbing Risers | 10/21/2016 |
| P3.08 | Plumbing Risers | 10/21/2016 |
| P3.09 | Plumbing Risers | 10/21/2016 |
| P310 | Plumbing Risers | 10/21/2016 |
| P3.11 | Plumbing Risers | 10/21/2016 |
| P3.12 | Plumbing Risers | 10/21/2016 |
| K1 | Kitchen Equipment Plan | 10/21/2016 |
| K2 | Kitchen Equipment Plumbing Plan | 10/21/2016 |
| K3 | Kitchen Equipment Electrical Plan | 10/21/2016 |
| K4 | Kitchen Equipment Special Requirements Plan | 10/21/2016 |
| E0.01 | Site Plan - Northwest - Lighting | 10/21/2016 |
| E0.02 | Site Plan - Southwest - Lighting | 10/21/2016 |
| E1.01 | Floor Plan - West Wing - Lighting | 10/21/2016 |
| E1.02 | Floor Plan - West Wing - Power | 10/21/2016 |
| E1.03 | Floor Plan - West Wing - Systems and Mech. Power | 10/21/2016 |
| E1.04 | Floor Plan - East Wing - Lighting | 10/21/2016 |
| E1.05 | Floor Plan - East Wing - Power | 10/21/2016 |
| E1.06 | Floor Plan - East Wing - Systems and Mech. Power | 10/21/2016 |
| E1.07 | Floor Plan - West Wing (Center) - Lighting | 10/21/2016 |
| E1.08 | Floor Plan - West (Center) - Power | 10/21/2016 |
| E1.09 | Floor Plan - West (Center) - Systems and Mech. Power | 10/21/2016 |
| E1.10 | Floor Plan - East (Center) - Lighting | 10/21/2016 |
| E1.11 | Floor Plan - East (Center) - Power | 10/21/2016 |
| E1.12 | Floor Plan - East (Center) - Systems and Mech. Power | 10/21/2016 |
| E1.13 | Floor Plan - Auditorium - Lighting | 10/21/2016 |
| E1.14 | Floor Plan - Auditorium - Power | 10/21/2016 |
| E1.15 | Floor Plan - Auditorium - Systems and Mech. Power | 10/21/2016 |
| E1.16 | Floor Plan - Gymnasium - Lighting | 10/21/2016 |
| E1.17 | Floor Plan - Gymnasium - Power | 10/21/2016 |
| E1.18 | Floor Plan - Gymnasium - Systems and Mech. Power | 10/21/2016 |
| E1.19 | Floor Plan Second Level - West Wing - Lighting | 10/21/2016 |
| E1.20 | Floor Plan Second Level - West Wing - Power | 10/21/2016 |
| E1.21 | Floor Plan Second Level - West Wing - Systems & Mech. Power | 10/21/2016 |
| E1.22 | Floor Plan Second Level - East Wing - Lighting | 10/21/2016 |
| E1.23 | Floor Plan Second Level - East Wing - Power | 10/21/2016 |
| E1.24 | Floor Plan Second Level - East Wing - Systems and Mech. Power | 10/21/2016 |

**List of Contract Documents**
**Bid Package 3**
**Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

| | | |
|---|---|---|
| E1.25 | Floor Plan Second Level - Auditorium - Lighting | 10/21/2016 |
| E1.26 | Floor Plan Second Level - Auditorium - Power | 10/21/2016 |
| E1.27 | Floor Plan Second Level - Auditorium - Systems and Mech. Power | 10/21/2016 |
| E1.28 | Roof Plan - Electrical | 10/21/2016 |
| E1.29 | Partial Floor Plan - Kitchen - Power | 10/21/2016 |
| E1.30 | Partial Floor Plan - Auditorium - Electrical | 10/21/2016 |
| E1.31 | Auditorium Catwalk Plan - Electrical | 10/21/2016 |
| E2.01 | Electrical Riser Diagrams | 10/21/2016 |
| E2.02 | Electrical Riser Diagrams | 10/21/2016 |
| E2.03 | Electrical Riser Diagrams | 10/21/2016 |
| E3.01 | Electrical Panel Schedules | 10/21/2016 |
| E3.02 | Electrical Panel Schedules | 10/21/2016 |
| E3.03 | Electrical Panel Schedules | 10/21/2016 |
| E3.04 | Electrical Panel Schedules | 10/21/2016 |
| E3.05 | Electrical Panel Schedules | 10/21/2016 |
| E3.06 | Electrical Panel Schedules | 10/21/2016 |
| E4.01 | Electrical Legends and Details | 10/21/2016 |
| AV0.01 | AV Systems - Power Advisory, Legend & Conduit Riser | 10/21/2016 |
| AV1.00 | Level 1 - Orchestra Pit | 10/21/2016 |
| AV1.01 | Level 1 - Auditorium & Orchestra Pit - HVAC | 10/21/2016 |
| AV1.02 | Level 1 - Competition Gym | 10/21/2016 |
| AV1.03 | Level 1 - Music & Cafeteria | 10/21/2016 |
| AV1.04 | Level 1 - Auxiliary Gym | 10/21/2016 |
| AV1.05 | Level 1 - Meeting Room | 10/21/2016 |
| AV1.11 | Level 2 - Auditorium | 10/21/2016 |
| AV2.01 | Level 1 RCP - Auditorium & Dressing Rooms | 10/21/2016 |
| AV2.10 | Level 2 RCP - Auditorium & Concourse | 10/21/2016 |
| AV2.11 | Level 2 RCP - Competition gym | 10/21/2016 |
| AV2.12 | Level 2 RCP - Cafeteria & Music Rooms | 10/21/2016 |
| AV2.13 | Level 2 RCP - Meeting Rooms | 10/21/2016 |
| AV3.01 | Building Sections - Auditorium | 10/21/2016 |
| AV4.01 | Sound System One lines - All Rooms | 10/21/2016 |
| AV4.02 | Video System One lines - Auditorium & Meeting Rooms | 10/21/2016 |
| AV4.03 | Details | 10/21/2016 |
| AV4.04 | Details | 10/21/2016 |
| AV4.05 | Details | 10/21/2016 |
| TC 101 | Theatre Seating Orchestra Plan | 10/21/2016 |
| TC 102 | Theatre Seating Parterre Plan | 10/21/2016 |
| TL 001 | Theatre Lighting Notes and Details | 10/21/2016 |
| TL 002 | Theatre Lighting Schedules | 10/21/2016 |
| TL 003 | Theatre, Black Box & TV Studio Lighting Schedules | 10/21/2016 |

**List of Contract Documents**
**Bid Package 3**
**Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

| | | |
|---|---|---|
| TL 004 | Theatre, Black Box & TV Studio Lighting Schedules | 10/21/2016 |
| TL 005 | Theatre Lighting Control Diagram | 10/21/2016 |
| TL 101 | Theatre Lighting Details | 10/21/2016 |
| TL 102 | Theatre Lighting Details | 10/21/2016 |
| TL 103 | Theatre Lighting Details LED Stage Edge Safety Lighting | 10/21/2016 |
| TO 101 | Plans - Concert Enclosure | 10/21/2016 |
| TO 102 | Plans - Concert Enclosure | 10/21/2016 |
| TO 201 | Sections - Concert Enclosure | 10/21/2016 |
| TO 202 | Sections - Concert Enclosure | 10/21/2016 |
| TO 301 | Concert Enclosure - Plan Lighting Layout, Tower Elevation | 10/21/2016 |
| TP 101 | Theatre Platform Pit Filler | 10/21/2016 |
| TR 100 | Theatre Rigging Plan | 10/21/2016 |
| TR 101 | Theatre Rigging Plan and Schedules | 10/21/2016 |
| TR 102 | Theatre Rigging Gridiron Plan and RCP | 10/21/2016 |
| TR 103 | Black Box Rigging Curtain Layout, Details, and Schedules | 10/21/2016 |
| TR 201 | Theatre Rigging Section | 10/21/2016 |
| TR 202 | Black Box Rigging Section | 10/21/2016 |
| TR 301.1 | Theatre Rigging, Framed Fire Curtain Counterweight Elevation | 10/21/2016 |
| TR 301 | Theatre Rigging Plan Framed Fire Curtain | 10/21/2016 |
| TR 302 | Theatre Rigging Hard Portal Elevation | 10/21/2016 |
| TR 303 | Theatre Rigging Grand Valance and Border Elevation | 10/21/2016 |
| TR 304 | Theatre Rigging Grand Curtain Elevation | 10/21/2016 |
| TR 305 | Theatre Rigging Electric Elevation | 10/21/2016 |
| TR 306 | Theatre Rigging Orchestra Shell # 1 | 10/21/2016 |
| TR 309 | Theatre Rigging Utility Batten Elevation | 10/21/2016 |
| TR 310 | Theatre Rigging Mid-Stage Traveler Elevation | 10/21/2016 |
| TR 311 | Theatre Rigging Drop Box Elevation | 10/21/2016 |
| TR 312 | Theatre Rigging Leg Elevation | 10/21/2016 |
| TR 401 | Theatre Rigging Fire Curtain Details | 10/21/2016 |
| TR 402 | Theatre Rigging Details | 10/21/2016 |
| TR 403 | Theatre Rigging Details | 10/21/2016 |
| TR 404 | Theatre Rigging One-Line Diagram | 10/21/2016 |

### BID PACKAGE 3 DRAWINGS- HIGH SCHOOL FIELDHOUSE

| | | |
|---|---|---|
| | Cover Page | 10/3/2016 |
| FH-T0.01 | Data Sheet | 10/3/2016 |
| FH-A1.0 | Floor Plan | 10/3/2016 |
| FH-A1.1 | Enlarged Plan - North | 10/3/2016 |
| FH-A1.2 | Enlarged Plan - South | 10/3/2016 |
| FH-A1.3 | Roof Plan | 10/3/2016 |
| FH-A1.4 | Enlarged Reflected Ceiling Plans | 10/3/2016 |

**List of Contract Documents**
**Bid Package 3**
**Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

| | | |
|---|---|---|
| FH-A2.0 | Elevations | 10/3/2016 |
| FH-A2.1 | Building Sections | 10/3/2016 |
| FH-A2.2 | Building Sections | 10/3/2016 |
| FH-A3.0 | Wall Sections | 10/3/2016 |
| FH-A3.1 | Wall Sections | 10/3/2016 |
| FH-A3.2 | Wall Sections | 10/3/2016 |
| FH-A3.3 | Wall Sections | 10/3/2016 |
| FH-A4.0 | Locker Elevations | 10/3/2016 |
| FH-A4.1 | Toilet Elevations, Concession Elevations | 10/3/2016 |
| FH-A5.0 | Details | 10/3/2016 |
| FH-A5.1 | Details | 10/3/2016 |
| FH-A5.2 | Details | 10/3/2016 |
| FH-A5.3 | Details | 10/3/2016 |
| FH-A5.4 | Miscellaneous Details | 10/3/2016 |
| FH-A6.0 | Schedules, Wall Types | 10/3/2016 |
| FH S1.00 | Structural Notes | 10/3/2016 |
| FH S1.01 | Foundation Plan | 10/3/2016 |
| FH S1.02 | Foundation Plan | 10/3/2016 |
| FH S2.01 | Foundation Details | 10/3/2016 |
| FH S3.01 | Roof Framing Plan | 10/3/2016 |
| FH-M1.1 | Floor Plan - HVAC | 10/3/2016 |
| FH-M2.1 | Details - HVAC | 10/3/2016 |
| FH-M3.1 | Schedules - HVAC | 10/3/2016 |
| FH-M4.1 | Controls - HVAC | 10/3/2016 |
| FH-0.01 | Site Plan - South Central - Lighting | 10/3/2016 |
| FH-0.02 | Site Plan - North Central - Lighting | 10/3/2016 |
| FH-0.03 | Site Plan - Northeast - Lighting | 10/3/2016 |
| FH-0.04 | Site Plan - Southeast - Lighting | 10/3/2016 |
| FH-E1.1 | Floor Plan - Lighting | 10/3/2016 |
| FH-E1.2 | Floor Plan - Power | 10/3/2016 |
| FH-E1.3 | Floor Plan - Systems | 10/3/2016 |
| FH-E2.1 | Electrical Details & Diagrams | 10/3/2016 |
| FH-E3.1 | Electrical Panel Schedules | 10/3/2016 |
| FH-E4.1 | Electrical Legends & Details | 10/3/2016 |
| FH-P1.0 | Plumbing General Notes and Legends | 10/3/2016 |
| FH-P1.1 | Floor Plan - Plumbing | 10/3/2016 |
| FH-P1.2 | Roof Plan Plumbing | 10/3/2016 |
| FH-P2.1 | Plumbing Details | 10/3/2016 |
| FH-P2.2 | Plumbing Details | 10/3/2016 |
| FH-P3.1 | Plumbing Risers | 10/3/2016 |
| FH-P3.2 | Plumbing Risers | 10/3/2016 |

**List of Contract Documents**
**Bid Package 3**
**Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

FH-P3.3    Plumbing Risers                                                      10/3/2016

## Addendum

| Addendum ⸬ | Description | Dated |
|---|---|---|
| No.1      Addendum No. 1 | | 7/22/2016 |
| No. 2     Addendum No. 2 | | 7/26/2016 |
| No. 3     Addendum No. 3 | | 11/3/2016 |
| No. 4     Addendum No. 4 | | 11/8/2016 |
| No. 5     Addendum  No. 5 | | 11/14/2016 |

**Attachment 5 - Clarifications and Assumptions**
**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

The following are the clarifications and assumptions for the New Middle School for Pulaski County Special School District, Building Package, in Little Rock, Arkansas and constitute the basis of the project cost.

### General Conditions:

a. A Contingency of $315,090 has been included for the sole and exclusive use of the Construction Manager/General Contractor.
b. An allowance of $ 50,000.00 has been included for costs of Testing and Inspections.
c. Costs for design fees and geotechnical fees are excluded.
d. Costs for Payment and Performance Bonds are included.
e. Costs for General Liability and Builder's Risk insurance are included.
f. Costs for flood and earthquake insurance are excluded.
g. Costs for Owner's Protective Liability are excluded.
h. Owner will pay the costs of all insurance deductibles.
i. Costs for a building permit and plan check review are excluded. Costs for the State Surcharge and EPA Storm Water Permits are included.
j. Costs to abate hazardous materials are excluded.
k. Costs related to the interpretation of building codes are excluded.
l. Costs for temporary construction and job office utilities are excluded.

The following Trade Packages are included in the Scope of the Work:

### 5. Asphalt Paving – NIC (NOT IN CONTRACT)

This Trade Package shall include the complete Scope of Work as described in the following Specification Sections without exception:

31 00 00 – Earthwork (As Applies to Incidental Grading)
32 11 23 – Aggregate Base Course
32 12 16 – Asphalt Paving
32 17 23 – Pavement Markings (At Asphalt Paved Areas)

The Scope of Work shall specifically include but not necessarily be limited to the following:

a. Engineering and Layout for your work.
b. Cost of safety for your personnel
c. Protection of Work by others.
d. Daily Clean up and remove trash to dumpster provided by CM/GC.
e. Attention is called to LEED requirements.
f. Incidental and Miscellaneous Earthwork and/or Grade Adjustments are a part of this Trade Package.

### 6. Site Concrete

This Trade Package shall include the complete Scope of Work as described in the following Specification Sections without exception:

**Attachment 5 - Clarifications and Assumptions**

**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**

**Little Rock, Arkansas**

**01/11/2017**

03 01 00 – Site Concrete Work

03 15 00 –Site Concrete Expansion, Construction and Contraction Joints
03 10 00- Concrete Forming and Accessories
03 20 01 – Site Concrete Reinforcing
03 30 00 – Site Cast In Place Concrete
30 00 00 – Earthwork (As Applicable to work of this Trade Package)
31 23 10 – Trenching, Excavation, and Backfill
31 13 13 – Concrete Paving
32 17 23 – Pavement Markings (At Site Concrete Areas Only)
32 17 26 – Tactile Warning Surfaces

The Scope of Work shall specifically include but not necessarily be limited to the following:

a. Engineering and Layout for your work.
b. Cost of safety for your personnel
c. Protection of Work by others.
d. Daily Clean up and remove trash to dumpster provided by CM/GC.
e. Attention is called to the fact that the scope of work is shown on both the Site & Utility Package AND the Replacement High School & Fieldhouse Drawings.
f. Incidental and Miscellaneous Earthwork and/or Grade Adjustments are a part of this Trade Package.
g. Wheel Stops
h. Exterior Equipment & Transformer Pads
i. Light Pole Bases complete.
j. All Exterior Stairs.
k. Tooling and finishing of exterior concrete as shown on the documents.
l. Install pipe bollards, embeds and amenities. (Bollards furnished by steel supplier)
m. AHTD Permits
n. Attention is called to LEED requirements.

7. **Fencing and Gates**

This Trade Package shall include the complete Scope of Work as described in the following Specification Sections without exception:

32 31 13 - Fencing and Gates

The Scope of Work shall specifically include but not necessarily be limited to the following:

a. Engineering and Layout for your work.
b. Cost of safety for your personnel
c. Protection of Work by others.
d. Daily Clean up and remove trash to dumpster provided by CM/GC.
e. Attention is called to the fact that the scope of work is shown on both the Site & Utility Package AND The Replacement High School & Fieldhouse Drawings.

**Attachment 5 - Clarifications and Assumptions**

**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**

**Little Rock, Arkansas**

**01/11/2017**

f.  Incidental and Miscellaneous Earthwork and/or Grade Adjustments are a part of this Trade Package.
g.  All Electrical coordination and devices required for irrigation system is the responsibly of this Trade Contractor
h.  Attention is called to LEED requirements.
i.  Sleeves as required for work of this contract
j.  Spreading and reuse of existing stockpiled topsoil

## 8. Synthetic Turf – NIC (NOT IN CONTRACT)

This Trade Package shall include the complete Scope of Work as described in the   following Specification Sections without exception:

31 00 00 – Earthwork (Minor grading applicable to this Trade Package)
31 23 10 – Trenching, Excavation and Backfill (as applicable to this Trade Package)
32 11 23 – Aggregate Base Course
32 52 00 – Synthetic Turf

The Scope of Work shall specifically include but not necessarily be limited to the  following:

a.  Engineering and Layout for your work.
b.  Cost of safety for your personnel
c.  Protection of Work by others.
d.  Daily Clean up and remove trash to dumpster provided by CM/GC.
e.  Attention is called to LEED requirements.
f.  Incidental and Miscellaneous Earthwork and/or Grade Adjustments are a part of this Trade Package.
g.  This Trade Contractor's work scope begins at the Building Pad Elevation. This pad will be compacted and left +/- .1' from planned grade.
h.  Furnish and Install any and all curbs, nailers or other items required for a completed system.
i.  Sleeves as required for this work.
j.  Spreading and reuse of existing topsoil.

## 9. Landscaping and Irrigation

This Trade Package shall include the complete Scope of Work as described in the   following Specification Sections without exception:

31 00 00 – Earthwork (As it pertains to this Trade Package)
32 84 00 – Automatic Lawn Irrigation System
32 92 19 – Temporary Seeding
32 92 19.1 – Seeding
32 92 23 – Sodding
32 93 23 – Exterior Plants

The Scope of Work shall specifically include but not necessarily be limited to the following:

**Attachment 5 - Clarifications and Assumptions**

**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**

**Little Rock, Arkansas**

**01/11/2017**

a.   Engineering and Layout for your work.
b.   Cost of safety for your personnel
c.   Protection of Work by others.
d.   Daily Clean up and remove trash to dumpster provided by CM/GC.
e.   Attention is called to the fact the scope of work is shown on both the Site & Utility Package AND The Replacement High School, Fieldhouse and Baseball Field Drawings.
f.   Incidental and Miscellaneous Earthwork and/or Grade Adjustments are a part of this Trade Package.
g.   Attention is called to LEED requirements.

**10. Cast–In–Place Concrete**

This Trade Package shall include the complete Scope of Work as described in the   following Specification Sections without exception:

03 10 00 – Concrete Forming and Accessories
03 20 00 – Concrete Reinforcing
03 31 00 – Structural Cast In Place Concrete
03 23 10 – Trenching, Excavation and Backfill
03 23 23.13 – Stone Backfill
03 23 16.26 – Rock Removal
03 23 23.43 – Geofoam
03 31 16 – Termite Control
03 63 29 – Drilled Concrete Piers and Shafts

The Scope of Work shall specifically include but not necessarily be limited to the following:

a.   Engineering and Layout for your work.
b.   Cost of Safety for your personnel.
c.   Protection of Work by Others.
d.   Daily Clean Up and remove trash to dumpster provided by GC/CM.
e.   Attention is called to the fact that the scope of work is shown on both the Site & Utility Package AND The Replacement High School and Fieldhouse Drawings.
f.   Provide all foundation and under slab drainage piping complete.
g.   Provide elevator, orchestra and chairlift pits.
h.   Provide topping slab at precast structural concrete.
i.   Provide housekeeping pads, including those shown on M, P and E sheets.
j.   Excavation, backfill and disposal of soils for concrete work.  Dispose off-site
k.   Steel reinforcing (including bar and mesh supports) embedded in concrete and tie-wire for reinforcing.
l.   Under-slab drainage fill and vapor barrier/retarder.
m.   Grouting of base plates.
n.   Install anchor bolts (furnished under a separate material package). Install miscellaneous embeds (embeds furnished under separate material package).
o.   Install any embeds for work of other trades.
p.   Install pipe bollards, embeds and amenities.(Bollards furnished by steel supplier)
q.   Placement, finishing, curing, and sealing of concrete of all structural concrete items related to

**Attachment 5 - Clarifications and Assumptions**

**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**

**Little Rock, Arkansas**

**01/11/2017**

the Building are a part of this Trade Package.
r.  Provide all Cast In Place Locker Benches and Bases.
s.  Incidental and Miscellaneous Earthwork and/or Grade Adjustments are a part of this Trade Package.
t.  Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
u.  Provide unit prices as shown on the bid form. (Trench, undercut)
v.  Cost of safety for your personnel.
w.  Protection of Work by others.
x.  Daily clean up and remove trash to dumpster provided by CM/GC.
y.  Remove and legally dispose of all waste material offsite.
z.  Attention is called to LEED requirements.

**11. Polished Concrete Finishing**

This Trade Package shall include the complete Scope of Work as described in the   following Specification Sections without exception:

03 35 43 – Polished Concrete Finishing

The Scope of Work shall specifically include but not necessarily be limited to the  following:

a.  Engineering and Layout for your work.
b.  Provide all polished concrete work complete.
c.  All scoring and joint sealants required are a part of this Trade Package.
d.  Provide all necessary equipment required for completion of work.
e.  Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
f.  Cost of safety for your personnel.
g.  Protection of Work by others.
h.  Daily clean up and remove trash to dumpster provided by CM/GC.
i.  Attention is called to LEED requirements.

**12. Precast Structural Concrete**

This Trade Package shall include the complete Scope of Work as described in the   following Specification Sections without exception:

00 00 00 – Structural Precast Concrete

The Scope of Work shall specifically include but not necessarily be limited to the  following:

a.  Engineering and Layout for your work.
b.  Provide precast structural concrete complete including erection, grout packing, connections and supporting devices.
c.  Provide all necessary equipment required for completion of work.
d.  Provide all necessary bracing as required.
e.  Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.

Page 5 of 30

**Attachment 5 - Clarifications and Assumptions**

**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**

**Little Rock, Arkansas**

**01/11/2017**

    f.   Cost of safety for your personnel.
    g.  Protection of Work by Others.
    h.  Daily clean up and remove trash to dumpster provided by CM/GC.
    i.   Attention is called to LEED requirements.

**13. Masonry**

This Trade Package shall include the complete Scope of Work as described in the    following Specification Sections without exception:

03 48 43 – Precast Concrete Trim
04 05 13 – Masonry Mortaring
04 05 23 – Masonry Accessories
04 20 00 – Unit Masonry

The Scope of Work shall specifically include but not necessarily be limited to the  following:

    a.  Engineering and Layout for your work.
    b.  Provide all masonry and precast trim.
    c.  Provide all exterior block walls and masonry screen walls.
    d.  Provide all necessary equipment required for completion of work.
    e.  Provide reinforcing steel.
    f.   Provide all rigid insulation that occurs at masonry veneer.
    g.  Provide thru wall flashing and all other masonry accessories.
    h.  Drill and provide epoxy dowels for work of this trade.
    i.   Provide bracing of walls and forming of openings.
    j.   Installation of hollow metal frames occurring in masonry walls.
    k.  Installation of all loose lintels in masonry work.
    l.   Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
    m.  Cost of safety for your personnel.
    n.  Protection of work by others.
    o.  Daily clean up and remove trash to dumpster provided by GC/CM. (Brick and block waste must be hauled and legally disposed of offsite. Masonry units will <u>NOT</u> be permitted in CM/GC dumpster.)
    p.  Attention is called to LEED requirements.
    q.  Attention is called to the fact that work is indicated on the New Replacement High School and Fieldhouse Drawings.

**14. Structural and Miscellaneous Steel Erection Turnkey – Package Not Used**

**15. Turnkey Structural Steel (Combination of Furnish and Erect)**
This Trade Package shall include the complete Scope of Work as described in the    following Specification Sections without exception:

**Attachment 5 - Clarifications and Assumptions**

**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**

**Little Rock, Arkansas**

**01/11/2017**

05 05 16 – Preparation of Hot-Dipped Galvanized Steel Surfaces for Painting
05 10 00 – Structural Steel
05 50 00 – Metal Fabrications
05 20 00 – Metal Joists
05 30 00 – Metal Decking
05 55 00 – Metal Steel Stairs and Railings

The Scope of Work shall specifically include but not necessarily be limited to the following:

a.  Engineering and Layout for your work.
b.  Furnish all labor, equipment, tools and miscellaneous / disposable materials required for the furnishing and erection of structural and miscellaneous steel, including but not limited to steel columns, beams, ladders, anchor bolts, primary and secondary structural framing, framing at skylights, tube steel additional framing at exterior storefronts, tube steel at mechanical screen walls, rod and cable bracing, bracing / portal frames, fasteners, handrails, and rails as indicated.
c.  Decorative Metal Railings (Bid Package 16) are excluded from this package.
d.  Furnishing and removal of all temporary safety guard and hand rails at building openings and perimeter.
e.  Provide layout of steel members.
f.  Unload and erect all steel items.
g.  Furnish and install all headers, handrails, wall rails, and other miscellaneous steel items.
h.  Furnish and install all dumpster gates and bollards.
i.  Coordination of steel sequencing with CM/GC.
j.  Attention is called to the Mechanical Screen Walls details and locations.
k.  Attention is called to the fact work is indicated on the Bid Package 1, New Replacement High School and Fieldhouse Drawings.
l.  Provide all necessary equipment required for completion of work.
m.  Provide shop drawing and submittal data within 4 weeks after Notice to Proceed.
n.  Cost of safety for your personnel.
o.  Protection of Work by others.
p.  Daily clean up and remove trash to dumpster provided by CM/GC.
q.  Attention is called to LEED requirements.

## 16. Ornamental Railings

This Trade Package shall include the complete Scope of Work as described in the  following Specification Sections without exception:

05 73 00 – Decorative Metal Railings

The Scope of Work shall specifically include but not necessarily be limited to the  following:

a.  Engineering and Layout for your work.
b.  Provide all required field measurements prior to fabrication.
c.  Provide all Decorative Metal Railings complete including hardware and accessories.
d.  Provide all necessary equipment required for completion of the work.

**Attachment 5 - Clarifications and Assumptions**

**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**

**Little Rock, Arkansas**

**01/11/2017**

e. Coordinate work of this subcontract contract with Owner's Construction Representative and work of other subcontractors.
f. Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
g. Cost of safety for your personnel.
h. Protection of Work by others.
i. Daily clean up and remove trash to dumpster provided by CM/GC.
j. Attention is called to LEED requirements.

### 17. Finish Carpentry and Architectural Woodwork

This Trade Package shall include the complete Scope of Work as described in the   following Specification Sections without exception:

06 20 23 – Interior Finish Carpentry
06 40 00 – Architectural Woodwork
06 61 16 – Solid Surfacing Fabrications

The Scope of Work shall specifically include but not necessarily be limited to the  following:

a. Engineering and Layout for your work.
b. Provide all running trim.
c. Caulking of tops and bases to walls.
d. All Architectural Woodwork.
e. Plastic laminate and solid surface tops as indicated.
f. Provide cutouts for all penetrations.
g. All equipment required for completion of work.
h. Field verify all dimensions before fabrication.
i. Coordinate work of this subcontract contract with Owner's Construction Representative and work of other subcontractors.
j. Provide all necessary equipment required for completion of work.
k. Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
l. Cost of safety for your personnel.
m. Protection of Work by others.
n. Daily clean up and remove trash to dumpster provided by CM/GC.
o. Attention is called to LEED requirements.

### 18. Dampproofing, Waterproofing, and Caulking

This Trade Package shall include the complete Scope of Work as described in the following Specification Sections without exception:

07 10 00 – Dampproofing and Waterproofing
07 19 00 – Water Repellants
07 27 26 – Fluid Applied Weather Barriers
07 92 00 – Joint Sealants

**Attachment 5 - Clarifications and Assumptions**
**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

The Scope of Work shall specifically include but not necessarily be limited to the following:

a. Engineering and Layout for your work.
b. Provide waterproofing, weather barrier coatings and joint sealants.
c. Provide concrete and masonry coatings complete.
d. Provide accessories to weather barrier coatings are related to work of this trade.
e. Provide all necessary equipment required for completion of work.
f. Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
g. Cost of safety for your personnel.
h. Protection of Work by others.
i. Daily clean up and remove trash to dumpster provided by CM/GC.
j. Attention is called to LEED requirements.
k. All site related caulking.

19. **Metal Roof Panels**
This Trade Package shall include the complete Scope of Work as described in the following Specification Sections without exception:

07 41 13 – Metal Roof Panels

The Scope of Work shall specifically include but not necessarily be limited to the following:

a. Engineering and Layout for your work.
b. Provide all necessary equipment required for completion of work.
c. Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
d. Cost of safety for your personnel.
e. Protection of Work by others.
f. Daily clean up and remove trash to dumpster provided by CM/GC.
g. Attention is called to LEED requirements.

20. **Metal Wall Panels**

This Trade Package shall include the complete Scope of Work as described in the following Specification Sections without exception:

07 42 13 – Metal Wall Panels

The Scope of Work shall specifically include but not necessarily be limited to the following:

a. Engineering and Layout for your work.
b. Provide complete metal composite wall panel system including hat channels and / or furring.
c. Provide interior metal composite panels.
d. Provide all panels at Mechanical Screen Wall locations.
e. Provide all necessary equipment required for completion of work.
f. Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.

**Attachment 5 - Clarifications and Assumptions**
**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

    g.  Cost of safety for your personnel.
    h.  Protection of Work by others.
    i.  Daily clean up and remove trash to dumpster provided by CM/GC.
    j.  Attention is called to LEED requirements.

### 21. Insulated Metal Wall Panels

This Trade Package shall include the complete Scope of Work as described in the following Specification Sections without exception:

07 42 13.19 – Insulated Metal Wall Panels
07 92 00 – Joint Sealants (As it pertains to Insulated Metal Wall Panels)

The Scope of Work shall specifically include but not necessarily be limited to the following:

    a.  Engineering and Layout for your work.
    b.  Provide complete insulated metal wall panel system including hat channels and /or furring, tape sealants, and flashing. Provide metal wall panels and flashing at the metal screen wall's.
    c.  Provide all necessary equipment required for completion of work.
    d.  Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
    e.  Cost of safety for your personnel.
    f.  Protection of Work by others.
    g.  Daily clean up and remove trash to dumpster provided by CM/GC.
    h.  Attention is called to LEED requirements.

### 22. Thermoplastic – Polyolefin Roofing

This Trade Package shall include the complete Scope of Work as described in the following Specification Sections without exception:

07 54 01 – Induction System for Membrane Roofing
07 54 23 – Thermoplastic – Polyolefin Roofing
07 60 00 – Flashing and Sheet Metal
07 72 00 – Roof Accessories

The Scope of Work shall specifically include but not necessarily be limited to the following:

    a.  Engineering and Layout for your work.
    b.  Provide complete thermoplastic membrane roofing system.
    c.  Provide all associated sheet metal flashing and trim including gutters and downspouts.
    d.  Provide any expansion joint assemblies that are a part of the work of this package.
    e.  Provide all roof specialties and roof accessories.
    f.  Provide all necessary equipment required for completion of work.
    g.  Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
    h.  Cost of safety for your personnel.
    i.  Protection of Work by others.
    j.  Daily clean up and remove trash to dumpster provided by CM/GC.

**Attachment 5 - Clarifications and Assumptions**

**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**

**Little Rock, Arkansas**

**01/11/2017**

    k.  Attention is called to LEED requirements.

**23. Miscellaneous Installation**

This Trade Package shall include the complete Scope of Work as described in the following Specification Sections without exception:

08 11 13 – Hollow Metal Doors and Frames
08 14 00 – Wood Doors
08 34 73 – Sound Control Doors
08 71 00 – Door Hardware
08 71 00.03 – Door Hardware
10 11 00 – Visual Display Units
10 28 13 – Toilet Accessories
10 80 00 – Other Specialties

The Scope of Work shall specifically include but not necessarily be limited to the following:

a.  Engineering and Layout for your work.
b.  Provide all applied and intumescent mastic fireproofing.
c.  Provide all necessary equipment required for completion of work.
d.  Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
e.  Cost of safety for your personnel.
f.  Protection of Work by others.
g.  Daily clean up and remove trash to dumpster provided by CM/GC.
h.  Attention is called to LEED requirements.
i.  Install Electronic Projection Screens, Shower Curtain and Clothes Rods, Cubicle Curtain and Track specified in Section 10 80 00.

**24. Coiling Doors & Grilles**

This Trade Package shall include the complete Scope of Work (as it pertains to installation) as described in the following Specification Sections without exception:

08 33 00 – Coiling Doors &and Grilles
08 33 33 – Side Coiling Doors

The Scope of Work shall specifically include but not necessarily be limited to the following:

a.  Engineering and Layout for your work.
b.  Install all miscellaneous installation items providing by others.
c.  Provide all necessary equipment and rough hardware required for completion of work.
d.  Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
e.  Cost of safety for your personnel.
f.  Protection of Work by others.
g.  Daily clean up and remove trash to dumpster provided by CM/GC.
h.  Attention is called to LEED requirements.

**Attachment 5 - Clarifications and Assumptions**

**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**

**Little Rock, Arkansas**

**01/11/2017**

### 25. Sliding Metal Fire Doors

This Trade Package shall include the complete Scope of Work as described in the following Specification Sections without exception:

08 11 73 – Sliding Metal Fire Doors

The Scope of Work shall specifically include but not necessarily be limited to the following:

a. Engineering and Layout for your work.
b. Provide all integrated door opening assemblies complete.
c. Provide all necessary equipment required for completion of work.
d. Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
e. Cost of safety for your personnel.
f. Protection of Work by others.
g. Daily clean up and remove trash to dumpster provided by CM/GC.
h. Attention is called to LEED requirements.

### 26. Glass and Glazing

This Trade Package shall include the complete Scope of Work as described in the following Specification Sections without exception:

08 41 13 – Aluminum Framed Entrances and Storefronts
08 44 13 – Glazed Aluminum Curtain Walls
08 80 00 – Glazing
10 71 13 – Exterior Sun Control Devices

The Scope of Work shall specifically include but not necessarily be limited to the following:

a. Engineering and Layout for your work.
b. Provide all integrated door opening assemblies.
c. Provide all Aluminum Entrances and Storefronts.
d. Provide all Glazed Aluminum Curtain Wall work including integral insulated panels.
e. Provide all exterior and interior glazing.
f. Provide all Exterior Sun Control Devices.
g. Provide all necessary equipment required for completion of work.
h. Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
i. Cost of safety for your personnel.
j. Protection of Work by others.
k. Daily clean up and remove trash to dumpster provided by CM/GC.
l. Attention is called to LEED requirements.

### 27. Skylights

This Trade Package shall include the complete Scope of Work as described in the following

**Attachment 5 - Clarifications and Assumptions**
**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

Specification Sections without exception:

08 62 16 – Pyramidal Unit Skylights
08 62 26 – Plastic – Glazed Circular Unit Skylights

The Scope of Work shall specifically include but not necessarily be limited to the  following:

a.   Engineering and Layout for your work.
b.   Provide complete unit skylight system including curb.
c.   Provide all necessary equipment required for completion of work.
d.   Provide shop drawings and other required submittals within **3** weeks of Notice to Proceed.
e.   Cost of safety for your personnel.
f.   Protection of Work by others.
g.   Daily clean up and remove trash to dumpster provided by CM/GC.
h.   Attention is called to LEED requirements.

**28. Drywall and Acoustical**

This Trade Package shall include the complete Scope of Work as described in the    following Specification Sections without exception:

05 40 00 – Cold Formed Structural Framing
05 44 13 – Cold Formed Roof Trusses
06 16 43 – Gypsum Sheathing
06 42 17 – Curved Ceiling System
06 42 18 – Flush Wood Paneling System
07 21 00 – Thermal Insulation
07 84 00 – Firestopping (As applicable for work of this Trade Package)
09 21 16 – Gypsum Board Assemblies
09 21 16.23 – Gypsum Board Shaft Wall Assemblies
09 51 00 – Acoustical Ceilings
09 84 00 – Acoustic Room Components

The Scope of Work shall specifically include but not necessarily be limited to the following:

a.   Engineering and Layout for your work.
b.   Provide all light gage metal framing.
c.   Provide all gypsum wallboard.
d.   Provide all exterior gypsum sheathing.
e.   Provide all rigid insulation except that which occurs behind brick veneer.
f.   Provide all insulation, firestopping, and sealants.
g.   Install all interior hollow metal frames associated with metal stud partitions. (Frames are furnished under a separate package).
h.   Include costs for weather protection on exterior wall framing.
i.   Provide all necessary equipment required for completion of work.

**Attachment 5 - Clarifications and Assumptions**

**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**

**Little Rock, Arkansas**

**01/11/2017**

j.   Provide shop drawings and other required submittals within <u>4</u> weeks of Notice to Proceed.
k.   Attention is called to LEED requirements.
l.   Be prepared to show breakdown between Middle School and Multipurpose Facility within 24 hours of bid.
m.  Cost of safety for your personnel.
n.   Protection of Work by others.
o.   Daily clean up and remove trash to dumpster provided by CM/GC.
p.   Provide shop drawings and other required submittals within 4 weeks after Notice to Proceed.
q.   Metal backup framing for ceilings, tectum, wall panels and associated items is a part of this Trade Package.

### 29. Floor Coverings & Tile

This Trade Package shall include the complete Scope of Work as described in the  following Specification Sections without exception:

01 20 00 – Allowances
09 31 00 –Thin Set Tile
09 65 13 – Resilient Base and Accessories
10 80 00 – Other Specialties

The Scope of Work shall specifically include but not necessarily be limited to the following:

a.   Engineering and Layout for your work.
b.   Provide ceramic tile complete including waterproofing membrane and caulk joints.
c.   Provide resilient flooring complete.
d.   Provide resilient athletic flooring complete.
e.   Provide all carpet tile complete.
f.   Provide floor preparation including floor-leveling compound if required for proper installation of floor covering.
g.   Caulk or grout saw joints as required.
h.   Include floor protection.
i.   Provide resilient wall base complete at millwork, locker bases, and filling of masonry surfaces to receive base.
j.   Provide Roll Up Mats as Specified in Section 10 80 00 2.04.
k.   Provide all necessary equipment required for completion of work.
l.   Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
m.  Cost of safety for your personnel.
n.   Protection of Work by others.
o.   Daily clean up and remove trash to dumpster provided by CM/GC.
p.   Attention is called to LEED requirements.
q.   Attention is directed to Section 10 21 00 Allowances as they pertain to this Trade Package.

### 30. Wood Athletic Flooring

This Trade Package shall include the complete Scope of Work as described in the  following Specification Sections without exception:

**Attachment 5 - Clarifications and Assumptions**
**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

09 64 66 - Wood Athletic Flooring

The Scope of Work shall specifically include but not necessarily be limited to the  following:

a. Engineering and Layout for your work.
b. Provide complete wood flooring systems at Stage area.
c. Provide all necessary equipment required for completion of work.
d. Include floor protection.
e. Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
f. Cost of safety for your personnel.
g. Protection of Work by others.
h. Daily clean up and remove trash to dumpster provided by CM/GC.
i. Attention is called to LEED requirements.

**31. Anchored Resilient Wood Stage Flooring**

This Trade Package shall include the complete Scope of Work as described in the  following Specification Sections without exception:

09 64 69 – Anchored Resilient Wood Stage Flooring

The Scope of Work shall specifically include but not necessarily be limited to the  following:

a. Engineering and Layout for your work.
b. Provide complete wood flooring systems at Gymnasium area.
c. Provide all necessary equipment required for completion of work.
d. Include floor protection.
e. Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
f. Cost of safety for your personnel.
g. Protection of Work by others.
h. Daily clean up and remove trash to dumpster provided by CM/GC.
i. Attention is called to LEED requirements.

**32. Decorative Quartz Epoxy Flooring**

This Trade Package shall include the complete Scope of Work as described in the  following Specification Sections without exception:

09 67 26 –Decorative Quartz Flooring

The Scope of Work shall specifically include but not necessarily be limited to the  following:

a. Engineering and Layout for your work.
b. Provide complete epoxy flooring and wall systems.
c. Provide all concrete sealer to all exposed interior concrete floors.
d. Provide all necessary equipment required for completion of work.

## Attachment 5 - Clarifications and Assumptions
## Bid Package 3 Mills Replacement High School - Pulaski County Special School District
## Little Rock, Arkansas
### 01/11/2017

    e.   Include floor protection.
    f.   Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
    g.   Cost of safety for your personnel.
    h.   Protection of Work by others.
    i.   Daily clean up and remove trash to dumpster provided by CM/GC.
    j.   Attention is called to LEED requirements.

### 33. Painting

This Trade Package shall include the complete Scope of Work as described in the   following Specification Sections without exception:

05 05 16 – Preparation of Hot-Dip Galvanized Steel Surfaces for Painting
09 91 00 – Painting

The Scope of Work shall specifically include but not necessarily be limited to the following:

    a.   Engineering and Layout for your work.
    b.   All painting work, complete, including touch Provide complete polished and sealed concrete floor finish systems.
    c.   Surface preparation work as required.
    d.   Painting of interior and exterior miscellaneous metals including mechanical piping.
    e.   Painting and Caulking of hollow metal doors and frames, flush wood doors, integrated door opening assemblies, and sound control door assemblies.
    f.   Caulking on interior surfaces.
    g.   All gypsum board taping, fire taping where required, and finishing complete.
    h.   Provide all necessary equipment required for completion of work.
    i.   Provide all shop drawings and other required submittals within 4 weeks of Notice to Proceed.
    j.   Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
    k.   Cost of safety for your personnel.
    l.   Protection of Work by others.
    m.   Daily clean up and remove trash to dumpster provided by CM/GC.
    n.   Attention is called to LEED requirements.

### 34. Protective Covers

This Trade Package shall include the complete Scope of Work as described in the   following Specification Sections without exception:

10 73 10 – Protective Covers

The Scope of Work shall specifically include but not necessarily be limited to the  following:

    a.   Engineering and Layout for your work.
    b.   Provide complete Protective Cover Systems.

**Attachment 5 - Clarifications and Assumptions**

**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**

**Little Rock, Arkansas**

**01/11/2017**

c.   Provide all necessary equipment required for completion of work.
d.   Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
e.   Cost of safety for your personnel.
f.   Protection of Work by Others.
g.   Daily clean up and remove trash to dumpster provided by CM/GC.
h.   Attention is called to LEED requirements.
i.   Protection of all surfaces during work of this Trade Package is required.
j.   Protection of Work by others.
k.   Daily clean up and remove trash to dumpster provided by CM/GC.

### 35. Metal Lockers – NIC (NOT IN CONTRACT)

This Trade Package shall include the complete Scope of Work as described in the following Specification Sections without exception:

10 51 13 – Metal Lockers

The Scope of Work shall specifically include but not necessarily be limited to the  following:

a.   Engineering and Layout for your work.
b.   Provide all lockers.
c.   Provide all necessary equipment required for completion of work.
d.   Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
e.   Cost of safety for your personnel.
f.   Protection of Work by others.
g.   Daily clean up and remove trash to dumpster provided by CM/GC.
h.   Attention is called to LEED requirements.

### 36. Fire Protection Specialties

This Trade Package shall include the complete Scope of Work as described in the following Specification Sections without exception:

10 44 00 – Fire Protection Specialties

The Scope of Work shall specifically include but not necessarily be limited to the  following:

a.   Engineering and Layout for your work.
b.   Provide all necessary equipment required for completion of work.
c.   Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
d.   Cost of safety for your personnel.
e.   Protection of Work by others.
f.   Daily clean up and remove trash to dumpster provided by CM/GC.
g.   Attention is called to LEED requirements.

### 37. Food Service Specialties – NIC (NOT IN CONTRACT)

**Attachment 5 - Clarifications and Assumptions**
**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

This Trade Package shall include the complete Scope of Work as described in the    following Specification Sections without exception:

11 40 00 – Food Service Equipment

The Scope of Work shall specifically include but not necessarily be limited to the  following:

a.  Engineering and Layout for your work.
b.  Provide complete Food Service Equipment system.
c.  Provide all necessary equipment required for completion of work.
d.  Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
e.  Cost of safety for your personnel.
f.  Protection of Work by others.
g.  Daily clean up and remove trash to dumpster provided by CM/GC.
h.  Attention is called to LEED requirements.

**38. Athletic Equipment**

This Trade Package shall include the complete Scope of Work as described in the following Specification Sections without exception:

11 65 00 – Sports
11 66 00 – Athletic Equipment
11 68 33.33 – Baseball Field Equipment

The Scope of Work shall specifically include but not necessarily be limited to the  following:

a.  Engineering and Layout for your work.
b.  Provide Athletic Equipment Complete.
c.  Provide all necessary equipment required for completion of work.
d.  Protection of Work by Others.
e.  Daily clean up and trash removal to dumpster provided by CM/GC.
f.  Attention is called to LEED requirements.

**39. Roller Window Shades**

This Trade Package shall include the complete Scope of Work as described in the    following Specification Sections without exception:

12 24 13 – Roller Window Shades

The Scope of Work shall specifically include but not necessarily be limited to the  following:

a.  Engineering and Layout for your work.
b.  Provide complete roller shade system.
c.  Provide all necessary equipment required for completion of work.

**Attachment 5 - Clarifications and Assumptions**

**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**

**Little Rock, Arkansas**

**01/11/2017**

    d.  Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
    e.  Cost of safety for your personnel.
    f.  Protection of Work by others.
    g.  Daily clean up and remove trash to dumpster provided by CM/GC.
    h.  Attention is called to LEED requirements.

**40. Manufactured Casework**

This Trade Package shall include the complete Scope of Work as described in the    following Specification Sections without exception:

06 61 16 – Solid Surfacing
12 32 13 – Manufactured Wood_ Veneer-Faced Casework
12 32 16 – Manufactured Plastic-Laminate – Clad Casework.

The Scope of Work shall specifically include but not necessarily be limited to the  following:

    a.  Engineering and Layout for your work.
    b.  Provide Manufactured Casework and Solid Surfacing.
    c.  Provide all necessary equipment required for completion of work.
    d.  Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
    e.  Cost of safety for your personnel.
    f.  Protection of Work by others.
    g.  Daily clean up and remove and remove trash to dumpster provided by CM/GC.
    h.  Attention is called to LEED requirements.
    i.  Solid Surfacing work as applicable to this Trade Package.

**41. Fixed Audience Seating – NIC (NOT IN CONTRACT)**

This Trade Package shall include the complete Scope of Work as described in the    following Specification Sections without exception:

12 61 00 – Fixed Audience Seating

The Scope of Work shall specifically include but not necessarily be limited to the  following:

    a.  Engineering and Layout for your work.
    b.  Provide complete Fixed Audience Seating system.
    c.  Provide all necessary equipment required for completion of work.
    d.  Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
    e.  Cost of safety for your personnel.
    f.  Protection of Work by others.
    g.  Daily clean up and remove trash to dumpster provided by CM/GC.

**Attachment 5 - Clarifications and Assumptions**
**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

h. Attention is called to LEED requirements.

### 42. Bleachers – NIC (NOT IN CONTRACT)

This Trade Package shall include the complete Scope of Work as described in the following Specification Sections without exception:

12 61 13 – Telescoping Bleachers
12 34.16.53 - Bleachers

The Scope of Work shall specifically include but not necessarily be limited to the following:

a. Engineering and Layout for your work.
b. Provide Bleacher Work complete.
c. Provide all necessary equipment for completion of work.
d. Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
e. Cost of safety for your personnel.
f. Protection of Work by others.
g. Daily clean up and remove trash to dumpster provided by CM/GC.
h. Attention is called to LEED requirements.

### 43. Metal Building Systems (Turn Key)

This Trade Package shall include the complete Scope of Work as described in the following Specification Sections without exception:

07 21 00 – Thermal Insulation
13 34 19 – Metal Building Systems

The Scope of Work shall specifically include but not necessarily be limited to the following:

a. Engineering and Layout for your work.
b. Provide complete Metal Building System.
c. Provide metal building insulation system.
d. Metal Panels for the New High School are to be furnished in the Metal Wall Panel Package.
e. Provide all necessary equipment required for completion of the work.
f. Provide shop drawings, calculations, and other required submittals within 4 weeks of Notice to Proceed.
g. Cost of safety for your personnel.
h. Protection of Work by others.
i. Daily clean up and remove trash to CM/GC supplied dumpster.

j. Furnishing of anchor bolts and anchor bolt setting plan to Trade Contract – 10 Cast – In –

**Attachment 5 - Clarifications and Assumptions**
**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

Place Concrete Contractor.
k.   Attention is called to LEED requirements.

## 44. Electric Traction Elevators

This Trade Package shall include the complete Scope of Work as described in the following Specification Sections without exception:

14 21 00 – Electric Traction Elevators

The Scope of Work shall specifically include but not necessarily be limited to the following:

a.   Engineering and Layout for your work.
b.   Provide complete Electric Traction Elevator system.
c.   Provide all necessary equipment required for completion of the work.
d.   Provide shop drawings, calculations, and other required submittals within 4 weeks of Notice to Proceed.
e.   Cost of safety for your personnel.
f.    Protection of Work by others.
g.   Daily clean up and remove trash to CM/GC supplied dumpster.
h.   Attention is called to LEED requirements.

## 45. Wheel Chair Lifts

This Trade Package shall include the complete Scope of Work as described in the following Specification Sections without exception:

14 42 16 – Wheelchair Lift

The Scope of Work shall specifically include but not necessarily be limited to the following:

a.   Engineering and Layout for your work.
b.   Provide complete Wheelchair Lift System.
c.   Provide metal building insulation system.
d.   Provide all necessary equipment required for completion of the work.
e.   Provide shop drawings, calculations, and other required submittals within 4 weeks of
f.    Cost of safety for your personnel.
g.   Protection of Work by others.
h.   Daily clean up and remove trash to CM/GC supplied dumpster.

i.    Furnishing of anchor bolts and anchor bolt setting plan to Trade Contract – 10 Cast – In – Place Concrete Contractor.

**Attachment 5 - Clarifications and Assumptions**

**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**

**Little Rock, Arkansas**

**01/11/2017**

    j.   Attention is called to LEED requirements.

**46. Fire Protection**

This Trade Package shall include the complete Scope of Work as described in the    following Specification Sections without exception:

07 84 00 – Firestopping
21 05 00 – Common Work Results for Fire Suppression
21 05 48 – Vibration and Seismic Control for Fire Suppression
21 05 53 – Identification for Fire Suppression
21 13 00 – Fire Suppression Sprinkler Systems

The Scope of Work shall specifically include but not necessarily be limited to the following:

a.   Engineering and Layout for your work.
b.   Fire Protection system complete including connection to existing utility. Fire Protection system included in this package goes beyond 5' out and connects to existing including demarcation valves, hydrants, taps and fees.
c.   Cut ceiling tile as needed for penetrations, sprinkler heads to be mounted in center of tile.
d.   Provide hangers for all equipment and piping including seismic requirements.
e.   Provide firestopping at all penetrations through fire rated assemblies (walls and ceilings).
f.   Provide all required permits, testing and certifications.
g.   Provide all necessary equipment required for completion of work.
h.   Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
i.   Cost of safety for your personnel.
j.   Protection of Work by others.
k.   Daily clean up and remove trash to dumpster provided by CM/GC.
l.   Attention is called to LEED requirements.

**Attachment 5 - Clarifications and Assumptions**

**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**

**Little Rock, Arkansas**

**01/11/2017**

### 47. Plumbing

This Trade Package shall include the complete Scope of Work as described in the following Specification Sections without exception:

07 84 00 – Firestopping
22 05 00 – Common Work Results for Plumbing
22 05 13 – Common Electrical Requirements for Plumbing Equipment
22 05 16 – Expansion Compensation for Plumbing
22 05 19 – Meters and Gauges for Plumbing
22 05 48 – Vibration and Seismic Control for Plumbing
22 07 19 – Plumbing and Piping Insulation
22 10 05 – Plumbing Piping
22 10 06 – Plumbing Piping Specialties
22 30 00 – Plumbing Equipment
22 40 00 – Plumbing Fixtures
22 66 00 – Chemical Waste Systems for Laboratory Facilities

The Scope of Work shall specifically include but not necessarily be limited to the following:

a. Engineering and Layout for your work.
b. All piping, specialties and accessories required to complete gas system.
c. All piping, specialties and accessories required to complete plumbing system.
d. Complete water system to the termination point shown on the civil drawings.
e. Complete sanitary system to the site utility termination point shown on the civil drawings.
f. Complete condensate to the site utility termination point shown on the civil drawings.
g. Verify/ coordinate with the site utility package for condensate lines, water system, and sanitary system.
h. Provide firestopping at all penetrations thru fire rated assemblies (walls and ceilings).
i. Provide piping insulation.
j. Provide piping labels and valve tags.
k. Provide piping hangers.
l. Provide seismic support of equipment and piping.
m. Provide all gas piping from meter (Coordinate with Site Utility Contractor & CM/GC).
n. Provide all plumbing fixtures and equipment, fittings, etc. including sinks in kitchen equipment and millwork.
o. Provide silicone sealant at joint between plumbing and fixtures and walls/floor.
p. Provide water, gas and sewer hook-ups to fixtures where shown, complete.
q. Protect plumbing fixtures until final completion.
r. Includes connection of temporary water and sanitary piping to CM/GC construction trailer.
s. Provide all necessary equipment required for completion of work.
t. Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
u. Cost of safety for your personnel.

**Attachment 5 - Clarifications and Assumptions**
**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

v.  Protection of Work by others.
w.  Daily clean up and remove trash to dumpster provided by CM/GC.
x.  Grease Traps complete
y.  Building Storm Drainage / Roof Drainage connections to site storm drainage piping
z.  Attention is called to LEED requirements.

**48. HVAC**

This Trade Package shall include the complete Scope of Work as described in the following Specification Sections without exception:

07 84 00 – Firestopping
23 05 00 – Common Work Results for Heating, Ventilating and Air Conditioning.
23 05 13 – Common Electrical Requirements for HVAC Equipment.
23 05 16 – Expansion Compensation in Heating, Ventilating and Air Conditioning
23 05 19 – Meters and Gauges for HVAC
23 05 48 – Supports and Anchors
23 05 53 – Identification for HVAC Piping and Equipment
23 05 93 – Testing, Adjusting, and Balancing for Heating, Ventilating and Air Conditioning Systems
23 07 13 – Duct Insulation for Heating, Ventilating and Air Conditioning
23 07 16 – HVAC Equipment Insulation
23 07 19 – HVAC Piping Insulation
23 09 23 – Direct Digital Control System for HVAC
23 21 13 – Hydronic Piping
23 21 14 – Hydronic Specialties
23 21 23 – Hydronic Pumps
23 23 00 –Refrigerant and Condensate Piping
23 25 00 – HVAC Water Treatment
23 31 00 – HVAC Ducts and Casings
23 31 01 – Duct Conveying Duct System
23 33 00 – Air Duct Accessories
23 34 23 – HVAC Power Ventilators
23 34 25 – Laboratory Exhaust System
23 36 16 – Air Terminal Units – Variable Volume
23 37 00 – Air Outlets and Inlets
23 38 13 – Commercial Kitchen Ventilation System
23 38 14 – Kitchen Ventilation System
23 38 15 – Range Top Fire Suppression Systems
23 51 00 – Double Wall Gas Vent (Category IV)
23 52 33 – Heat Generation (Boilers)
23 55 33 – Gas Fired Unit Heaters
23 64 26 – Rotary-Screw Water Chillers (Air Cooled)
23 72 00 – Air-to-Air Energy Recovery Equipment
23 73 13 – Modular Central Station AHUS
23 74 13 – Packaged Rooftop Air Conditioning Units (1 to 10 Tons)
23 74 14 – Packaged Rooftop Air Conditioning Units (12 to 25 Tons)

**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**

**Little Rock, Arkansas**

**01/11/2017**

23 74 15 – Packaged, Rooftop Air Conditioning Units (50 Tons and Larger)

23 74 33 – Packaged, Make Up Air Units (Gas)

23 81 25 – Computer Room Environmental Control System

23 81 27 – Variable Flow Refrigerant System

23 81 28 – Ductless Mini - Splits

The Scope of Work shall specifically include but not necessarily be limited to the following:

a. Engineering and Layout for your work.

b. Provide heating and cooling units, complete.

c. Provide automatic control systems, complete, including hardware, software, interlock wiring, and conduit where exposed in mechanical rooms.

d. Provide all specialties and accessories required to complete heating and cooling units.

e. Provide all hangers for ductwork and equipment.

f. Provide all ductwork and duct insulation as required including flashing or waterproofing of exterior ductwork.

g. Provide setting of all units, complete, including anchoring as required, and all equipment required to set units including plywood and curbs.

h. Provide all louvers and wall caps. Install and seal with approved caulking and flashing complete.

i. Provide all grilles and registers as required.

j. Provide and install Exhaust Hood in Kitchen including the Fire Control System

k. Provide sleeves, vents, piping and layout through walls and slabs required for work of this trade package.

l. Coordinate roof penetrations, curb and metal siding louver sizes and locations with metal panel contractor and roofing contractor.

m. Provide coordination for screen wall installation.

n. Provide inspections and tests as required.

o. Coordinate conduit from wall sensors to above ceiling as required for concealment with electrical contractor.

p. Provide testing and balancing by independent test/balance contractor.

q. Provide connections of equipment furnished under this trade section.

r. Provide exhaust fans and equipment, complete.

s. Provide heating and air conditioning equipment, complete.

t. Provide seismic support of piping, equipment and ductwork.

u. Provide firestopping at all penetrations through fire rated assemblies (walls and ceilings).

v. Provide and install sealant around all exterior louvers, sealant around pipes and installation of plenums, complete.

w. Provide filter media over all returns for units used during construction. Unit filters and additional filter media shall be replaced on regular schedule to prevent excessive dirt in equipment and coils.

x. Demonstrate operation of units to school and furnish complete operating manuals.

y. Provide all necessary equipment required for completion of work.

z. Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.

aa. Cost of safety for your personnel.

bb. Protection of Work by others.

## Attachment 5 - Clarifications and Assumptions
## Bid Package 3 Mills Replacement High School - Pulaski County Special School District
## Little Rock, Arkansas
### 01/11/2017

    cc. Daily clean up and remove trash to dumpster provided by CM/GC.

    dd. Attention is called to LEED requirements.

    ee. Be prepared to show breakdown between Middle School and Multipurpose Facility within 24 hours of bid.

    ff. Be prepared to provide full disclosure of controls contractor used. This may be required at the time of bid.

    gg. Control systems are a part of this Trade Package and are limited to the two (2) Owner Approved Manufacturers listed in Specification Section 23 09 23.

    hh. Provide and replace temporary filters while under construction.

### 49. Mechanical (Combination of Plumbing and HVAC)

This Trade Package is a combination of Trade Packages 47 Plumbing and 48 HVAC and shall include all the required scope of both packages.

### 50. Electrical

This Trade Package shall include the complete Scope of Work as described in the following Specification Sections without exception:

07 84 00 – Firestopping

26 05 00 – Common Work Results for Electrical

26 05 19 – Low – Voltage Electrical Power Conductors and Cables

26 05 26 – Grounding and Bonding for Electrical Systems

26 05 29 – Hangers and Supports for Electrical Systems

26 05 33 – Raceway and Boxes for Electrical Systems

26 05 48 – Vibration and Seismic Controls for Electrical Systems

26 05 53 – Identification for Electrical Systems

26 05 73 – Arc Flash Hazard Analysis/Short Circuit/Coordination Study

26 22 00 – Dry Type Transformers

26 24 13 – Switchboards

26 24 16 – Panelboards

26 27 26 – Wiring Devices

26 28 16 – Enclosed Switches and Circuit Breakers

26 29 23 – Variable Frequency Controller

26 32 00 – Packaged Gas Engine Generator Systems – NIC (NOT IN CONTRACT)

26 36 23 – Enclosed Transfer Switch

26 41 13 – Lightning Protection System

26 56 68 – Exterior Athletic Lighting

27 00 00 – Computer Network Systems – Category 6A

27 41 00 – Audio Video Systems – NIC (NOT IN CONTRACT)

27 50 00 – Intercom / Clock Communication System

28 10 00 – Electronic Access Control and Intrusion Detection

28 31 00 – Fire Detection and Alarm (Addressable)

**Attachment 5 - Clarifications and Assumptions**

**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**

**Little Rock, Arkansas**

**01/11/2017**

The Scope of Work shall specifically include but not necessarily be limited to the following:

a. Engineering and Layout for your work.
b. Trenching, bedding, backfill and marker tape for underground conduits.
c. Include costs for permit and inspection fees.
d. CM/GC to Carry Entergy Charges.
e. Temporary power and temporary lighting. Include all wiring, devices, equipment, etc. in this package. Temporary lighting must be sufficient to meet OSHA 29 CFR 1926.26 guidelines for illumination. See Section 01 5000 Temporary Facilities and Controls for additional information.
f. Disconnects and switches as required
g. Provide electrical panel boards, and distribution panels.
h. Provide electrical raceway and conduit systems.
i. Testing and adjustments of electrical system.
j. Sleeves and layout through walls and slabs required for work of this trade package.
k. Firestopping at all penetrations through fire rated assemblies (walls ceilings and floors).
l. Electrical grounding.
m. Electrical for Kitchen Equipment.
n. Provide fire alarm system as noted and specified in Division 28.
o. Exclude allowances for Access Control, Intrusion Detection and Video Surveillance.
p. Provide communications as noted and specified in Division 27.
q. Site lighting complete including poles, fixtures and wiring. Light pole bases and transformer pads are by the Paving & Site Concrete contractor.
r. Include FEMA rated enclosure for Generators. – NIC (NOT IN CONTRACT)
s. Include connection of temporary electric for CM/GC construction trailer.
t. Provide all necessary equipment required for completion of work.
u. Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
v. Cost of safety for your personnel.
w. Protection of Work by others.
x. Daily clean up and remove trash to dumpster provided by CM/GC.
y. Attention is called to LEED requirements.

The following Material Purchase Order Packages are in included in the Scope of Work:

### 51. Structural & Miscellaneous Steel Fabrication

This Purchase Order shall include the complete Scope of Work as described in the following Specification Sections without exception:

05 05 16 – Preparation of Hot-Dip Galvanized Steel Surfaces for Painting
05 10 00 – Structural Steel
05 50 00 – Metal Fabrications
05 20 00 – Metal Joists
05 30 00 – Metal Decking
05 50 00 – Metal Fabrications
05 55 00 – Steel Stairs and Railings

**Attachment 5 - Clarifications and Assumptions**
**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

The Purchase Order shall specially include but not necessarily be limited to the following:

a. Furnish FOB project site, including delivery(s) as required, all structural and miscellaneous steel including but not limited to steel joist, steel roof deck, anchor bolts, columns, beams, rails, steel ladders, bollards, metal angles at toilet partitions, tube and pipe rail and post including at the metal screen wall, lintels, miscellaneous plates, braces and supports and miscellaneous bolts and anchors as required.
b. Excludes Decorative Railing.
c. Attention is called to the fact that the scope of work is shown on both the Site & Utility Package AND the New Replacement High School, Baseball Field 1 and Fieldhouse Drawings.
d. Design connections not detailed on the drawings under direct supervision of a Professional Structural Engineer experienced in design of this work and licensed in Arkansas.
e. Attention is called to the Mechanical Screen details and locations.
f. Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
g. Perform field measurements as required.
h. Attention is called to LEED requirements.

**52. Expansion Joint Cover Assemblies**

This Purchase Order shall include the complete Scope of Work as described in the following Specification Sections without exception:

10 80 00 – Other Specialties

The Purchase Order shall specially include but not necessarily be limited to the following:

a. Furnish FOB project site all Expansion Joints and covers as shown and detailed.
b. Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
c. Perform field measurements as required.
d. Attention is called to LEED requirements.

**53. Doors, Frames & Finish Hardware**

This Purchase Order shall include the complete Scope of Work as described in the following Specification Sections without exception:

08 11 13 – Hollow Metal Doors and Frames
08 14 00 –Wood Doors
08 71 00 – Hardware
08 71 00.03 - Hardware

The Purchase Order shall specially include but not necessarily be limited to the following:

a. Furnish FOB project site all HM doors and frames as shown and detailed.
b. Furnish FOB project site all flush wood doors as shown and detailed.
c. Furnish all door hardware (finish hardware) as shown and detailed.

**Attachment 5 - Clarifications and Assumptions**

**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**

**Little Rock, Arkansas**

**01/11/2017**

  d. Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
  e. Perform field measurements as required.
  f. Attention is called to LEED requirements.

**54. Toilet Compartments & Toilet Accessories**

This Purchase Order shall include the complete Scope of Work as described in the following Specification Sections without exception:

10 2113.19 – Plastic Toilet Compartments
10 28 00 – Toilet and Bath Accessories

The Purchase Order shall specially include but not necessarily be limited to the following:

  a. Furnish FOB project site all plastic toilet compartments.
  b. Furnish FOB project site all toilet and bath accessories.
  c. All items to be furnished complete including anchors.
  d. Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
  e. Attention is called to LEED requirements.

**55. Visual Display Units**

This Purchase Order shall include the complete Scope of Work as described in the following Specification Sections without exception:

10 11 00 – Visual Display Units

The Purchase Order shall specially include but not necessarily be limited to the following:

  a. Furnish FOB project site all Visual Display Units
  b. Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
  c. Perform field measurements as required.
  f. Attention is called to LEED requirements.

**56. Flag Poles**

This Purchase Order shall include the complete Scope of Work as described in the following Specification Sections without exception:

10 75 00 – Flag Poles

The Purchase Order shall specially include but not necessarily be limited to the following:

**Attachment 5 - Clarifications and Assumptions**
**Bid Package 3 Mills Replacement High School - Pulaski County Special School District**
**Little Rock, Arkansas**
**01/11/2017**

    a.   Furnish FOB project site all accessories for Flag Poles.
    b.   All items to be furnished complete including anchors.
    c.   Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
    d.   Attention is called to LEED requirements.

**57.  Other Specialties**

This Purchase Order shall include the complete Scope of Work as described in the following Specification Sections without exception:

10 80 00 – Other Specialties

The Purchase Order shall specially include but not necessarily be limited to the following:

    a.   Furnish FOB project site all Electronic Projection Screens.
    b.   Furnish FOB project site all Ticket Windows.
    c.   Furnish FOB project site all Curtain Rods and Clothes Hanger Rods.
    d.   Furnish FOB project site all Cubicle Curtains and Tracks.
    e.   Furnish FOB project site all Rapid Entry Systems (Knox Boxes).
    f.   All items to be furnished complete including anchors.
    g.   Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
    h.   Attention is called to LEED requirements.
    i.   Include app items listed in Section 10 80 00, with the exception of, Sections 2.01, 2.02 and 2.06.

**58.  Fire Protection Specialties**

This Purchase Order shall include the complete Scope of Work as described in the following Specification Sections without exception:

10 4400 – Fire Protection Specialties

The Purchase Order shall specially include but not necessarily be limited to the following:

    a.   Furnish FOB project site all fire protection specialties.
    b.   All items to be furnished complete including anchors.
    c.   Provide shop drawings and other required submittals within 4 weeks of Notice to Proceed.
    d.   Attention is called to LEED requirements.



MILLS HIGH SCHOOL AND FIELDHOUSE
ACCEPTED   V.E. 1-11-2017
Attachment 6

anuary 11,2017

REV. 02.1.10.2017

| /E Number | Description | Range of Magnitude | Status | Accepted | Pending | Rejected | Comments |
|---|---|---|---|---|---|---|---|
| 2 | Simplify Design of Ornamental Railings | $ (53,481) | Accepted | $ (53,481) | $ - | $ - | |
| 3 | Use drip edge on OS edge of parapet ILO full width coping | $ (15,000) | Accepted | $ (15,000) | $ - | $ - | |
| 4 | Change Glass to Gray/SB60 #3 ILO Gray/SB60 #2 /Clear | $ (13,350) | Accepted | $ (13,350) | $ - | $ - | |
| 5 | Use Omega Panel Products Laminators Inc ILO Mapes Panels at Curtain Wall System and add 1/2" rigid insulation behind panel | $ (43,282) | Accepted | $ (43,282) | $ - | $ - | Revised to add rigid insulation. Rev 2 1.10.17 |
| 6 | Replace Radial Wood Clgs with Linear Wood Open Clgs. | $ (30,211) | Accepted | $ (30,211) | $ - | $ - | Review between Arch and Subcontractor |
| 7 | Delete Clouds in Cafeteria | $ (18,631) | Accepted | $ (18,631) | $ - | $ - | Take 1/2 of value |
| 8B | Change Accent Walls in Audtorium to Wood Veneer Plywood | $ (40,771) | Accepted | $ (40,771) | $ - | $ - | REV 2  1-10-2017  Only 8, 8A or 8B can be taken |
| 9 | Food Service Equipment Revisions - See List Below | $ (23,160) | Accepted | $ (23,160) | $ - | $ - | |
| 10 | Change Science casework to Wood | $ (10,000) | Accepted | $ (10,000) | $ - | $ - | |
| 11 | Change Fire Protection to incorporate NFPA Allowable Changes | $ (97,700) | Accepted | $ (97,700) | $ - | $ - | Check Robinson to see if available |
| 14 | Use Standard No Hub Clamps on Piping | $ (40,000) | Accepted | $ (40,000) | $ - | $ - | |
| 15 | Alternate Electrical Fixture Package Delete Fix Types CD7, CD8, Night or equal controls and make deep cuts to overall fixture package | $ (160,900) | Accepted | $ (160,900) | $ - | $ - | Full submittals with Lighting Control revisions submitted 12-22-2016 |
| 16 | Aluminum Conductors on Panel Feeders for Items #1/0 and larger | $ (46,550) | Accepted | $ (46,550) | $ - | $ - | REV 02 1.10.2017 Revised Riser diagram submitted. Cost revised based on Eng. comments. |
| 17 | Allow Fire Alarm system to have free air cabling ILO full conduit | $ (24,020) | Accepted | $ (24,020) | $ - | $ - | |
| 20 | Remove Baseball Related Steel Items From Pkg 3 | $ (9,450) | Accepted | $ (9,450) | $ - | $ - | |
| 21 | Leave Fieldhouse Turff " AS BID" | $ - | Accepted | $ - | $ - | $ - | Based on Hellas Revised Pricing from Hellas |
| 22 | Insulated Metal Wall Panels | $ (46,875) | Accepted | $ (46,875) | $ - | $ - | |
| 24 | Change electric edges to safety photo eyes at Doors F122E & F122F | $ (550) | Accepted | $ (550) | $ - | $ - | |
| 25 | Reduce Theater Seating to 699 ILO781 | $ (11,184) | Accepted | $ (11,184) | $ - | $ - | Add 19 to 21 inch seats |
| 26 | Deduct dome, fan and ventilator from Lift | $ (1,137) | Accepted | $ (1,137) | $ - | $ - | |
| 27 | Deduct 5 year warranty from lift specs | $ (2,000) | Accepted | $ (2,000) | $ - | $ - | |
| 30 | Revise Roof System to 45 Mil TPO, mechanically attached and maintain 20 yr warranty | $ (71,500) | Accepted | $ (71,500) | $ - | | |
| 33 | Revise Stage House construction to use multiple drywall layers ILO of masonry & add 3 rows of 2x12 painted wood blocking. | $ (62,403) | Accepted | $ (62,403) | $ - | $ - | REV 2  1-10-2017 Added Surface Blocking |
| 33A | ADD BACK FOR STRU ENG WORK AT STAGE HOUSE | $ 20,000 | Accepted | $ 20,000 | $ - | $ - | |
| 35 | Omit Compressor @ Wood Shop ( OFOI ) | $ (11,300) | Accepted | $ (11,300) | $ - | $ - | Repriced to include omission of  infrastructure |

| /E Number | Description | Range of Magnitude | Status | Accepted | Pending | Rejected | Comments |
|---|---|---|---|---|---|---|---|
| 36 | Omit Dust Collector System at Wood Shop ( OFOI ) | $ (11,110) | Accepted | $ (11,110) | $ - | $ - | Repriced to include omission of infrastructure |
| 39 | Omit Scoreboard at Gym | $ (31,025) | Accepted | $ (31,025) | $ - | $ - | Check Auxiliary Gym |
| 40 | Revise Bleacher and Canopy in accordance with ASI #6 | $ (25,227) | Accepted | $ (25,227) | $ - | $ - | REV 2 1-10-2017 ASI # 6 |
| 40A | Revise Dougout Design in accordancw with SI # 6 | $ (10,126) | Accepted | $ (10,126) | $ - | $ - | REV 2 1-10-2017 ASI # 6 |
| 41 | Omit Toilets at Baseball Field Dugouts | $ (22,038) | Accepted | $ (22,038) | $ - | $ - | |
| 64 | Change Stair # 118 to glass aggregate treads and painted risers | $ (10,859) | Accepted | $ (10,859) | $ - | $ - | |
| 65 | Remove radius ceilings in Cafeteria and use flat lay in ceiling | $ (6,001) | Accepted | $ (6,001) | $ - | $ - | Changed Credit to 1/2 of Value |
| 66 | Remove all curved direct light fixtures and use linear direct light fixtures in the Auditorium | $ (11,000) | Accepted | $ (11,000) | $ - | $ - | |
| 67 | Remove 3 radius furr down ceilings in the Concourse | $ (5,374) | Accepted | $ (5,374) | $ - | $ - | Price for 2 |
| 68 | Remove exterior storefront # 20/A5.06 and add vertical metal wall panels | $ (9,097) | Accepted | $ (9,097) | $ - | $ - | |
| 69 | Remove the upper interior storefront #16 / A6.01 and add metal studs and gyp | $ (7,037) | Accepted | $ (7,037) | $ - | $ - | |
| 72 | Omit Brick at South Wall of Fieldhouse and substitute Metal Wall Panels | $ (7,435) | Accepted | $ (7,435) | $ - | $ - | At South Wall |
| 77 | Change walk to 10' wide ILO 15' Sheet C3.5 | $ (4,187) | Accepted | $ (4,187) | $ - | $ - | |
| 78 | Delete requirment for mock up wall Sheet A3.14 | $ (10,334) | Accepted | $ (10,334) | $ - | $ - | |
| 79 | Eliminate 1 layer of Auditorium flat drywall ceiling | $ (16,589) | Accepted | $ (16,589) | $ - | $ - | no tape & float stagger layers or thicker 1 layer only |
| 80 | Sheet C3.1 Eliminate rear area of East Parking | $ (86,146) | Accepted | $ (86,146) | $ - | $ - | Value is for West Parking Lot Sheet C3.2   REV 1  1-6-2017 |
| 81 | Sheet C3.2 Eliminate connecting drives | $ (11,401) | Accepted | $ (11,401) | $ - | $ - | Repriced to leave south connector |
| 82 | Provide Solid Surface counter tops at Fieldhouse Concession ILO stainless steel | $ (11,257) | Accepted | $ (11,257) | $ - | $ - | |
| 83 | Provide Standard Chrome fixtures, pulls and hinges ILO epoxy powder coat | $ (3,559) | Accepted | $ (3,559) | $ - | $ - | |
| 89 | Change 24ga SLR II roof to 24 ga. SSR with VP standard color selection | $ (13,910) | Accepted | $ (13,910) | $ - | $ - | Can only choose 85, 86 or 87 |
| 91 | Change 24ga Shadow Rib wall panels to VP 24 Ga Panel Rib, Reverse Panel Rib or Vee Rib with special order Champagne Metallic color. | $ (29,400) | Accepted | $ (29,400) | $ - | $ - | Can only choose 91 or 92 |
| 93 A | Omit Liner Panels at Fieldhouse & use Painted  5/8" CD Plywood | $ (8,332) | Accepted | $ (8,332) | $ - | $ - | Either 93 or 93 A can be accepted. REV 2 1.10.2017 Added painting to plywood |
| 94 | Change Gymguard facing on the wall insulation to WMP 50 facing | $ (5,860) | Accepted | $ (5,860) | $ - | $ - | |
| 95 | Omit R wall Outfield fence and replace with screened chain link fence at Baseball Outfield | $ (64,295) | Accepted | $ (64,295) | $ - | $ - | galvanized, green fabric and yellow cap |
| 96 | Omit Scoreboard at Baseball Field | $ (27,504) | Accepted | $ (27,504) | $ - | $ - | |
| 97 | Omit Serving Utilities at Baseball Field 9 water & sewer ) | $ (19,606) | Accepted | $ (19,606) | $ - | $ - | |
| 98 | 4' Height Reduction at Auditorium Exterior Walls | $ (87,981) | Accepted | $ (87,981) | $ - | $ - | Repriced to Reduce by 4 feet need input from Pettit not full amount |
| 100 | Substitute CMU for Precast Walls | $ (155,588) | Accepted | $ (155,588) | $ - | $ - | |
| 102 | Delete a portion of the roof mechanical screens | $ (21,350) | Accepted | $ (21,350) | $ - | $ - | |
| 103 | Reduce mechanical screen heights | $ (17,200) | Accepted | $ (17,200) | $ - | $ - | |
| 105 | Change interior walls at Locker Room to drywall partitions behind lockers. Leave Showers as CMU | $ (4,032) | Accepted | $ (4,032) | $ - | $ - | |
| 106 | Delete painting of Auditorium Gyp Flat Ceiling | $ (2,994) | Accepted | $ (2,994) | $ - | $ - | REV 2 1.10.2017 Added 1 coat sprayed on painting. |

| /E Number | Description | Range of Magnitude | Status | Accepted | Pending | Rejected | Comments |
|---|---|---|---|---|---|---|---|
| 106.1 | Delete tape & float of Auditorium Gyp Flat Ceiling | $ (3,503) | Accepted | $ (3,503) | $ - | $ - | Tape & Bed Value |
| 108 | Delete OH Door and add 2 personnel doors at Prep 137 | $ (2,639) | Accepted | $ (2,639) | $ - | $ - | |
| 109 | Revisit Audio Allowances - Remove Allowance from CM Budget | $ (200,000) | Accepted | $ (200,000) | $ - | $ - | Possibly FF&E |
| 110 | Replace windows above lockers with painted drywall | $ (19,050) | Accepted | $ (19,050) | $ - | $ - | Change Doors to 2" glass opening, delete windows |
| 112 | Change Chiller Enclosure to screened fence. Similar to RMS. Sheet A1.06 | $ (24,223) | Accepted | $ (24,223) | $ - | $ - | Fence & Trees check for additional savings |
| 113 | Change Outdoor Mech Court to screened fence similar to RMS. Sheet A1.04 | $ (29,389) | Accepted | $ (29,389) | $ - | $ - | Fence & Trees check for additional savings. |
| 114 | Omit West Parking per revisions on c3.0 dated 1-9-2017 | $ (78,591) | Accepted | $ (78,591) | $ - | $ - | Rev 02 1.10.2017 Amount revised based on 3.01 dwg dated.1.09.2017 |
| 115 | Sidewalk reduction from C3.1 drawing dated 1.09.2017 | $ (18,952) | Accepted | $ (18,952) | $ - | $ - | Rev 02 1.10.2017..Based on C 3.01 dwg dated 1.09.2017 |
| 116 | Reduce sidewalk width at FH Concession by 10' | $ (3,680) | Accepted | $ (3,680) | $ - | $ - | |
| 117 | Revise Landscape Budget to a Value of $ 175.000 | $ (29,472) | Accepted | $ (29,472) | $ - | $ - | |
| 119 | Review Auditorium Catwalks for scope elimination. Catwalk 4 omission, relocation of center spot, and possible side access deletion | $ (45,080) | Accepted | $ (45,080) | $ - | $ - | |
| 120 | Rework truck access parking lot and drive as per C3.0 dated 1-9-2017 | $ (39,552) | Accepted | $ (39,552) | $ - | $ - | REV 2 1.10.2017   Price based on C3.0 dated 1.09.2016 |
| 122 | Reduce Student Locker Count to 700 | $ (18,960) | Accepted | $ (18,960) | $ - | $ - | |
| 125B | Change Rulon Panels at Auditorium Curved Ceiling Bands to Painted Gyp Board | $ (45,115) | Accepted | $ (45,115) | $ - | $ - | REV 02 1.10.2018 |
| | | | | | | | |
| | **TOTAL ARCH / STRU / CIVIL ITEMS** | $ (2,129,513) | | $ (2,129,513) | $ - | $ - | |
| | | | | | | | |
| | **VOEGELE MECHANICAL VALUES** | | | | | | |
| M31 | Use Sweat Ball Valves ILO Specified on Domestic Water: VOEGELE MECH. | $ (5,216) | Accepted | $ (5,216) | $ - | $ - | Can give same Value for Sweat Ball Valves |
| M33 | Use Standard "NO HUB" bands on Above Slab Sanitary Sewer Piping ILO specified.: VOEGELE MECH. | $ (6,013) | Accepted | $ (6,013) | $ - | $ - | Submit to engineer, what will they use. Ideal yes |
| M34 | Use Standard "NO HUB" bands on Above Slab Roof Drain Piping ILO specified.: VOEGELE MECH. | $ (13,224) | Accepted | $ (13,224) | $ - | $ - | Submit to engineer, what will they use. Ideal yes |
| M35 | Use more competitive brands, grades, etc of Plumbing Fixtures & Trim, Equipment Drains, than those specified.: VOEGELE MECH. | $ (19,707) | Accepted | $ (19,707) | $ - | $ - | Pending submittal |
| M39 | Use Sweat Ball Valves ILO specified on chilled and hot water: Voegele Mech | $ (1,547) | Accepted | $ (1,547) | $ - | $ - | Screwed Ball Valves ilo sweat |
| M42 | Delete insulation and jacket on below grade chilled water piping: Voegele Mech. | $ (10,200) | Accepted | $ (10,200) | $ - | $ - | Look at HDPE and delete insulation 5' or deeper |
| M43 | Delete requirement for Tridium N4 software & server from project & connect to Tridium software & server that was purchased for RMS project: Voegele Mech. | $ (28,354) | Accepted | $ (28,354) | $ - | $ - | |
| M46 | Delete requirement for 3 Year warranty and use standard 1 year warranty for HVAC controls: Voegele Mech. | $ (14,815) | Accepted | $ (14,815) | $ - | $ - | |
| M48 | Change number of PCSSD staff members from 2 to 1 to receive Tridium N4 certification: Voegele Mech. | $ (5,278) | Accepted | $ (5,278) | $ - | $ - | |
| M55 | Omit return ductwork at AHU-5: Voegele Mech | $ (1,500) | Accepted | $ (1,500) | $ - | $ - | REV 02.1.10.2017 |
| M62 | Make FHVAU - 3 return plenum: Voegele Mech | $ (900) | Accepted | $ (900) | $ - | $ - | Omit ceiling, change light fixture, modify ductwork. Need Dwg to reprice |
| M78 | Change LCD to Slider / Push Button Thermostats | $ (8,923) | Accepted | $ (8,923) | $ - | $ - | |
| M79 | Air Distribution Revisions: Delete dbl wall spiral duct and replace with fabric ductwork at Rms 164 & 151. delete grilles at same rooms , delete T&B at same rooms: VOEGELE MECHANICAL | $ (15,225) | Accepted | $ (15,225) | $ - | $ - | |
| M80 | Subcontractor Change from Mizzel / CMM to Voegele | $ 120,341 | Accepted | $ 120,341 | $ - | $ - | REV 1  1-6-2017 |

| /E Number | Description | Range of Magnitude | Status | Accepted | Pending | Rejected | Comments |
|---|---|---|---|---|---|---|---|
| | TOTAL VOEGELE MECHANICAL | $ (10,561) | Pending | $ (10,561) | $ - | $ - | |
| | | | Pending | $ - | $ - | $ - | |
| | | | Pending | $ - | $ - | $ - | |
| | | | Pending | $ - | $ - | $ - | |
| | | | Pending | $ - | $ - | $ - | |
| | OWNER FURNISHED SEPARATE BUDGET ITEMS | | | | | | |
| OF 1 | Delete Natural Gas Generator & ATS from CM Contract | $ (92,000) | Pending | $ - | $ (92,000) | $ - | |
| OF 2 | Delete Protective Covers at Sidewalks | $ (48,367) | Pending | $ - | $ (48,367) | $ - | |
| OF 3 | Delete Lockers Labor and Material from CM Contract | $ (97,407) | Pending | $ - | $ (97,407) | $ - | |
| OF 4 | Delete Kitchen Equuipment From CM Contract (Adjusted for VE Reduction) | $ (442,940) | Pending | $ - | $ (442,940) | $ - | |
| OF 5 | Delete Athletic Equipment Equuipment From CM Contract (Adjusted for VE Reduction) | $ (33,227) | Pending | $ - | $ (33,227) | $ - | |
| OF 6 | Delete Fixed Audience Seating From CM Contract | $ (125,436) | Pending | $ - | $ (125,436) | $ - | |
| OF 7 | Delete Bleachers From CM Contract | $ (123,245) | Pending | $ - | $ (123,245) | $ - | |
| OF 8 | Delete Flag Poles from CM Contract | $ (6,831) | Pending | $ - | $ (6,831) | $ - | |
| OF 9 | Delete Visual Display Units from CM Contract | $ (49,437) | Pending | $ - | $ (49,437) | $ - | |
| OF 10 | Delete Casework at Classrooms from CM Contract. Leave in Admin Cabinets | $ (435,717) | Pending | $ - | $ (435,717) | $ - | |
| | | | Pending | $ - | $ - | $ - | |
| | Subtotal OF Items: | $ (1,454,607) | | $ - | $ (1,454,607) | $ - | |
| | | | Pending | $ - | $ - | $ - | |
| | | | Pending | $ - | $ - | $ - | |
| | | | Pending | $ - | $ - | $ - | |
| | | | Pending | $ - | $ - | $ - | |
| | | | Pending | $ - | $ - | $ - | |
| | | | Pending | $ - | $ - | $ - | |
| | | | Pending | $ - | $ - | $ - | |
| | | | Pending | $ - | $ - | $ - | |
| | | | Pending | $ - | $ - | $ - | |
| | | | Pending | $ - | $ - | $ - | |
| | | | Pending | $ - | $ - | $ - | |
| | TOTAL AISIC & VOEGELE VALUES | $ (3,594,681) | | $ (2,140,074) | $ (1,454,607) | $ - | |

**Date:** March 15, 2016

### DISTRICT OPERATIONS
**Pulaski County Special School District**

**Action Item Number:** New Business 15

**Subject:** Construct Mills High School Replacement and Robinson Middle School Replacement projects

**Prepared by:** Derek Scott, Executive Director of Operations

**Rationale:** The Mills High School Replacement project will construct a new high school, support facilities and demolish the existing middle school. A companion project will convert the existing Mills High School into a middle school to replace Fuller Middle School which was constructed in 1953.

The Robinson Middle School Replacement project will construct a new middle school and campus support facilities. This project will replace the current middle school which was constructed in 1959. Demolition of the upper level classrooms (third ramp, up the hill) and conversion/enclosure of the existing front two ramps into a 9th grade academy will be necessary.

**Cost:** ~ $80 Million

**Funding Source:** Building Fund and Second Lien Bond Proceeds

**Recommendation:** I recommend approval of Mills High School Replacement and Robinson Middle School Replacement projects.

**Recommended By:** _____
Superintendent

**Approved By:** _____
Commissioner
ADE





## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

LITTLE ROCK SCHOOL DISTRICT                                        **PLAINTIFF**

V.                                    **NO. 4:82CV00866DPM**

PULASKI COUNTY SPECIAL SCHOOL
DISTRICT NO. 1, ET AL.                                             **DEFENDANTS**

MRS. LORENE JOSHUA, ET AL.                                        **INTERVENORS**

KATHERINE KNIGHT, ET AL.                                          **INTERVENORS**

### PCSSD'S REPORT REGARDING JACKSONVILLE DETACHMENT

Comes now the Pulaski County Special School District ("PCSSD") and, pursuant to the Court's November 21, 2014 Order (Doc. 5076) regarding documents to be considered at the December 18, 2014 status conference, states:

1.      The order of the State Board of Education creating the Jacksonville / North Pulaski School District ("JNPSD") tasked PCSSD and JNPSD to negotiate and attempt to agree on several subjects related to the transition of JNPSD to being fully operational. (Doc. 5075-1, Order of Creation). PCSSD and JNPSD have negotiated and reached agreement on some of those subjects. That written agreement is attached hereto as Exhibit 1 to this report.

2.      Exhibit 1 has been approved by PCSSD and JNPSD, and by the Arkansas Commissioner of Education. Exhibit 1 has been filed with and reviewed by the State Board and is now before the State Board. It is submitted herein for the Court's information and for comments at the status conference scheduled for December 18, 2014.

WHEREFORE, PCSSD respectfully reports to the Court as stated above and submits the agreement between PCSSD and JNPSD (attached as Exhibit 1) for the Court's information and comments at the December 18, 2014 status conference.



EXHIBIT
2
moñoN To QuAsIt



Case 4:82-cv-00866-DPM   Document 5080   Filed 12/11/14   Page 2 of 2

Respectfully submitted,

Pulaski County Special School District

By:     /s/ Allen P. Roberts
        ALLEN P. ROBERTS, P.A.
        325 Jefferson St., S.W.
        P.O. Box 280
        Camden, Arkansas 71711-0280
        Phone: (870) 836-5310
        Facsimile:
        Email: allen@aprobertslaw.com
        State Bar No. 64036

        One of the attorneys for PCSSD

## CERTIFICATE OF SERVICE

I do hereby state that a copy of the foregoing has been served on all counsel of record wherein a copy was sent by utilizing the CM/ECF system on this 11th day of December, 2014.

        /s/ Allen P. Roberts
        Allen P. Roberts

2

Whereas, on November 13, 2014, the Arkansas State Board of Education entered its order of creation of the Jacksonville / North Pulaski School District (JNPSD).

Whereas, paragraph 10 of that order directed the JNPSD and the Pulaski County Special School District (PCSSD) to work together and submit plans for the selection and employment of a superintendent or administrator for JNPSD, for the distribution of real and personal property, assets, liabilities (including debt), duties and responsibilities for the PCSSD and JNPSD, and for the procedure by which the JNPSD will employ licensed and nonlicensed staff.

Whereas, the JNPSD and the PCSSD have worked on such plans, have made progress in that regard, and now wish to submit partial plans to the State Board.

NOW, THEREFORE, PCSSD and JNPSD do hereby agree as follows:

1. The State Board order creating JNPSD provides that JNPSD shall continue to be operated under the administration of PCSSD during a transition period not to exceed two consecutive years. The parties agree that the duration of PCSSD administration of the new district shall be the remainder of the 2014-15 school year, and all of the 2015-16 school year unless it is determined by the State Board that the administration should be eliminated or modified. The essence of the administration contemplated by this agreement is that the new district and PCSSD shall operate as a single unit under Arkansas law in the same manner as before the creation of JNPSD. Both the superintendent of PCSSD and the Arkansas Commissioner of Education (Commissioner), in operating as herein set forth, shall have the fiduciary duty to act in the joint best interests of both PCSSD and JNPSD.

2. The superintendent of PCSSD shall continue to be the chief executive of the single unit reporting to the Commissioner as the PCSSD school board equivalent. The relationship of the PCSSD superintendent and the Commissioner shall be the same as any school superintendent and

EXHIBIT 1

his school board under Arkansas law, subject to the provisions of paragraphs 4 and 5 below.

3. Throughout the period of administration of JNPSD by PCSSD, PCSSD shall not be relieved of any of its special duties and obligations existing because of its status designations. Those statuses shall continue for the single administrative unit (i.e., PCSSD and the new district) as long as it remains a single administrative unit under PCSSD. This agreement includes all special status designations under federal or state law, including specifically, but not limited to, being a non-unitary defendant in *LRSD, et al. v. PCSSD, et al.*; being a district with individual schools designated as being in academic distress under Arkansas law; being exempt from the 2013 School Choice Act; and being in fiscal distress. The special obligations and duties imposed by these statuses shall continue unless and until modified or terminated by the United States District Court, or the State Board, as the case may be.

4. On June 20, 2011, the State Board took administrative control of PCSSD, by removing its elected school board and superintendent. The Commissioner employed a new superintendent, Dr. Jerry Guess, who remains PCSSD superintendent. This created the situation in *LRSD, et al. v. PCSSD et al.*, wherein PCSSD, the Commissioner, and ADE were all parties defendant with conflicting interests. The Court resolved the situation by proposing that the PCSSD superintendent in all matters related to the desegregation litigation be deemed free to act for and on behalf of PCSSD without consultation with the Commissioner specifically, and the State of Arkansas generally. All parties to the desegregation litigation agreed without objection. The litigation has continued, and continues today, with this party alignment.

5. PCSSD remains an active party to the litigation, as does the class of black students and patrons of PCSSD (known as the Joshua Intervenors, or Joshua), because PCSSD has not been declared fully unitary. Dr. Jerry Guess, in his capacity as PCSSD superintendent, continues to act

in this litigation for and on behalf of PCSSD with no obligation to consult with, or report to, the Commissioner in regard to desegregation issues.

6. The parties agree that PCSSD and the new district shall continue to be considered as a single unit for purposes of the case of LRSD, *et al.* v. PCSSD, *et al.*, desegregation, and unitary status.   PCSSD and JNPSD shall be bound by Plan 2000, the court-approved PCSSD desegregation plan.   JNPSD shall be considered unitary in all areas in which PCSSD has attained, or during the period of administrative control attains, unitary status.   Likewise, the JNPSD shall be considered non-unitary in all those subject matter areas in which PCSSD has not been declared unitary.   Dr. Guess, or his successor, shall be obligated to continue maximum effort to the end of attaining full unitary status for both PCSSD and JNPSD prior to the end of the transition period.

7. The Commissioner shall, with the advice and consultation of the initial JNPSD board of directors, forthwith, select persons to be employed as superintendent-designate and other personnel as needed to assist the superintendent-designate by performing tasks in areas of responsibilities directed by the superintendent-designate, and identify those persons to the PCSSD Superintendent.   PCSSD shall immediately employ those persons that are administrators (i.e., not any consultants for JNPSD) under a standard employment contract.   The annual salary of those persons shall be negotiated.   PCSSD shall employ any consultants for JNPSD in the manner that PCSSD employs other consultants.   The parties also agree and confirm the selection of Patrick D. Wilson of Wright, Lindsey & Jennings, LLP, by the JNPSD board to act as its attorney.   PCSSD agrees to timely negotiate with Patrick D. Wilson an engagement letter dealing with, *inter alia,* reasonable compensation to be paid by PCSSD.

8. During the period of continuing administration of the new district by PCSSD, all employees assigned to what will be JNPSD when it becomes fully operational shall continue to be

considered employees of PCSSD, including the superintendent-designate and other personnel as needed, and shall be paid by PCSSD.   Any consultants for JNPSD shall be paid by PCSSD, but PCSSD shall recoup monies paid to such consultants through the allocation or division of assets between PCSSD and JNPSD at the conclusion of the transition period.

9.   During the remainder of 2014-15, the superintendent-designate shall be an integral participant in all decisions and policies regarding employment, termination of employment, and discipline involving employees assigned to schools physically located in JNPSD.   Beginning in 2015-16, the superintendent-designate shall initially make those decisions in consultation with the PCSSD superintendent.   Under PCSSD's fiscal distress status, all such personnel decisions, except those directly impacting unitary status and other desegregation issues, are subject to ultimate review by the Commissioner.   If the PCSSD's fiscal distress status is removed during the transition period, PCSSD and JNPSD shall agree, by separate agreement, on how to handle all such personnel decisions.   As stated elsewhere in this agreement, all decisions directly related to unitary status and other desegregation issues are within the purview and discretion of PCSSD and its superintendent, subject to consultation with Joshua and ultimate approval by the Court.

10.   Within the single unit during the PCSSD administration period, the staffing of JNPSD and PCSSD will be managed consistent with Arkansas law regarding licensed and classified employees.   The goal of the PCSSD administration will be a turn key job in which the JNPSD and its board of directors will become vested with all the powers, duties, responsibilities, and obligations of a school district and school board under Arkansas law.   The superintendent-designate will become the superintendent, and JNPSD will be fully staffed simultaneously on the first day PCSSD's administration ends and JNPSD becomes fully operational.

11. The parties understand this agreement does not resolve all issues enumerated in Sections 7.01 *et seq.*, of the Arkansas Department of Education's Emergency Rules Governing the Creation of School Districts by Detachment (Emergency Rules). The parties agree to continue to negotiate in good faith to resolve all such issues within the timelines established by the Emergency Rules.

Daniel Gray, President
Jacksonville / North Pulaski School Board

Dr. Jerry Guess, Superintendent
Pulaski County Special School District

Approved as to form:

Tony Wood, Commissioner
Arkansas Department of Education

5

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

**LITTLE ROCK SCHOOL DISTRICT,**
*et al.*                                                    **PLAINTIFFS**


v.                          **No. 4:82-cv-866-DPM**


**NORTH LITTLE ROCK SCHOOL**
**DISTRICT,** *et al.*                                      **DEFENDANTS**


**LORENE JOSHUA,** *et al.*                               **INTERVENORS**


### ORDER

For the reasons stated from the bench, the Court took the following

actions at the 18 December 2014 hearing.

**1.** The Court approves the partial plan for detachment of the

Jacksonville/North Pulaski School District from the Pulaski County Special

School District, № 5080-1. The Joshua Intervenors do not object. This

framework is consistent with PCSSD's desegregation obligations under this

Court's Orders and will ensure compliance with those Orders.    As

contemplated by 2014 settlement agreement, JNPSD will assume all of

PCSSD's desegregation obligations in the establishment and operation of the



EXHIBIT
3
motion to Quash

new district.   This satisfies the governing statute, ARK. CODE ANN. § 6-13-1505(b)(2), and keeps faith with this Court's Orders.  The Court authorizes submission of this framework to the Arkansas State Board of Education.  And the Court looks forward to considering, as they are developed, further proposed detachment steps — which give particulars on facilities, personnel, and other matters — to make sure that the new district will not adversely affect PCSSD's desegregation obligations.

    **2.** The joint motion to file documents belatedly, № 5081, is granted.

    **3.** The joint motion about Section K of Plan 2000, № 5082, is granted. The Court accepts the stipulation of the Joshua Intervenors and PCSSD about special education.  № 5082-1.  The Court declares PCSSD unitary in special education.  The Court notes the parties' supplemental agreements on this issue, № 5083, which are made to, among other things, ensure that PCSSD follows through. As an aspect of this Court's continuing supervision over the student-achievement and discipline components of Plan 2000, the Court retains jurisdiction to enforce the supplemental agreements. PCSSD's motion for a hearing to prove that it is unitary on special education, № 5077, is denied as moot.

-2-

**4.** The joint motion to modify Plan 2000 Section H on facilities, № 5084, is held in abeyance. The Court is favorably inclined but needs to study this issue more. Supplemental report from PCSSD, after further consultation with JNPSD, due by 7 January 2015. The Court has received today and appreciates the letter report from the Court's expert, Ms. Powell, on the proposal. № 5087.

**5.** The Court appreciates the update on the Donaldson Scholars program.

**6.** The Court sets status conferences on these dates: 19 May 2015, 20 August 2015, and 16 December 2015. Court will convene at 1:30 p.m. If any issue arises that needs immediate attention, any party may, of course request a prompt hearing.

\* \* \*

Framework for JNPSD detachment, № 5080-1, approved. Joint motions, № 5081 & 5082, granted. PCSSD is unitary on special education. Motion for hearing, № 5077, denied as moot. Supplemental filings on facilities issues due by 7 January 2015.

So Ordered.

_WPMarshall Jr._
D.P. Marshall Jr.
United States District Judge

_22 December 2014_

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

LITTLE ROCK SCHOOL DISTRICT,
*et al.*                                          **PLAINTIFFS**

v.                     **No. 4:82-cv-866-DPM**

PULASKI COUNTY SPECIAL
SCHOOL DISTRICT, *et al.*                         **DEFENDANTS**

LORENE JOSHUA, *et al.*                           **INTERVENORS**

### ORDER

1. Pending before the Court is a proposed plan for detaching the Jacksonville/North Pulaski School District from the Pulaski County Special School District. This would be the latest step in the transition. JNPSD and PCSSD ask the Court to approve the desegregation aspects of the detachment plan, though there is some daylight between the districts about the particulars of this Court's approval. The Joshua Intervenors have some concerns, especially on facilities and staffing. The Court has benefitted from the parties' explanations at the 20 August 2015 status conference. The parties' post-hearing briefs, № *5156, 5158, 5159 & 5161*, were helpful too.

**EXHIBIT**

4

*motion to Quash*

**2.** The Court approves the desegregation-related aspects of the detachment plan, № 5145-1, with five observations.

*First*, the Court agrees with JNSPD on the question presented: is this more-detailed transition agreement consistent "with PCSSD's desegregation obligations under this Court's Orders and will [it] ensure compliance with those Orders[?]" № 5088 at 1. It is; and it will. PCSSD, and now JNSPD in some respects, are directly responsible to this Court for achieving unitary status in facilities, staffing, student achievement, discipline, and monitoring. The dispute about filling one of the new assistant superintendent positions this summer has given the Court some pause. But this was, the Court concludes, growing pains, which everyone learned from. And the courthouse doors are open if a similar dispute arises.

*Second*, continued collaboration between PCSSD, JNSPD, and Joshua remains essential. PCSSD and JNSPD have recognized this by providing some detachment-related documents, and clarification, as requested by Joshua. № 5158 at 3; № 5159 at 6–9. The Court will foster that collaboration by setting the agenda for upcoming status conferences and directing interim

-2-

gatherings as needed, such as the monthly meetings this fall about facilities leading up to the December hearing on that issue.

*Third*, Joshua, PCSSD, or JNSPD may — at any time — seek relief from this Court based on a good faith belief that any detachment-related step would adversely affect achieving completely unitary status.

*Fourth*, as the new plan contemplates, JNSPD should develop its Facilities Master Plan with input from Dr. Guess, especially on desegregation issues. He does not have a veto; but JNSPD should involve him and consider his views. Finally, JNSPD must submit its Facilities Master Plan to the Court. The facilities questions are first, and mainly, in the hands of citizens in Jacksonville and North Pulaski County, their school board, and their superintendent. But, in the circumstances presented, the Court must consider early next year whether JNSPD's Facilities Master Plan complies with Plan 2000 and whether it will enhance or inhibit everyone's ongoing efforts to eliminate the vestiges of segregation in facilities insofar as practicable.

*Fifth*, on staffing, the Court has already approved PCSSD's "twin seniority center" policy. (The Court appreciates PCSSD's helpful explanation of what led to that policy, № 5158 at 3, n. 2.) Staffing issues, though, will also

-3-

need some attention in 2016. They will be the main agenda item at the spring or summer status conference.

* * *

As between the Department of Education and PCSSD, Dr. Guess still has the final word on all desegregation issues involved in PCSSD's operation. He's the captain of the ship. As the latest PCSSD/JNSPD agreement provides, on several issues — the Master Facilities Plan for JNSPD, completing JNSPD central office hiring, staffing JNSPD schools for 2016–2017, and instructional issues for that school year at those schools — JNSPD will steer the ship from now on. Although he no longer has the last word, Dr. Guess will be involved in each of these areas; and it is his continuing special obligation, as PCSSD superintendent, to keep a weather eye on desegregation-related difficulties. Joshua will be involved in all these areas too, monitoring JNSPD's compliance with its obligations under Plan 2000. This is a reasonable way of moving toward full detachment in July 2016.

-4-

So Ordered.

_D.P. Marshall Jr._ *(signature)*

D.P. Marshall Jr.
United States District Judge

14 October 2015

**Minutes**
**State Board of Education Meeting**
**Thursday, March 10, 2016**

The State Board of Education met Thursday, March 10, 2016, in the Arkansas Department of Education Auditorium. Chair Toyce Newton called the meeting to order at 10:05 a.m.

Present:  Toyce Newton, Chair; Mireya Reith, Vice-Chair; Vicki Saviers; Joe Black; Diane Zook; Dr. Jay Barth; Susan Chambers; Brett Williamson; Charisse Dean; Ouida Newton, Teacher of the Year; and Johnny Key, Commissioner.

Absent: none.

## Reports

### Report-1 Recognition of Master Principal Designation - Arkansas Leadership Academy

Arkansas Leadership Academy Master Principal Leader Dr. Diana Peer said Mayflower Principal Ms. Candie Watts has successfully completed the rigorous designation process demonstrating effective principal and school practices leading to an upward trajectory in student achievement.

Commissioner Key and Dr. Peer presented Ms. Watts the Master Principal award.

Ms. Watts said she started as a teacher in PCSSD.  She said she has been principal for six years at Mayflower Elementary.

Commissioner Key said the partnership with the Arkansas Leadership Academy was very important.  He said the work of the Academy was essential to the growth of principals.

## Consent Agenda

Mr. Williamson moved, seconded by Ms. Chambers, to approve the consent agenda. The motion carried unanimously.

Items included in the Consent Agenda:
- Minutes - February 11, 2016
- Minutes - February 12, 2016
- Newly Employed, Promotions and Separations
- Consideration of Report on Waivers to School Districts for Teachers



EXHIBIT
5
motion To Qurtsh

- Consideration of the Recommendation of the Professional Licensure Standards Board for Case #16-002-Katherine Nicole Eskridge
- Consideration for Public Comment: Repeal of Arkansas Department Education Rules Governing Distance Learning
- Consideration for Public Comment: Repeal of Arkansas Department of Education Rules Governing the Digital Learning Act of 2013
- Consideration for Public Comment: ADE and ASBN Rules Governing the Administration of Insulin and Glucagon
- Consideration of the 2014-2015 Annual Statistical Report
- Consideration of the Arkansas Commission for Coordination of Educational Efforts Annual Report

## Action Agenda

### A-1 Consideration of the Little Rock School District Report of Progress

Little Rock School District Civic Advisory Committee Co-Chair Dr. Dionne Jackson said the community forums were very successful. She said the community requested more transparent communication from the district with the community. She said community members signed commitment forms and would be reconvening in the spring. She said community members wanted to know more about the academic improvements in the district.

Little Rock School District Superintendent Mr. Baker Kurrus said approximately 600 students are receiving dyslexia services. He said through school turnaround the leadership model has been transformed. He said the district has changed the relationship with teachers to build respect and trust. Mr. Kurrus provided a list of the changes in the district.

Little Rock School District Associate Superintendent for Accountability Mr. Dennis Glasgow said the data presented in the report was pre-and post-assessment of teacher made tests.

Dr. Barth moved, seconded by Ms. Dean, to hear public comments. The motion carried unanimously. No public comment was heard at this time.

Ms. Zook moved, seconded by Ms. Reith, to accept the Little Rock School District Report. The motion carried unanimously.

### A-2 Consider Removal of Pulaski County Special School District from Fiscal Distress Classification and state control (reconstitution) effective upon the election and training of the local school board

2

Fiscal Services Director Ms. Cindy Smith said the Pulaski County Special School District was classified in fiscal distress on May 16, 2011. She said the Department conducted on-site technical evaluations and assistance, off-site assistance, and analysis of the financial status of the Pulaski County Special School District. She said the Department was reporting that the Pulaski County Special School District has currently corrected all criteria for being removed from Fiscal Distress. She said the Department recommended that the Pulaski County Special School District be removed from fiscal distress and state control (reconstitution) effective upon the election and training of the local school board.

Commissioner Key said the State Board provided a public meeting in the Pulaski County Special School District to hear from patrons. He said he has confidence in the work of Superintendent Dr. Jerry Guess to continue the work in the district.

Pulaski County Special School District Superintendent Dr. Jerry Guess said the district has improved financially. He said the district did achieve unitary status in some areas but five areas remain on the list. He said the district still faced challenges in the coming year.

The Board commended Dr. Guess for his service to the district.

Mr. Williamson moved, seconded by Ms. Reith, to remove the Pulaski County Special School District from fiscal distress classification and state control (reconstitution) effective upon the election and training of the local school board. The motion carried unanimously.

**A-3 Consider Removal of Helena-West Helena School District from Fiscal Distress Classification and state control (reconstitution) effective upon the election and training of the local school board**

Fiscal Services Director Ms. Cindy Smith said the Helena-West Helena School District was classified in fiscal distress on September 13, 2010. She said the Department has conducted on-site technical evaluations and assistance, off-site assistance, and analysis of the financial status of the Helena-West Helena School District. She said the Department was reporting that the Helena-West Helena School District has currently corrected all criteria for being removed from Fiscal Distress. She said the Department recommended that the Helena-West Helena District be removed from fiscal distress and state control (reconstitution) effective upon the election and training of the school board.

Commissioner Key said the district has strong community support. He said this was the second time that the district has been returned to local control and he urged the community to continue to support the district.

Ms. Saviers moved, seconded by Ms. Dean, to hear public comment. The motion carried unanimously.

3