IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JANICE HARGROVE WARREN                                          PLAINTIFF

v.                    Case No. 4:19-cv-00655-BSM

CHARLES MCNULTY, et al.                                         DEFENDANTS

### PLAINTIFF'S BRIEF IN SUPPORT OF HER RESPONSE TO SECRETARY OF EDUCATION KEY'S MOTION TO QUASH

This matter is an employment discrimination, Title VII, 42 U.S.C. §§ 1981 and 1983, and breach of contract case brought by Dr. Janice Warren ("Dr. Warren"), Assistant Superintendent for Equity and Pupil Services ("Asst. Sup. Equity") and former Interim Superintendent, against her employer Pulaski County Special School District ("PCSSD").

This Court has subject matter jurisdiction over this cause of action under 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, specifically 42 U.S.C. §§ 1981, 1983, 2000e-2(a)(1), 2000e-2(a)(2), 2000e-3(a), and 2000e-5(f)(1). Furthermore, this Court has Supplemental Jurisdiction over Dr. Warren's State law claim against PCSSD pursuant to 28 U.S.C. § 1367(a). The trial of this matter is scheduled for the week of September 20, 2021. The parties have requested a jury trial.

### FACTUAL BACKGROUND

On July 18, 2017, Dr. Jerry Guess was terminated as Superintendent of PCSSD. PCSSD's new Board, six months in its infancy, didn't like his handling of the then 36-year desegregation lawsuit. Dkt. #40-20, Guess' Letter to Keller. Janice Warren, a Black female, was

1

asked to assume the leadership role as Interim Superintendent.  She was the first female to lead PCSSD and the third Black to hold the office of Interim Superintendent.  On or about August 24, an irate Mills parent called Dr. Warren and complained about the inequitable construction of Mills High School ("Mills") athletic facility in the predominately Black community as compared with the Robinson Middle School athletic facility in a predominately White community. With the PCSSD's Attorney, Sam Jones, Dr. Warren began a proactive process of notifying, correcting, and minimizing more than a twenty-million-dollar act of racial injustice to the predominately Black community within PCSSD.  Chief Judge Price Marshall commended PCSSD on its proactive notification to the Court of the problems (*Id*. pp. 120, line 18, p. 121, Warren Deposition).  In ruling that PCSSD had achieved unitary status with one limited exception-Mills, Judge Marshall used PCSSD's proactive effort regarding Mills as one of the bases for holding that PCSSD performed its good faith obligation to eradicate discrimination. (Dkt. 5730, Memorandum & Order of Unitary Status, Case No. 4:82-cv-00866-DPM.)

In March of 2018, Dr. Warren applied for the position of PCSSD Superintendent.  On March 27, 2018, the PCSSD Board selected three males, two Black and one White, for final interviews. In violation of her contract rights and its own policies, the Board did not invite Dr. Warren to interview.  (Dkt. #40-42, Board Minutes dated March 27, 2018; Dkt. #40-7, PCSSD Transfer & Promotion Policy.)  The PCSSD Board did not give Dr. Warren a reason for not including her as a finalist, and the Board did not provide her with an evaluation of her performance as Interim Superintendent. (Dkt. # 40-9, Remele's Deposition at p. 133, lines 9-24.) Not including Dr. Warren in the pool of finalist for an interview because of her race, sex, and in retaliation of her opposition to PCSSD's discriminatory practices in the construction of its facilities were adverse employment actions and a breach of her employment contract.  Failing to

follow its own policies that required interviewing and granting an internal candidate a hiring preference because of her race, sex, and in retaliation for her opposition of PCSSD's discriminatory practices were adverse employment acts. (Dkt. #40-7, PCSSD Transfer & Promotion Policy).

Dr. Warren filed a charge with the EEOC and received her right to sue letter. Dr. Warren filed her action with this Court under Title VII, Sections 1981, 1983 within the 90-day filing period. Later, her Complaint was amended to add a State law breach of contract claim. Defendants, PCSSD and six Board members, assert that the inequities in the Mills construction were a byproduct of Dr. Warren's failure to perform her job as Asst. Sup. for Equity. From 2011 through 2016, Commissioner Key served as PCSSD's governing Board, the period that PCSSD was under State Control because of fiscal distress, and as Commissioner of the Arkansas Department of Education ("ADE"). To monitor and to assist PCSSD in complying with the non-unitary sections of its desegregation plan, Plan 2000, ADE sent a review team every four months to conduct on-site monitoring of the non-unitary sections of Plan 2000. ADE's monitoring process is relevant to the question of the plaintiff's performance of her duties as Asst. Sup. for Equity.

## ARGUMENT

COMMISSIONER KEY IS AN ATYPICAL HIGH LEVEL OR "APEX" OFFICIAL

As a general rule, subpoenaing testimony of high level or apex officials is discouraged to avoid the harassment of those who are unacquainted with the details of the litigation before the court unless the apex official has unique or special knowledge or delayed until subordinates or documents have been reviewed. See generally, *Bank of the Ozarks v. Cap. Mortg. Corp.*, No. 4:12-MC-00021 KGB, 2012 WL 2930479, at *1 (E.D. Ark. July 18, 2012); *Celerity, Inc. v. Ultra*

*Clean Holding, Inc.*, No. C 05-4374MMC(JL), 2007 WL 205067, at *2 (N.D. Cal. Jan. 25, 2007). Commissioner Key does not fall within the same category as most "apex" witnesses.

Commissioner Key asserts that he lacks personal knowledge on three topics that are the subject of plaintiff's subpoena for Commissioner Key's testimony: 1) his signed approval of the Mills High School Replacement and Robinson Middle School replacement projects, 2) the construction contract and change order implementing his signed approval, and 3) ADE's monitoring activities of PCSSD by a division that he supervised as Commissioner. Unlike most cases addressing "apex" witnesses, Commissioner Key is asked to testify about his *personal* activity and the monitoring activities of a division within the department he oversaw. Plaintiff concedes that her request for testimony regarding the construction contract and change order implementing Commissioner Key's signed approval involves a time period after Judge Marshall's order designating PCSSD's Superintendent as a sole decision maker (Dkt # 103, exhibit 4, p.105, "Marshall's order") and PCSSD's release from State control (Dkt #103, exhibit 5, p. 107-109, "Release"). Plaintiff withdraws her request for Commissioner Key's testimony on that issue designated as "2" above. However, items 1 and 3 are distinguishable.

1.  Commissioner Key has personal knowledge of a document he signed.

Commissioner Key contends that he lacks personal knowledge of his signed approval of the Mills High School Replacement and Robinson Middle School replacement projects (Plaintiff's Exhibit 1). Commissioner Key argues that because he could not advise the Superintendent pursuant to Judge Marshall's order (Dkt # 103, Marshall's order), Commissioner Key lacks personal knowledge of the document, its terms, his signature, his understanding of the terms, the effect of the document, and his expectations, if any. Contrary to his asserted lack of knowledge, Commissioner Key has special knowledge that none of his subordinates possess.

*Bank of the Ozarks v. Cap. Mortg. Corp., supra.* Furthermore, plaintiff provided Commissioner Key with a copy of the document to refresh his recollection.

        2.        No subordinates can testify about ADE's Monitoring Protocol.

ADE developed an instrument, protocol or system designed to monitor and to assist PCSSD comply with its obligations under its Plan 2000. Every four months, a three to five-person team from the ADE's Division of Public School Accountability visited PCSSD, interviewed personnel, reviewed documents, and investigated PCSSD's compliance with the non-unitary sections of Plan 2000. The members of the team have retired, their direct supervisor retired, no replacements were hired, and the ADE has been reorganized. Moreover, ADE's response to plaintiff's FOIA requesting the monitoring reports supplied by ADE to Defendant PCSSD produced only one signed final report for the May 18, 2016 visit and the unsigned preliminary and final reports for the February 3, 2015 visit. While the testimony of the recipients of the monitoring reports may be helpful, only ADE can testify about its goals, purposes, and accomplishments under the protocol or system.

Finally, on August 31, 2021, plaintiff's counsel interviewed the monitoring team's leader, Willie Morris ("Morris"), at length. Mr. Morris' recollection of the critical facts surrounding the monitoring visits was substantially impaired. In counsel's judgment, any effort to refresh Morris' recollection would constitute the reconstruction of Morris' memory triggering a violation of the ethical duty of candor to this Court, the defendants, and to third parties.

## CONCLUSION

Commissioner Key's role as an apex witness is distinguishable from the role of most top officials. There are special facts within his personal knowledge unknown to his subordinates. The Department he oversees does not have the documents that record the performance of its

monitoring and assisting of PCSSD.  Commissioner Key's subordinates who monitored and assisted PCSSD have retired and were not replaced.  Therefore, the apex doctrine is inapplicable and this Court should order Commissioner Key to appear and testify on the limited topics addressed in plaintiff's subpoena.

                                     Respectfully submitted this 10th day of September, 2021,
                                     <u>Sarah Howard Jenkins</u>
                                     Arkansas Bar #97046
                                     Sarah Howard Jenkins, PLLC
                                     P.O. Box 242694
                                     Little Rock, Arkansas 72223
                                     Phone: (501) 406-0905
                                     sarah@shjenkinslaw.com (email)