**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**


**JANICE HARGROVE WARREN**                                      **PLAINTIFF**


**V.**                          **Case No.:  4:19-cv-655-BSM**


**CHARLES MCNULTY, ET AL.**                                  **DEFENDANTS**


**PLAINTIFF'S FED. R. CIV. P. 26(a)(3) PRETRIAL DISCLOSURES**

1) Submitted by:      Dr. Janice Warren, Plaintiff

2) Counsel for Dr. Janice Warren:

               Sarah Howard Jenkins
               Sarah Howard Jenkins, PLLC
               37 Deauville Circle
               Little Rock, AR 72223
               (501) 406-0905 (office)
               (501) 960-8835 (cell)

               Austin Porter, Jr.
               323 Center St # 1300
               Little Rock, AR 72201
               (501) 224-8200

3) Claims and Relief Sought:
   a) PCSSD is liable for its Board's discriminatory adverse employment act because of

Plaintiff's sex. 42 U.S.C. § 1981a(a)(1); 42 U.S.C. § 1981a(b)(3); 42 U.S.C. § 2000e-

5(g)(1).

       *Relief Sought*:  Title VII Sex Discrimination: Backpay, interest on backpay at the

applicable federal discount rate; Front pay from the date of judgment to 2025,

1

adjusted for raises, bonuses, differences between Plaintiff's retirement benefits, vacation pay, life insurance, medical and health benefits, and that granted to Dr. Charles McNulty, the person hired;

Compensatory damages of $100,000 for humiliation, embarrassment, injury to reputation, opposition on Plaintiff's application for Deputy Superintendent set by the jury;

Interest on back pay from July 1, 2018, to the date of judgment;

Punitive damages: 42 U.S.C. § 1981a(b)(3) of $200,000;

Costs (filing fees, payments for notaries, court reporters, transcript preparation, witness fees); and

Attorneys' fees.

b) PCSSD is liable for its Board's racially discriminatory acts. 42 U.S.C. § 1981a (a)(1); 42 U.S.C. § 1981a(b)(3); 42 U.S.C. § 2000e-5(g)(1).

*Relief Sought*, Title VII Race Discrimination: Backpay, interest on backpay at the applicable federal discount rate to the date of judgment; Front pay from the date of judgment to 2025, adjusted for raises, bonuses, the difference between Plaintiff's vacation pay, retirement benefits, life insurance, medical and health benefits, and that granted to Dr. Charles McNulty, the person hired;

Interest on back pay from July 1, 2018, to the date of judgment;

Compensatory damages of $100,000 for humiliation, embarrassment, injury to reputation, opposition on Plaintiff's application for Deputy Superintendent;

Punitive damages: 42 U.S.C. § 1981a(b)(3) of $200,000;

Costs (filing fees, payments for notaries, court reporters, transcript preparation, witness fees); and

Attorneys' fees.

c) PCSSD Board's engaged in adverse employment actions and violated Dr. Warren's statutory right to challenge racially discriminatory practices by her employer and not be retaliated against for doing so. 42 U.S.C. § 2000e-3(a); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 799 (1973). PCSSD is liable for its Board's racially retaliatory acts. 42 U.S.C. § 1981a(a)(1); 42 U.S.C. § 1981a(b)(3); 42 U.S.C. § 2000e-5(g)(1).

*Relief Sought*, Title VII Retaliation: Backpay, interest on backpay at the applicable federal discount rate to the date of judgment; Front pay from the date of judgment to 2025, adjusted for raises, bonuses, difference between Plaintiff's retirement benefits, vacation pay, life insurance, medical and health benefits, and that granted to Dr. Charles McNulty, the person hired;

Compensatory damages of $100,000 for humiliation, embarrassment, injury to reputation, opposition on Plaintiff's application for Deputy Superintendent;

Punitive damages: 42 U.S.C. § 1981a(b)(3) of $200,000;

Costs (filing fees, payments for notaries, court reporters, transcript preparation, witness fees); and

Attorneys' fees.

d) *Section 1981 Race Discrimination*: Mike Kemp, Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, and Brian Maune decided not to extend Dr. Warren's role as Interim Superintendent or to promote her to Superintendent, excluded her from the pool of

finalists, and hired a lesser qualified White male as Superintendent.  When they willfully

engaged in these adverse employment actions, they did so with malice or with reckless

indifference against Dr. Warren for racially discriminatory reasons.  42 U.S.C. 1981(a)

(b) & (c). PCSSD is liable for the wrongful acts of Mike Kemp, Linda Remele, Shelby

Thomas, Alicia Gillen, Eli Keller, and Brian Maune. 42 U.S.C. § 1981, 42 U.S.C. § 1983;

Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989).

  *Relief Sought*, Section 1981 Race Discrimination by PCSSD: Backpay,

interest on backpay at the applicable federal discount rate to the date of judgment;

Front pay from the date of judgment to 2025, adjusted for raises and bonuses,

based on the difference between Dr. McNulty's and Plaintiff's salary, retirement

benefits, vacation pay, life insurance, medical and health benefits;

  Compensatory damages of $500,000 for humiliation, embarrassment,

injury to reputation, opposition on Plaintiff's application for Deputy

Superintendent;

  Punitive damages, 42 U.S.C. § 1981, $6.5 million;

  Costs (filing fees, payments for notaries, court reporters, transcript

preparation, witness fees); and

  Attorneys' fees.

e) *Section 1981 Race Discrimination* (Board members in their individual capacities): It is

common knowledge that race discrimination in employment is illegal under federal law.

Mike Kemp, Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, and Brian Maune

cannot claim ignorance of this fact.  When they took adverse actions against Dr. Warren

on the basis of race, they did so with malice or with a reckless indifference to Dr.

Warren's right to be free from race discrimination in employment. Moreover, Linda Remele, former Board President, and Shelby Thomas, Board Vice President, attended the January 22, 2018, Arkansas School Board Association training that included a session conducted by PCSSD's legal counsel entitled: "Employing a Superintendent:  From Dating to Divorce" that addressed discrimination in the process of hiring a superintendent.  Linda Remele, former Board President, and Shelby Thomas, Board Vice President had actual knowledge that discrimination in employment is illegal and willfully engaged in illegal, adverse employment acts with malice against Dr. Warren with regard to her federally protected rights.  Therefore, Mike Kemp, Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, and Brian Maune are personally liable for compensatory and punitive damages. 42 U.S.C. § 1981 (a) (b) (c).

*Relief Sought*, Race Discrimination, 42 U.S.C. § 1981 (a) (b) (c), (Board members in their individual capacities):

Compensatory damages of $500,000 for humiliation, embarrassment, injury to reputation, opposition on Plaintiff's application for Deputy Superintendent;

Punitive damages of $6.5 million;

Costs (filing fees, payments for notaries, court reporters, transcript preparation, witness fees); and

Attorneys' fees.

f) *Section 1981 Retaliation Race Discrimination*, 42 U.S.C. §§ 1981, 1983, PCSSD's Liability:  When Mike Kemp, Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, and Brian Maune, retaliated against Dr. Warren for notifying the PCSSD's Attorney of race discrimination by PCSSD, they did so in their capacity as the PCSSD Board and in

their capacity as a final policymaker for the PCSSD.  Therefore, the PCSSD is liable for their wrongful acts. 42 U.S.C. §§ 1981 (a)(b)(c), 42 U.S.C. § 1983; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-483 (1986) (plurality opinion).

> *Relief Sought*, Section 1981 Retaliation Race Discrimination by PCSSD:

> Backpay, interest on backpay at the applicable federal discount rate to the date of judgment;

> Front pay, from the date of judgment to 2025, adjusted for raises and bonuses, based on the difference between Dr. McNulty's and Plaintiff's salary, retirement benefits, vacation pay, life insurance, medical and health benefits;

> Compensatory damages of $500,000 for humiliation, embarrassment, injury to reputation, opposition on Plaintiff's application for Deputy Superintendent;

> Punitive damages, 42 U.S.C. § 1981, $6.5 million;

> Costs (filing fees, payments for notaries, court reporters, transcript preparation, witness fees); and

> Attorneys' fees.

g) *Section 1981 Retaliation* (Board members in their individual capacities):  It is common knowledge that race discrimination in public education is illegal under federal law. *Cooper v. Aaron*, 358 U.S. 1, 78 S.Ct. 1401 (1958); *Little Rock School Dist. v. Pulaski County Special School Dist. No*. 1, 921 F.2d 1371 (8th Cir. 1990).  Mike Kemp, Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, and Brian Maune cannot claim ignorance of this fact. Thus, when they retaliated against Dr. Warren for notifying the PCSSD's attorney and, thereby, the Federal Court of racial discrimination in the construction of PCSSD's facilities, they were aware of Dr. Warren's right to be free from

race discrimination by her employer and acted intentionally not accidentally with malice or with a reckless indifference to Dr. Warren's right to be free from race discrimination by her employer. Consequently, they are personally liable for compensatory and punitive damages. 42 U.S.C. § 1981(a)(b)(c).

*Relief Sought*, Section 1981 Retaliation (Board members in their individual capacities):

Compensatory damages of $500,000 for humiliation, embarrassment, injury to reputation, opposition on Plaintiff's application for Deputy Superintendent;

Punitive damages of $6.5 million;

Costs (filing fees, payments for notaries, court reporters, transcript preparation, witness fees); and

Attorneys' fees.

h) *Race & Sex Discrimination*, 42 U.S.C. § 1983, Board members in their individual capacities:  When Mike Kemp, Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, and Brian Maune engaged in adverse employment actions, they deprived Dr. Warren of her Federal statutory rights to free of race and sex discrimination in employment and contractual relations. Mike Kemp, Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, and Brian Maune are liable in their individual capacities for the harm that resulted.  42 U.S.C. §§ 1983, 1981(a) (b) & (c), and 2000e; *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Giron v. City of Alexander*, 693 F. Supp.2d 904 (E.D. Ark. 2010).

*Relief Sought*:

Backpay, interest on backpay at the applicable federal discount rate;

7

Front pay, from the date of judgment to 2025, adjusted for raises and bonuses, based on the difference between Dr. McNulty's and Plaintiff's salary, retirement benefits, vacation pay, life insurance, medical and health benefits;

Compensatory damages of $500,000 for humiliation, embarrassment, injury to reputation, opposition on Plaintiff's application for Deputy Superintendent;

Punitive Damages:  $1.5 million, Dr. Linda Remele; $1 million each, Gillen, Keller, Kemp, Maune, and Thomas;

Costs (filing fees, payments for notaries, court reporters, transcript preparation, witness fees); and

Attorneys' fees.

i) *Breach of Contract*:    Dr. Warren's 2017-2018 agreement with PCSSD was an enforceable contract. Both Dr. Warren and PCSSD provided consideration for the other's promises. PCSSD Personnel Policies for Certified Staff (2017-2018) required an annual evaluation of staff, promised to grant an interview to qualified internal candidates if they applied for jobs, and authorized a hiring preference for promoting internal candidates over hiring equally qualified external candidates. The Board's personnel policies were incorporated into Dr. Warren's annual contract with PCSSD.  Ark. Code Ann. § 6-17-204(a) (2018). Although the Board had five significant opportunities to give Dr. Warren with a formal written evaluation for her service as Interim Superintendent, it did not.

The Board's policy-preference of promoting internal candidates applied to the Board's processes in selecting a Superintendent in 2018.  The Board had a duty of substantial compliance with its declared policy to prefer Dr. Warren as a qualified internal candidate and to grant her an interview when selecting the three finalists and the

8

person to be offered the position of Superintendent.  *McElroy v. Jasper School Dist.*, 617

S.W.2d 356, 273 Ark. 143 (Ark. 1981); *Helena-West Helena School Dist. No. 2 v.*

*Randall*, 796 S.W.2d 586, 32 Ark.App. 50 (Ark. App. 1990).

      Dr. Warren was a qualified internal certified candidate for the 2018 position of

PCSSD Superintendent.  The Board had a contractual duty to determine if Dr. Warren

was entitled to a preference in their consideration of the individuals for interviews as

finalists. The Board did not discuss its policy and did not assess Dr. Warren's entitlement

to an interview or to a hiring preference.  The Board had no rational basis for denying Dr.

Warren a preference in the hiring processes for Superintendent or for denying her an

interview.  The Board failed to adhere to its statutory and contractual duty of substantial

compliance with its policies. Dr. Warren's abilities, qualifications, and credentials

exceeded the abilities and qualifications of the three men selected as finalists, including

Dr. Charles McNulty who was offered the position of Superintendent. PCSSD breached

its contract with Dr. Warren and must answer in damages.

      *Relief Sought*, Breach of Contract: expectation measure of damages, $215,000 per

year for a reasonable time, plus prejudgment interest from the date of the breach to the

date of the judgment entered by this Court, post-judgment interest at the maximum rate

allowed by law, and her attorneys' fees and costs.  Ark. Code Ann. § 16-22-308; *Curry v.*

*Thornsberry*, 128 S.W.3d 438 (2008).

  j)  All equitable relief to which Dr. Janice Warren may be entitled.

4)  Prospects for settlement:  NONE

5)  This Court's jurisdiction:

  a)  The bases of the Court's subject matter jurisdiction:

    This Court has subject matter jurisdiction over this cause of action under 28 U.S.C. § 1331

because this is a civil action arising under the laws of the United States, specifically 42 U.S.C. §§ 1981, 1983, 2000e-2(a)(1), 2000e-2(a)(2), 2000e-3(a), and 2000e-5(f)(1).

This Court has Supplemental Jurisdiction over Dr. Warren's state law claim against PCSSD pursuant to 28 U.S.C. § 1367(a). Dr. Warren's state law claim arises from the same nucleus of operative facts asserted against PCSSD and the PCSSD Board members in their official and individual capacities such that Dr. Warren's state law claim is essentially the same case or controversy under Article III of the United States Constitution. Dr. Warren, as a plaintiff, would be expected to try these claims in one judicial proceeding. *Osborn v. The President, Directors, and Company of the Bank of the United States*, 22 U.S. (9 Wheat.) 738, 822-28 (1824); see also *Kokkonen v. Guardian Life Ins. Co*., 511 U.S. 375 (1994) (discussing the two purposes of ancillary jurisdiction, the first purpose is applicable here).

b) This Court's personal jurisdiction:

This Court has personal jurisdiction over defendants Mike Kemp, Linda Remele, Shelby Thomas, Alicia Gillen, Eli Keller, Brian Maune, and PCSSD because at all times relevant to this cause of action, each of the foregoing had continuous and systematic contacts with the State of Arkansas that are sufficient to justify the State's exercise of judicial power with respect to all claims Dr. Warren may have against each of them. *Int'l Shoe Co. v. Washington*, 316 U.S. 310, 317 (1945) (citations omitted).

6)    A list of pending motions:

a)    Plaintiff's First Motion to Compel Disclosure of Public Records Subject to Arkansas Freedom of Information Act Request, filed 01/08/2022, Dkt. No. 121;

b)    Defendants' Motion for Consideration to Regulate Plaintiff's FOIA Requests; filed 01/10/2022, Dkt. No. 124.

7) Summary of the facts:

STATEMENT OF FACTS

In 2012, the 31st year of PCSSD's Federal Court supervision, former Superintendent Dr. Jerry Guess urged Dr. Janice Warren to join his team as PCSSD's Director of Elementary Education. Dr. Warren served as Crossett School District's ("Crossett") Superintendent from 2001 through 2011. During her tenure, she substantially reduced the achievement gap between White and Black children and re-established Crossett's fiscal integrity.

With more than ten years of successful multicultural education experience at the district level, Janice Warren commenced her service at PCSSD's with an infectious smile that communicated to all, "We can get this done!" In May of 2013, the duties of Interim Assistant Superintendent for Equity and Pupil Service were added to her responsibilities.  Margie Powell, then Federal Monitor in the Little Rock Office of Desegregation Monitoring for the United States District Court, observed in her 2014 *Update on the Status of PCSSD's Implementation of Its Desegregation Plan,* that after a little more than a year, while assigned both the fulltime roles of Interim Assistant Superintendent for Equity and Pupil Services and Director of Elementary Education "managed to shepherd the District to within reach of obtaining unitary status." Plaintiff's Exhibit 2, p. 40.

In an unlikely turn of events the new Board, six months in its infancy terminated Superintendent Guess on July 18, 2017.  The Board didn't like his handling of the then 36-year desegregation lawsuit. Dr. Warren, a Black female, was asked to assume the leadership role.  She was PCSSD's first female leader and the third Black to hold the office of Interim Superintendent. In its recorded 34-year history, PCSSD hired six White males and three Black males to serve as Superintendent

Dr. Warren signed her contract on August 8, 2017.  Pursuant to Arkansas Law, the

Board's Certified Personnel Policies, including customary procedures, were a part of her contract. Ark. Code Ann. §§ 6-13-620(5)(A)(i)(c)(2017), § 6-13-620(5)(A)(i)(b)(2)(2017). The Certified Personnel Policies imposed on the Board:  1) the duty to evaluate its certified staff annually and to provide written evaluations, 2) the obligation to grant qualified certified staff an interview if they applied for a job opening, and 3) to grant qualified, certified staff a hiring preference over equally qualified, external candidates. The Board did not comply with its contractual obligations.

Disparate treatment by the PCSSD Board commenced, immediately.  Led by Dr. Linda Remele, the White female Board President, the Board set Dr. Warren's salary at $195,000. This salary was $20,000 or 9.3% less than Dr. Guess received annually from 2011-2016, during PCSSD's status of fiscal distress under Arkansas Law, for the same work. Although PCSSD faced new financial challenges in 2014, PCSSD acknowledged in 2014 that its "repeated non-compliance with audit findings and a declining reserve balance" were the cause of its fiscal distress designation not its operating funds. PCSSD's Motion to Supplement Plan 2000 As It Pertains to Facilities, filed December 15, 2014, *LRSD v. PCSSD*, 4:82-cv-00866 (Dkt. No. 5084). Despite the inequitable salary, Dr. Warren commenced her tenure as Interim Superintendent with a "flawless transition and commencement of the academic school year."  Plaintiff's Exhibit 41, Board Minutes, August 8, 2017.  Shortly, thereafter, racial inequities in the construction of District facilities, harkening back to the 1950's separate and unequal treatment of Blacks, were revealed.

On August 24, an irate Mills parent called Dr. Warren and complained about the inequitable construction of Mills High School's athletic facility in the predominately Black community as compared with the Robinson Middle School athletic facility in a predominately

White community.  After assessing the validity of the complaint, Dr. Warren notified each Board member and the PCSSD's attorney. With PCSSD's Attorney, Sam Jones, she began a proactive process of notifying, correcting, and minimizing as much as possible more than a twenty-million-dollar act of racial injustice to the predominately Black community. Chief Justice Price Marshall later commended PCSSD on its proactive notification to the Court of the problems and cited this act as a factor in determining PCSSD's good faith performance of Plan 2000 when he released PCSSD from court supervision, except as to Mills High School, in May of 2021.

Seven days after PCSSD file its updated status report notifying the Court of the construction inequities and four days after the status hearing in Federal Court, Dr. Remele began a campaign to discredit and taint Janice Warren's impeccable professional history.  At the September 12, 2017, Board meeting, the Board, as an official act, decided to commence its search for a permanent superintendent.  Dr. Warren was wrongfully accused of a lack of fiscal integrity because she approved, in July of 2017, the Executive Director of Operations' recommendation that the Superintendent's office be painted, as planned in the SRM budget and ordered a desk to replace the one resting on a stack of bricks.

Motivated by racial animus and "same class" bias, Remele told the 25-year district level education veteran, "We don't air our dirty laundry" and "Just keep the ship afloat." "You're just an interim." (Dkt. No. 40, Exhibit 12, pp. 103, line 23 - p. 104, line 25, Warren Deposition; Dkt. 40, Exhibit 9, p. 139, line 22 - p. 140, line12, Deposition of Linda Remele ("Remele Deposition"). Linda Remele began compiling her list of malicious criticisms and false, factually erroneous accusations not within her personal knowledge ("Remele's List").  This list is being championed as evidence of legitimate nondiscriminatory reasons for the Board's retaliatory conduct of not including Janice Warren in the pool of finalists and not hiring her as the

permanent Superintendent.  These allegations are a pretext to cover the Board's intentional discrimination.

When Jerry Guess, a White male, was the PCSSD's leader, he operated insulated, functioning independently as a "silo with zero communication." Dkt. No. 40, Exhibit 10, Gillen Deposition, p. 45, line 23 through page 46, line 18. In contrast, Dr. Remele had staff to monitor and report the Interim Superintendent's every move; Releme called building principals and inquired about the Interim Superintendent's presentations and discussions. "I hear."  "They tell me."  "I told you."  These words often fell from Remele's lips. This was the environment in which the first Black female Interim Superintendent worked.

At the November 14, 2017, Board meeting, Remele and Gillen verbally attacked Dr. Warren's performance again with their lists of accusations further poisoning the perception of the Board's silent male majority membership against Dr. Warren's suitability for the position.  That same night, the first Board received its first presentation on superintendent search services and the second on November 29, 2017.  At its December 12, 2017, the Board voted to hire Ray and Associates, located in Cedar Rapids, Iowa. The PCSSD Board did not give Dr. Warren an evaluation of her performance as Interim Superintendent before it hired Ray and Associates.

Ray and Associates posted the PCSSD's Superintendent advertisement online; Dr. Warren applied for the position before the March 12, 2018, deadline. Thirty-six individuals submitted applications for the opening, 14 women and 22 men.  On March 27, 2018, Ray and Associates presented nine individuals, including Dr. Warren, two Black females and seven men -- three White and four Black, screened as Top Candidates among those who satisfied PCSSD's ten qualifications.  These nine were recommended to the PCSSD Board for interviews.

On March 27, 2018, the PCSSD Board selected three males, two Black and one White,

14

for final interviews. In violation of her contract rights as a qualified certified employee and its

own policies, the Board did not invite Dr. Warren to interview. The PCSSD Board did not give

Dr. Warren a reason for not including her as a finalist, and the Board did not provide her with an

evaluation of her performance as Interim Superintendent.  Dr. Warren's experience and

credentials exceeded those of the three men selected for interviews, including Dr. Charles

McNulty, the sole White male the candidate selected interviews and, ultimately hired, for the

position.  Dr. McNulty's credentials exceeded that of the two Black males invited to interview.

One of the two Black males withdrew before his scheduled interview because he lacked teaching

experience, a minimum requirement for the issuance of an Arkansas Superintendent's license.

Dr. Remele does not dispute that Dr. Warren was qualified for the position of

Superintendent and does not dispute that Dr. Warren did not become less qualified for the

position of Superintendent between the time Dr. Warren was appointed Interim Superintendent

and when Dr. Warren applied for the position of Superintendent. Dkt. No. 40, Exhibit 61, p. 40

Remele Dep., *Beasley v. McNulty*. The Board did not include Dr. Warren among the finalists and

did not grant Dr. Warren an interview.  The Board did not discuss, as part of their processes, Dr.

Warren's right to a hiring preference as a qualified internal certified candidate as required by

PCSSD's Board Policies for Certified Personnel.  On April 3, 2018, the Board hired a lesser

qualified White male external candidate.

Dr. Warren filed a charge with the EEOC and, thereafter, received her right to sue letter.

Within the 90-day filing period, Dr. Warren filed this action under Title VII, Section 1981 and

Section 1983.  Later, her Complaint was amended to add a State law breach of contract claim.

8)  Proposed stipulations:

  (a). Plaintiff's work history at PCSSD;

  (b). Plaintiff's salary at all times employed at PCSSD;

(c).    Plaintiff's contracts at PCSSD;

(d).    Superintendent McNulty's Contracts;

(e).    Superintendent Guess' Contracts;

(f).    Admissibility of all documents disclosed by PCSSD in response to FOIA request as Public Records within Fed. R. Evid. 803(8).

9) Contested Issues of Fact:

a)  Thirty-six individuals applied for the position of PCSSD Superintendent, 14 women and 22 men.  Nine top candidates were presented to the Board and recommended for interviews.  Whether the remaining 28 applicants were qualified or unqualified for the position of superintendent and whether Ray and Associates based its recommendation solely on the data collected during its processes are contested facts.

b)  Whether the video presentations of the nine top candidates to the Board by Ray and Associates was an interview.

c)  Whether the Board substantially complied with reviewed Dr. Warren's application and assessed her right to a hiring preference as required by the PCSSD Certified Personnel Policies.

d)  Whether the Board Member's completion of the "Matrix for Reaching Candidate Consensus" was a substantially subjective or an objective process.

e)  Whether "multiple" or only two White female Board members developed serious concerns about Dr. Warren's performance during her tenure as Interim Superintendent.

f)  Whether the Superintendent, including her cabinet, or the Board has responsible for the day to day operations of the district such as the determining the needed for appropriate maintenance and care of District facilities, including the Superintendent's suite, the purchasing of furniture, painting, ordering of materials and supplies.

g) Whether Dr. Remele, in violation of Board Policy, was intruding into the day-to-day administration of the District, the purview of the Superintendent during 2017-2018.

h) Whether a Federal mandate necessitated the reorganization of PCSSD testing.

i) Whether the four high school Testing Coordinators were being paid but they were not working.

j) Whether before ordering the gift umbrellas, Dr. Warren made the decision to be responsible for the gift to the Central Office staff.

k) Whether Dr. Warren notified the Board of the September 5, 2017, status report before it was filled.

l) Whether Dr. Warren represented to the PCSSD's attorney, Sam Jones, that the Board supported the document.

m) Whether the alleged October 26, 2017, incident at Sylvan Hills Freshman Academy created an imminent or immediate threat.

n) Whether Dr. Warren's contractual obligations were comparable to those of Dr. Jerry Guess and Dr. Charles McNulty

o) Whether Dr. Linda Remele received information regarding the applicants designated as Top Candidates from Ray and Associates before the March 27, 2018, Board meeting.

p) Dr. Warren's right to and amount of compensatory and punitive damages.

10) Contested Legal Issues:

a) Whether Dr. Remele's List of Concerns and testimony regarding her List are inadmissible.

b) Whether Alicia Gillen's List of Concerns and testimony regarding her List are inadmissible.

c) Whether the Defendants purported legitimate nondiscriminatory reasons are a pretext for intentional discrimination.

d) Whether Plaintiff was discriminated against because of her sex.

e)  Whether Plaintiff was discriminated against because of her race.

f)  Whether the Board retaliated against Dr. Warren because of her stance against race discrimination as prohibited by Title VII.

g)  Whether Dr. Warren was retaliated against as prohibited by Section 42 U.S.C. 1981.

h)  Whether Dr. Warren suffered Race Discrimination as prohibited by 42 U.S.C. § 1981.

i)  Whether Dr. Warren suffered Race & Sex Discrimination as prohibited by 42 U.S.C. § 1983.

j)  Whether PCSSD breached its contract with Dr. Warren.

k)  Whether the Dr. Warren is entitled to equitable relief.

11)  A list and brief description of exhibits, documents, charts, graphs, models, schematic diagrams, summaries, and similar objects which may be used in opening statement, closing argument, or any other part of the trial, other than solely for impeachment purposes, whether or not they will be offered in evidence. Separately designate those documents and exhibits which the party expects to offer and those which the party may offer.

**a)      Documents and other things Plaintiff expect to offer**:

August 2017 Video of Mills High School and Robinson Middle School

Margie Powell, 2014 Update: Status of PCSSD's Implementation of Desegregation

Judge Marshall's Order Case No. 4-82-cv-00866 (Dkt No. 5652) July 2, 2021

PCSSD Plan 2000

Dr. Warren's / Atty Sam Jones email exchange

PCSSD's September 5, 2017, Supplemental Status Report

PCSSD's Letter of Notice of Fiscal Distress Declaration

PCSSD's Letter of Notice of Release from State Control and Fiscal Distress

SY 17-18 SRM Projects

Powell's 7th Summary Report Monitoring, Doc 5559, filed 01/10/20

Board Responses to Plaintiff's Interrogatories

PCSSD Superintendent Applicant Pool

Videos of Nine Top Candidates

Ray and Associates Criteria and Procedures for PCSSD Board Interview Process

Ray and Associates PCSSD Interview Questions

PCSSD's Superintendent Ad

The PCSSD Superintendent Search Approved Process and Timeline

Ray and Associates, Regional Superintendents Salary Chart (Arkansas 2015-2018)

Ray and Associates Superintendent Search Results

Candidate Comparison Chart (Warren, McNulty, Pruitt, and Harris) & Affidavit

PCSSD's Transfer and Promotion Policy

PCSSD's Board Policies, Sections 1 & 2

PCSSD's Elementary Principals' (100%) Letter in Support of Dr. Warren

Teacher's Letter regarding Staff's Perspective of Dr. Warren

Citizen's Comment regarding Dr. Warren's Service

Contract Emp'ee: email regarding Dr. Warren's service as Interim Superintendent

Employees' (65) Signed Petition regarding Dr. Warren's exclusion

Dr. Janice Warren's Interim Superintendent's Contract date 8/8/2017

Dr. Jerry Guess' Superintendent Contracts (2011-2018)

Dr. Charles McNulty's Superintendent Contract (2018-2021)

PCSSD/Joshua Monitoring Meeting Minutes November 30, 2016 (Dec 7, 2016)

PCSSD/Joshua Monitoring Meeting Minutes April 20, 2016 (April 22, 2016)

PCSSD/Joshua Monitoring Committee Minutes Feb. 17, 2016

PCSSD/Joshua Monitoring Committee Minutes May 27, 2015

PCSSD/Joshua Monitoring Committee Minutes December 4, 2013

Daniel Boone Area School District 2017-2018 Student Body Racial Composition

Houston Independent School District 2017-2018 Student Body Racial Composition

Dr. Janice Warren's 2018 Application for PCSSD Superintendency

Dr. Charles McNulty's 2018 Application for PCSSD Superintendency

ADE 2017 Monitoring Reports

Ms. Alesia Smith's & Dr. Janice Warren's Applications for Deputy Superintendent

PCSSD Cabinet Job Descriptions:  Superintendent, CFO, Asst. Sup. Equity & Pupil
        Service, Executive Director of Operations

Powell's Robinson/Mills Sports Complex Report, Doc 5343, filed 11/09/17

PCSSD 2016-2017 Monitoring and Compliance Report

PCSSD Facilities Board Processes

ABSA, Legal Seminar Handout Employing a Superintendent

PCSSD's 10/24/19 Motion for Unitary Status

Board Minutes: 7/18/2017, 8/8/2017, 9/12/2017, 11/14/2017, 11/29/2017,
        12/12/2017, 3/27/2018, 4/3/2018

Commissioner Key & Dr. Jerry Guess' March 15, 2016, Agreement

Images of the PCSSD 2017-2018 Board of Education

PCSSD Overtime Policy

Purchase order for 150 umbrellas

Dr. Janice Warren's personal check for $2436.84

Principal West's Sworn Affidavit

Police Report Regarding Robinson Gun Incident

Earnest Duckery Deposition Exhibits

Employee's Redated Letter regarding fear of retaliation

PCSSD's Constituent/Employee Meetings: Ten Top Themes & Summaries

ASBA Handbook

PCSSD's Superintendent's racial and gender history

PCSSD & Joshua Staffing Stipulations & Court's Order

Minutes and emails of PCSSD's Facilities Board and Facilities Working Group

Mediation Agreement Bowles

Settlement Agreement (Norma Dixon)

Settlement Agreement and Release (Nellums)

Dr. Eric Pruitt's 2018 Application for PCSSD Superintendency

Mr. James Harris' 2018 Application for PCSSD Superintendency

Ray and Associates PCSSD 30 Qualities Survey

Ray and Associates PCSSD Constituent/Staff/Board Survey Results

WD&D emails regarding Mills Construction

Any document disclosed by PCSSD in response to FOIA

All documents identified during any discovery or deposition in this litigation

All Interrogatories submitted by the defendants in this litigation

Any document attached to any pleading or motion filed in this litigation

**b)** **Documents and other things Plaintiff may offer**:

Cabinet Job Description: Director of Transportation

Transportation 2019 Memo (zoning) Budget Allocations

(12)  The names, addresses and telephone numbers of witnesses for the party. Separately identify

witnesses whom the party expects to present and those whom the party may call. Designate

witnesses whose testimony is expected to be presented via deposition and, if not taken

stenographically, a transcript of the pertinent portion of the deposition testimony.

a.       Witnesses Plaintiff expect to call:

Paul Brewer
217 Gregory Dr
Hot Springs, AR 71913
(501) 412-4301

Dr. Jerry Guess
178 Gray Fawn Trl
Camden, AR 71701
(501) 515-3302

Tommy Farmer
7234 Havenwood Drive
Benton, AR 72019-8907
(501) 993-4795

Jeff Senn
 Superintendent Lonoke Schools
401 West Holly Street
Lonoke, AR 72086

Pam Fitzgiven
41 Single Oaks
Sherwood, AR 72120
501) 773-9416

Earnest Duckery

Whittenberg, Delong and Davison,
5050 Northshore Ln
North Little Rock, AR 72118
(501) 376-6681

Molly Schwarzhoff
3250 Linn Buchanan Rd
Walker, IA 52352

Mr. Johnny Key
Commissioner of Education
Arkansas Department of Education
4 Capitol Mall
Little Rock, AR 72201

Lajuana M. Green
22 Pine Breeze Ct
Little Rock, AR 72210
(501) 804-6427

Sherman Whitfield
20 Norfork Dr
Maumelle, AR 72113
(501) 952-3570

Denise Palmer
190 Northwind Ln
Cabot, AR 72023
(501) 605-7033

Brady M. Bratcher
12 Crestview CT
Maumelle, AR 72113
(501) 517-8929

Pastor John Tackett
421 Eagle St
Lonoke, AR 72086
(501) 676-6111

Emma Watson
103 Blackburn
Little Rock, AR 72211
(501) 804-5605

John L McCraney

607 Russenberger Rd # D
Little Rock, AR 72206
(479) 270-4341

Deborah R. Roush
4 Fairway Woods Circle
Maumelle, AR 72113
(501) 891-2333

Yvone West
8800 Tall Pines CT
Sherwood, AR 72120
(870) 636-3298

Dr. Charles R. McNulty
74 Clervaux Dr
Little Rock, AR 72223

Shawn D. Burgess
8 Seneca Cv
Maumelle, AR 72113
(501) 920-6936

Curtis Johnson
1108 South Cross
Little Rock 72202
(501) 772-2804

Dr. Linda Gay Remele
1406 Hawkwood Road
Sherwood, Arkansas 72120

Alicia Gillen
c/o Cody Kees

Shelby Thomas
c/o Cody Kees

Brian Maune
c/o Cody Kees

Eli Keller
c/o Cody Kees

Mike Kemp
c/o Cody Kees

Jimmy Warren, Jr.
2330 Quattbaum Cove
Conway, AR 72034

Dr. Janice Warren
c/o Plaintiff's Counsel

Jeff Harrison
P.O. 560
Crossett, AR 71635
870-304-6989

Norman Hill
205 Main Street,
Crossett, AR 71635
(870) 364-3112
(870) 460-5366

Margie Powell
(501) 920-8857

     b)  Plaintiff may call:

Will Reid
39 Pelham Ridge Dr,
Greenville, SC 29615
(501) 786-9557
(864) 349-4500 (w)

Carl Davis
Ray and Associates
(678) 438-1525

Michelle Oliver Johnson
(501) 234-2917

(13)  The current status of discovery, a precise statement of the remaining discovery and an

estimate of the time required to complete discovery.  COMPLETED


(14)  An estimate of the length of trial and suggestions for expediting disposition of the action.

Plaintiff anticipates four (4) days for its case in chief.  Plaintiff objects to defendants'

questioning plaintiff's witnesses during her case in chief.

Respectfully submitted this 14th day of January, 2022,
<u>Sarah Howard Jenkins</u>
Arkansas Bar #97046
SARAH HOWARD JENKINS, PLLC
P.O. Box 242694
Little Rock, Arkansas 72223
Phone: (501) 406-0905
sarah@shjenkinslaw.com (email)