**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**JANICE HARGROVE WARREN**                                                **PLAINTIFF**

**v.**                                          **No. 4:19-cv-00655-BSM**

**MIKE KEMP, et al.**                                                         **DEFENDANTS**

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION TO ALTER OR AMEND THE JUDGMENT

Defendants, by their attorneys, Bequette, Billingsley & Kees, P.A., respectfully submit this Brief in Support of their Rule 50 Motion for Judgment as a Matter of Law or, in the Alternative, Rule 59 Motion to Alter or Amend the Judgment ("Motion"). For the reasons discussed herein, Defendants' Motion should be granted.

## INTRODUCTION

The Court entered Judgment [ECF Doc. 176] in this matter on March 10, 2022, following the jury verdict [ECF Doc. 171] returned on February 25, 2022. Judgment was entered after the Court partially granted PCSSD's Motion for Directed Verdict, which set aside punitive damages as to Defendant PCSSD, only. The Judgment includes punitive damages against individual Defendants Linda Remele and Alicia Gillen, both former PCSSD Board members at all times relevant. As a matter of law, punitive damages cannot be assessed against Remele and Gillen. Furthermore, the jury's verdict must be set aside as Warren did not engage in protected activity.

## STANDARD OF REVIEW

Rule 50 permits a district court to grant judgment as a matter of law to a moving party following a trial if the district court finds that the nonmoving party "has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party

on that issue." *Henderson v. Simmons Foods, Inc.,* 217 F.3d 612, 615 (8th Cir. 2000), citing Fed. R. Civ. P. 50(a)(l).

The Court will view the evidence most favorably to the nonmoving party and draw all reasonable inferences in its favor. *Liberty Mut. Fire Ins. Co. v. Scott*, 486 F.3d 418, 422 (8th Cir. 2007). However, "a mere scintilla of evidence is inadequate to support a verdict." *Id.* (quoting *Larson v. Miller*, 76 F.3d 1446, 1452 (8th Cir. 1996)). If the jury would have had to resort to speculation to reach its verdict, then judgment as a matter of law is appropriate. *Id.*; Fed. R. Civ. P. 50(a)(l).

A party may file a motion to alter or amend a judgment within 28 days of the entry of the judgment. *Chapman v. Hiland Partners GP Holdings, LLC*, 862 F.3d 1103, 1111 (8th Cir. 2017); Fed. R. Civ. P. 59(e). Rule 59(e) motions are proper if they "serve the limited function of correcting manifest errors of law." *Ryan v. Ryan*, 889 F.3d 499, 507 (8th Cir. 2018) (quoting *U.S. v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir.2006)). A manifest error of law is something more than a disagreement with a party's "free-floating arguments about the polices and purposes" of a law, or with "a solitary unpublished and nonbinding decision" from another jurisdiction. *Albright v. Mountain Home School Dist.*, Case No. 3:16-cv-3011, *2 (W.D. Ark. 2017). A manifest error exists if the jury reaches a conclusion that is contrary to unambiguous, clearly established law. *Henderson v. Globallab Solutions, Inc.*, 310 F.R.D. 400, 406-07 (W.D. Ark. 2015) (jury award of damages for negligent infliction of emotional distress was manifest error of law when Arkansas law applied, and Arkansas does not recognize the tort).

## ARGUMENT

### I.   Punitive Damages Against Remele and Gillen Must Fail as a Matter of Law.

The jury awarded punitive damages against individual defendants Remele and Gillen in response to Plaintiff's retaliation claim. *See* Verdict Form, ECF 171. Plaintiff's retaliation claim,

inclusive of her request for punitive damages, was combined on the verdict form to include her separate retaliation claims under Title VII and 42 U.S.C § 1981. *See* Plaintiff's Proffered Jury Instructions, ECF Doc. 168, pp. 31 and 45. Notably, Plaintiff neither submitted nor proffered a retaliation jury instruction under 42 U.S.C. § 1983. This is because § 1983 does not provide a private cause of action for retaliation on the basis of Plaintiff's conduct; § 1983 only provides a retaliation claim when the underlying activity arises under the First Amendment, which was never pled nor raised in this case. *Burton v. Martin*, 737 F.3d 1219, 1236 (8th Cir. 2013). At bottom, Plaintiff's retaliation claims stem from Title VII and 42 U.S.C. § 1981, and neither cause of action allows punitive damages against Remele or Gillen.

As a matter of law, Title VII does not provide for individual capacity claims; therefore, the punitive damages against Remele and Gillen could not have been assessed against them under Title VII. *See Roark v. City of Hazen, Ark.*, 189 F.3d 758, 761 (8th Cir. 1999); *see also Bales v. Wal-Mart Stores, Inc*., 143 F.3d 1103, 1111 (8th Cir. 1998), and *Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1147 (8th Cir. 2008) (no individual liability under Title VII).

Section 1981 claims do provide a cause of action for retaliation, but not against state actors. *Onyiah v. St. Cloud State Univ.*, No. 19-3162, 2021 U.S. App. LEXIS 21687, at *4 (8th Cir. July 22, 2021); *Jones v. McNeese*, 746 F.3d 887, 896 (8th Cir. 2014); *Flowers*, 558 F.3d at 800; *Lockridge v. Bd. of Trs. of U. of Ark.*, 315 F.3d 1005, 1007 (8th Cir. 2003); *Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1181 (8th Cir. 1998). Since Remele and Gillen are state actors, they cannot be subject to a claim under § 1981. *See Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 735-36, 109 S. Ct. 2702, 2723 (1989) (holding a school district is a state actor and immune under §1981).

Even if Plaintiff had filed her § 1981 retaliation claim under § 1983 (*see Artis*, 161 F.3d at 1182, noting that "A federal action to enforce rights under § 1981 against a state actor may only

3

be brought pursuant to § 1983"), that avenue would also fail because, as noted above, § 1983 does

not provide a vehicle for bringing a retaliation claim based on the conduct at issue in this case.[1]

Because a claim for punitive damages must fail where there is no support for the underlying

claims (*see Feltmann v. Sieben*, 108 F.3d 970, 977 (8th Cir. 1997), cert. denied, 139 L. Ed. 2d 752,

118 S. Ct. 851 (1998)), Plaintiff has no avenue to bring a retaliation claim under either §§ 1981 or

1983.

## II.     The Verdict Must Be Set Aside, as Plaintiff Failed to Establish She Engaged in Protected Activity that Gives Rise to a Retaliation Claim Under Either Title VII or § 1983.

Plaintiff's retaliation claim was combined on the verdict form to include her separate

retaliation claims under Title VII and 42 U.S.C. § 1981.  *See* Plaintiff's Proffered Jury Instructions,

ECF Doc. 168, pp. 31 and 45.  Plaintiff's enforcement of her § 1981 rights had to be brought under

§ 1983.  *See Artis*, 161 F.3d at 1182 (8th Cir. 1998).  The Court's instruction as to retaliation

---

[1] *See Burton*, 737 F.3d at 1236 (8th Cir. 2013) (reversing district court's denial of qualified immunity on plaintiff's equal-protection retaliation claim because no established right exists under the Equal Protection Clause to be free from retaliation; "The right to be free from retaliation is clearly established as a First Amendment right and as a statutory right under Title VII; but no clearly established right exists under the equal protection clause to be free from retaliation. We have only recognized that § 1983 provides a vehicle for redressing claims of retaliation on the basis of the First Amendment," and "[n]owhere in [the plaintiff's] complaint does he allege retaliation on the basis of the First Amendment"); *Tyler v. Univ. of Ark. Bd. of Trs*., 628 F.3d 980, 986 (8th Cir. 2011) ("Although section 704(a) of Title VII may not be the basis for a retaliatory discharge claim in a § 1983 action, § 1983 provides a vehicle for redressing claims of retaliation on the basis of the First Amendment."); (*Zimmerman v. Arkansas Dep't of Fin. & Admin*., No. 5:17CV00160, 2018 U.S. Dist. LEXIS 17319, 2018 WL 700850, at *3 (E.D. Ark. Feb. 2, 2018) (plaintiff could not bring retaliation claim under § 1983 because no established right exists under the Equal Protection Clause to be free from retaliation; there is such a right under the First Amendment, but plaintiff did not reference First Amendment in complaint) (citing *Burton*); *cf. Engquist v. Oregon Dep't of Agr*., 553 U.S. 591, 605, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008) ("we have never found the Equal Protection Clause implicated in the specific circumstance where . . . government employers are alleged to have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner"); *see also Benson v. City of Lincoln*, No. 4:18CV3127, 2019 U.S. Dist. LEXIS 67526, at *23 (D. Neb. Apr. 22, 2019) ("In the absence of a First Amendment claim (and there is not one here), there is no constitutional right under the Equal Protection Clause to be free from retaliation.") (citing *Burton*); and *Gouldblum v. Ark. Dep't of Human Servs*., No. 4:16-cv-00936-KGB, 2018 U.S. Dist. LEXIS 55235, at *13 (E.D. Ark. Mar. 30, 2018) (finding that plaintiff's retaliation claims arose under § 1981, Title VII and the Arkansas Civil Rights Act, and none provided a source for a retaliation claim.).

required Plaintiff to prove that she "reported a disparity between the construction of Mills High School and Robinson Middle School to PCSSD, its lawyer, or the Court." *See* Jury Instructions, ECF Doc. 170 at p. 15.   This is not protected activity under Title VII or § 1983.

Title VII provides that an employer may not discriminate against an employee because the employee "has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a).  To demonstrate the presence of protected opposition, a plaintiff must show a good faith reasonable belief that the employer engaged in a discriminatory employment practice.  *Sisco v. J.S. Alberici Constr. Co*., 655 F.2d 146, 150 (8th Cir. 1981).  Opposing an employer's actions outside the ambit of an employment practice is unprotected by Title VII.  *See Artis*, 161 F.3d at 1183 (8th Cir. 1998) (holding that a teacher's opposition to disparate treatment and discipline of black students is not opposition to an unlawful employment practice under Title VII).

Plaintiff's conduct – reporting disparities in construction at PCSSD – is not a protected activity under Title VII.  *See, e.g., Evans v. Kansas City, Mo. Sch. Dist*., 65 F.3d 98, 101 (8th Cir. 1995) (teacher's opposition to perceived disparate treatment of students by school principal outside the ambit of employment practices protected by Title VII); *Bray v. Douglas Cnty*., No. 06-2638, 2007 U.S. App. LEXIS 2370, at *5 (8th Cir., Jan. 31, 2007) (corrections officer's reporting of a co-worker's discriminatory treatment of an inmate not protected conduct under Title VII).  The *Evans* case is particularly relevant as the court held that a plaintiff's complaints did not "relat[e] to the terms and conditions" of plaintiff's employment when he repeatedly took issue with the principal's announced course of action to bring the school into compliance with a desegregation directive.  The same is true here – the facilities issues that have been raised by Plaintiff related to student-based issues and the District's compliance with a desegregation court order – Plan 2000 – but the facilities piece of Plan 2000 does not relate to an employment practice that is protected

under Title VII.  For this reason, Plaintiff cannot rely on her involvement in notifying the Court of facilities issues as protected activity under Title VII.

Furthermore, Plaintiff's retaliation claim under § 1981 also fails.  Retaliation under § 1981 must be related to complaints about a violation of another person's contract-related rights, as that is the statutory right § 1981 protects.  Section 1981 is commonly used to redress racial discrimination in employment.  *See, e.g., Johnson v. Railway Express Agency, Inc*., 421 U.S. 454, 459, 44 L. Ed. 2d 295, 95 S. Ct. 1716 (1975) (aggrieved individual may sue for employment discrimination under 42 U.S.C. § 1981); *Greenwood v. Ross*, 778 F.2d 448, 455 (8th Cir. 1985) (retaliatory discharge is cognizable under Section 1981); *see also, Choudhury v. Polytechnic Institute*, 735 F.2d 38, 42 (2d Cir. 1984) (retaliatory discharge).

The text of § 1981 states:

> (a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

> (b) "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

It is well-established that § 1981 "prohibits racial discrimination in the making and enforcement of private contracts."  *See Patterson v. McLean Credit Union*, 491 U.S. 164, 171, 109 S. Ct. 2363, 2369 (1989).  The Supreme Court has held that while § 1981 does have a retaliation provision, a cognizable retaliation claim requires that a plaintiff complain about "another person's contracted related "right[s]".  *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 445, 128 S. Ct. 1951, 1954 (2008).   In *CBOCS W., Inc.,* the Supreme Court held that the plaintiff did have a viable retaliation claim under § 1981 when he alleged that he was terminated after he

6

complained that a fellow assistant manager had dismissed another black employee for race-based reasons.  553 U.S. at 445.  The Court reasoned that the plaintiff presented a valid claim for retaliation because he was assisting another employee, who suffered direct racial discrimination, secure his rights under § 1981, and thus plaintiff had protection from retaliation for reasons "related to the enforcement of the express statutory right."  *Id*. at 452.  In *CBOS W., Inc*., the protected right was an employment contract.

*CBOCS W., Inc*.'s holding that retaliatory conduct must relate back to the protected right at issue is consistent with Supreme Court precedent interpreting the various civil rights statutes' general prohibitions on retaliation to extend to those who advocate for the rights of groups protected by that prohibition.  *See Sullivan v. Little Hunting Park, Inc*., 396 U.S. 229, 90 S. Ct. 400 (1969) and *Jackson v. Birmingham Bd. of Ed*., 544 U.S. 167, 176, 125 S. Ct. 1497, 161 L. Ed. 2d 361 (2005) (interpreting a general prohibition on racial discrimination [in § 1982] to cover retaliation against those who advocate the rights of groups protected by that prohibition").  The protected group under § 1981 claims in an employment context are co-workers who are seeking to enforce their right to "make and enforce contracts," which includes the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C.  § 1981(b).

The retaliation in this case related to Plaintiff "report[ing] a disparity between the construction of Mills High School and Robinson Middle School to PCSSD, its lawyer or the court."  *See* Jury Instruction No. 13, ECF Doc. 170 at p. 15.  This conduct does not relate back to the text of § 1981 or the making and enforcing of contracts.  The Supreme Court, in *CBOCS W., Inc*., notes the Senate Report issued when § 1981 was amended in 1991.  *See CBOCS W., Inc*. 553 U.S. at 450.  The Senate Report stated that the amending to § 1981 would "reaffirm that the right 'to make and enforce contracts' includes the enjoyment of all benefits, privileges, terms and conditions of

the contractual relationship."  S. Rep. No. 101-315, p 6 (1990).  Among other things, it would "ensure that Americans may not be harassed, fired or otherwise discriminated against in contracts because of their race."  *Ibid.*  Clearly, the legislative intent of § 1981 is to cover employment practices, namely contracting, and does not extend to Plaintiff's advocacy for non-discriminatory school facilities.

In *CBOCS W., Inc.*, the Supreme Court reasoned that § 1981 "provides protection from retaliation for reasons related to the enforcement of [an] express statutory right."  553 U.S. at 452 (2008).  *CBOCS W., Inc.* extended § 1981 to include post-contract formation conduct, where retaliation typically occurs, but *CBOCS W. Inc.* did not overrule the requirement that conduct violating § 1981 must be conduct that includes a "refusal to make a contract," "the impairment of [a plaintiff's] ability to enforce her established contract rights, or "conduct by the employer relating to the terms and conditions of continuing employment."  *See Patterson v. McLean Credit Union*, 491 U.S. 164, 179, 109 S. Ct. 2363, 2374 (1989).

Here, Plaintiff caused to be filed with the federal court a status report alleging construction of unequal facilities in violation of the district's desegregation plan; while this act demonstrates advocacy for the District's black students, it is simply not protected conduct under either Title VII or § 1983.  Therefore, the Judgment must be set aside in favor of Defendants.

## CONCLUSION

Pursuant to the foregoing argument and authority, Defendants respectfully submit that their Motion for Judgment as a Matter of Law or, in the Alternative, Motion to Alter or Amend the Judgment should be granted.

Respectfully submitted,

BEQUETTE, BILLINGSLEY & KEES, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Phone: (501) 374-1107
Fax: (501) 374-5092
Email: jbequette@bbpalaw.com
Email: ckees@bbpalaw.com

By: _____**W. Cody Kees**_____
        Jay Bequette, #87012
        W. Cody Kees, #2012118