IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JANICE HARGROVE WARREN                        PLAINTIFF

v.                              No. 4:19-cv-00655-BSM

MIKE KEMP, et al.                               DEFENDANTS

**BRIEF IN SUPPORT OF DEFENDANTS' RESPONSE TO
PLAINTIFF'S AMENDED AND SUBSTITUTED MOTION FOR
EQUITABLE AND INJUNCTIVE RELIEF**

Defendants, by their attorneys, Bequette, Billingsley & Kees, P.A., respectfully submit this Brief in Support of their Response to Plaintiff's Amended and Substituted Motion for Equitable and Injunctive Relief ("Motion") (ECF Doc. 179). For the reasons discussed herein, Plaintiff's Motion should be denied.

1. **BACK PAY**

Plaintiff argues the Court should award her back pay in addition to the jury's back pay award of $208,025.40. The issue of back pay, or lost wages, was properly submitted to the jury and the Court's equitable power does not extend to back pay. *See Mathieu v. Gopher News Co*., 273 F.3d 769, 778 (8th Cir. 2001) ("the district court is not free to reject or contradict findings by the jury on issues that were properly submitted to the jury"); and *Coleman v. Omaha*, 714 F.2d 804, 806-808 (8th Cir. 1983) (Court directed verdict in favor of employee on employment claim, but back pay was submitted to the jury, which returned a verdict of zero, accepting the employer's contention that plaintiff failed to mitigate his damages. Eighth Circuit was "powerless" to review the issue as it was decided by the jury and not the court.).

At trial Plaintiff presented a damages chart to the jury, using the exact number she presents in her present motion: $437,453.64. *See* ECF Doc. 180 at p. 15 for chart. Plaintiff's lost wages for 2018-2019 and 2019-2020 were $166,587.30 each year. The total for the two years is

$208,025.40 – the jury's back pay award.  It is clear that the jury's back pay award – in the amount of $208,025.40 – was for two years of lost wages.  The jury's award of two years of lost wages is a strong rebuke of Plaintiff's request for four years of lost wages.  This was the finding of the jury, and the district court has no power to modify the jury's finding on this issue.  *See Excel Corp. v. Bosley*, 165 F.3d 635, 639 (8th Cir. 1999) (the district court may not reject findings made by the jury).

The jury had sufficient evidence to reject Plaintiff's lost wage requests in full, despite finding in her favor on her retaliation claim.  At trial, Defendants presented evidence of Plaintiff's failure to mitigate her damages by seeking other superintendent positions, with Plaintiff admitting she had turned down three requests from Ray and Associates search firm to apply for superintendent positions and that she did not apply for the Conway School District superintendent position.  Plaintiff conceded that since she was denied the PCSSD superintendent position in 2018, she has not applied for any other positions.  The jury was able to consider Plaintiff's failure to seek suitable alternative employment.  *See Fiedler v. Indianhead Truck Line, Inc.*, 670 F.2d 806, 809 (8th Cir. 1982).  The issue of lost wages was properly submitted to the jury, and Plaintiff has not presented a sufficient reason why the jury's award of lost wages should be modified.

Back pay was an issue properly presented to the jury and the court has no equitable power to increase this amount, nor should it since the jury has determined this award.  Plaintiff's request for additional back pay must be denied.

    **2.   PRE-JUDGMENT INTEREST**

Pre-judgment interest is not available to Plaintiff.  The general rule when claims against the government are involved is that interest is proscribed absent express statutory or contractual authorization.  *Saunders v. Claytor*, 629 F.2d 596, 598 (9th Cir. 1980).  Title VII does not include the right to pre-judgment interest.  *Id.*, citing *Blake v. Califano*, 200 U.S. App. D.C. 27, 626 F.2d

891, 893 (D.C. 1980); *Richerson v. Jones*, 551 F.2d 918, 925 (3rd Cir. 1977). For these reasons, Plaintiff's request for pre-judgment interest should be denied.

### 3. FRONT PAY

Plaintiff concedes that the superintendent position is now filled and therefore reinstatement is "impracticable and/or impossible." ECF Doc. 180 at p. 20. Defendants agree. Instead, Plaintiff asks for front pay at the superintendent's pay rate for two years. *Id*. at p. 23. For the following reasons, front pay is not appropriate in this case.

    **a.    Front pay is not appropriate because the jury already considered – and rejected – front pay in its verdict.**

While front pay is an issue for the Court, the jury can provide an award that is advisory in nature under Fed. R. Civ. P. 39(c). *See Mathieu v. Gopher News Co.*, 273 F.3d 769, 779 (8th Cir. 2001) (upholding a district court's award of front pay that was exactly what the jury awarded, calling the award "advisory in nature"). Plaintiff presented a lost wage model to the jury that included lost wages from the date of the adverse employment action and through the 2021-2022 contract year, which does not end until June 30, 2022. Therefore, the jury considered front pay in its deliberations as to whether Plaintiff was entitled to lost wages during the period beginning on the date of verdict (February 25, 2022) through June 30, 2022. In denying Plaintiff lost wages for the 2021-2022 contract year, the jury clearly found that front pay was not warranted. The Court in its equitable power cannot now award front pay that is inconsistent with the jury verdict. *See Cleverly v. Western Electric Co.*, 450 F. Supp. 507, 511 (W.D. Mo. 1978), *aff'd*, 594 F.2d 638 (8th Cir. 1979) (the jury verdict in favor of plaintiff on an issue is *res judicata* for the purposes of the equitable claims"). An award of front pay would be contrary to the jury's decision to only award Plaintiff less than half of her requested lost wages of $437,453.64. *See Newhouse v. McCormick & Co.*, 110 F.3d 635, 641 (8th Cir. 1997) ("In making a front pay award, the district court is not

3

free to reject or contradict findings by the jury on issues that were properly submitted to the jury…"). For these reasons, a front pay award by the Court is not appropriate.

### b. Front pay is not appropriate because Plaintiff failed to mitigate her damages.

A Title VII claimant has a duty to mitigate damages by exercising reasonable diligence to locate other suitable employment and maintain a suitable job once it is located. *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1277 (4th Cir. 1985) (citing *Ford Motor*, 458 U.S. at 231); *see also* 42 U.S.C. § 2000e-5 ("interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable"). Similarly, when awarding front pay, a district court must consider the plaintiff's ability to find new employment with comparable compensation and responsibility. *See Christensen v. Titan Distrib.*, 481 F.3d 1085, 1098 (8th Cir. 2007).

The jury clearly determined Plaintiff had not sufficiently mitigated her damages with its lost wage award. *See Coleman*, 714 F.2d at 806 -808 (8th Cir. 1983) (finding a court can direct a verdict in favor of plaintiff but a jury award no back pay because of failure to mitigate"); *see also Miller v. Bd. of Regents*, No. 15-CV-3740 (PJS/LIB), 2019 U.S. Dist. LEXIS 23107, at *7 (D. Minn. Feb. 13, 2019) (court holding that the jury "must necessarily have found" that plaintiff met her duty to mitigate when the jury awarded her full damages through the date of verdict and the court "is not free to disregard this finding").

As discussed above, Defendants presented evidence at trial of Plaintiff's failure to mitigate her damages by seeking other superintendent positions. Plaintiff admitted she turned down three requests from Ray and Associates search firm to apply for superintendent positions and Plaintiff admitted she did not apply for the Conway School District superintendent position. Plaintiff conceded that since she was denied the PCSSD superintendent position in 2018, she has not applied

for any other open superintendent positions.  Plaintiff's failure to mitigate her damages is fatal to her claim for front pay.

          **c.     Front pay is not appropriate in light of Plaintiff's nearing retirement.**

Plaintiff's age and nearness to retirement may be considered by the Court.  *See MacDissi v. Valmont Indus., Inc.*, 856 F.2d 1054, 1060 (8th Cir. 1988*)* (there may exist a presumption that an employee will retire at a "normal" retirement age); *Curtis v. Elecs. & Space Corp*., 113 F.3d 1498, 1503 (8th Cir. 1997) (three years of front pay until an individual reached age 70 was appropriate); *Hartley v. Dillard's, Inc*., 310 F.3d 1054, 1063 (8th Cir. 2002) (front pay award until age sixty-eight appropriate); and *Newhouse v. McCormick & Co*., 110 F.3d 635, 641 (8th Cir. 1997) (a front pay award for the remainder of the plaintiff's working life was appropriate where the employee had been employed by the defendant for twenty-three years).

Plaintiff was born on August 16, 1956; she is currently 65 years and 7 months old.  *See* Deposition of Plaintiff, p. 16, attached as <u>Exhibit 1</u>.[1]  Plaintiff's "normal" retirement age for Social Security purposes is 66 years and 4 months.[2]  Plaintiff's "normal" retirement age for purposes of receiving full benefits under the Arkansas Teacher Retirement System is 60, as she has over 38 years of public-school credit.[3]  Per her testimony in this case and of record, she will complete 43 years in public education this year.  She currently qualifies for full benefits under the Arkansas Teacher Retirement System, and she will be of full retirement age for Social Security in under a year.  These facts cut against Plaintiff receiving a front pay award.

---

[1] Since front pay "depends on the state of facts existing at the time the remedy is either granted or denied," the Court may take additional evidence.  *See Kucia v. Southeast Arkansas Community Action Corp*., 284 F.3d 944, 949 (8th Cir. 2002).

[2] https://www.ssa.gov/benefits/retirement/planner/agereduction.html   Last accessed on March 28, 2022.

[3] https://www.artrs.gov/working-and-retirement   Last accessed on March 28, 2022.

      **d.**      **Front pay is not appropriate due to the superintendent's three-year contract.**

The Court must consider that Dr. McNulty, as the candidate selected as superintendent, was only offered a three-year contract (Pl. Ex. 30) which is the longest term allowed under Arkansas law. *See* Ark. Code Ann. § 6-17-301(a)(1). The Eighth Circuit has held it is appropriate to limit front pay awards to only what the contract allowed because the contract may not have been renewed or extended past the initial term for legitimate reasons. *Cowan v. Strafford R-VI Sch. Dist.*, 140 F.3d 1153, 1160 (8th Cir. 1998), cited by *Jackson v. Bauxite Sch. Dist.*, No. 4:08-CV-3610-WRW, 2010 U.S. Dist. LEXIS 92425, at *7 (E.D. Ark. Aug. 5, 2010) (holding one year of front pay appropriate for a public-school employee who would have been entitled to a year-long contract). Here, the jury already returned a verdict that covered a period of four years of lost wages for Plaintiff, one year past the contract term initially offered to McNulty. Even if Plaintiff had been awarded the superintendent position, there is absolutely no evidence that she would have received a three-year contract; even if she had, there is no proof it would have been extended beyond the initial term. For all these reasons, front pay is not appropriate.

      **e.**      **Front pay in the form of Plaintiff receiving superintendent pay for her current job is not appropriate.**

Plaintiff asks for front pay in the form of receiving the current superintendent pay until the job becomes available. Since Dr. McNulty is currently serving as superintendent, this time period is unknown. This request seems to contradict Plaintiff's requests to receive the superintendent salary for up to two years. Regardless, the law does not allow an indefinite front pay award. By her own admission, Plaintiff would be serving in the role of assistant superintendent while receiving the front pay award. Plaintiff could arguably stay in an assistant superintendent role indefinitely, while her term as superintendent would in all likelihood be much more brief. Indeed, based on trial testimony, the role of superintendent is much different than assistant superintendent,

6

and the longevity of the two are not similar. The superintendent reports directly to the board of directors – effectively, seven bosses – while the assistant superintendent has only one supervisor. Obviously, Plaintiff serving as assistant superintendent with only one supervisor would invite greater longevity than if she had been superintendent. Look no further than the PCSSD Superintendents 1984-present document that Plaintiff filed with her response to summary judgment (ECF Doc. 40-74) and reviewed with PCSSD witness Shawn Burgess at trial. Since 1999, PCSSD has had 10 superintendents. This entire case started as a result of events that transpired only after the PCSSD Board terminated Superintendent Jerry Guess in 2017. To award Plaintiff front pay indefinitely, or as long as she remained assistant superintendent, is far too speculative an award in light of the circumstances. *See United Paperworkers Int'l Union, Local 274 v. Champion Int'l Corp.*, 81 F.3d 798, 805 (8th Cir. 1996) (award of front pay cannot be overly speculative, but must consider circumstances and Plaintiff's ability to mitigate), citing *Hybert v. Hearst Corp.*, 900 F.2d 1050, 1056-57 (7th Cir. 1990) (five years was too speculative); *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 890 (3d Cir. 1984) (affirming four months of front pay because a longer period would be speculative); *Snow v. Pillsbury Co.*, 650 F. Supp. 299, 300 (D. Minn. 1986) (nine-year award reduced to three years).

Lastly, Defendants oppose any equitable remedy that places Plaintiff in the position of superintendent in the future, if the position is to come open. Plaintiff has been awarded back pay, and it is not reasonably foreseeable that she would have served in the role of superintendent for a period of time longer than the two years of lost wages the jury awarded, especially in light of the superintendent turnover rate. Moreover, this type of equitable relief would completely disregard Plaintiff's obligation to mitigate her damages.

## CONCLUSION

Pursuant to the foregoing argument and authority, Defendants respectfully submit that Plaintiff's Amended and Substituted Motion for Equitable and Injunctive Relief should be denied.

                    Respectfully submitted,

                    BEQUETTE, BILLINGSLEY & KEES, P.A.
                    425 West Capitol Avenue, Suite 3200
                    Little Rock, AR 72201-3469
                    Phone: (501) 374-1107
                    Fax: (501) 374-5092
                    Email: jbequette@bbpalaw.com
                    Email: ckees@bbpalaw.com

By:     **W. Cody Kees**
            Jay Bequette, #87012
            W. Cody Kees, #2012118