**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**JANICE HARGROVE WARREN**                                          **PLAINTIFF**


**v.**                        **Case No. 4:19-cv-00655-BSM**


**KEMP, et al.**                                                          **DEFENDANTS**


**PLAINTIFF'S BRIEF IN SUPPORT OF HER MOTION
FOR ATTORNEY'S FEES AND COSTS**

Plaintiff, Dr. Janice Warren, by and through her attorneys, Sarah Howard Jenkins, PLLC, and Austin Porter Jr., d/b/a Porter Law, submits her Brief in Support of her Motion for Attorney's Fees and Costs pursuant to Fed. R. Civ. Pro. 54(d), Title VII, 42 U.S.C. 20003-5k, 42 U.S.C. § 1988, and 42 U.S.C. § 1920.

**PROCEDURAL BACKGROUND**

This is a civil rights action brought pursuant to 42 U.S.C.A. § 2000e, Title VII of the Civil Rights Act of 1964, as amended; 42 U.S.C.A. § 1981, as amended by the Civil Rights Act of 1991; 42 U.S.C.A. § 1983, and pursuant to the Fourteenth Amendment to the United States Constitution.  This Court conducted the trial before a jury of eight (8) citizens -- four women, four men, 1 black and 7 white citizens – from February 14, 2022 to February 25, 2022. The jury returned a verdict for the Plaintiff's favor on her claims of Retaliation, $208,025.40 in back pay against PCSSD, $125,000 for compensatory damages; $273,000 in punitive damages against PCSSD pursuant to 42 Section 1981; and punitive damages against Board Members Dr. Linda Remele and Alicia Gillen of $25,000 each pursuant to 42 Sections 1981 & 1983. The jury ruled

against the plaintiff on her claims of Race Discrimination, Sex Discrimination, and Breach of Contract. Pursuant to 42 U.S.C.A. § 1981b (1), this Court granted defendants Motion for JNOV on punitive damages against PCSSD and entered its Judgment on the jury's verdict on March 10, 2022. Thereafter, this Court denied defendants' subsequent Motion for JNOV or Motion to Alter or Amend the Judgment and granted in part and denied in part plaintiff's Motion for Equitable Relief. Pending before this Court is plaintiff's Motion for Reconsideration of this Court's denial in part of plaintiff's request for additional back pay and for front pay.

## STATEMENT OF FACTS

Dr. Jerry Guess was appointed as Superintendent of PCSSD after the State of Arkansas removed PCSSD's Board in June 2011. Dr. Guess was delegated final authority both as Superintendent and Board regarding all matters pertaining to the desegregation lawsuit. With Dr. Guess' knowledge and approval, PCSSD reduced by approximately $20,000,000, the construction project for Mills High School ("Mills") located in the predominately black segment of the district and diverted funds from the Mills construction to the Robinson Middle School ("Robinson") construction project in the predominately white neighborhood. On March 10, 2016, PCSSD was released from State control subject to the election of a new Board. The new Board assumed its seat in December of 2016.Thereafter, on July 18, 2017, the Board terminated Dr. Guess as Superintendent because he refused to terminate the services of Allen Roberts, the district's attorney. Dr. Janice Warren, a Black female, was appointed Interim Superintendent.

Less than 40 days into her tenure as Interim Superintendent, an irate Mills parent called Dr. Warren and complained about the inequitable construction of the Mills athletic facility as compared with the Robinson athletic facility. After viewing video footage of the two construction projects and with the assistance of Sam Jones, the district's counsel, Dr. Warren

undertook a proactive process of notifying, correcting, and minimizing the twenty-million-dollar discriminatory act. She notified the Board and commenced monthly construction meetings with all parties engaged in constructing Mills. Sam Jones notified the attorney for the Intervenors in the then-pending 36-year desegregation lawsuit and made a supplemental status report to inform the Federal Court in the desegregation case.

During the September 12, 2017, Board meeting four days after the September 8, 2017, status hearing, Board members Dr. Linda Remele and Gillen attacked Dr. Warren on the supplemental status report, criticized Dr. Warren's decisions to create a productive and clean workspace in her office, and was told to only "keep the ship afloat." In addition to their criticism, the Board voted to conduct a national search for a superintendent. After the meeting, Dr. Remele got into Dr. Warren's face and angrily told her, "We don't air our dirty laundry in public." Thereafter, Dr. Remele and Alicia Gillen commenced acts of retaliation that continued through the district's processes of selecting a Superintendent that eliminated Dr. Warren from consideration and, similarly, rejected Dr. Warren's 2018-application for Deputy Superintendent.

After receiving her right to sue letter, Dr. Warren brought this action on September 23, 2019, against PCSSD, its newly hired Superintendent in his official capacity, and PCSSD's seven Board Members. Sarah Howard Jenkins served as Dr. Warren's sole attorney from the commencement of this lawsuit until the trial of this matter. Dr. Warren amended her Complaint twice, first to add two claims, relief pursuant to 42 U.S.C. § 1983 and a state law breach of contract, and, second, to conform plaintiff's claims for Retaliation to the evidence. In anticipation of the original November 15, 2020, trial date, Attorney Austin Porter entered his appearance to serve as trial co-counsel on October 29, 2020. Janice Warren is the prevailing party in this case and seeks the recovery of attorney's fees and costs.

## AUTHORITY

**A.      As A Prevailing Party, Plaintiff is Entitled to Attorney's Fees and Costs.**

The traditional American Rule that each party bears his or her own attorney's fees and litigation costs is inapplicable in civil right litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S. Ct. 1933, 1937, 76 L. Ed. 2d 40 (1983), Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, and authorized the district courts to award reasonable attorney's fee to prevailing parties in civil rights litigation. *Id*. "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Id*. (quoting H.R.Rep. No. 94–1558, p. 1, (1976). A plaintiff's success on her core claim not only vindicates a personal right "but also furthers the public's interest in providing a fair playing field in the work world." *Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 773 (8th Cir. 2000).

Therefore, a prevailing plaintiff "'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Hensley*, *supra*, at 429; *Womack v. Munson*, 619 F.2d 1292 (8th Circuit 1980), *cert. denied* 101 S.Ct. 1513, 450 U.S. 979, 67 L.Ed.2d 814 (1981). The district court's determination respecting fees is reversible only if the court abused its discretion. *Hendrickson v. Branstad*, 934 F.2d 158, 162 (8th Cir. 1991).

Warren is a prevailing plaintiff and awarding attorney's fees and costs in this case will provide the holist recovery that Congress envisioned when it enacted 42 U.S.C. § 1988; the award of a reasonable fee would not be unjust. The jury awarded Warren $656,025.40 on her Retaliation claims, a substantial victory on her core claim among her ten interrelated claims based on a common core of facts. Warren's victory is the first plaintiff's employment discrimination case against PCSSD to prevail beyond summary judgment and through trial since

4

2000.[1] The results in this case vindicated the unconstitutional treatment of Janice Warren, implemented the public policy goals of Title VII, and demonstrated to the 1948 full time employees that PCSSD's historical intimidation and retaliation against employees is not only unlawful but will not be tolerated by the citizens of the Eastern District of Arkansas.

      1. Warren is a "prevailing" plaintiff.

A plaintiff who succeeds on *any* significant issue and obtains some of the benefits sought in bringing suit is a prevailing plaintiff. *Hensley, supra,* at 433. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. *Id*. at 435.

> [T]he plaintiff's claims for relief will involve common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Id*. A plaintiff who obtains substantial relief in a lawsuit consisting of closely related claims is not subject to the reduction of the award of attorney's fees because the plaintiff did not prevail on every argument asserted. *Shrader v. OMC Aluminum Boat Group*, Inc., 128 F.3d 1218, 1222 (8th Cir.1997). *Hendrickson v. Branstad*, 934 F.2d 158, 164 (8th Cir. 1991).

> A fee award should not be reduced merely because a party did not prevail on every theory raised in the lawsuit . . . . A lawsuit . . . which includes several related legal theories based on a common core of facts, should not be viewed as a series of discrete causes of action, and compensation should not be awarded on a claim-by-claim basis.

---

[1] Of the twenty-three other employment discrimination cases filed against PCSSD and indexed in Pacer from 2000, one was dismissed for lack of jurisdiction, two were voluntarily dismissed, five filed between 2000 and 2003 were dismissed by settlement, only one filed after 2003 was dismissed by settlement in 2018, three were resolved by verdicts for the defendant, ten were resolved by motion before trial for the defendant, and two are currently pending. Data Extracted March 2, 2022.

*Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 773-774 (8th Cir. 2000); *Hendrickson*, *supra*, at 164.

   a. Warren's common core of facts.

  Dr. Warren asserted that the reporting of the discriminatory construction of Mills and the publishing of the newspaper account triggered the retaliatory conduct by Remele and Gillen: the criticism of Warren's decisions to authorize the painting of the superintendent's office and the purchasing of a functioning desk; the decision to perform a national search for superintendent, the board's failure to grant her an interview or hire her as superintendent despite her superior qualifications for the position, and her 2018 unsuccessful application for position of Deputy Superintendent. Indeed, Warren's proof established that her qualifications exceeded those of the two black males included in the pool of three finalist, one who could not qualify for a superintendent's license under Arkansas standards and the other who only had 15-months experience as an area superintendent and no other central office experience. The white male finalist's credentials and experience exceeded those of the black males but were insubstantial when compared with Warren's. Other facts such as the Board's payment of Warren 20% less than the white male superintendents that preceded and followed her provided a good faith basis for asserting both employment discrimination based on race and sex.

  The defendants asserted purported legitimate business reasons for their failure to interview and hire Warren as superintendent in an attempt to defeat Warren's retaliation, sex, and race discrimination claims. Those reasons asserted before trial included:

  1) Two lists of purported concerns,

  2) Warren possessed poor communication skills,

  3) Warren's fiscal management skills were poor, and

4)      the district had the legal right to select its choice among qualified candidates. Warren amended her complaint to state a cause of action inherent in board policy that granted qualified certified employees the right to an interview and a hiring preference over external candidates. This amendment directly confronted PCSSD's allegation of its right to choose among qualified candidates. Warren's claims were *not* "frivolous," or "unreasonable," and were supported by substantial evidence. *Shrader v. OMC Aluminum Boat Grp., Inc*., 128 F.3d 1218, 1221 (8th Cir. 1997). Proof of Warren's qualifications as black and as a woman was essential for establishing that the defendants' purported legitimate business reasons were pretextual to cover up the Board's retaliatory conduct. Rather than discrete unrelated causes of action, Warren's claims were interrelated; her proof of gender discrimination and race discrimination amplified the credibility of her claims of retaliation.

2.      The requested fees are reasonable.

Warren's status as the prevailing party is the initial determination and must be followed by the determination of a reasonable fee. "This is a generous formulation [prevailing plaintiff] that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is 'reasonable.'" *Hensley*, supra, at 433.  The Supreme Court in *Hensley* identified the following factors for evaluating the reasonableness of the fee requested and awarded.

a.      The number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services;

b.      The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed;

c.      The district court also should exclude from this initial fee calculation hours that were not reasonably expended such as overstaffing of the case, redundant or otherwise unnecessary charges;

7

  d. "In the private sector, 'billing judgment' is an important component in fee setting. . . Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Hensley*, *supra*, 434;

  e. Work on an unsuccessful, unrelated claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." *Hensley, supra*, at 435.

  f. Where a plaintiff has *obtained excellent results*, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.

  g. The relationship between the extent of success and the amount of the fee award. *Hensley*, *supra,* at 438. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award? *Id*., at 434.

  h. When an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained. *Hensley*, *supra*, at 437.

Determining the loadstar recovery based on hours times reasonable market value of the hourly service is primary, followed an assessment of other considerations, none alone sufficient to negate the statutory goal of the recovery of a reasonable fee. Each of the nine factors will be discussed in turn.

  a. Lodestar Measure of the Award

Determination of the reasonable fee begins with identification of the reasonable hourly rate that is then multiplied by the number of hours reasonably expended on the litigation. *Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S. Ct. 939, 945, 103 L. Ed. 2d 67 (1989) (we have adopted the lodestar approach as the centerpiece of attorney's fee awards). This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. *Hensley*, *supra*. Market value or customary rate is the reasonable hourly rate used.

Any other rule would relegate civil rights enforcement (and the law that results) to those lawyers with below-market billing rates.  The rates for these lawyers are usually below market for a reason.  A refusal to pay for experience and expertise will exact a cost in the form of inexperience and, perhaps, incompetence.

*Casey v. City of Cabool, Mo*., 12 F.3d 799, 805 (8th Cir. 1993).

Sarah Howard Jenkins served as Dr. Warren's sole attorney from the commencement of this lawsuit until the trial of this matter. Dr. Warren amended her Complaint twice, first to add two claims, relief pursuant to 42 U.S.C. § 1983 and a state law breach of contract, and second, to conform plaintiff's claims for Retaliation to the evidence. In anticipation of the original November 15, 2020, trial date, Attorney Austin Porter entered his appearance to serve as trial co-counsel on October 29, 2020. Thereafter, Mr. Porter participated in the parties' attempt to mediate a settlement and in the trial of this case.

(1). Attorney Austin Porter's customary rate.

Attorney Austin Porter is a 35-year seasoned civil rights practitioner. As provided in his affidavit, Exhibit C, he is requesting $375 per hour for the services provided to Dr. Warren. On September 2, 2016, Attorney Porter was awarded an hourly rate of $325.00 in the case of *Little Rock School District v. Pulaski County Special School District*, et al., Case No. 4:82-CV-00866 DPM. Thereafter, on October 20, 2017, Attorney Porter was awarded an hourly rate of $350.00 in the case of *Sylvia Perkins, et al. v. Joshua Hastings*, Case No. 4:15-CV-00310. Again, on May 31, 2018, he was awarded an hourly rate of $350.00 in the case of *Adrian Bryant v. Jeffery Sand Company*, Case No. 4:16-CV-0509 BSM. The Eighth Circuit Court of Appeals awarded him his customary hourly rate of $350 on May 2, 2019. See *Adrian Bryant v. Jeffery Sand Company*, 919 F.3d 520, 529 (8th Cir. 2019). In the recent case, *Smith v. Dep't of Fin. & Admin*., No.

9

4:17CV00857 JM, 2020 WL 4341750, at *1 (E.D. Ark. Feb. 26, 2020), defended by the Office

of the Arkansas Attorney General, Mr. Porter was awarded his then customary hourly rate of

$350. The increase in his rate reflects his increased success, experience, and the market demand

for his time.

(2)      Sarah Howard Jenkins' requested rate.

On May 15, 2018, Sarah Jenkins retired from her position as the Charles C. Baum

Distinguished Professor of Law at the Bowen School of Law. She is a member of the ALI,

former chair of the UCC Article 1 Subcommittee of the American Bar Association Section on

Business Law, and former board member of the American Society of Comparative Law. During

her extensive teaching career of Conflict in Laws, Contracts, U.C.C. Articles 2, 2A, 3, 4, 4A, &

5, the citations of her scholarly work by federal and state courts establish her ability to resolve

cutting edge legal issues and complex legal problems, the soundness of her thought processes,

and the respect her ideas have generated over the years. These citations include:

*Diperna v. Icon Health and Fitness, Inc*., 491 Fed. Appx. 904 (10th Cir. Ct. App. 2012); *Stokes

v. Southern States Co-op, Inc*., 651 F.3d 911 (8th Cir. 2011); *All-Ways Logistics, Inc. v. USA

Truck, Inc*., 583 F.3d 511 (8th Cir. 2009); *Diaz-Amador v. Wells Fargo Home Mortgages*, 856

F.Supp.2d 1074 (D. Ariz. 2012); *Kennedy v. Boles Investments, Inc*., 53 So.3d 60 (Ala. 2010);

*Lewistown Miller Const. Co., Inc. v. Martin*, 363 Mont. 208, 271 P.3d 48 (2011); *Helton v.

Phillip A. Glick Plumbing, Inc*., 672 S.E.2d 842 (Va. 2009); *Carder Buick-Olds Co. v. Wooten*,

308 S.W.3d 156 (Ark. App. 2009); *Palmer v. Murphy*, 2004 WL 1166592 (Cal. App. 2004);

*Brown v. Sol*, 2004 WL 2165638 (Conn. Super. 2004); *Kaye v. Wilson-Gaskins*, 135 A.3d 892,

227 Md. App. 660 (Md. Ct. Spec. App. 2016); *Barufaldi v. Ocean City, Chamber of Commerce,

Inc.*, 7 A.3d 643 (Md. Ct. Spec. App. 2010).

Ms. Jenkins attended the University of Kentucky College of Law. After declining the offer of Notes Editor, Jenkins served as a member of the Kentucky Law Journal. Ms. Jenkins commenced her legal career in 1983 as an associate attorney with Lewis and Roca Lawyers, now Lewis Roca Rothgerber Christie LLP, in Phoenix, Arizona. There, as a member of the Commercial Litigation and Corporate Law Sections, she engaged in highway construction litigation, including membership on an appellate practice team, drafted motions, contracts, client letters, offers of settlement, negotiated contracts, performed due diligence document inspection, made court appearances on motions in bankruptcy court and circuit court, conducted and defended depositions, and managed the firm's garnishment practice. After her retirement in 2018, Jenkins returned to the full-time practice of law and launched Sarah Howard Jenkins, PLLC.  All discovery and all filings in this case except the Motion for Equitable Relief were researched and drafted by Jenkins. Ms. Jenkins is requesting $365/hour for her representation of Dr. Janice Warren.

Defendants may argue that Jenkins' practical experience is dated or lacks subject matter relevancy. During this case, Jenkins demonstrated a solid knowledge of Federal Court processes and the substantive law governing rights and liabilities pursuant to Federal Civil Rights Law as reflected in Title VII, 42 U.S.C. §§ 1981, 1983. A mere argument is insufficient! Defendants must provide evidence that the hourly rate and fee requested are unreasonable. *Bryant v. Jeffrey Sand Co*., 919 F.3d 520, 529 (8th Cir. 2019). The district court's decision to accept the requested rate as reasonable, *in light of its own experience and knowledge*, is not an abuse of discretion. *Id*. (emphasis added).

       b.     Jenkins & Porter have detailed evidence supporting their claims.

In addition to the summary chart below, Exhibits B and C provide the details of the work undertaken, the hours logged for the work, and the charge for each day. The total amount claimed based of the requested fee and hours logged are likewise provided.

| WARREN V. KEMP LODESTAR CALCULATION | | | |
|---|---|---|---|
| **ATTORNEY** | **REQUESTED RATE** | **HOURS** | **REQUESTED FEE** |
| Austin Porter, Jr. | $375.00 | 196.25 | $73,593.72 |
| Sarah Howard Jenkins | $365.00 | 2097 and 51 mins | $765,715.25 |
| **COSTS** | AS ITEMIZED | | $14,190.79. |

> c & d.  Hours claimed are limited to those reasonably expended and consistent with billing judgment.

The district court should exclude from its initial fee calculation hours that were not *reasonably* expended such as overstaffing of the case, redundant or otherwise unnecessary charges. *Hensley*, *supra*, at 433. Similarly, work not reasonably billed to the client cannot be claimed from the defendants. This case was not overstaffed by plaintiff's counsel. The case *sub judice* included as defendants seven individual members of PCSSD's Board and PCSSD. This resulted in seven or eight responses to Interrogatories and Request for Documents. Indeed, as discussed below, given the litigious conduct and recalcitrant-lawyering by defense counsel, more hands might have been helpful.

> (1)    Elimination of unnecessary and other charges.

Counsel reviewed their submitted time logs for unnecessary charges and those not reasonably billed to Dr. Warren. For example, Jenkins eliminated time spent correcting the filing of exhibits in Plaintiff's Response to defendants' Motion for Summary Judgment. This Court denied the defendants' motion on all claims. Although billable to Dr. Warren, Jenkins did not

include in her time log charges for the FOIA suit commenced and dismissed in Pulaski County Circuit Court in July 2020.

Plaintiff's counsel used the most reasonable and efficient jural tools, including a Motion to Intervene in *Little Rock School District v. Pulaski County Special School District* ("*LRSD v. PCSSD*"), Case No. 4:82-cv-866-DPM, to enforce, protect, and obtain proof to support Warren's contention that her constitutional rights had been violated. The goal of intervening in *LRSD v. PCSSD, supra,* was to protect Dr. Warren from being bound to the resolution of issues in *LRSD v. PCSSD* by the principles of collateral estoppel. Judge Marshall denied the motion being persuaded in part by the assurances of counsel that neither the Intervenors nor PCSSD would seek to hold Dr. Warren responsible in *LRSD v. PCSSD*, *supra*.

An assessment of the reasonableness of the hours expended must not only include the claimant's log of hours but also an assessment of defense counsel's lawyering techniques in the case. Here, defendants' recalcitrant, "take no prisoners," approach to litigation and their trial by ambush must be assessed to determine the reasonableness of the hours being claimed.

       (2)    Recalcitrant, "take no prisoners," litigation and trial by ambush.

Defense counsel's conduct is this case is best described as recalcitrant – uncooperative and inconsistent with the policy goals of the Fed. R. of Civ. Pro. – and as trial by ambush.

       (a).    Recalcitrant "take no prisoners" Litigation

Examples of defendants' recalcitrant litigation are numerous; several are included below. First, plaintiff served the seven individual defendants who were members of PCSSD's Board with her first set of Request for Document on January 16, 2020. Included therein was a request for home, business, and cell phone numbers and call records. Similarly, plaintiff requested the defendants' calendars for the month of April 2018 and later amended the request to include

March 2018.  All defendants asserted a non-existent personal privacy privilege. Defense counsel are experienced employment/civil rights attorneys and know that Fed. R. Evid. 501 does not recognize such a privilege. After replying three times the defendants' responses describing the applicable law and available processes, plaintiff filed her first of two motions to compel production. This Court granted this first of two motions to compel on April 28, 2020. The hours expended on the Motion to Compel are included in Jenkins' claim. Phone records were produced five months after the request in mid-June 2020 without including the keys provided by AT&T for deciphering the records. See Exhibit D.

Second, Plaintiff's second Motion to Compel, filed on June 8, 2020, centered on the seven individual the defendants' standardized, uniform responses to plaintiff's first set of Interrogatories and defense counsel's patent or clear breach of his Fed. R. Civ. Pro. 26(g) certification that he made a reasonable inquiry before compiling the responses to the Interrogatories. Plaintiff's Second Motion to Compel was granted in part on October 21, 2020, ordering the defendants to respond by a specified date but denying the request for sanctions pursuant to Fed. R. Civ. Pro. 26(g)(3). Jenkins' time invested on the Second Motion to Compel is included in her claim.

Third, defendants opposed plaintiff's Motion in Limine Regarding Facilities. During discovery, the defendants produced evidence asserting that the Mills discriminatory construction resulted from Dr. Warren's failure to monitor the construction and her failure to perform her job pursuant to Plan 2000. Plaintiff sought a ruling from this Court based on the principle of judicial estoppel that defendants could not take a position in this Court contrary to the position defendants were taking *LRSD v. PCSSD, supra*. Dr. Warren was one of the defendants' primary witnesses on PCSSD's fulfillment of Plan 2000, including monitoring, in *LRSD v. PCSSD.*

Defendants abandoned this defense at the trial in this matter. The time invested in acquiring substantial proof of Dr. Warren's performance of her duties must be compensated.

Finally, the defendants' shifting of alleged legitimate reasons for their actions, multiple Motions in Limine,[2] multiple Motions to Strike pleadings, and some of their Motions for JNOV without bases in fact or law necessitated the continual investment of Jenkins' time in fulfilling her good faith obligation to represent Dr. Warren *zealously* within the bounds of the law!

(b) Trial by Ambush

The "trial by ambush" tactics employed by defendants during the trial were, perhaps, the most frustrating, disheartening, and time-consuming conduct by the defendants in this case. During the defendants' opening statement, defense counsel raised for the first time a defense going to the heart of plaintiff's claims, "the Board's failure to select Warren as Superintendent was motivated by her association with Dr. Jerry Guess" ("Tainted Association").  This defensed lacked a basis in fact in the record. Plaintiff objected at the close of the opening statement and later filed on February 19, 2022, a Motion to Strike Tainted Association Evidence and Request for Curative Instruction or Motion for Mistrial ("Motion to Strike," ECF Docket No. 157). The motion was denied. (ECF Docket No. 160) Later, in a sidebar that followed on the question of plaintiff's right to amend her complaint to conform to proof, Fed. R. Civ. Pro. 15 (b)(2), the

---

[2] In 2021, defendants filed two Motions in Limine on the issue of punitive damages. Both were denied. Later, in 2022 defendants raised again punitive damages. Finally, in their Motion for Directed Verdict, raised the issue of punitive damages arguing that school districts were, like municipalities, political subdivisions and not subject to punitive damages, citing *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989), without Arkansas authority to support their position. Prior to defendants' Motion for Directed Verdict, plaintiff's counsel relied on Ark. Code Ann. §§ 6-13-101 & 6-13-102 that define and limit the power and authority of school districts as a body corporate, subject to suit. Plaintiff's counsel had not located a provision of the Arkansas Code defined or recognized school districts as political subdivisions. A search of Arkansas and Eighth Circuit yield the case cited in plaintiff's response.

question of defendants' improper assertion of the "Tainted Association" defense Superintendent was motivated by her association arose again. Contrary to plaintiff's assertion that Gillen's deposition did not raise the purported defense "Tainted Association," defense counsel asserted that the defense was based on deposition testimony by former Board Member Alicia Gillen and that defendants' Response to the Motion contained citations to Ms. Gillen's deposition testimony. Defendants' Response to the Motion does not contain a single citation to Gillen's deposition. Furthermore, the allegations in the Response are contrary to trial testimony by Alicia Gillen and Janice Warren. These types of trial maneuvers are contrary to the goals and purposes of federal procedure and processes, the "*just*, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. Pro. 1 (emphasis added). Hours spent on the Motion to Strike are included in Jenkins' log.

Similarly, defendants' offered proof of an alleged failure by Dr. Warren to mitigate her loss of back pay by failing to apply for the superintendency opening in Conway Public Schools. However, the defendants failed to demonstrate that the two positions were substantially similar, the standard required by law. The hours spent on plaintiff's Motion for Reconsideration currently pending before this Court are included in Jenkins' claim. Defendants' nefarious rather than adversarial conduct must be considered in determining whether the hours spent by plaintiff's counsel were reasonably expended.

      e.    Work on an unsuccessful, unrelated claim cannot be deemed to have been expended in pursuit of the ultimate result achieved

Warren's claims were interrelated. Warren asserted claims against PCSSD for 1) sex and race discrimination and Retaliation pursuant to Title VII; 2) Race Discrimination and Retaliation under 42 U.S.C. §1981; 3) Retaliation, failure to hire as Deputy Superintendent in 2018, based

on 42 U.S.C. § 1981; 4) breach of contract for failure to hire for the superintendency; 5) breach of contract for failure to promote her to Deputy Superintendent. Against the board members in their individual capacities Race Discrimination and Retaliation pursuant to 42 U.S.C. §§ 1981 and 1983 against the individual defendants, in their individual capacities, who were the final policy decision makers for PCSSD, in their official capacities.

Dr. Warren's proof of sex discrimination and race discrimination amplified the credibility of her claims of retaliation. Warren's proof established that her qualifications exceeded the three men selected as finalists, those of the two black males included in the pool of three finalist -- one could not qualify for a superintendent's license under Arkansas standards and the other only had 15-months experience as an area superintendent and no other central office experience. The white male finalist's credentials and experience exceeded those of the black males, suggesting that the inclusion of the black men was a pretext. The white male's credentials and experience were insubstantial when compared with Warren's. Other facts such as the Board's payment of Warren 20% less than the white male superintendents that preceded and followed her also provided a good faith basis for asserting both employment discrimination based on race and sex. Her breach of contract claim was asserted as a direct response to defendant-PCSSD's assertion of a right to choose among qualified candidates. This was *not* an unrelated claim. *Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 773-774 (8th Cir. 2000) (Barton's state claims of assault and battery, outrage, and negligent retention shared a common core of facts with her Title VII claims, all of which arose from Ware's alleged sexual harassment of Barton).

The jury's failure to find sex and race discrimination cannot result in a conclusion that time spent on these claims was non-compensable. Indeed, it is impossible to separate the proof for Retaliation and the proof of sex and race discrimination. Compensation is not to be awarded

on a claim-by-claim basis. *Hensley*, *supra*, at 435. Here, Warren's claims were not discrete

unrelated claims to her successful claims of Retaliation. *Sturgill v. UPS, Inc*., 512 F.3d 1024,

1036 (8th Cir. 2008).

> Sturgill's accommodation and religious discrimination claims were inextricably
> related – they alleged alternative unlawful discharge theories. When the facts and
> legal theories overlap in this fashion, and when the prevailing party pursued
> alternative legal theories in good faith, rejection of one theory is not a sufficient
> reason for reducing a fee.

*Id*., at 1036. *Hendrickson v. Branstad*, 934 F.2d 158, 164 (8th Cir.1991) (a fee award should not

be reduced merely because a party did not prevail on every theory raised in the lawsuit which

includes several related legal theories based on a common core of facts).

> f.      Where a plaintiff has *obtained excellent results*, his attorney should
> recover a fully compensatory fee. Normally this will encompass all hours
> reasonably expended on the litigation, and indeed in some cases of
> exceptional success an enhanced award may be justified.

Plaintiff's counsel obtained exceptional results in this case. From 2000 to March 2022,

twenty-four Civil Rights/employment discrimination cases are indexed in Pacer under Attorney

Jay Bequette as filed against PCSSD. One was dismissed for lack of jurisdiction, two were

voluntarily dismissed, five filed between 2000 and 2003 were dismissed by settlement, only one

filed after 2003 was dismissed by settlement in 2018, three were resolved by verdicts for the

defendant, ten were resolved by motion before trial for the defendant, and two are pending. The

results in 21 cases from 2000 through 2022 are staggering! Six or 27% settled after the filing of

the cause of action in the early 2000's but only one after a 15-year hiatus in settlements in 2018.

In the 15 or 68% of cases resolved via Federal Court jurisdiction either by verdict, motion, or

voluntary dismissal PCSSD prevailed. Warren is the first plaintiff to prevail beyond a Motion for

Summary Judgment and trial in the cases indexed in Pacer from 2000. Warren represents 4.5%

of all plaintiffs who prevailed against PCSSD other than voluntary settlement in the early 2000's.

Indeed, 45.5% of the cases were resolved by motion before trial. See Exhibit E. See, generally,

Wendy Parker, *Lessons in Losing: Race Discrimination in Employment*, 81 Notre Dame

L.Rev.889, 899 (2006), concluding that "Employment discrimination cases rarely make it to

trial." Professor Parker reports:

> In the national study of reported opinions on pretrial motions,
> plaintiffs won about one in four opinions. The win rate was higher
> in the opinions addressing a motion to dismiss than when resolving a
> motion for summary judgment.

*Id*., at 910.  "Plaintiffs' win rate was 42% in the 74 motions to dismiss, and was 25% in the

393 motions for summary judgment." *Id*. at n.98. Plaintiff's win rate in the Eastern District of

Arkansas is substantially less on Motions for Summary Judgment against PCSSD. "If the

plaintiff has won excellent results, he is entitled to a fully compensatory fee award, which will

normally include time spent on matters on which he did not win."  *Hensley*, *supra*, at 435.

       g.    The relationship between the extent of success and the amount of the fee
               award.

Here, the lodestar assessment of attorney's fees results in a recovery that exceeds the

jury's adjusted award to Dr. Warren. The recovery by the employee is an important but not

controlling factor. The applicable standard established by the Supreme Court is the lodestar

figure. *Id*. No adjustment in counsel fees is required by the extent of the client's recover. In

anticipating defendants' response to plaintiff's motion, it is important to observe that the

Supreme Court expressly rejected a rule that limited attorney's fees in civil rights cases to a

proportion of the damages awarded to the plaintiff. *City of Riverside v. Rivera*, 477 U.S. 561, 106

Sup. Ct. 2686 (1986) (upholding a fee award equal to seven times the amount to the plaintiff). A

rule of proportionality undermines Congress' goal in enacting 42 U.S.C. § 1988 and would substantially hamper the victim of employment discrimination in obtaining counsel when the potential damage recovery is modest, as is often the case. The results obtained by counsel not only provide a benefit to the injured employee but also a public benefit of vindicating civil and constitutional rights. *Id.*, at 562; *Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 773 (8th Cir. 2000).

Dr. Warren's claims were related, based on a common core of facts. Counsel achieved exceptional results and are entitled to the requested fee without an adjustment based on proportionality.

      h.    Any adjustment from the lodestar by the Court must be articulated in terms of the amount of the fee and the results.

When an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained.  Defendants must provide evidence of any alleged unreasonableness in the lodestar figure. *Jeffery San, supra.* There, plaintiff asks to court to award the lodestar figure requested by her attorneys.

**B.**    **Reimbursement of Costs 42 U.S.C. § 1988 and 28 U.S.C. § 1920.**

Pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1920,[3] a prevailing plaintiff is entitled to reimbursement of her out of pocket expenses and cost. Costs such as filing fees, service costs,

---

[3] A judge or clerk of any court of the United States may tax as costs the following: (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses;(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

photocopying costs, the costs of depositions, and subpoena fees are recoverable as part of an attorney fees award in a Title VII action, even if they are not generally taxable as costs. Title VII grants discretion to award the prevailing party "a reasonable attorney's fee ... as part of the costs." 42 U.S.C. § 2000e–5(k). Costs include "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client." *Sturgill v. United Parcel Serv., Inc.*, 512 F.3d 1024, 1036 (8th Cir. 2008). Dr. Warren includes among her itemized costs, expenses incurred in hiring an Iowan attorney to assist in corralling an adverse witness' appearance at the witnesses' subpoenaed remote appearance.

A subpoena was issued ordering the witness' appearance by computer at her home. During a Zoom interview in advance of trial, it was apparent that the witness was being prompted via text or email on her computer. To provide the integrity of this Court's processes, a second subpoena was issued commanding the witness' appearance at the United States District Court for the Northern District of Iowa in Cedar Rapids. A paralegal from Dr. Warren's Iowan attorney's firm attended the remote appearance to ensure that any attempted intervention with the appearance would be handled swiftly to avoid a delay in the trial.

Title VII grants discretion to award the prevailing party "a reasonable attorney's fee ... as part of the costs." 42 U.S.C. § 2000e–5(k). A district court does not abuse its discretion in awarding cost normally charged to fee paying clients. Sturgill v. United Parcel Serv., Inc., 512 F.3d 1024, 1036 (8th Cir. 2008). The award of Dr. Warren's itemized expenses is not an abuse of discretion. *Id.* Therefore, plaintiff requests the reimbursement of the out-of-pocket expenses itemized in Exhibit 1 totaling $14,190.79.

**CONCLUSION**

Therefore, for the foregoing reasons, plaintiff asks this Court to award the requested fees

and costs as delineated herein.

Respectfully submitted this 19th day of May 2022,
Sarah Howard Jenkins
AR Bar No. 97046
Attorney for the Plaintiffs
SARAH HOWARD JENKINS, PLLC
P.O. BOX 242694
Little Rock, AR 72223
Telephone No. (501) 406-0905
Email:  sarah@shjenkinslaw.com

Austin Porter Jr., No. 86145
PORTER LAW FIRM
323 Center Street, Suite 1035
Little Rock, Arkansas 72201
Telephone: 501-244-8220
Facsimile: 501-372-5567
Email: Aporte5640@aol.com
Attorneys for the Plaintiff